IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BRIAN VUKADINOVICH,

          Plaintiff,

v.

RICHARD A. POSNER,

          Defendant.

Cause No. 22 Civ. 118

Judge Theresa L. Springmann
Magistrate Judge Joshua P. Kolar

## JUDGE POSNER'S MEMORANDUM OF LAW IN SUPPORT OF
## HIS MOTION TO DISMISS THE COMPLAINT

Steven F. Molo (*pro hac vice* forthcoming)
Allison M. Gorsuch (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL 60654
(312) 450-6700
smolo@mololamken.com
agorsuch@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY  10022
(212) 607-8160
jellis@mololamken.com.

David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Drive
Suite 100
Hammond, IN 46323
dbeach@eichhorn-law.com

*Attorneys for Hon. Richard A. Posner*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................................... 4

ARGUMENT ......................................................................................................................................... 5

    I.    Mr. Vukadinovich's Contract Claim Must Be Dismissed ................................................. 5

        A.    Indiana Law Governs Mr. Vukadinovich's Claim .......................................................... 5

        B.    Indiana's Statute of Limitations Bars Mr. Vukadinovich's Claim ............................... 6

        C.    Judge Posner Is Not Personally Liable for the Contract ................................................ 7

        D.    The Parties Never Formed a Binding Contract ............................................................ 11

CONCLUSION ................................................................................................................................... 13

# TABLE OF AUTHORITIES

### CASES

*Am. Fam. Mut. Ins. Co. v. Williams*,
    839 F. Supp. 579 (S.D. Ind. 1993) ................................................................................... 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 4

*Bell Atl. Corp v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 4

*Brown v. Reinberger*,
    177 Ill. App. 297 (1913) ................................................................................................. 10

*Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*,
    692 F.3d 580 (7th Cir. 2012) .......................................................................................... 11

*DiMizio v. Romo*,
    756 N.E.2d 1018 (Ind. Ct. App. 2001) ............................................................................. 8

*Duggins v. Selene Fin., LP*,
    No. 19 Civ. 201, 2022 WL 1449605 (N.D. Ind. May 6, 2022) ........................................ 5

*Eby v. York-Div., Borg-Warner*,
    455 N.E.2d 623 (Ind. Ct. App. 1983) ............................................................................... 5

*Farag v. Health Care Serv. Corp.*,
    No. 17 Civ. 2547, 2017 WL 2868999 (N.D. Ill. July 5, 2017) ...................................... 13

*Franciscan All., Inc. v. Padgett*,
    180 N.E.3d 944 (Ind. Ct. App. 2021) ........................................................................... 6, 7

*Golsen-Dunlap v. Elan Motorsports Techs., Inc.*,
    No. 04 Civ. 104, 2012 WL 3027947 (S.D. Ind. July 24, 2012) ..................................... 12

*Greer v. Bd. of Educ. of Chi.*,
    267 F.3d 723 (7th Cir. 2001) ............................................................................................ 4

*Gunn v. Cont'l Cas. Co.*,
    968 F.3d 802 (7th Cir. 2020) ............................................................................................ 5

*Hamlin v. Steward*,
    622 N.E.2d 535 (Ind. Ct. App. 1993) ............................................................................. 10

*Home Nat. Bank of Chicago v. Waterman's Est.*,
    134 Ill. 461 (1890) ......................................................................................................... 10

*Knutson v. UGS Corp.*,
   526 F.3d 339 (7th Cir. 2008) ..................................................................................................7

*Luson Int'l Distributors, Inc. v. Mitchell*,
   939 F.2d 493 (7th Cir. 1991) ............................................................................................10, 11

*People ex rel. Madigan v. Tang*,
   346 Ill. App. 2d 277 (2004) ....................................................................................................8

*Majd Pour v. Basic American Medical, Inc.*,
   512 N.E.2d 435 (Ind. Ct. App. 1987) ...................................................................................12

*Mays v. Trump Indiana, Inc.*,
   255 F.3d 351 (7th Cir. 2001) ................................................................................................11

*Miller v. Int'l Harvester Co.*,
   811 F.2d 1150 (7th Cir. 1987) ................................................................................................6

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*,
   940 N.E.2d 810 (Ind. 2010) ....................................................................................................5

*Phillips v. Prudential Ins. Co. of Am.*,
   714 F.3d 1017 (7th Cir. 2013) ................................................................................................1

*Sec. Bank & Tr. Co. v. Bogard*,
   494 N.E.2d 965 (Ind. Ct. App. 1986) ...................................................................................12

