**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

BRIAN VUKADINOVICH,

                             Plaintiff,

        v.

RICHARD A. POSNER,

                             Defendant.

Cause No. 22 Civ. 118

Judge Theresa L. Springmann
Magistrate Judge Joshua P. Kolar

**JUDGE POSNER'S MEMORANDUM OF LAW IN SUPPORT OF
<u>HIS MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Steven F. Molo (admitted *pro hac vice*)
Kenneth E. Notter III (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL  60654
(312) 450-6700
smolo@mololamken.com
knotter@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY  10022
(212) 607-8160
jellis@mololamken.com.

David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Drive, Suite 100
Hammond, IN  46323
dbeach@eichhorn-law.com

*Attorneys for Hon. Richard A. Posner*

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 1

I.     The Parties' Alleged Contracts ........................................................................ 1

II.    Mr. Vukadinovich's Demands For Payment And Complaints ........................... 5

LEGAL STANDARD.................................................................................................... 7

ARGUMENT ............................................................................................................... 7

I.     Mr. Vukadinovich's Contract Claim Must Be Dismissed ................................. 7

       A.    Indiana Law Governs Mr. Vukadinovich's Contract Claim ................................. 7

       B.    Indiana's Statute of Limitations Bars Mr. Vukadinovich's Claim ........................ 9

       C.    Mr. Vukadinovich Fails To Plausibly Allege Judge Posner Is
             Personally Liable for the Alleged Contract .......................................... 11

       D.    The Parties Never Formed a Binding Contract..................................... 14

II.    Mr. Vukadinovich's Fraud Claim Must Be Dismissed................................... 16

       A.    The Fraud Claim Is Duplicative of the Contract Claim....................... 16

       B.    Mr. Vukadinovich Fails To State a Fraud Claim ................................. 18

III.   Mr. Vukadinovich's Unjust Enrichment Claim Must Be Dismissed.............................. 20

       A.    Indiana's Statute of Limitations Bars the Unjust Enrichment Claim .................. 20

       B.    Mr. Vukadinovich Fails To State a Claim for Unjust Enrichment ...................... 21

CONCLUSION.......................................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................7

*Atlas IP, LLC v. Exelon Corp.*,
  189 F. Supp. 3d 768 (N.D. Ill. 2016) ...................................................................13

*Bayh v. Sonnenburg*,
  573 N.E.2d 398 (Ind. 1991) ...................................................................................23

*Bell Atl. Corp v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................7

*Block v. Lake Mortg. Co.*,
  601 N.E.2d 449 (Ind. Ct. App. 1992) ....................................................................19

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ...............................................................................17

*In re Bridgestone/Firestone, Inc. Tires Prods. Liability Litig.*,
  155 F. Supp. 2d 1069 (S.D. Ind. 2001) .................................................................20

*Brosellino v. Goldman Sachs Grp., Inc.*,
  477 F.3d 502 (7th Cir. 2007) ...................................................................................7

*Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*,
  692 F.3d 580 (7th Cir. 2012) .................................................................................14

*City of Marion v. London Witte Grp., LLC*,
  169 N.E.3d 382 (Ind. 2021) ...................................................................................21

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) .................................................................................19

*DiMizio v. Romo*,
  756 N.E.2d 1018 (Ind. Ct. App. 2001) ..................................................................11

*Duggins v. Selene Fin., LP*,
  No. 19-cv-201, 2022 WL 1449605 (N.D. Ind. May 6, 2022) ..................................7

*Eby v. York-Div., Borg-Warner*,
  455 N.E.2d 623 (Ind. Ct. App. 1983) .................................................................8, 17

*Franciscan All., Inc. v. Padgett*,
  180 N.E.3d 944 (Ind. Ct. App. 2021) ...............................................................9, 10

*Gittings v. Deal*,
    109 N.E.3d 963 (Ind. 2018) ............................................................................................10

*Golsen-Dunlap v. Elan Motorsports Techs., Inc.*,
    No. 04-cv-104, 2012 WL 3027947 (S.D. Ind. July 24, 2012) .................................15

*Grace Village Health Care Facilities, Inc. v. Lancaster Pollard & Co.*,
    896 F. Supp. 2d 757 (N.D. Ind. 2012) ...................................................................19

*Grant v. Van Natta*,
    No. 10-cv-1220, 2013 WL 466212 (S.D. Ind. Feb. 7, 2013) ..................................16

*Greenberger v. GEICO Gen. Ins. Co.*,
    631 F.3d 392 (7th Cir. 2011) ...................................................................................17

*Greer v. Bd. of Educ. of Chi.*,
    267 F.3d 723 (7th Cir. 2001) .....................................................................................7

*Gunn v. Cont'l Cas. Co.*,
    968 F.3d 802 (7th Cir. 2020) .....................................................................................7

*Heyser v. Nobel Roman's Inc.*,
    933 N.E.2d 16 (Ind. Ct. App. 2010)...................................................................18, 20

*Kaken Pharm. Co. v. Eli Lily & Co.*,
    737 F. Supp. 510 (S.D. Ind. 1989).......................................................................10, 11

*Knutson v. UGS*,
    No. 05-cv-1319, 2007 WL 2122192 (S.D. Ind. July 19, 2007) ..........................20, 21

*Knutson v. UGS Corp.*,
    526 F.3d 339 (7th Cir. 2008) ...................................................................................10

*Kohl's Indiana, L.P. v. Owens*,
    979 N.E.2d 159 (Ind. Ct. App. 2012)......................................................................22

*Law Offices of David Freydin, P.C. v. Chamara*,
    24 F.4th 1122 (7th Cir. 2022) ...............................................................................2, 14

*Lawyers Title Ins. Corp. v. Pokraka*,
    595 N.E.2d 244 (Ind. 1992) ..................................................................................18, 19

*Licocci v. Cardinal Assocs., Inc.*,
    492 N.E.2d 48 (Ind. Ct. App. 1986).........................................................................10

*Litsinger v. Forest River, Inc.*,
    536 F. Supp. 3d 334 (N.D. Ind. 2021) .......................................................................9

*People ex rel. Madigan v. Tang*,
    346 Ill. App. 2d 277 (2004) ................................................................11

*Majd Pour v. Basic Am. Med., Inc.*,
    512 N.E.2d 435 (Ind. Ct. App. 1987)................................................14

*Mauger v. Metro. Life Ins. Co.*,
    --- F. Supp. 3d ----, 2022 WL 673109 (N.D. Ind. Mar. 7, 2022) ......................17, 18

*Mays v. Trump Indiana, Inc.*,
    255 F.3d 351 (7th Cir. 2001) ............................................................14

*Meisenhelder v. Zipp Exp., Inc.*,
    788 N.E.2d 924 (Ind. Ct. App. 2003)................................................11

*Miller v. Int'l Harvester Co.*,
    811 F.2d 1150 (7th Cir. 1987) ............................................................9

*N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*,
    163 F.3d 449 (7th Cir. 1998) ........................................................13, 14

*Nautilus Ins. Co. v. Reuter*,
    537 F.3d 733 (7th Cir. 2008) ..............................................................8

*Pattee v. Nexus RVs LLC*,
    No. 3:19-cv-162, 2022 WL 834330 (N.D. Ind. Mar. 21, 2022) ................17

*Peake v. Int'l Harvester Co.*,
    489 N.E.2d 102 (Ind. Ct. App. 1986)..............................................20, 21

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) ............................................................2

*Sec. Bank & Tr. Co. v. Bogard*,
    494 N.E.2d 965 (Ind. Ct. App. 1986)................................................15

*Smither v. Asset Acceptance, LLC*,
    919 N.E.2d 1153 (Ind. Ct. App. 2010) ..............................................9

