IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BRIAN VUKADINOVICH, )
)
Plaintiff, )
)
v. ) CASE NO. 2:22-CV-0118 TLS-JPK
)
RICHARD A. POSNER, )
)
Defendant. )

**AFFIDAVIT OF BRIAN VUKADINOVICH**

1. I am the Plaintiff in this cause of action.

2. On February 25, 2018, Defendant Richard A. Posner made a job offer to me to serve as executive director of the Posner Center of Justice for Pro Se's, a company he founded, for a yearly compensation of at least $80,000.00 and possibly more for which I would be allowed to work from my Indiana home in performing services to Defendant Richard Posner. On that same date I accepted the job offer from Defendant Posner and agreed to work for him, and also on that same date Defendant Posner acknowledged my acceptance of his offer.

3. On March 19, 2018, Defendant Posner and I met in person in Chicago, Illinois at his request and Defendant Posner requested that the initial written agreement of February 25, 2018, be orally amended as Defendant Posner told me that he was impressed with my writing skills and networking skills and my knowledge of his grievances with Chief Judge Diane S. Wood of the U.S. Court of Appeals for the Seventh Circuit, and he specified to me that in addition to any work associated with the Posner Center, that the amended oral agreement would be for me to provide advisory services to

him in his personal capacity regarding his personal ventures such as with his book writing, interviews, and his grievances with then Chief Judge Diane S. Wood of the Seventh Circuit and judges on the Seventh Circuit who he said failed to support him with his grievances against Chief Judge Diane S. Wood, and that such services as an adviser to him in his personal ventures would not involve the Posner Center in any way.

4. The amended agreement was for me to do work from my home in Indiana which would entail work on the computer and telephone and email correspondence and also be on call to come to Chicago at the request of Defendant Posner for Posner Center meetings and also to meet with him in order to discuss pertinent matters pertaining to his personal ventures for which I would provide advice. Defendant Posner told me that because I would be providing services related to his personal affairs, that the initial agreement of $80,000.00 would be increased to $120,000.00 of which money would be paid be paid by him personally.

5. In the March 19, 2018 meeting in Chicago, Illinois, Defendant Posner told me that the previous statements from the initial agreement regarding money raised by the Posner Center to pay my salary was no longer in play since I would be providing advisory services to him in his personal ventures in addition to serving as the executor director of the Posner Center, and that because I would be working for him in his personal capacity regarding his personal affairs, that the responsibility for payment of my services to Defendant Posner would be his responsibility and not a responsibility of the Posner Center to which I agreed, and to which we shook hands.

6. In the March 19, 2018 meeting in Chicago, Illinois, Defendant Posner told me that the orally amended agreement was for a yearly compensation for the sum of $120,000.00 per year and would continue to roll over after a year's time unless either of us rescinded the agreement. I accepted the terms of the amended agreement and provided advisory services to the Defendant Posner as to his personal affairs in addition to services I provided as executive director of the Posner Center.

7. In the March 19, 2018 meeting in Chicago, Illinois, Defendant Posner told me that he and his wife had ample savings, but that he would not be able to utilize any monies from his and his wife's joint savings account and that he had a significant amount of money tied up in personal investments that he would use to pay my compensation, but that because the monies of his personal investments were tied up for an extended period of time, that I would have to wait at least a year before he could pay my compensation in a lump sum. I relied upon the representation of Defendant Posner.

8. That during the March 19, 2018, meeting in Chicago, Illinois, Defendant Posner discussed his advanced age and health with me and told me that he was in general good health and alert and had no concerns about anything that would potentially prevent him from honoring the terms of the amended agreement.

9. I provided Defendant Posner with a variety of services some of which involved the Posner Center and separate advisory services to Defendant Posner as to the Defendant Posner's personal ventures from February 25, 2018 through July 23, 2019.

10. In response to my requests that Defendant Posner pay me for the services I provided to him, I received a letter from Defendant Posner's lawyer at the time, Robert

Kaufman, dated February 28, 2022, stating to me "**What you clearly do not know** is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's Disease." and that "… medical evidence will show that the Judge did not have the legal capacity to enter into contracts in 2018." Defendant Posner's lawyer did not provide any proof of any such medical evidence to support that statement. However, during 2018, Defendant Posner was quite active in doing interviews, running the Posner Center, writing books, and working as a senior lecturer at the University of Chicago law School, and even took on a new job as an advisor to Legalist in 2019.

11. Defendant Posner never told me that he had received a confirmed diagnosis of Alzheimer's Disease and that information was fraudulently concealed from me until I received the February 28, 2022. If Defendant Posner would not have fraudulently concealed that information from me I would not have agreed to work for him knowing that there would be substantial complications that would have interfered in the working relationship.

