IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

-FILED-
SEP 30 2022
At_____ M
GARY T. BELL, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

BRIAN VUKADINOVICH, )
)
Plaintiff, )
)
v. ) CASE NO. 2:22-CV-00118 TLS-JPK
)
RICHARD A. POSNER, )
)
Defendant. )

## OBJECTION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

The Plaintiff, Brian Vukadinovich, pro se, files this objection in opposition to Defendant's request for judicial notice of the fact that common symptoms of dementia disorders, including Alzheimer's disease, include paranoia, irritability, confusion, and agitation with reference to Kaplan & Sadock's Comprehensive Textbook of Psychiatry (10th ed. 2017).

### I. RULE 201 OF THE FEDERAL RULES OF EVIDENCE

While the Defendant has cited no rule in requesting that this Court take judicial notice of complex medical type information, it is clear that Rule 201 of the Federal Rules of Evidence is the applicable rule.

Federal Rule of Evidence 201(a)(b) states:

(a) **Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.

(b) **Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
   (1) is generally known within the trial court's territorial jurisdiction; or
   (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

    **(c) Taking Notice.** The court:
        **(1)** may take judicial notice on its own; or
        **(2)** must take judicial notice if a party requests it and the court is supplied with the necessary information.

### A. The Source of Information to Which the Defendant Seeks Judicial Notice is in Substantial Question

In footnote number 10 on page 8 of Defendant's reply (Document 39, page 13), the Defendant requests this Court to take judicial notice "of the fact that common symptoms of dementia disorders, including Alzheimer's disease, include paranoia, irritability, confusion, and agitation with reference to Kaplan & Sadock's Comprehensive Textbook of Psychiatry (10th ed. 2017)". This is the first time in this litigation that the Defendant has averred to "paranoia, irritability, confusion, and agitation." The initial letter of February 28, 2022, to Plaintiff by Defendant's previous lawyer, Robert L. Kaufman, averred to "Alzheimer's" but nothing about "paranoia, irritability, confusion, and agitation.", nor have the Defendant's current set of lawyers averred to "paranoia, irritability, confusion, and agitation." previous to this filing. Quite frankly, the Defendant needs to state with specificity exactly what his defenses are, if any, regarding any alleged illness issues, which of course will require medical evidence, rather than generic unsupported statements by lawyers. The Defendant's lawyers have now for the first time thrown in "paranoia, irritability, confusion, and agitation." in addition to "Alzheimer's", but have provided no verifiable or certifiable statement from any medical specialists and therefore have woefully failed to meet the threshold requirements of Rule 201(a)(b)(1)(2)(c)(2)

As for the request for this Court to take judicial notice of Kaplan & Sadock's Comprehensive Textbook of Psychiatry (10th ed. 2017), this is a 4,997 page book at a cost of $392.00 by Amazon of which book is subject to a significant reasonable dispute based on the

majority of bad reviews of this book by people seemingly interested in the psychiatric fields. To say that the overwhelming majority of reviews by the medically interested consumers of this book were less than stellar reviews would be an understatement. Amazon.com: Customer reviews: Kaplan and Sadock&#39;s Comprehensive Textbook of Psychiatry (2 Volume Set).

And very importantly the Table of Contents to this book does not even mention Alzheimer's.

**Table of Contents**

1. Neural Sciences
2. Neuropsychiatry And Behavioral Neurology
3. Contributions Of The Psychological Sciences
4. Contributions Of The Social Sciences
5. Quantitative And Experimental Methods In Psychiatry
6. Theories Of Personality And Psychopathology
7. Diagnosis And Psychiatry: Examination Of The Psychiatric Patient
8. Clinical Manifestations Of Psychiatric Disorders
9. Classification In Psychiatry
10. Neurocognitive Disorders
11. Substance-Related Disorders
12. Schizophrenia And Other Psychotic Disorders
13. Mood Disorders
14. Anxiety Disorders
15. Obsessive-Compulsive And Related Disorders
16. Pathological And Problem Gambling (Gambling Disorder)
17. Post-Traumatic Stress Disorder
18. Somatic Symptom And Related Disorders
19. Factitious Disorder
20. Dissociative Disorders
21. Normal Sexuality And Sexual Disorders
22. Feeding And Eating Disorders
23. Sleep Disorders
24. Impulse-Control Disorders
25. Adjustment Disorders
26. Personality Disorders
27. Psychosomatic Medicine
28. Additional Conditions That May Be A Focus Of Clinical Attention
29. Culture-Bound Syndromes
31. Special Areas Of Interest
32. Psychiatric Emergencies
33. Psychotherapies
34. Biological Therapies
35. Child Psychiatry