*T.L. Swint Indus., Inc. v. Premiere Sales Grp., Inc.*,
   983 F. Supp. 772 (N.D. Ill. 1997) .........................................................................................10

*Taylor v. JPMorgan Chase Bank, N.A.*,
   958 F.3d 556 (7th Cir. 2020) ................................................................................................13

*Vukadinovich v. AFT, et al.*,
   No. 1995-cv-00065-ASC (N.D. Ind. 4) .................................................................................2

*Vukadinovich v. Amer. Fed. Of Teachers, AFL-CIO*,
   No. 37D02-9805-CP-00087 (Ind. Super. Ct. Jasper Cty.) ......................................................2

*Vukadinovich v. Bd. Sch. Trustees of Michigan City*,
   No. 37D02-9301-CP-000009 (Ind. Super. Ct. Jasper Cty.) ....................................................2

*Vukadinovich v. Crown Point Cmty. Sch. Corp.*,
   No. 2:10-cv-00256 (N.D.Ind.) ................................................................................................2

*Vukadinovich v. Eichelberger*,
   No. 45D02-9505-CP-000520 (Ind. Super. Ct. Lake Cty.) ......................................................2

*Vukadinovich v. Griffith Public Sch, et al.*,
 02-cv-00472 (N.D. Ind) ...................................................................................................2

*Vukadinovich v. Gubbins*,
 No. 1:1994cv06244 (N.D. Ill.)..........................................................................................2

*Vukadinovich v. Gubbins*,
 No. 3:1995cv00036 (N.D. Ind.).........................................................................................2

*Vukadinovich v. Gubbins*,
 No. 3:1995cv00751 (W.D. Wisc.)......................................................................................2

*Vukadinovich v. Hanover Cmty. Sch. Corp.*,
 No. 2:2013cv00144 (N.D. Ind.).........................................................................................2

*Vukadinovich v. Kussmaul*,
 No. 64D03-0703-SC-001566 (Ind. Super. Ct. LaPorte Cty.) ...........................................2

*Vukadinovich v. Lolkema*,
 No. 46D03-1611-CT-1809 (Ind. Super. Ct. LaPorte Cty.) ...............................................2

*Vukadinovich v. Myers*,
 No. 45C01-8906-CP-002062 (Ind. Super. Ct. Lake Cty.) ................................................2

*Vukadinovich v. North Newton Sch.*,
 No. 4:00-cv-00037-AS (N.D. Ind.)....................................................................................2

*Vukadinovich v. Paul*,
 No. 2011-M6-004070 (Ill. Cir. Ct. Cook Cty.)..................................................................2

*Vukadinovich v. Rennssealaer Monument Co.*,
 No. 75C01-0810-CC-000529 (Ind. Super. Ct. LaPorte Cty.) ...........................................2

*Vukadinovich v. School City of Hammond*,
 No. 2:10-cv-00257 (N.D.Ind.) ..........................................................................................2

*Vukdadinovich v. O'Hara*,
 No. 37C01-9502-CT-000021 (Ind. Super. Ct. Jasper Cty.)...............................................2

*Walker v. Elkin*,
 758 N.E.2d 972 (Ind. Ct. App. 2001)..............................................................................10

*Williams v. U.S. Steel*,
 877 F. Supp. 1240 (N.D. Ind. 1995) ..............................................................................6, 7

*Wolvos v. Meyer*,
 668 N.E.2d 671 (Ind. 1996) ............................................................................................11

## STATUTES

740 ILCS 80/1 §1 .................................................................................................................10

Ind. Code § 32-21-1-1 ........................................................................................................10

Ind. Code § 34-11-2-1 ..........................................................................................................6

## OTHER AUTHORITIES

Fed. Jud. Ctr., "Posner, Richard Allen,"
    https://bit.ly/3QAMLEo.https://bit.ly/3QAMLEo .....................................................1

Jenna Greene, "After Posner retired from 7th Circuit, a grim diagnosis and a
    brewing battle," Reuters (Mar. 29, 2022) https://reut.rs/3OpQW47 ........................4

Restatement (2d) of Conflict of Laws (1971) ....................................................................5

13 Williston on Contracts (4th ed.) ..................................................................................13

## INTRODUCTION

In this *pro se* breach of contract lawsuit, Brian Vukadinovich claims that he is owed a salary from Judge Richard Posner for his work at Judge Posner's short-lived Posner Center of Justice for Pro Se's. While the Center never raised more than a trivial amount of donations, and never paid any employee a salary, Mr. Vukadinovich relies on a February 2018 email stating that the Center "should be able to pay" him $80,000 a year if enough donations came in. He also alleges that, in a March 2018 oral agreement, Judge Posner both raised his salary to $120,000 and personally guaranteed it would be paid. Based on those two alleged contracts, Mr. Vukadinovich seeks $170,000 from Judge Posner personally.