*Spears v. Metro. Life Ins. Co.*,
    No. 2:07-cv-88, 2009 WL 2408928 (N.D. Ind. Aug. 4, 2009) ................22

*Spring Hill Devs., Inc. v. Arthur*,
    879 N.E.2d 1095 (Ind. Ct. App. 2008) ............................................12

*Stonington Ins. Co. v. Williams*,
    922 N.E.2d 660 (Ind. Ct. App. 2010)................................................8

*Tierney v. Vahle,*
   304 F.3d 734 (7th Cir. 2002) ................................................................ 13, 14

*Tobin v. Ruman,*
   819 N.E.2d 78 (Ind. Ct. App. 2004) .......................................................... 17

*Vukadinovich v. AFT,*
   No. 95-cv-00065-ASC (N.D. Ind.) ............................................................... 2

*Vukadinovich v. Am. Fed'n of Teachers, AFL-CIO,*
   No. 37D02-9805-CP-00087 (Ind. Super. Ct. Jasper Cty.) ............................ 2

*Vukadinovich v. Bd. Sch. Trs. of Michigan City,*
   No. 37D02-9301-CP-000009 (Ind. Super. Ct. Jasper Cty.) .......................... 2

*Vukadinovich v. Crown Point Cmty. Sch. Corp.,*
   No. 2:10-cv-00256 (N.D. Ind.) ................................................................... 2

*Vukadinovich v. Eichelberger,*
   No. 45D02-9505-CP-000520 (Ind. Super. Ct. Lake Cty.) ............................ 2

*Vukadinovich v. Griffith Pub. Sch.,*
   No. 02-cv-00472 (N.D. Ind.) ..................................................................... 2

*Vukadinovich v. Gubbins,*
   No. 94-cv-06244 (N.D. Ill.) ........................................................................ 2

*Vukadinovich v. Gubbins,*
   No. 3:95-cv-00751 (W.D. Wis.) ................................................................. 2

*Vukadinovich v. Gubbins,*
   No. 3:95-cv-00036 (N.D. Ind.) .................................................................. 2

*Vukadinovich v. Hanover Cmty. Sch. Corp.,*
   No. 2:13-cv-00144 (N.D. Ind.) .................................................................. 2

*Vukadinovich v. Kussmaul,*
   No. 64D03-0703-SC-001566 (Ind. Super. Ct. LaPorte Cty.) ...................... 2

*Vukadinovich v. Lolkema,*
   No. 46D03-1611-CT-1809 (Ind. Super. Ct. LaPorte Cty.) .......................... 2

*Vukadinovich v. Myers,*
   No. 45C01-8906-CP-002062 (Ind. Super. Ct. Lake Cty.) ........................... 2

*Vukadinovich v. N. Newton Sch.,*
   No. 4:00-cv-00037-AS (N.D. Ind.) ............................................................. 2

*Vukadinovich v. O'Hara*,
  No. 37C01-9502-CT-000021 (Ind. Super. Ct. Jasper Cty.) ...................................................2

*Vukadinovich v. Paul*,
  No. 2011-M6-004070 (Ill. Cir. Ct. Cook Cty.) ....................................................................2

*Vukadinovich v. Rensselaer Monument Co.*,
  No. 75C01-0810-CC-000529 (Ind. Super. Ct. LaPorte Cty.) ...............................................2

*Vukadinovich v. Sch. City of Hammond*,
  No. 2:10-cv-00257 (N.D. Ind.) ............................................................................................2

*Williams v. U.S. Steel*,
  877 F. Supp. 1240 (N.D. Ind. 1995) ...............................................................................9, 10

*Wolvos v. Meyer*,
  668 N.E.2d 671 (Ind. 1996) ...............................................................................................14

## STATUTES AND RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................................7, 13

Fed. R. Civ. P. 15(a)(1) .....................................................................................................13

Fed. R. Civ. P. 15(a)(2) .....................................................................................................13

Fed. R. Evid. 106 .................................................................................................................2

Fed. R. Evid. 408 ...............................................................................................................19

Ind. Code § 32-21-1-1(1)(b)(5) ..........................................................................................12

Ind. Code § 34-11-2-1 ..........................................................................................................9

Ind. Code § 34-11-5-1 ........................................................................................................10

## OTHER AUTHORITIES

Fed. Jud. Ctr., "Posner, Richard Allen,"
  https://bit.ly/3QAMLEo .......................................................................................................1

Naomi de Ruitjer *et al.*, *Anosognosia in Dementia: A Review of Current
  Assessment Instruments*, 12(1) Alzheimers Dement (Amst) (Sept. 30, 2020),
  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7527687/ ...............................................19

Restatement (2d) of Conflict of Laws (1971) ......................................................................8

Restatement (3d) of Restitution and Unjust Enrichment (2011) .......................................23

## INTRODUCTION

Brian Vukadinovich is a former employee of Judge Richard Posner's short-lived Posner Center of Justice for Pro Se's.  While the Center never raised more than a trivial amount of donations and never paid any employee a salary, Mr. Vukadinovich alleges that he is owed $170,000 in wages from Judge Posner personally.  He relies on a February 2018 email stating that the Center "should be able to pay" him $80,000 a year if enough donations came in.  And he also alleges that, in a March 2018 oral agreement, Judge Posner both raised his salary to $120,000 and hired him personally to provide "advisory services" as well.  Based on those alleged agreements, Mr. Vukadinovich brings claims against Judge Posner for breach of contract, unjust enrichment, and fraud.

Even under the liberal standards for *pro se* plaintiffs, Mr. Vukadinovich fails to state a claim.  Any claims under the alleged March 2018 oral agreement are barred by Indiana's strict two-year statute of limitations for oral employment contracts.  Any contract he might have formed in the February 2018 email exchange would have been with the Center, not with Judge Posner personally.  Mr. Vukadinovich's new allegation that Judge Posner hired Mr. Vukadinovich personally in March 2018 is contradicted by the materials he attached to and referenced in his complaint.  The agreements he alleges are also too indefinite to form a binding contract.  And his tort claims are both duplicative of his contract claim and doomed on the merits.  The Court should dismiss Mr. Vukadinovich's amended complaint.

## STATEMENT OF FACTS

### I.    THE PARTIES' ALLEGED CONTRACTS

Following a distinguished thirty-six-year judicial career, Judge Posner retired from the U.S. Court of Appeals for the Seventh Circuit in September 2017.  *See* Fed. Jud. Ctr., "Posner, Richard

Allen," https://bit.ly/3QAMLEo.[1]  Shortly afterward, Judge Posner founded the "Posner Center of Justice for Pro Se's," a nonprofit corporation whose purpose was to educate and advocate for *pro se* litigants.  *See* Ellis Decl. Ex. A (2018 tax return).  The Center was formally incorporated in Illinois on February 6, 2018.  Ellis Decl. Ex. B (certificate of good standing).

Mr. Vukadinovich is a retired teacher living in Wheatfield, Indiana.  *See* Am. Compl. ¶ 1; https://bit.ly/3OvjwkD (biography on Mr. Vukadinovich's personal webpage).  He has extensive experience as a *pro se* litigant, having pursued at least sixteen cases in state and federal courts *pro se*.[2]  He had worked for the Posner Center as a "regional director" before February 2018.  Am. Compl. Ex. 1.  That month, however, Judge Posner allegedly emailed Mr. Vukadinovich "suggest[ing] a new role for [him] in the company."  *Id.*[3]

---

[1] These facts are taken from Mr. Vukadinovich's amended complaint, the exhibits attached to that complaint, material incorporated by reference in that complaint, and information that is subject to judicial notice.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013); *see also Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1126 n.1 (7th Cir. 2022) (considering part of a chain of communication between the parties referenced in, but not attached to, the complaint under the rule of completeness) (citing Fed. R. Evid. 106).