12. After I filed the lawsuit for payment for my services to Defendant Posner, I received an email from Defendant Posner's wife, Charlene Posner, on May 8, 2022 stating "During the time you say you entered into a contract with Dick his primary care physician discerned his mental condition and referred us to the University of Chicago Neurology Department, and you are aware of their conclusion." This email shows that Defendant Posner knew about his mental condition but lied about it to me and fraudulent concealed it from me at the time we entered into our oral agreement on March

-4-

19, 2018 when he told me he was in general good health.

13. Defendant Posner's wife, Charlene Posner, stated in her May 8, 2022, email to me that Defendant Posner " so misled" me and offered to pay me $10,000 for the "trouble" I consequently had to suffer as a result of being " so misled".

14. Defendant Posner received free services from me as I worked day and night to no end for him including several trips to Chicago for work related meetings.

15. When controversies began developing and rumors started about the closing of the Posner Center, Defendant Posner stated that that he found it to be "impossible" to imagine that his wife intended to dissolve the Posner Center and stated that his wife had "absolutely no authority over the Center." Defendant Posner's statements were not true as one of the directors of the Posner Center, David Zarfes, stated that Charlene Posner had decision making authority and provided instructions for the closing of the Posner Center.

16. On July 21, 2019, Defendant Posner called me and told me that he suspected that his wife, Charlene, was in cahoots with David Zarfes, but that she had no authority over the Center and couldn't have it closed. I relied on this statement by Defendant Posner. However, when Defendant Posner filed his motion to dismiss, he filed a document as an exhibit, i.e., Internal Revenue Service 990-EZ Short Form, of which form showed the Defendant "Richard A. Posner" as "President", but Defendant Posner did not sign the form, Defendant Posner's wife, Charlene Posner, on July 15, 2019, signed the Defendant Posner's name as "POA". This totally contradicts the Defendant Posner's false statement made to me just six days later on July 21, 2019, when he told me that his

-5-

wife had no authority over the Center and couldn't have it closed.

17. Defendant Posner's frauds created havoc for me causing me to be subjected to emotional distress and headaches as I was bombarded with questions about the closing of the Posner Center for which the Defendant gave me false information and failed to provide information for me to responsibly answer questions.

18. If Defendant Posner would not have deceived me into believing that his wife had no authority over the Center when he told me that he was the sole owner and final decision maker on all aspects of the Center, I would not have agreed to come on board and be subjected to the misrepresentations and behind the scenes undertakings of a cut-throat nature.

19. In Defendant Posner's Exhibit A to the "Declaration of Justin M. Ellis in Support of Judge Posner Motion to Dismiss the Amended Complaint" the tax documents submitted by Defendant Posner to the Internal Revenue Service (IRS) show that Defendant Posner didn't list my name where it asked for "List of Officers, Directors, Trustees, and Key Employees" of the Center notwithstanding that I was the executive director. This is proof that Defendant Posner defrauded me when he hired me and used me for free labor under the guise of hiring me as the executive director of the Posner Center of Justice for Pro Se's in order that Defendant Posner would be able to unjustly enrich himself by receiving free labor from me while deceiving me in a fraudulent manner. I did not know about this fraud until I saw the IRS tax document that Defendant Posner filed in this Court on August 22, 2022.

20. The statement by Defendant Posner on page 1 of his "Memorandum of Law in Support of His Motion to Dismiss the Amended Complaint" falsely states to this Court that the Center "never paid any employee a salary" and furthermore Defendant Posner stated in an earlier Memorandum of Law filed in this Court (Document 22) at pages 3 in speaking as to tax information filed with the IRS that "Those returns state that the Center paid $0 in salaries to employees and staff in either year." The statements, made to this Court by Defendant Posner, and the information submitted to the IRS by Defendant Posner, were false and fraudulent statements because the Posner Center paid Joyce Hutchens a salary of several thousands of dollars a month as the Posner Center's research director. The IRS tax filings that Defendant Posner filed in this Court in support of his motion to dismiss this case to the IRS demonstrate Defendant Posner's false statements to this Court as Defendant Posner's "Exhibit C" explicitly states that a "A settlement of $8,020.00 was paid to a former employee of the Center." (see Document 34-1, page 24) The employee was Joyce Hutchens, who was in fact a paid employee who earned several thousand dollars a month as the Posner Center's research director. The $8,020.00 stated in the IRS tax document was for back wages after Ms. Hutchens threatened to sue Defendant Posner for unpaid back wages.

I attest that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Date: September 9, 2022

*Brian Vukadinovich*
Brian Vukadinovich, Affiant
1129 E. 1300 N.
Wheatfield, Indiana 46392
Tel. (219) 956-2462

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 9, 2022, the foregoing was sent to the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division, via U.S. Postal Service and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the Defendant's below listed counsel of record per agreement to receive such papers via email.

>Justin M. Ellis
>jellis@mololamken.com
>
>Steven F. Molo
>smolo@mololamken.com
>
>Kenneth Notter
>knotter@mololamken.com
>
>David Beach
>dbeach@eichhorn-law.com

*Brian Vukadinovich*

Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, IN 46392
Tel. (219) 956-2462