36. Child Psychiatric Examination
37. Genetics In Child Psychiatry
38. Neuroimaging In Psychiatric Disorders Of Childhood
39. Temperament: Risk And Protective Factors For Child Psychiatric Disorders
40. Intellectual Disability
41. Specific Learning Disorder
42. Developmental Coordination Disorder
43. Communication Disorders
44. Autism Spectrum Disorder and Social Communication Disorder
45. Attention-Deficit Disorders
46. Disruptive Behavior Disorders In Children And Adolescents
47. Feeding And Eating Disorders Of Infancy And Early Childhood
48. Tic Disorders
49. Elimination Disorders
50. Other Disorders Of Infancy, Childhood, And Adolescence
51. Mood Disorders In Children And Adolescents
52. Anxiety Disorders In Children
53. Early-Onset Psychotic Disorders
54. Child Psychiatry: Psychiatric Treatment
55. Child Psychiatry: Special Areas Of Interest
56. Adulthood
57. Geriatric Psychiatry
58. Public Psychiatry
59. Psychiatric Education
60. Ethics And Forensic Psychiatry
61. History Of Psychiatry
62. World Aspects Of Psychiatry

Thus, the book that Defendant avers to for judicial notice doesn't even include Alzheimer's in the Table of Contents, and accordingly fails to meet the threshold standard of Fed. R. Evid. 201(a)(b)(1)(2)(c)(2). Simply throwing a book into the mix for good taste of which book's Table of Contents of 62 chapters doesn't even mention Alzheimer's, certainly doesn't conform to the threshold standards of a request for judicial notice when none of the 62 titles even mention Alzheimer's, nor does the Defendant even point to where in the 4,997 pages the information, if any, regarding Alzheimer's, or any of the other illnesses that were just brought up for the first time are located, which clearly precludes judicial notice of this book pursuant to Fed.

R. Evid. 201(c)(2) as there is no necessary information supplied as required by this governing rule. And with the majority percentage of negative reviews for this book, it certainly does appear that this book is subject to reasonable dispute, which of course precludes judicial notice pursuant to Fed. R. Evid. 201(b)(2).

The Defendant has not provided any medical evidence of his alleged condition and judicial notice of a book that has not been connected to any medical evidence pertaining to the Defendant in the absence of any medical analysis would be inappropriate and would not meet the threshold requirements of Fed. R. Evid. 201. Clearly medical evidence provided by a qualified specialist who can provide information as to Defendant's medical condition from the point that the Defendant is trying to claim his was mentally incapacitated is necessary. A one sentence unverified statement by lawyers does not satisfy the threshold requirement that the Defendant is requesting here in terms of this Court taking judicial notice of mental illnesses and a substantially questionable book. Furthermore, other than Alzheimer's disease, the Defendant has not previously stated an issue with paranoia, irritability, confusion, and agitation as an excuse that would somehow absolve him of responsibility from the contract he entered into with Plaintiff—there is a complete lack of evidence of it. And in light of the initial letter that the Defendant's previous lawyer sent to the Plaintiff on February 28, 2022, when he told Plaintiff "that medical evidence will show that the Judge did not have the legal capacity to enter into contracts in 2018." but yet the Defendant was indeed quite active in doing interviews, running the Posner Center, writing books, and working as a senior lecturer at the University of Chicago Law School, and even taking on a new job as an advisor to Legalist in 2019 certainly raises questions about the integrity of the defenses brought by Defendant's team of lawyers.

## II. THE DEFENDANT MUST PROVE UP ANY ALZHEIMER'S DEFENSE

When the Defendant's former lawyer, Robert L. Kaufman, sent a letter to Plaintiff on February 28, 2022, he told Plaintiff "that medical evidence will show that the Judge did not have the legal capacity to enter into contracts in 2018." But yet, the Defendant's new team of lawyers have not asserted a formal defense of "legal capacity", nor have they provided any medical evidence whatsoever in this regard notwithstanding that they sprinkle their pleadings with references to the Defendant being moved to a nursing facility. The statement by Defendant's previous attorney that the Defendant "did not have the legal capacity to enter into contracts in 2018" was clearly suspect as the Defendant was indeed quite active in doing interviews, running the Posner Center, writing books, and working as a senior lecturer at the University of Chicago law School, and even taking on a new job as an advisor to Legalist in 2019. And now, since the filing of the lawsuit, the Defendant's lawyers are spewing out additional illnesses such as dementia disorders, paranoia, irritability, confusion, and agitation, none of which were stated in the February 28, 2022, letter to Plaintiff from Defendant's previous lawyer.

As for the issue of the Defendant's current health status, first it should be noted that the Defendant has provided no verifiable medical evidence about the Defendant's health issues other than generic comments that his lawyers randomly spew out. And very importantly, while the Defendant and his team of lawyers like to make hay out of mentioning that the Defendant has taken up residence in a nursing facility, the issues in this litigation concern the Defendant's actions during the time period that Plaintiff provided services to him all of which were when the Defendant was out and about and **before** he took up residence in a nursing facility. It should be noted that the issues in this litigation do **not** involve issues **after** the point that the Defendant

-6-

took up residence in a nursing facility. Quite frankly, by the continual reference to the Defendant's taking up residence in a nursing home, the Defendant and his team of lawyers are trying to make hay out of something that isn't central to the issues of Defendant's breach of the contract and his fraud as taking up residency in a nursing facility has no bearing on the issues of Defendant's breach of the contract and his fraud which happened **before** he took up residence in a nursing home.