Even under the liberal standards for *pro se* plaintiffs, Mr. Vukadinovich fails to state a claim. Any claims under the alleged March 2018 oral agreement are barred by Indiana's strict two-year statute of limitations for oral employment contracts. Any contract he might have formed in either the February 2018 email exchange or the alleged March 2018 agreement would have been with the Center and not with Judge Posner personally. Judge Posner's alleged personal guarantee is barred by the Statute of Frauds. And the agreement Mr. Vukadinovich alleges is too indefinite to form a binding contract or, at best, imposed a condition precedent for his salary that never came to pass. The Court should dismiss Mr. Vukadinovich's complaint.

## STATEMENT OF FACTS

Following a distinguished thirty-six-year judicial career, Judge Posner retired from the U.S. Court of Appeals for the Seventh Circuit in September 2017. *See* Fed. Jud. Ctr., "Posner, Richard Allen," https://bit.ly/3QAMLEo.[1] Shortly after his retirement, Judge Posner founded the "Posner

---

[1] These facts are taken from Mr. Vukadinovich's complaint, the exhibit attached to that complaint, and information that is subject to judicial notice. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013).

Center of Justice for Pro Se's," a nonprofit corporation whose purpose was to educate and advocate for *pro se* litigants. *See* Ellis Decl. Ex. A (IRS 2018 tax return). The Center was formally incorporated in Illinois on February 6, 2018. Ellis Decl. Ex. B (certificate of good standing).

Mr. Vukadinovich is a retired teacher living in Wheatfield, Indiana. *See* Compl. ¶ 1; https://bit.ly/3OvjwkD (biography on Mr. Vukadinovich's personal webpage). He has extensive experience as a *pro se* litigant, having pursued at least sixteen cases in state and federal courts *pro se*.[2] He had worked for the Posner Center as a "regional director" before February 2018. *See* Compl. Ex. 1 ("More than 80 persons now work for the company. I have very little contact with most of them; the principal exception is you . . . I now have, as you know, regional directors, of whom you are one."). However, Mr. Vukadinovich has attached to his complaint an alleged February 25, 2018 email[3] in which Judge Posner wrote to Mr. Vukadinovich "suggest[ing] a new role for you[ ] in the company." *Id.* In that role – which Mr. Vukadinovich describes as an

---

[2] *See, e.g.*, *Vukadinovich v. Hanover Cmty. Sch. Corp.*, No. 2:2013cv00144 (N.D. Ind.); *Vukadinovich v. Sch. City of Hammond*, No. 2:10-cv-00257 (N.D.Ind.); *Vukadinovich v. Crown Point Cmty. Sch. Corp.*, No. 2:10-cv-00256 (N.D.Ind.); *Vukadinovich v. Griffith Public Sch.,* 02-cv-00472 (N.D. Ind); *Vukadinovich v. N. Newton Sch.*, No. 4:00-cv-00037-AS (N.D. Ind.); *Vukadinovich v. AFT*, No. 1995-cv-00065-ASC (N.D. Ind. 4); *Vukadinovich v. Gubbins*, No. 3:1995cv00751 (W.D. Wisc.); *Vukadinovich v. Gubbins*, No. 3:1995cv00036 (N.D. Ind.); *Vukadinovich v. Gubbins*, No. 1:1994cv06244 (N.D. Ill.); *Vukadinovich v. Lolkema*, No. 46D03-1611-CT-1809 (Ind. Super. Ct. LaPorte Cty.) & 19A-CT-2353 (Ind. App. Ct.); *Vukadinovich v. Rennssealaer Monument Co.*, No. 75C01-0810-CC-000529 (Ind. Super. Ct. LaPorte Cty.); *Vukadinovich v. Kussmaul*, No. 64D03-0703-SC-001566 (Ind. Super. Ct. LaPorte Cty.); *Vukadinovich v. Am. Fed'n of Teachers, AFL-CIO*, No. 37D02-9805-CP-00087 (Ind. Super. Ct. Jasper Cty.); *Vukadinovich v. Eichelberger*, No. 45D02-9505-CP-000520 (Ind. Super. Ct. Lake Cty.); *Vukadinovich v. O'Hara*, No. 37C01-9502-CT-000021 (Ind. Super. Ct. Jasper Cty.); *Vukadinovich v. Bd. Sch. Trs. of Michigan City*, No. 37D02-9301-CP-000009 (Ind. Super. Ct. Jasper Cty.); *Vukadinovich v. Myers*, No. 45C01-8906-CP-002062 (Ind. Super. Ct. Lake Cty.); *Vukadinovich v. Paul*, No. 2011-M6-004070 (Ill. Cir. Ct. Cook Cty.).