[2] *See, e.g., Vukadinovich v. Hanover Cmty. Sch. Corp.*, No. 2:13-cv-00144 (N.D. Ind.); *Vukadinovich v. Sch. City of Hammond*, No. 2:10-cv-00257 (N.D. Ind.); *Vukadinovich v. Crown Point Cmty. Sch. Corp.*, No. 2:10-cv-00256 (N.D. Ind.); *Vukadinovich v. Griffith Pub. Sch.*, No. 02-cv-00472 (N.D. Ind.); *Vukadinovich v. N. Newton Sch.*, No. 4:00-cv-00037-AS (N.D. Ind.); *Vukadinovich v. AFT*, No. 95-cv-00065-ASC (N.D. Ind.); *Vukadinovich v. Gubbins*, No. 3:95-cv-00751 (W.D. Wis.); *Vukadinovich v. Gubbins*, No. 3:95-cv-00036 (N.D. Ind.); *Vukadinovich v. Gubbins*, No. 94-cv-06244 (N.D. Ill.); *Vukadinovich v. Lolkema*, Nos. 46D03-1611-CT-1809 (Ind. Super. Ct. LaPorte Cty.) & 19A-CT-2353 (Ind. App. Ct.); *Vukadinovich v. Rensselaer Monument Co.*, No. 75C01-0810-CC-000529 (Ind. Super. Ct. LaPorte Cty.); *Vukadinovich v. Kussmaul*, No. 64D03-0703-SC-001566 (Ind. Super. Ct. LaPorte Cty.); *Vukadinovich v. Am. Fed'n of Teachers, AFL-CIO*, No. 37D02-9805-CP-00087 (Ind. Super. Ct. Jasper Cty.); *Vukadinovich v. Eichelberger*, No. 45D02-9505-CP-000520 (Ind. Super. Ct. Lake Cty.); *Vukadinovich v. O'Hara*, No. 37C01-9502-CT-000021 (Ind. Super. Ct. Jasper Cty.); *Vukadinovich v. Bd. Sch. Trs. of Michigan City*, No. 37D02-9301-CP-000009 (Ind. Super. Ct. Jasper Cty.); *Vukadinovich v. Myers*, No. 45C01-8906-CP-002062 (Ind. Super. Ct. Lake Cty.); *Vukadinovich v. Paul*, No. 2011-M6-004070 (Ill. Cir. Ct. Cook Cty.).

[3] The copy of the email chain attached to the complaint has a discrepancy about when the emails were sent.  The date and time listed for Judge Posner's original email to Mr. Vukadinovich is

In that role – which Mr. Vukadinovich describes as an "executive director," Am. Compl. ¶ 5 – Mr. Vukadinovich and Judge Posner would "divide up the territory in which the company has members between the two of [them]" in various "state[s] and region[s]" across the country and "keep tabs" on lawyers, nonlawyer legal advisors, law firms, pro bono organizations, courts, prisoners, and *pro se* litigants, *id.* Ex. 1. In exchange, the email stated, Mr. Vukadinovich "would receive a substantial salary," though Judge Posner could not "specify salary yet because the company has as yet no money." *Id.* But the email expressed Judge Posner's hope that, "[w]ithin weeks or perhaps days," the Center would be reorganized as a 501(c)(3) and "ought to be able to raise more than $1 million through donations." *Id.* At that point, the Center "should be able to pay [Mr. Vukadinovich] at least $80,000" and perhaps more. *Id.*

Mr. Vukadinovich accepted the new role at the Center. Am. Compl. ¶ 6 & Ex. 1. Though he "would of course stop in at the [Center's] office periodically," Mr. Vukadinovich asked "to do most of [his] work from home" in Wheatfield, Indiana, to avoid the commute to Chicago. Am. Compl. Ex. 1. Judge Posner granted that request. *Id.*

About three weeks later, Judge Posner and Mr. Vukadinovich allegedly agreed in a March 19, 2018 meeting to "orally amend[ ]" Mr. Vukadinovich's employment contract. Am. Compl. ¶ 7. In his original complaint, Mr. Vukadinovich alleged only that the amendment changed the amount of his salary at the Center from $80,000 to $120,000. Dkt. 1 (Compl.) ¶ 7. Now, in his amended complaint, Mr. Vukadinovich alleges that Judge Posner also hired him personally "to provide advisory services," "in addition to [Mr. Vukadinovich's] work associated with the Posner Center." Am. Compl. ¶ 7. These "advisory services" allegedly involved Judge Posner's "personal

Sunday, February 25, 2018, at 4:34 a.m., but Mr. Vukadinovich's response is listed as sent on Saturday, February 24, 2018, at 10:50 p.m., several hours earlier. *See* Am. Compl. Ex. 1.

ventures" such as "book writing, interviews," and Judge Posner's purported "grievances" against former colleagues on the Seventh Circuit. *Id.*[4]  Mr. Vukadinovich does not allege what his "services" to Judge Posner for those ventures would be.

Mr. Vukadinovich's prior complaint alleged that, at the March meeting, Judge Posner personally guaranteed Mr. Vukadinovich's salary from the Center.  Compl. ¶8.  Now, Mr. Vuka-dinovich instead alleges that, because Judge Posner hired him to provide personal services, Judge Posner promised "that the responsibility for payment of [his] services to Defendant Posner would be the personal responsibility of Defendant Posner to pay."  Am. Compl. ¶9.  Mr. Vukadinovich also now alleges that Judge Posner told him that the earlier statements about how the Center lacked funds – and thus had to wait for donations to pay salaries – were "no longer in play."  *Id.*  Yet an email attached to the amended complaint reveals that Judge Posner's wife, who handled family finances, knew of no "personal obligation to [Mr. Vukadinovich]."  *Id.* Ex. 3.

Mr. Vukadinovich's amended complaint adds two other new representations that Judge Posner allegedly made at the March meeting.  Am. Compl.  ¶¶12-13.  First, Mr. Vukadinovich now alleges that Judge Posner promised to pay him from certain personal investments but, that "because the monies of [Judge Posner's] personal investments were tied up," he "would have to wait at least a year" for payment.  *Id.* ¶12.  Judge Posner allegedly claimed that he could not use a joint savings account he held with his wife to pay Mr. Vukadinovich's salary.  *Id.*  Judge Posner also allegedly stated that he "was in general good health and alert and had no concerns about anything that would potentially prevent him from honoring" their alleged oral contract.  *Id.* ¶13.

Mr. Vukadinovich alleges that from February 2018 through July 23, 2019 – the day the

---

[4] Under the alleged amendment, Mr. Vukadinovich would still "work from his home in Indiana." Am. Compl. ¶8.

Center dissolved – he provided a "variety of services some of which involved the Posner Center and separate advisory services" related to Judge Posner's "personal ventures."  Am. Compl. ¶ 15.  Mr. Vukadinovich does not specify what those "services" were.  *Id.*

Ultimately, the Center did not raise anywhere near the $1 million in funding that the February 2018 email predicted.  According to public tax returns filed with the IRS, the Center received $20,600 of donations in 2018 and $0 in 2019.  Ellis Decl. Exs. A, C.  Those returns show that the Center paid $0 in salaries to staff in either year.  *Id.*  The Center dissolved in July 2019 without assets.  Ellis Decl. Ex. C; *see also* Am. Compl. Ex. 2.  Mr. Vukadinovich was not paid for any of his alleged services to Judge Posner.  Am. Compl. ¶ 17.