Any averments as to medical illnesses would require medical analysis and testimony of a medical specialist from the listed diseases. A one sentence unverified statement by lawyers does not satisfy the threshold requirement that the Defendant's lawyers are requesting here. Furthermore, other than passing references to Alzheimer's disease, the Defendant has not formally stated an issue with paranoia, irritability, confusion, and agitation as an excuse that would somehow absolve him of responsibility from the contract he entered into with Plaintiff.

### III. DEFENDANT HAS ARGUED THAT ANY "CAPACITY DEFENSE" WOULD BE TOO "FACT-INTENSIVE" TO DECIDE ON A MOTION TO DISMISS AND YET ARGUES FOR DISMISSAL

In Defendant's Reply at page 11, footnote 13, Defendant argues that the Plaintiff has somehow caused an impairment to the Defendant's ability to defend against the claims in this lawsuit, and that the real question is whether equity supports forcing the Defendant's family to contest the oral contract with a person now suffering from Alzheimer's disease. The answer to that question is quite obvious, the law requires that the Defendant must be held accountable for his actions. The law is very clear on that. The Defendant and his team of lawyers gets the equity question very wrong, as the real question is whether equity supports the unlawful proposition essentially advanced by Defendant and his lawyers that this Court should sign off on the

notion for free labor for the Defendant, or if equity supports the notion that the Defendant should honor the contract and pay for the services that Plaintiff provided to him to which the Defendant benefited from. The law provides a very clear answer to that question. A claim for unjust enrichment "is a legal fiction invented by the common law courts in order to permit a recovery…where the circumstances are such that under the law of natural and immutable justice there should be a recovery." *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (citations omitted). The Restatement of Restitution sets out the theory that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id.* (citing Restatement of Restitution § 1 (1937)). The Court of Appeals of Indiana has determined that if one party is induced by another, on the faith of an oral promise, to place himself in a worse position than he would have been had no promise been made, and if the party making the promise derives a benefit as a result of the promise, a constructive fraud exists which is the subject to the trial court's equity jurisdiction. *Hurd v. Ball*, 128 Ind. App. 278, 143 N.E. 2d 458 (Ind. Ct. App. 1957). It should be noted that the evidence is such that the Defendant's wife, Charlene Posner, in an email to Plaintiff on May 8, 2022, explicitly stated that the Defendant **"so misled"** Plaintiff. (See Document 36 - Plaintiff's Memorandum Response in Opposition to Motion to Dismiss, Plaintiff's Exhibit 2). [emphasis added]. It is interesting that the Defendant's lawyers chose not to comment on this very important item of evidence. The question of "equity" clearly dictates that the Defendant should honor the contract and pay for the services Plaintiff provided to him to which he benefited from, to which the Defendant's own wife explicitly stated that the Defendant **"so misled"** the Plaintiff.

-8-

The Defendant and his lawyers after basically arguing that the Defendant should benefit from his breach of contract and fraud by essentially receiving free labor from the Plaintiff, even in the face of the evidence of the Defendant's wife explicitly admitting that the Defendant "**so misled**" the Plaintiff, then argue at page 11, footnote 13 of their reply that "any capacity defense would be too fact-intensive to decide on a motion to dismiss." Using an alleged illness to try to get a case dismissed, even though there has been absolutely no evidence submitted to support the frivolous arguments based on the alleged illness, and then turning right around and arguing that the illness defense, i.e., capacity defense, is too fact-intensive to decide on a motion to dismiss, clearly demonstrates the frivolousness of the Defendant's arguments which should not be well taken by this Court.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny the Defendant's request to take judicial notice of the fact that common symptoms of dementia disorders, including Alzheimer's disease, include paranoia, irritability, confusion, and agitation with reference to Kaplan & Sadock's Comprehensive Textbook of Psychiatry (10th ed. 2017) as such request does not meet the threshold requirements of Rule 201 of the Federal Rules of Evidence.

Respectfully submitted,

*/s/ Brian Vukadinovich*
Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, Indiana 46392
Tel. 219-956-2462

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 28, 2022, the foregoing was sent to the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division, via U.S. Postal Service and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the Defendant's below listed counsel of record per agreement to receive such papers via email.

> Justin M. Ellis
> jellis@mololamken.com
>
> Steven F. Molo
> smolo@mololamken.com
>
> Kenneth Notter
> knotter@mololamken.com
>
> David Beach
> dbeach@eichhorn-law.com

*/s/ Brian Vukadinovich*
Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, Indiana 46392
Tel. 219-956-2462