[3] The copy of the email chain attached to the complaint has a discrepancy making it unclear when the emails were sent. The date and time listed for Judge Posner's first email to Mr. Vukadinovich is Sunday, February 25, 2018 at 4:34 a.m., but Mr. Vukadinovich's response is listed as sent on Saturday, February 24, 2018 at 10:50 p.m., several hours earlier. *See* Compl. Ex. 1.

"executive director," Compl. ¶ 5 – the email stated that Judge Posner and Mr. Vukadinovich would "divide up the territory in which the company has members between the two of us" in various "state[s] and region[s]" across the country and "keep tabs" on lawyers, nonlawyer legal advisors, law firms, pro bono organizations, courts, prisoners, and *pro se* litigants, *id.* Ex. 1.

The February 25 email also stated that Mr. Vukadinovich "would receive a substantial salary in the role I envisage for you, though I can't specify salary yet because the company has as yet no money." Compl. Ex. 1. It predicted that "within weeks or perhaps days," the Center would be reorganized as a 501(c)(3) and that the Center "ought to be able to raise more than $1 million through donations." At that point, the Center "should be able to pay [Vukadinovich] at least $80,000 and I hope more." *Id.* In his reply, Mr. Vukadinovich agreed to the new role but asked if he could work from his home in Wheatfield. *Id.* Judge Posner's reply stated "I am so pleased that you accepted my offer." *Id.*

Mr. Vukadinovich then alleges that, three weeks later, he and Judge Posner had an "oral agreement" on March 19, 2018 in which Judge Posner agreed to increase his pay at the Center by 50%. Compl. ¶ 7. He alleges Judge Posner promised to pay him $120,000 as a lump sum after a year of service. *Id*. Judge Posner also allegedly made a "personal guarantee" that he would "personally pay for [Mr. Vukadinovich's] services" "irrespective of whatever financial condition that the Posner Center would find itself in." *Id.* ¶ 8. Mr. Vukadinovich alleges that the March 2018 oral agreement "amended the original agreement of February 25, 2018." *Id.* Mr. Vukadinovich alleges he "provided" the Center a "variety of services" from February 2018 through July 2019, thus "perform[ing] his obligations under the agreement." *Id.* ¶¶ 9, 19.

Ultimately, the Center did not raise anywhere near the $1 million in funding that the February 2018 email exchange predicted. According to public tax returns filed with the IRS, the

3

Center received $20,600 of donations in 2018 and $0 in 2019.  Ellis Decl. Exs. A, C.  Those returns state that the Center paid $0 in salaries to employees and staff in either year.  *Id.*  The Center voluntarily dissolved in July 2019.  *Id.* Ex. C.[4]

Nearly three years later, Mr. Vukadinovich sued, alleging that he was never paid the "lump sum" Judge Posner orally promised him and that he is owed $170,000 for his services.  Compl. ¶¶ 17-18.  The sole claim Mr. Vukadinovich brings is for breach of the March 2018 alleged oral agreement.  *Id.* ¶¶ 13-19.  Mr. Vukadinovich's complaint names Judge Posner personally, and not the Center, as a defendant.  But other than Judge Posner's alleged oral March 2018 "personal guarantee," he does not allege any facts about why Judge Posner would be personally liable (such as any allegations that the Center's corporate veil should be pierced).  *See id.*

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) must be granted unless a plaintiff can allege "facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  To be facially plausible, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

As Mr. Vukadinovich notes, courts give *pro se* complaints a "liberal reading."  Compl. ¶ 4; *see Greer v. Bd. of Educ. of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001).  The "essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable."  *Greer*, 267 F.3d at 727 (quotation omitted).  We urge the

---

[4] As news reports (which quote Mr. Vukadinovich) have described, Judge Posner was diagnosed with Alzheimer's disease in 2018.  Jenna Greene, "After Posner retired from 7th Circuit, a grim diagnosis and a brewing battle," Reuters (Mar. 29, 2022) https://reut.rs/3OpQW47.  Judge Posner now lives in an assisted living facility in Chicago.  Dkt. 5 at 1.