## II.   MR. VUKADINOVICH'S DEMANDS FOR PAYMENT AND COMPLAINTS

In February 2022 – ***nearly three years after the Center closed*** – Mr. Vukadinovich wrote a letter to Judge Posner demanding payment of his alleged wages.  Ellis Decl. Ex. D; *see* Am. Compl. Ex. 2 (describing demand letter); Am. Compl. ¶ 16.  In that letter, Mr. Vukadinovich claimed that he had been hired "to work as the executive director of the Posner Center of Justice for Pro Se's at a yearly salary of $120,000."  Ellis Decl. Ex. D.  Mr. Vukadinovich did not claim to have been hired by Judge Posner personally.  *See id.*  On February 28, Judge Posner's attorneys responded and told Mr. Vukadinovich that "after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's Disease" and "ha[d] long since moved to a nursing facility."  Am. Compl. Ex. 2.  The letter also noted that any contract for Mr. Vukadinovich's services "would have been an obligation of the Posner Center," not Judge Posner personally, and that the Center had dissolved in 2019 with no assets.  *Id.*

Three months later, Mr. Vukadinovich sued.  *See* Compl.  Mr. Vukadinovich's original complaint, which was verified under oath, brought a single claim against Judge Posner for breach of the March 2018 oral agreement.  *Id.* ¶¶ 12-19.  Judge Posner moved to dismiss, noting that the

contract claim was barred by Indiana's two-year statute of limitations for oral employment contracts, that any contract was with the Center, not Judge Posner personally, and that the alleged contract was too indefinite to be binding. *See* Dkt. 22. Mr. Vukadinovich then amended his complaint to address these issues. Am. Compl. Like his original complaint, his amended complaint is verified under oath. *Id.* at 11.

Mr. Vukadinovich's amended complaint retains the contract claim against Judge Posner. Am. Compl. ¶¶ 18-26. To address his statute of limitations problem, Mr. Vukadinovich now asserts that Judge Posner "fraudulently concealed" his claim from him in two ways. *Id.* ¶¶ 29-32. First, Mr. Vukadinovich claims that Judge Posner concealed his Alzheimer's diagnosis until Mr. Vukadinovich received the February 28 letter from Judge Posner's lawyers. *Id.* ¶ 29. Second, Mr. Vukadinovich alleges that Judge Posner misrepresented whether he could have used his joint savings account to pay Mr. Vukadinovich's salary. *Id.* ¶ 34. Mr. Vukadinovich does not explain what was false about that alleged representation. *Id.* Nor does he allege that either of these misrepresentations hid from him Judge Posner's "failure to pay Plaintiff Brian Vukadinovich," *id.* ¶ 20, which is the basis for his contract claim.

Mr. Vukadinovich also now alleges two tort claims against Judge Posner. Am. Compl. ¶¶ 27-39. He alleges common-law fraud based on the same two misrepresentations that he relies on for his fraudulent concealment theory. *Id.* ¶¶ 27-35. Mr. Vukadinovich pleads that those alleged misrepresentations were "part of the orally amended agreement" he had with Judge Posner and that he was damaged because the contract was breached. *Id.* ¶ 33; *see id.* ¶¶ 28, 35. Mr. Vukadinovich also alleges unjust enrichment on the theory that Judge Posner "acknowledged, accepted and benefited from the [undescribed] services" Mr. Vukadinovich purportedly performed under their contract. *Id.* ¶ 37; *see id.* ¶¶ 36-39. Mr. Vukadinovich seeks the same damages under

6

all three causes of action he alleges – the salary set by his alleged contract with Judge Posner.  *See id.* at 11.  In total, Mr. Vukadinovich claims $170,000 for his work through July 2019.  *Id.* ¶24.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) must be granted unless a plaintiff can allege "facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  To be facially plausible, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  In addition, allegations of fraud must satisfy Rule 9(b)'s heightened pleading standard; the plaintiff "must provide 'the who, what, when, where, and how' " of the alleged fraud.  *Brosellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

As Mr. Vukadinovich notes, courts give *pro se* complaints a "liberal reading."  Am. Compl. ¶4; *see Greer v. Bd. of Educ. of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001).  The "essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable."  *Greer*, 267 F.3d at 727 (quotation omitted).  We urge the Court to do so here.  That said, the Court "still holds [*pro se* plaintiffs] to the same substantive standards as other civil litigants when it considers the motion to dismiss."  *Duggins v. Selene Fin., LP*, No. 19-cv-201, 2022 WL 1449605, at *3 (N.D. Ind. May 6, 2022) (quotation and internal punctuation omitted).

## ARGUMENT

## I.   MR. VUKADINOVICH'S CONTRACT CLAIM MUST BE DISMISSED

### A.   Indiana Law Governs Mr. Vukadinovich's Contract Claim

Mr. Vukadinovich's contract claim is governed by Indiana's choice-of-law rules.  *See Gunn v. Cont'l Cas. Co*., 968 F.3d 802, 808 (7th Cir. 2020) (in diversity cases, federal courts apply choice-of-law rules of the state where they sit).  For contract claims, Indiana applies " 'the law of

the forum with the most intimate contacts to the facts,'" including the place where the parties contracted and negotiated, the state where the contract was performed, and where the parties live. *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 737 (7th Cir. 2008) (quotation omitted).   As the Restatement (which takes a similar approach) recognizes, the default law controlling a contract for services is the law of "the state where the contract requires that the services, or a major portion of the services, be rendered."  Restatement (2d) of Conflict of Laws § 196 (1971); *see Stonington Ins. Co. v. Williams*, 922 N.E.2d 660, 665 (Ind. Ct. App. 2010) ("Indiana generally follows the Restatement . . . when confronted with a choice of law issue.").

Indiana has the most significant relationship with this case.  Mr. Vukadinovich lives in Indiana, Am. Compl. ¶ 1, and the alleged contract was formed in Indiana when Mr. Vukadinovich accepted Judge Posner's offer via email, *id.* ¶ 6 & Ex. 1; *see Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983) (contract formed in Indiana when employee in Indiana accepted job offer over the telephone).  Moreover, Mr. Vukadinovich was to work from his home in Indiana, only "periodically" traveling to Illinois.  Am. Compl. Ex. 1; *see* Am. Compl. ¶¶ 5,8. Even the "advisory services" related to Judge Posner's "personal affairs" involved "work on the computer and telephone" done from Mr. Vukadinovich's "home in Indiana."  *Id.* ¶ 8.

While Judge Posner and the Center resided in Illinois, those contacts are less significant. Mr. Vukadinovich's role at the Center involved dealing with lawyers, courts, prisoners, and plaintiffs across the country, not just in Illinois, Am. Compl. Ex. 1, and Mr. Vukadinovich never alleges that he performed any services for Judge Posner or the Center in Illinois, Am. Compl. ¶¶ 7- 8.  And while Mr. Vukadinovich now alleges that the March 2018 oral agreement took place in Illinois, *id.* ¶ 7, that allegation does not change the analysis.  Instead, it would show, at most, that the parties agreed in Chicago to amend portions of a contract formed in Indiana to be performed

mainly in Indiana.[5]  Because this case is about an Indiana citizen seeking to recover payment for a contract formed and performed in Indiana, Indiana law applies.

**B.     Indiana's Statute of Limitations Bars Mr. Vukadinovich's Claim**

1.     *Mr. Vukadinovich's Claim Is Subject to Indiana's Two-Year Statute of Limitations for Oral Employment Contracts*

Because Indiana law applies, Mr. Vukadinovich's claim is subject to Indiana's statutes of limitations.[6]  Indiana law imposes a two-year statute of limitations on any "action relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary)."  Ind. Code § 34-11-2-1.  The two-year clock begins running when the plaintiff can show all the elements of a contract cause of action, including damages.  *See Franciscan All., Inc. v. Padgett*, 180 N.E.3d 944, 951 (Ind. Ct. App. 2021); *see also Williams v. U.S. Steel*, 877 F. Supp. 1240, 1245 (N.D. Ind. 1995), *aff'd*, 70 F.2d 944 (7th Cir. 1995) (claims for unpaid wages accrue when the wages are due but not paid).  The purpose of that short time limit is that "it is too easy for an employee to make claims against his employer based on alleged oral understandings and too hard for the employer to disprove these claims when they relate to the remote past."  *Miller v. Int'l Harvester Co.*, 811 F.2d 1150, 1152 (7th Cir. 1987).