4

Court to do so here. That said, the Court "still holds [*pro se* plaintiffs] to the same substantive standards as other civil litigants when it considers the motion to dismiss." *Duggins v. Selene Fin., LP*, No. 19 Civ. 201, 2022 WL 1449605, at *3 (N.D. Ind. May 6, 2022) (quotation and internal punctuation omitted).

## ARGUMENT

### I. MR. VUKADINOVICH'S CONTRACT CLAIM MUST BE DISMISSED

#### A. Indiana Law Governs Mr. Vukadinovich's Claim

Mr. Vukadinovich's contract claim is governed by Indiana's choice-of-law rules. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (in diversity cases, federal courts apply choice-of-law rules of the state where they sit). In contract cases like this one, Indiana applies the law of the state with the most significant connections to the dispute, including the place where the parties contracted and negotiated, the state where the contract was performed, and the parties' domiciles. *Am. Fam. Mut. Ins. Co. v. Williams*, 839 F. Supp. 579, 582 (S.D. Ind. 1993); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.*, 940 N.E.2d 810, 814 (Ind. 2010). As the Restatement (which takes a similar approach) recognizes, the default law controlling a contract for services is the law of "the state where the contract requires that the services, or a major portion of the services, be rendered." Restatement (2d) of Conflict of Laws § 196 (1971).

Indiana has the most significant relationship with this case. Mr. Vukadinovich lives in Indiana, Compl. ¶ 1, and the alleged contract was formed in Indiana by Mr. Vukadinovich accepting Judge Posner's offer via email, *id.* ¶ 6 & Ex. 1; *see Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983) (contract formed in Indiana when employee in Indiana accepted job offer over the telephone). Moreover, Mr. Vukadinovich was to work from his home in Indiana. Compl. ¶ 5 & Ex. 1. By contrast, while Judge Posner and the Center resided in Illinois, those contacts are relatively insignificant because Mr. Vukadinovich did not work in Illinois and

5

because his job was to deal with lawyers, courts, prisoners, and plaintiffs across the country, not just in Illinois. *See* Compl. Ex. 1 (stating that Mr. Vukadinovich and Judge Posner would "divide up the territory" in various "state[s] and region[s]").[5] Because this case is about an Indiana citizen seeking to recover payment for a contract he formed and performed in Indiana, Indiana law applies.

### B. Indiana's Statute of Limitations Bars Mr. Vukadinovich's Claim

Because Indiana law applies, Mr. Vukadinovich's claim is subject to Indiana's statutes of limitations. Indiana law imposes a two-year statute of limitations on any "action relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary)." Ind. Code § 34-11-2-1. The two-year clock begins running when the plaintiff can show all the elements of a contract cause of action, including damages. *See Franciscan All., Inc. v. Padgett*, 180 N.E.3d 944, 951 (Ind. Ct. App. 2021); *see also Williams v. U.S. Steel*, 877 F. Supp. 1240, 1245 (N.D. Ind. 1995), *aff'd*, 70 F.2d 944 (7th Cir. 1995) (claims for unpaid wages accrue when the wages are due but not paid). The purpose of that short time limit is that "it is too easy for an employee to make claims against his employer based on alleged oral understandings and too hard for the employer to disprove these claims when they relate to the remote past." *Miller v. Int'l Harvester Co.*, 811 F.2d 1150, 1152 (7th Cir. 1987).

That time limit bars Mr. Vukadinovich's contract claim. Mr. Vukadinovich explicitly states that the operative "contract" he seeks to enforce is "the [March 2018] oral agreement between Defendant Richard A. Posner and Plaintiff Brian Vukadinovich." Compl. ¶¶ 13, 14.

---

[5] Mr. Vukadinovich does not allege where the 2018 oral agreement took place. If he were to allege that the agreement happened in person in Illinois, however, that would not change the conflict-of-law analysis. At most, that would show that the parties agreed to amend two terms of the contract they had formed in Indiana and which was to be performed in Indiana.

6

Under that agreement, Mr. Vukadinovich was to be paid a lump-sum salary "after a year of service has been provided," *id.* ¶7, meaning that he would have been owed $120,000 in February 2019 and (presumably) another lump sum when his employment ended in July 2019, *see id.* ¶¶9, 17 (seeking $170,000 for 17 months of employment between February 2018 and July 2019). Because Judge Posner did not then pay Mr. Vukadinovich the money he was allegedly owed, Mr. Vukadinovich's contract claims accrued, at the latest, in July 2019. *Padgett*, 180 N.E.3d at 951; *Williams*, 877 F. Supp. at 1245.[6] As a result, Mr. Vukadinovich's claims based on the March 2018 oral contract are barred because he did not bring suit on them by July 2021.