That time limit bars Mr. Vukadinovich's contract claim.  Mr. Vukadinovich states that the

---

[5] Similarly, while Mr. Vukadinovich alleges that he agreed to "be on call to come to Chicago" at Judge Posner's request, Am. Compl. ¶ 8, his job was mainly "to do work from his home in Indiana," *id.*; *see also id.* Ex. 1 (stating that he would do "most of his work" in Indiana).

[6] That is so even if another state's law governs the substance of Mr. Vukadinovich's claims. Because Indiana "view[s] its statute of limitations as a procedural constraint on when a suit may be filed, . . . 'the law of the forum state where the suit is filed' governs the statute of limitations under Indiana's choice-of-law rules," even if another state's law would otherwise control the substantive claim.  *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 347 (N.D. Ind. 2021) (quoting *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1157-58 (Ind. Ct. App. 2010)).

contract he seeks to enforce is "the [March 2018] orally amended agreement between Defendant Richard A. Posner and Plaintiff Brian Vukadinovich." Am. Compl. ¶ 19. Under that alleged agreement, Mr. Vukadinovich was to be paid a yearly lump-sum salary that would "roll over after a year's time," meaning that he would have been owed $120,000 in February 2019. *See id.* ¶ 10. Likewise, Mr. Vukadinovich would have been owed the full $170,000 he claims no later than July 2019, when the Center closed and his employment ended. *See id.* ¶ 24. Because Judge Posner did not pay Mr. Vukadinovich those sums when due, Mr. Vukadinovich's contract claims accrued no later than July 2019. *Padgett*, 180 N.E.3d at 951; *Williams*, 877 F. Supp. at 1245.[7] As a result, Mr. Vukadinovich's claims are time-barred because he did not bring suit on them by July 2021.[8]

### 2.  *Mr. Vukadinovich's Fraudulent-Concealment Allegations Fail*

Mr. Vukadinovich's new allegations of "fraudulent concealment" (at ¶¶ 29-31) do not toll the limitations period. By statute, Indiana's fraudulent-concealment doctrine tolls a statute of limitations only "while a person liable to an action conceals ***the cause of action*** from the party entitled to bring it." *Gittings v. Deal*, 109 N.E.3d 963, 972 (Ind. 2018) (citing Ind. Code § 34-11-5-1) (emphasis added). Thus, a claim of "fraudulent concealment must fail as a matter of law" if, through reasonable diligence, the plaintiff could have discovered the cause of action despite the

---

[7] While Mr. Vukadinovich demanded payment in 2022, the date of his demand does not change when his contract claims accrued. Where, as here, Judge Posner allegedly agreed to perform at a certain time – the date the lump-sum payments were due – no demand for performance is necessary to bring suit. *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 53 (Ind. Ct. App. 1986) ("A demand for performance, unless required by the terms of the contract, is not required where an agreement is absolute and unconditional.").

[8] Any argument that the longer statute of limitations for written contracts applies because the February email is a written contract would fail. At most, Mr. Vukadinovich alleges claims for a breach of a purported contract that is partly written (the February 2018 email) and partly oral (the alleged March 2018 amendment). Under Indiana law, where "the contract sued upon is partly written and partly oral," the "shorter statute of limitations is applied to such claims." *Knutson v. UGS Corp.*, 526 F.3d 339, 340 (7th Cir. 2008) (collecting cases).

concealment. *Kaken Pharm. Co. v. Eli Lily & Co.*, 737 F. Supp. 510, 516 (S.D. Ind. 1989); *see Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 931 (Ind. Ct. App. 2003) (where a plaintiff has "knowledge necessary to pursue a claim," the doctrine does not apply). In particular, the doctrine will not save a contract claim where a defendant does not "conceal[ ] from [the plaintiff] the fact that the contract had been breached or prevent[ ] him from obtaining the knowledge necessary to pursue a claim, i.e. that the contract had been breached." *Meisenhelder*, 788 N.E.2d at 931.

These principles bar Mr. Vukadinovich's fraudulent-concealment theory. While he alleges that Judge Posner misled him about Judge Posner's mental health and the way Judge Posner would pay his salary, those misstatements could not have hidden from him the fact that the contract had been breached. Rather, Mr. Vukadinovich must have known that Judge Posner had not performed his alleged promise to pay his lump-sum salary in July 2019 when that sum came due but was not paid. Am. Compl. ¶ 24. Because Mr. Vukadinovich had all the information he needed to sue more than three years ago, the fraudulent-concealment doctrine does not apply. *Meisenhelder*, 78 N.E.2d at 931; *Kaken Pharm. Co.*, 737 F. Supp. at 516.

### C.   Mr. Vukadinovich Fails To Plausibly Allege Judge Posner Is Personally Liable for the Alleged Contract

Mr. Vukadinovich's claim must also be dismissed because he has sued the wrong defendant. A person typically cannot be held liable for breaching a contract unless he or she was a party to that contract. *DiMizio v. Romo*, 756 N.E.2d 1018, 1021-22 (Ind. Ct. App. 2001).[9] But neither the February 2018 email nor the March 2018 oral agreement plausibly shows that Judge

---

[9] Likewise, under Illinois law, "the law immunizes corporate officers from corporate liabilities and debts" because one of the key "purposes of a corporate entity is to immunize the corporate officer from individual liability on contracts entered into in the corporation's behalf." *People ex rel. Madigan v. Tang*, 346 Ill. App. 2d 277, 284 (2004). As a result, claims against Judge Posner personally must still be dismissed even if Illinois law applied.

Posner agreed to personally contract with Mr. Vukadinovich.

The February 2018 email chain offering Mr. Vukadinovich a job was sent on February 24 to 25, 2018, Am. Compl. Ex. 1, when the Center had already been organized as a not-for-profit corporation, Ellis Decl. Ex. A (incorporation date of February 6, 2018).  And that email stated that Mr. Vukadinovich already "work[ed] *for the company*"; Judge Posner "suggest[ed] a new role for [Mr. Vukadinovich] *in the company*"; the email proposed that Judge Posner and Mr. Vukadinovich "divide up the territory *in which the company has members* between the two of us"; it conceded that Judge Posner could "not specify salary yet because *the company has as yet no money*" but expressed hope that the Center might pay Mr. Vukadinovich "once *the company will be reorganized as a 501(c)(3)*" so that the company could receive enough donations to pay him. Am. Compl. Ex. 1 (emphasis added).  And Mr. Vukadinovich alleges that the offer was to work as "executive director *of the Posner Center*."  Am. Compl. ¶5 (emphasis added).  If an offer was made to Mr. Vukadinovich in February 2018, it was to work as an employee of the Center, performing services for the Center, in exchange for a salary to be paid (if at all) by the Center.[10]

Mr. Vukadinovich's new allegation that Judge Posner personally hired him also cannot establish that Judge Posner is personally liable.  Am. Compl. ¶7.[11]  " [W]hen a written instrument

---

[10] Mr. Vukadinovich no longer alleges, as he did in his earlier verified complaint, that Judge Posner personally guaranteed the Center's obligations.  *Compare* Compl. ¶¶7-8, *with* Am. Compl. ¶¶7-9.