While Mr. Vukadinovich may argue that the longer statute of limitations for written contracts applies because the February 2018 email is a written contract, that argument would fail. At most, Mr. Vukadinovich alleges claims for a breach of a purported contract that is partly written (under the February 2018 email) and partly oral (under the alleged March 2018 amendment). Under Indiana law, where "the contract sued upon is partly written and partly oral," the "shorter statute of limitations is applied to such claims." *Knutson v. UGS Corp.*, 526 F.3d 339, 340 (7th Cir. 2008) (collecting cases). The two-year statute of limitations thus bars Mr. Vukadinovich's claim even if it is in part based on the February 2018 email. And, as described below, the February 2018 email does not, by itself, form a binding contract with Judge Posner. *See* pp. 11-13. The Court should enforce Indiana's statute of limitations and dismiss Mr. Vukadinovich's contract claim.

### C. Judge Posner Is Not Personally Liable for the Contract

Mr. Vukadinovich's claim must also be dismissed because he has sued the wrong defendant. A person typically cannot be held liable for breaching a contract unless he or she was

---

[6] Moreover, claims for the first $120,000 lump sum payment accrued no later than February 2021.

a party to that contract. *DiMizio v. Romo*, 756 N.E.2d 1018, 1021-22 (Ind. Ct. App. 2001).[7] Because the February 2018 email shows that Mr. Vukadinovich would work for the Center, and not for Judge Posner personally, Judge Posner cannot be held liable for breach of that agreement. And while Mr. Vukadinovich also alleges that Judge Posner orally guaranteed the Center's payment of his wages, that alleged guarantee is void under the statute of frauds.

1. *Judge Posner Was Not a Party to Either Alleged Contract*

Neither the February 2018 email nor the March 2018 oral agreement, as alleged, show that Judge Posner personally hired Mr. Vukadinovich. The February 2018 email which Mr. Vukadinovich frames as a "contract" was sent on February 24 to 25, 2018, Compl. Ex. 1, at which time the Center had been organized as a not-for-profit corporation, Ellis Decl. Ex. A (incorporation date of February 6, 2018). And that alleged offer repeatedly makes clear that Mr. Vukadinovich would work for the Center and not for Judge Posner personally.

That offer stated that Mr. Vukadinovich already "work[ed] ***for the company***"; he "suggest[ed] a new role for [Mr. Vukadinovich] ***in the company***"; the email proposed that Judge Posner and Mr. Vukadinovich "divide up the territory ***in which the company has members*** between the two of us"; it conceded that Judge Posner could "not specify salary yet because ***the company has as yet no money***" but expressed hope that Mr. Vukadinovich could be paid "once ***the company will be reorganized as a 501(c)(3)***" so that the company could receive enough donations to pay him. Compl. Ex. 1 (emphasis added). And Mr. Vukadinovich alleges that the offer was to work as "executive director ***of the Posner Center***." Compl. ¶ 5 (emphasis added). If

---

[7] Likewise, under Illinois law, "the law immunizes corporate officers from corporate liabilities and debts" because one of the key "purposes of a corporate entity is to immunize the corporate officer from individual liability on contracts entered into in the corporation's behalf." *People ex rel. Madigan v. Tang*, 346 Ill. App. 2d 277, 284 (2004). As a result, claims against Judge Posner personally must still be dismissed even if Illinois law applied.

an offer was made to Mr. Vukadinovich in February 2018, it was to work as an employee of the Center, performing services for the Center, in exchange for a salary to be paid (if at all) by the Center.

Nor could the alleged March 2018 oral agreement have formed a personal employment contract with Judge Posner. Mr. Vukadinovich alleges only that this agreement "amended" the February 2018 email to increase his salary and to add a personal guarantee, not that Judge Posner agreed to personally hire Mr. Vukadinovich. *See* Compl. ¶¶ 7, 8. Mr. Vukadinovich acknowledges as much by pleading that, in March 2018, Judge Posner personally guaranteed his salary. *Id.* ¶ 8. If either the February 2018 email or March 2018 oral agreement made Judge Posner Mr. Vukadinovich's employer, no such guarantee would have been necessary. Thus, the Center, and not Judge Posner, was his employer, and Judge Posner can be held liable for Mr. Vukadinovich's wages only if Mr. Vukadinovich can state a claim that Judge Posner is responsible for the Center's debts.