[11] Mr. Vukadinovich's amended complaint asserts that the alleged oral amendment included the condition that Mr. Vukadinovich "would have to wait at least a year before [Judge] Posner could pay" Mr. Vukadinovich's salary.  Am. Compl. ¶12.  If Mr. Vukadinovich means that the oral amendment could not "be performed within one (1) year," Ind. Code §32-21-1-1(1)(b)(5), it is barred by the statute of frauds.  That the amended complaint alleges that Mr. Vukadinovich provided Judge Posner with a personal benefit would not remove the oral amendment from the statute of frauds.  "[T]he direct benefit exception is limited to cases where the oral promise is to guarantee the debt of another," *Spring Hill Devs., Inc. v. Arthur*, 879 N.E.2d 1095, 1099 (Ind. Ct. App. 2008), but Mr. Vukadinovich no longer alleges that Judge Posner promised to guarantee the Posner Center's obligations.  *See* p. 12 n.10, *supra*.

contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998).  Even on a motion to dismiss, courts need not "credit the unsupported allegations" inconsistent with material attached in the complaint.  *Id.*  Likewise, courts may consider documents referenced in, but not attached to, the complaint to ensure that a plaintiff cannot "evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved his claim had no merit."  *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

The documents attached to and referenced in Mr. Vukadinovich's amended complaint contradict his new allegation that Judge Posner hired him personally.  The February 2018 email chain is explicit that Mr. Vukadinovich would be working for the Center.  Am. Compl. Ex. 1.  And Mr. Vukadinovich was just as clear in his 2022 demand letter that he was "hired to work for [Judge Posner] *as the executive director of the Posner Center*."  Ellis Decl. Ex. D (emphasis added). That letter says nothing about a purported agreement to hire Mr. Vukadinovich personally.  And when Mr. Vukadinovich demanded payment from Mrs. Posner, she replied that she never knew about "any personal obligation to [Mr. Vukadinovich]."  Am. Compl. Ex. 3.

Mr. Vukadinovich's original complaint never claimed that Judge Posner had hired Mr. Vukadinovich personally.  While Mr. Vukadinovich was entitled to make different allegations when he amended his complaint the first time as of right,[12] the court should not credit those allegations where they contradict the exhibits Mr. Vukadinovich has attached to his latest

---

[12] By contrast, while "[l]itigants get one free bite at the amendment apple under Rule 15(a)(1)" when they amend as of right, amending by leave under Rule 15(a)(2) "does not permit a plaintiff to alter the factual basis of its suit in response to a why its suit lacks merit (rather than on the basis of new evidence)." *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 779 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017) (denying leave to amend because "no amendment can permissibly contradict the facts on which [the plaintiff] has repeatedly grounded its claim for relief").

complaint. *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 454 (such exhibits "trump[] the allegations"). And where Mr. Vukadinovich has both referenced his demand letter in the complaint and attached Judge Posner's attorney's response to that letter, the Court should take in account how that letter contradicts his new claims as well. *Vahle*, 304 F.3d at 738; *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122, 1126 n.1 (7th Cir. 2022) ("Just as a plaintiff cannot prevent a court from considering parts of a contract that doom her claim by including in the complaint only the parts of a contract that support her side, a party's selection of part of a chain of communication does not prevent the court from considering the entire chain."). Because those documents contradict Mr. Vukadinovich's unsupported allegations that Judge Posner agreed to personally hire him, his allegations do not state a claim that Judge Posner is personally liable on the contract.

### D.     The Parties Never Formed a Binding Contract

Finally, even if Mr. Vukadinovich had made a timely claim, the alleged contract would still be unenforceable because the parties never formed a binding agreement on the terms of Mr. Vukadinovich's compensation or nature of his services.

Under Indiana law, a contract must include all material terms to be enforceable. *Mays v. Trump Indiana, Inc*., 255 F.3d 351, 358-59 (7th Cir. 2001); *Wolvos v. Meyer*, 668 N.E.2d 671, 674-75 (Ind. 1996) (similar).[13] For employment contracts, material terms include, at a minimum, "(1) the place of employment; (2) the period of employment; (3) the nature of the services the employee is to render; (4) the compensation the employee is to receive." *Majd Pour v. Basic Am. Med., Inc.*, 512 N.E.2d 435, 439 (Ind. Ct. App. 1987).

---

[13] Similarly, under Illinois law, "[i]ndefiniteness of a material term renders a contract unenforceable when the court cannot reasonably supply the missing term through contract interpretation." *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.,* 692 F.3d 580, 589 (7th Cir. 2012).

Here, the parties never reached a definite agreement on Mr. Vukadinovich's compensation. Instead, Judge Posner's email states that he "can't specify salary yet because the company has as yet no money." Am. Compl. Ex. 1. The email states that, once the Center raised enough money, it "***should be able to pay*** at least $80,000 a year and [Judge Posner] hope[d] more." *Id.* (emphasis added). But that statement reflects a wish about what the Center ***should*** be able to do, not a promise about what the Center ***would*** do. Such predictions are not enough to form a binding contract. *Sec. Bank & Tr. Co. v. Bogard*, 494 N.E.2d 965, 969 (Ind. Ct. App. 1986) ("[A] prediction, opinion, or prophecy is not a promise." (quotation omitted)); *see Golsen-Dunlap v. Elan Motorsports Techs., Inc.*, No. 04-cv-104, 2012 WL 3027947, at *9 (S.D. Ind. July 24, 2012), *reconsideration granted on other grounds*, 2012 WL 5878023 (S.D. Ind. Nov. 20, 2012) (prediction about the value of an employee's share option package did not create binding promise to award that package).

Nor did the alleged March 2018 oral agreement transform Judge Posner's wish to one day pay Mr. Vukadinovich into a binding contract. While Mr. Vukadinovich alleges that the $80,000 figure was increased $120,000 in the alleged March 2018 oral agreement, Am. Compl. ¶8, he does not allege that the figure was anything more than what the $80,000 figure was in the February 2018 email – an estimate of what a possible future salary might be. *See id.* (stating only that "the initial agreement of $80,000.00 would be increased to $120,000.00"). And while Mr. Vukadin-ovich now claims Judge Posner told him that "the previous statements from the initial agreement regarding money raised by the Posner Center to pay [Mr. Vukadinovich's] salary [were] no longer in play," *id.* ¶9, that statement was part of the alleged agreement to personally hire him that is contradicted by the exhibits Mr. Vukadinovich attached to his complaint. *See* pp. 12-14, *supra*.[14]

---

[14] Moreover, Mr. Vukadinovich's reason why he would be paid $120,000 instead of $80,000 contradicts his February 2022 demand letter. In the demand letter, he stated he was owed $120,000 "as the executive director of the Posner Center." Ellis Decl. Ex. D. But in his amended complaint,

All that aside, the allegations regarding Mr. Vukadinovich's compensation are still too indefinite. Mr. Vukadinovich alleges that his salary for his work at the Posner Center was originally "$80,000.00 and possibly more," Am. Compl. ¶5, but was "increased to $120,000.00" in March 2018 because he "would be providing services related to [Judge] Posner's personal affairs" in addition to his work at the Center, *id.* ¶8. But Mr. Vukadinovich never alleges which portion of that $120,000 was for his work at the Center and which, if any, was for the alleged "personal services." *Cf.* Compl. ¶7 (alleging **all** $120,000 was for Mr. Vukadinovich's work at the Center). Thus, the allegations do not establish **any** agreement on Mr. Vukadinovich's compensation for the alleged personal services.