### 2. *The March 2018 Oral "Guarantee" Is Barred by the Statute of Frauds*

Mr. Vukadinovich does not allege any facts suggesting that Judge Posner is personally liable for the Center's debts as a general matter. Instead, he pleads that, in their alleged March 2018 oral contract, Judge Posner "guaranteed that he would personally pay for [Mr. Vukadinovich's] services" no matter "whatever financial condition that the Posner Center would find itself in." Compl. ¶ 8.

That alleged agreement, however, would be barred by Indiana's statute of frauds. Indiana law provides that no action shall be brought "charging any person, upon any special promise, to answer for the debt, default or miscarriage of another" unless "the promise, contract or agreement

9

. . . is in writing." Ind. Code § 32-21-1-1.[8] A promise to pay the debt of another is a special (or "collateral") contract that "must comport with the statute of frauds." *Walker v. Elkin*, 758 N.E.2d 972, 975 (Ind. Ct. App. 2001) (citation omitted). In particular, the statute of frauds applies to a promise by the owner of a corporation to personally guarantee the corporation's debts. *Luson Int'l Distributors, Inc. v. Mitchell*, 939 F.2d 493, 494 (7th Cir. 1991), *overruled on other grounds by Mayer v. Gary Partners & Co.*, 29 F.2d 330 (7th Cir. 1994). And while the statute does not apply if the guarantor receives a "personal, immediate, and pecuniary" benefit from his guarantee, the fact that a guarantor owns shares in a company does not, by itself, show that the guarantor receives a personal benefit from guaranteeing the company's past and future debts. *Luson*, 939 F.2d at 495-97 (quotation omitted); *see also Hamlin v. Steward*, 622 N.E.2d 535, 539 (Ind. Ct. App. 1993) (phrased differently, the statute does not apply if the guarantor personally receives consideration for making the guarantee).[9]

*Luson* is instructive. There, the companies Luson and Elk-Bend had had an agreement to distribute Elk-Bend machinery, but the relationship had waned because Elk-Bend had fallen behind on its payments to Luson. 939 F.2d at 494. To "renew its business relationship," Elk-Bend's president orally guaranteed Elk-Bend's past and future debt to Luson. *Id.* at 494-495. The district court held that Indiana's statute of frauds barred enforcement of that promise, and the

---

[8] Illinois law has the same rule. 740 ILCS 80/1 §1 (barring any action "to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person . . . unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing"); *see T.L. Swint Indus., Inc. v. Premiere Sales Grp., Inc.*, 983 F. Supp. 772, 774 (N.D. Ill. 1997) ("Generally, if a pre-existing debt is owed, a promise to guarantee the debt is considered a collateral promise and falls under the Statute" of Frauds in Illinois).

[9] Once again, Illinois law is the same. *Brown v. Reinberger*, 177 Ill. App. 297, 300 (Ill. App. Ct. 1913) (citing *Home Nat. Bank of Chicago v. Waterman's Est.*, 134 Ill. 461 (1890) (a promise "of a stockholder to pay the debt of his corporation" was "unquestionably one to pay the debt of another" and subject to the Statute of Frauds)).

10

Seventh Circuit affirmed. *Id.* at 495, 498. Even though Elk-Bend had benefited from the guarantee, and even though Elk-Bend's president was also its principal shareholder, "shareholder status by itself" was "not enough to demonstrate that the defendant enjoyed a direct personal benefit as a result of the promise" to guarantee Elk-Bend's debts. *Id.* at 496-97 (collecting cases).

These principles bar enforcing the alleged March 2018 oral guarantee. Just as in *Luson*, Judge Posner's alleged promise falls within the Statute of Frauds because he had purportedly promised to guarantee both the Center's past and future debt for Mr. Vukadinovich's salary. Just as in *Luson*, Judge Posner did not receive any direct, personal, and pecuniary benefit from his alleged promise, even if he were a shareholder of the Center (which, after all, was a nonprofit). Even if that guarantee induced Mr. Vukadinovich to keep working for the Center, that benefit flowed to the Center and not to Judge Posner. *Luson* applies and requires that Mr. Vukadinovich's claims about the alleged guarantee must be dismissed under the Statute of Frauds.

### D. The Parties Never Formed a Binding Contract

Finally, even if Mr. Vukadinovich had made a timely claim under the alleged contract, and even if he were entitled to relief against Judge Posner personally under that alleged contract, it would still be unenforceable because the parties never formed a binding agreement on the terms of Mr. Vukadinovich's compensation.