The scope of Mr. Vukadinovich's "advisory services" is also too indefinite to form a binding contract. An agreement to hire someone for a generic job title like "'Chief Operations Officer'" that is "devoid of any explanation as to the nature of services" is unenforceable. *Grant v. Van Natta*, No. 10-cv-1220, 2013 WL 466212, at *14 (S.D. Ind. Feb. 7, 2013). The alleged March 2018 agreement, however, lacks even a title for Mr. Vukadinovich's supposed role assisting with Judge Posner's "personal ventures." Am. Compl. ¶¶8-9. Other than "work on the computer and telephone and email correspondence," Mr. Vukadinovich never says what "services" he would provide. *Id.* ¶8. That scope of work is too indefinite to form a binding contract.

## II.   MR. VUKADINOVICH'S FRAUD CLAIM MUST BE DISMISSED

### A.   The Fraud Claim Is Duplicative of the Contract Claim

Mr. Vukadinovich's fraud claim must be dismissed because it is duplicative of his contract

---

he alleges that the purported $40,000 was for the personal services he allegedly provided Judge Posner. Am. Compl. ¶8. As a result, the Court need not even credit Mr. Vukadinovich's claim that his salary had been raised in March 2018. *See* pp. 12-14, *supra.*

claim.[15]  *See Pattee v. Nexus RVs LLC*, No. 3:19-cv-162, 2022 WL 834330, at *16 (N.D. Ind. Mar.

21, 2022) (dismissing fraud claims as duplicative).  Indiana law does not permit plaintiffs to bring

fraud claims that are "merely a repackaged version of [a] breach of contract claim." *Tobin v.*

*Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004).  A claim for fraud based on a breach of contract

is not independently actionable unless "the fraud resulted in injury distinct from that resulting from

the breach." *Id.*; *see Mauger v. Metro. Life Ins. Co.*, --- F. Supp. 3d ----, 2022 WL 673109, at *7

(N.D. Ind. Mar. 7, 2022) ("[d]ismissal" of a fraud claim brought together with a contract claim "is

appropriate where the plaintiff fails to plead a separate injury" for the alleged fraud).[16]

　　Judge Posner's supposed misrepresentation about his health did not cause Mr.

Vukadinovich any injury distinct from the alleged breach of contract.  According to Mr.

Vukadinovich, Judge Posner allegedly hid his Alzheimer's diagnosis when they made their alleged

oral contract (*but see* pp. 12-14, *supra*).  By Mr. Vukadinovich's own account, the only conse-

quence of that "deception" was that he worked for Judge Posner without receiving payment.  *See*

Am. Compl. ¶30 (Judge Posner was allegedly "unjustly enriche[d]" by receiving Mr. Vukadin-

ovich's "services").  But that is the same injury Mr. Vukadinovich asserts he suffered from the

breach of contract.  *See id.* ¶¶19-26.  And the damages Mr. Vukadinovich claims for that injury

---

[15] If the March 2018 agreement is barred under the statute of frauds, *see* p. 12 n.11, *supra*, the fraud claim is also barred.  *See Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004) (a plaintiff "may not premise a fraud claim on an oral agreement that is itself within the Statute of Frauds").

[16] Indiana law governs.  "Indiana is a *lex loci delicti* state: in all but exceptional cases it applies the law of the place where harm occurred." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002); *see Eby*, 455 N.E.2d at 626 (fraud "is considered to have been committed in the state where the loss occurred").  Any loss here occurred in Indiana, where Mr. Vukadinovich lives and would have received payment.  *See* Am. Compl. ¶¶1, 8.  Moreover, Indiana choice-of-law rules apply Indiana statutes of limitations regardless of the substantive law involved.  *See* p. 9 n.6, *supra*.  In any event, Illinois law is materially the same as Indiana law.  *See Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (dismissing Illinois-law fraud claim that was "just a reformulation of the contract claim").

under either count are the same – his alleged salary.  *Id.* at 11.  Because "[t]he damages claimed are the same" for Mr. Vukadinovich's contract and fraud claims, there is no distinct injury that could support a separate claim for fraud.  *Mauger*, 2022 WL 673109, at *7.

The same is true for Judge Posner's supposed statements about his personal finances.  Mr. Vukadinovich alleges that Judge Posner said that he could not use a joint savings account he held with his wife to pay Mr. Vukadinovich's salary, and that because his other investments were "tied up," Mr. Vukadinovich "would have to wait at least a year" for payment.  Am. Compl. ¶ 33. Though Mr. Vukadinovich never explains what about these statements was false, the only reason he claims "such fraud resulted in injury" is that he was not paid his alleged salary.  *Id.* ¶¶ 34, 35. Once again, that is the same injury that Mr. Vukadinovich alleges in his breach claim.  *See id.* ¶¶ 19-26; *id.* at 11.  Because Mr. Vukadinovich fails to allege that he suffered an injury distinct from the alleged breach of contract, his fraud claim must be dismissed.

### B.       Mr. Vukadinovich Fails To State a Fraud Claim

Mr. Vukadinovich's allegations also do not satisfy the elements of fraud.  Among other things, a fraud claim requires "a material misrepresentation of past or existing fact . . . with knowledge of or in reckless ignorance of its falsity" and "with the intent to deceive."  *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992).  "[R]epresentations of future conduct" cannot support a fraud claim.  *Heyser v. Nobel Roman's Inc.*, 933 N.E.2d 16, 19 (Ind. Ct. App. 2010).

Mr. Vukadinovich's allegations about Judge Posner's health cannot meet this standard.  He does not explain why, in a purportedly normal conversation about an employment agreement, Judge Posner would have volunteered a statement about being in "general good health."  And he fails to allege that that statement would have been false.  The source he relies on to prove that claim – a letter from Judge Posner's lawyers – in fact reveals that Judge Posner's Alzheimer's diagnosis came "'***after*** [the] conversation'" where the alleged misstatement occurred.  Am.

Compl. ¶29 (quoting *id.* Ex. 2) (emphasis added).  Thus, Judge Posner's statement could not have been either a "misrepresentation of past or existing fact," as required for a fraud claim.  *Lawyers Title*, 595 N.E.2d at 249.  In any event, Judge Posner's alleged belief that he was in good health was an opinion, not a factual claim that could support a claim for fraud.  *Block v. Lake Mortg. Co.*, 601 N.E.2d 449, 451 (Ind. Ct. App. 1992) (an "opinion" is "not actionable under a theory of fraud").

Nor does Mr. Vukadinovich plausibly allege that Judge Posner acted with the intent to deceive.[17]  Not only did the Alzheimer's diagnosis post-date the March 2018 conversation, but Judge Posner could well have believed then that he was in "general good health," despite any issues that later led to his Alzheimer's diagnosis.  In fact, any health issues affecting Judge Posner's mental capacity would weigh ***against*** finding that he intended to deceive anyone.[18]  Mr. Vukadin-ovich at most alleges that, in hindsight, Judge Posner should have known that his condition could prevent him from performing under the alleged contract.  But " '[t]here is no fraud by hindsight.' " *Grace Village Health Care Facilities, Inc. v. Lancaster Pollard & Co.*, 896 F. Supp. 2d 757, 763 (N.D. Ind. 2012) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990)).

The allegations about Judge Posner's personal finances fail for similar reasons.  Mr. Vukadinovich never explains what was false about Judge Posner's statement that he could not have used his joint savings account to pay Mr. Vukadinovich's salary.  Am. Compl. ¶34.  In addition, Judge Posner's statement that "he had a significant amount of money tied up in personal

---

[17] Mr. Vukadinovich's claim that Mrs. Posner offered him "$10,000 for [his] 'trouble' as a result of being 'misled,' " Am. Compl. ¶32, mischaracterizes Mrs. Posner's email, *see id.* Ex. 3.  That offer was made solely for purposes of settlement and is inadmissible under Fed. R. Evid. 408.