Under Indiana law, a contract must include all "material terms" to be enforceable. *Mays v. Trump Indiana, Inc.*, 255 F.3d 351, 358-59 (7th Cir. 2001); *Wolvos v. Meyer*, 668 N.E.2d 671, 674-75 (Ind. 1996) (similar).[10] For employment contracts, the material terms include, at a minimum, "(1) the place of employment; (2) the period of employment; (3) the nature of the

---

[10] Similarly, under Illinois law, "[i]ndefiniteness of a material term renders a contract unenforceable when the court cannot reasonably supply the missing term through contract interpretation." *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 692 F.3d 580, 589 (7th Cir. 2012).

11

services the employee is to render; (4) the compensation the employee is to receive." *Majd Pour v. Basic American Medical, Inc.*, 512 N.E.2d 435, 439 (Ind. Ct. App. 1987).

Here, the parties never reached a definite agreement on Mr. Vukadinovich's compensation. Instead, Judge Posner's email states that he "can't specify salary yet because as yet the company has no money." Compl. Ex. 1. The email states that, once the Center raised enough money, it "**should be able to pay**" at least $80,000 a year and I hope more." *Id*. (emphasis added). But that statement reflects a wish about what the Center **should** be able to do, not a promise about what the Center **would** do. Such predictions are not enough to form a binding contract. *Sec. Bank & Tr. Co. v. Bogard*, 494 N.E.2d 965, 969 (Ind. Ct. App. 1986) ("[A] prediction, opinion, or prophecy is not a promise." (quotation omitted)); *see Golsen-Dunlap v. Elan Motorsports Techs., Inc.*, No. 04 Civ. 104, 2012 WL 3027947, at *9 (S.D. Ind. July 24, 2012), *reconsideration granted on other grounds*, 2012 WL 5878023 (S.D. Ind. Nov. 20, 2012) (prediction about the value of an employee's share option package did not create binding promise to award that package).

Nor did the alleged March 2018 oral agreement transform this wish into a binding contract. While Mr. Vukadinovich alleges that the $80,000 figure was increased to $120,000 in the alleged March 2018 oral agreement, Compl. ¶ 7, he does not allege that the figure was anything more than what the $80,000 figure was in the February 2018 email – an estimate of what the Center "should be able to pay" if donations arrived. *See id.* (stating only that the oral agreement "amend[ed] the previous amount of $80,000.00 to $120,000.00"). All the parties changed is how much "should" be paid, not whether that amount would be paid.

At best, the parties might have made a contract based on a condition precedent: **If** the Posner Center received sufficient donations, **then** the Center would pay Mr. Vukadinovich "at least $80,000" (or $120,000). The email's statement that the Center "should be able to pay" Mr.

12

Vukadinovich made clear that any promise to pay would be binding only if there was enough money from donations to pay. *Taylor v. JPMorgan Chase Bank, N.A.*, 958 F.3d 556, 563 (7th Cir. 2020) (Indiana law looks to "the intent expressed within [the contract's] four corners" to decide whether a condition precedent exists (citation omitted)).[11] But public records show that, during its brief existence, the Center received donations totaling barely one-sixth of Mr. Vukadinovich's annual salary. *See* Exs. A, C (reporting $20,600 in donations from 2018 to 2019); *Farag v. Health Care Serv. Corp.*, No. 17 Civ. 2547, 2017 WL 2868999, at *13 (N.D. Ill. July 5, 2017) (taking judicial notice of a nonprofit's regulatory filings). Mr. Vukadinovich does not allege in his complaint that the Center in fact received more donations or that it ever had enough money to pay him. Because the condition the parties agreed on before paying Mr. Vukadinovich never came to pass, no obligation to pay Mr. Vukadinovich could have arisen.

## **CONCLUSION**

The Court should dismiss the complaint.

---

[11] While the email does not use formal conditional language such as "on condition that," such formal language is unnecessary. *See* 13 Williston on Contracts § 38:16 (4th ed.) (any language that "make[s] clear the notion that the performance of a promise in a contract is dependent on some other act or event will create an express condition . . . No particular form of words is necessary" (quotation omitted)).

13

Hammond, Indiana
July 11, 2022

  /s/ David Beach
David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Dr.
Suite 100
Hammond, IN 46323
dbeach@eichhorn-law.com

Steven F. Molo (*pro hac vice* forthcoming)
Allison M. Gorsuch (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL 60654
(312) 450-6700
smolo@mololamken.com
agorsuch@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY 10016
(212) 607-8160
jellis@mololamken.com

*Attorneys for Hon. Richard A. Posner*