[18] In fact, a common symptom of Alzheimer's disease and other dementia syndromes is "anosognosia," or a lack of awareness or insight into one's condition.  Naomi de Ruitjer *et al.*, Anosognosia in Dementia:  A Review of Current Assessment Instruments, 12(1) Alzheimers Dement (Amst), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7527687/.

investments that he would use to pay [Mr. Vukadinovich's] compensation" was a "representation[ ] of future conduct," which cannot support a claim for fraud. *Heyser*, 933 N.E.2d at 19. Nor does Mr. Vukadinovich explain why the source of funds Judge Posner would use to perform the alleged contract would be material to that contract.

Moreover, even if Judge Posner were wrong to claim that he could not use his joint savings account, Mr. Vukadinovich never alleges Judge Posner ***knew*** that claim was untrue. After all, Mrs. Posner – not Judge Posner – has "been in charge of all [their] financial dealings" for the last sixty years. Am. Compl. Ex. 3. Judge Posner, by contrast, "almost never wrote a check himself." *Id.* And Mr. Vukadinovich offers nothing to suggest that Judge Posner intended to defraud him by this statement, not least because Mr. Vukadinovich also alleges Judge Posner was suffering from (and would soon be diagnosed with) Alzheimer's disease at the time. As with the purported statements about Judge Posner's health, the purported statements about what funds Judge Posner would use to pay Mr. Vukadinovich do not show that Judge Posner said anything false, let alone that he intended to defraud anybody. The fraud claim must therefore be dismissed.

## III.   MR. VUKADINOVICH'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED

### A.   Indiana's Statute of Limitations Bars the Unjust Enrichment Claim

Indiana courts emphasize "substance over mere form" in identifying which statute of limitations applies. *Peake v. Int'l Harvester Co.*, 489 N.E.2d 102, 105 (Ind. Ct. App. 1986).[19] Thus, where a claim for unjust enrichment turns on an oral employment agreement, courts apply the two-year statute of limitations "for actions arising from an oral employment agreement."

---

[19] Unjust enrichment claims in Indiana are assessed "under the choice of law rules for contracts." *In re Bridgestone/Firestone, Inc. Tires Prods. Liability Litig.*, 155 F. Supp. 2d 1069, 1084 (S.D. Ind. 2001). Under that analysis, Indiana law applies. *See* pp. 7-9, *supra*. And Indiana's statute of limitations would apply even if another state's law governed the substance of the unjust enrichment claim. *See* p. 9, n. 6.

*Knutson v. UGS*, No. 05-cv-1319, 2007 WL 2122192, at *5 (S.D. Ind. July 19, 2007); *see Peake*, 489 N.E.2d at 105 (applying former version of Indiana's statute of limitations to unjust enrichment claim that turned on an oral employment agreement); *see also City of Marion v. London Witte Grp., LLC*, 169 N.E.3d 382, 393 (Ind. 2021) (applying two-year limitations period to unjust enrichment claim that sounded in "negligence and breach of fiduciary duty claims").

The two-year statute of limitations for oral contracts applies to Mr. Vukadinovich's unjust enrichment claim.  In substance, that claim is based on the same events, and seeks the same damages, as Mr. Vukadinovich's contract claim.  *See* Am. Compl. ¶¶ 37 (alleging that the "benefit" Judge Posner received was "the services provided" by Mr. Vukadinovich under the contract), 38 (seeking "payment" for his services) & p. 11 (seeking contract damages for all claims).  And just like his contract claim, Mr. Vukadinovich has based his unjust enrichment claim against Judge Posner on his alleged oral contract with Judge Posner.  In particular, to allege that Judge Posner was personally enriched, Mr. Vukadinovich relies on the alleged March 2018 oral amendment providing that Mr. Vukadinovich would provide "advisory services" to Judge Posner personally.  For that reason, the "two-year statute of limitations for actions arising from an oral employment agreement" applies.  *Knuston*, 2007 WL 2122192, at *5.

That statute of limitations bars the unjust enrichment claim for the same reason it bars the contact claim.  *See* pp. 9-11, *supra*.  By July 2019 at the latest, Mr. Vukadinovich knew that he had not received payment for his alleged services.  *See* Am. Compl. ¶¶ 15-17.  Yet Mr. Vukadinovich waited three years to assert an unjust enrichment claim.  That claim is time-barred.

### B.     Mr. Vukadinovich Fails To State a Claim for Unjust Enrichment

Mr. Vukadinovich's unjust enrichment claim also fails on the merits.  That claim has three elements: "(1) a benefit conferred upon another at the express or implied consent of such other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and

(3) the plaintiff expected payment." *Kohl's Indiana, L.P. v. Owens*, 979 N.E.2d 159, 167-68 (Ind. Ct. App. 2012). Mr. Vukadinovich cannot satisfy the first two elements.

Mr. Vukadinovich has not plausibly alleged that he conferred any benefit to Judge Posner personally. Though Mr. Vukadinovich claims that he provided "advisory services" related to Judge Posner's "personal ventures," Am. Compl. ¶¶ 8-9, he never alleges what those services were, *id.* ¶ 15. Rather, he claims only that he did "work on the computer and telephone and email correspondence," and even then, he does not allege that those generic services benefited Judge Posner personally. *Id.* ¶ 8. The unjust enrichment claim relies only on a conclusory assertion that Judge Posner "benefited from the services provided by Plaintiff." *Id.* ¶ 37. Such "conclusory allegations are not sufficient to support a claim for unjust enrichment," which is an "extraordinary remedy." *Spears v. Metro. Life Ins. Co.*, No. 2:07-cv-88, 2009 WL 2408928, at *15 (N.D. Ind. Aug. 4, 2009) (dismissing unjust enrichment claim where plaintiffs "d[id] not articulate what wrongful benefit the Defendants received").

Mr. Vukadinovich also cannot allege that denying him equitable relief would be unjust. He has identified no service of value that he provided Judge Posner personally or any injustice that would result if he were denied restitution. If anything, the equities strongly support dismissing this case. According to Mr. Vukadinovich, the key facts supporting his claim against Judge Posner, such as the purported March 2018 oral agreement, are uniquely within his knowledge. Yet Mr. Vukadinovich waited three years to sue. During that time, the Center dissolved and Judge Posner's condition has gotten worse, forcing him to move to an assisted-living facility and impairing his ability to testify. Dkt. 5; Am. Compl. Ex. 2; Ellis Decl. Ex. B.

Mr. Vukadinovich's years-long delay in suing over a purported oral contract will prejudice Judge Posner's ability to defend against Mr. Vukadinovich's claims. As a result, even from the

face of Mr. Vukadinovich's complaint, his equitable claim for unjust enrichment should be barred by the doctrine of laches.  *See* Restatement (3d) of Restitution and Unjust Enrichment § 70(2) (2011) (equitable relief such as unjust enrichment may be barred if the claimant "unreasonably delayed bringing or prosecuting the action" and "the remedy in question would be unfairly prejudicial to another party"); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) (following the Restatement's unjust-enrichment doctrine).  Prolonging this case would not serve the ends of justice.  The claim for unjust enrichment should be dismissed along with the other claims.

## CONCLUSION

The Court should dismiss the amended complaint.

Chicago, Illinois
August 22, 2022

/s/ Steven F. Molo
Steven F. Molo (admitted *pro hac vice*)
Kenneth E. Notter III (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL  60654
(312) 450-6700
smolo@mololamken.com
knotter@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY  10016
(212) 607-8160
jellis@mololamken.com

David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Drive, Suite 100
Hammond, IN  46323
dbeach@eichhorn-law.com

*Attorneys for Hon. Richard A. Posner*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on August 22, 2022, the foregoing was electronically filed with the Clerk of the Court via CM/ECF and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on *pro se* Plaintiff Brian Vukadinovich per his agreement to receive such papers via email.


<u>/s/ Steven F. Molo</u>
Steven F. Molo

24