**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

BRIAN VUKADINOVICH,

        Plaintiff,

        v.                 CAUSE NO.: 2:22-CV-118-TLS-JPK

RICHARD A. POSNER,

        Defendant.

**FINDINGS, REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a motion to dismiss, filed by Defendant Richard A. Posner. [DE 33]. Also before the Court are three related motions for judicial notice, filed by Plaintiff Brian Vukadinovich. [DE 38; DE 40; DE 44]. District Judge Theresa L. Springmann entered an order referring the motion to dismiss and "any dispositive matters that may arise in the" motion to dismiss, including specifically the three motions for judicial notice, to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72-1(b). *See* [DE 50]. This Report and Recommendation constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(C).

<u>INDEX</u>

BACKGROUND

        Breach of Contract (Count I)

        Fraud (Count II)

            *Defendant's health*
            *Source of funds*

        Unjust Enrichment (Count III)

STANDARD OF REVIEW

DISCUSSION

I.      Threshold Issues

      A.      Documents Considered on a Motion to Dismiss

      B.      Motions for Judicial Notice

            *1.      Tax forms' reference to $8,020 payment*
            *2.      Defendant's arguments regarding the $8,020 payment*
            *3.      Tax forms' omission under "Officers, Directors, Trustees, and Key*
                      *Employees"*
            *4.      Common symptoms of Alzheimer's*
            *5.      Surreply arguments*

      C.      Choice of Law

            *1.      Statute of Limitations*
            *2.      Breach of Contract*
            *3.      Fraud*

II.     Merits Issues

      A.      Statute of Limitations

            *1.      Accrual Date*
            *2      Fraudulent Concealment*

      B.      Personal Liability Under the Alleged Contract

      C.      Contract Terms

      D.      Fraud Claim

            *1.      Duplication*
            *2.      Sufficiency*
            *3.      Leave to Amend*

      E.      Unjust Enrichment

CONCLUSION

## **BACKGROUND**[1]

Plaintiff, proceeding pro se, brought this lawsuit in which he seeks to recover $170,000 plus related fees, interests, and costs, for services he allegedly rendered on Defendant's behalf from February 25, 2018 through July 23, 2019. Plaintiff filed the operative amended complaint [DE 30] on August 1, 2022. The amended complaint alleges a claim for breach of contract based

---

[1] Citations to Docket Entries ["DE"] include page number references assigned by CM-ECF found at the top right corner of the page.

on an agreement shown in a series of emails sent around February 25, 2018,[2] and allegedly amended orally on March 19, 2018. The amended complaint also alleges claims for fraud and unjust enrichment. Federal court jurisdiction is asserted under the diversity statute.[3]

### *Breach of Contract (Count I)*

Plaintiff alleges that, on February 25, 2018, Defendant made Plaintiff a job offer to serve as the executive director of the Posner Center for Justice for Pro Se's (hereinafter "the Posner Center" or "the Center"). Although the amended complaint does not provide any further information concerning the Center, it is undisputed that it was a nonprofit corporation founded by Defendant after his September 2017 retirement from the federal bench, the purpose of which was to provide education of pro se litigants and public pro se reform advocacy. *See* [DE 34-1 at 5, 16

---

[2] The copy of the email chain attached to the amended complaint has a possible discrepancy about when the emails were sent. The date and time shown for Defendant's original email to Plaintiff in which the offer of employment is made is Sunday, February 25, 2018, at 4:34 a.m. Plaintiff's email accepting Defendant's job offer is shown as having been sent on Saturday, February 24, 2018, at 10:50 p.m., *before* Defendant sent the February 25, 2018 email.

[3] Both the original and amended complaints allege more than $75,000 in damages, exclusive of interest and costs, and Plaintiff's Supplemental Jurisdictional Statement [DE 5] alleges that Plaintiff is domiciled in Indiana while Defendant is domiciled in Illinois. *See* 28 U.S.C. § 1332(a)(1).

(2018 and 2019 IRS 990 EZ Tax Forms[4])]. The Center was formally incorporated on February 6, 2018, and voluntarily dissolved on July 23, 2019.[5]

At this point, the Court pauses to address an argument made in so many of Plaintiff's filings that ignoring it would only invite further repetition. Plaintiff repeatedly takes issue with Defendant's reference to a "distinguished" judicial career [DE 34 at 8], asserting that this comment shows that "Defendant and his attorneys" are attempting to send "subliminal messages to the Court" and "curry favor" from the Court by reminding the Court of Defendant's prior judicial career. *See* [DE 36 at 8]; *see also* [*id.* at 9-10; DE 47 at 3-5; DE 53 at 2-4; *id.* at 10-11]. References to Defendant's judicial career and retirement from the bench, however, are potentially relevant background information.[6] Additionally, even though Defendant's prior judicial career and

---

[4] The Court can take judicial notice of the Center's 2018 and 2019 tax filings, which are attached as Exhibits A and C to the Declaration of Justin M. Ellis. *See Tobey v. Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018) (on a motion to dismiss, the court can consider documents attached to the motion if they are properly subject to judicial notice); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (district courts are permitted to take judicial notice of matters of public record). While both parties agree that the Posner Center's 2018 and 2019 tax forms are properly subject to judicial notice, *see* [DE 34 at 9 & n.1; DE 38 at 1; DE 39 at 12 n.7], they disagree over the meaning or accuracy of some of the information contained in those documents, as will be discussed later in this report.

[5] This information is found on the Illinois Secretary of State's website (*https://apps.ilsos.gov/ corporatellc/CorporateLlcController*, last visited 6/16/2023), the relevant pages of which are attached as Exhibit B to the Declaration of Justin M. Ellis. *See* [DE 34-1 at 12-13]. The Court can take judicial notice of the information on the website. *See The City of Waukegan v. Bond Safeguard Ins. Co.*, No. 15 C 3007, 2015 WL 6870106, at *2 (N.D. Ill. Nov. 6, 2015) ("With respect to [the defendant's] state of incorporation, the Court takes judicial notice of filings with the Secretary of State[.]"); *Patten v. The N. Tr. Co.*, 703 F. Supp. 2d 799, 803 n.2 (N.D. Ill. 2010) ("The court takes judicial notice of matters of public record, such as stock prices and SEC filings.").

[6] *See, e.g.*, [DE 30 ¶ 7 (alleging that Defendant hired Plaintiff to provide advisory services regarding Defendant's "personal ventures such as with ... his grievances with then Chief Judge Diane S. Wood of the Seventh Circuit and judges on the Seventh Circuit who failed to support him with his grievances against Chief Judge Diane S. Wood"); DE 37 ¶ 10 (discussing Defendant's post-retirement professional activities); DE 46 at 8 (Website Page of The Posner Center attached to Plaintiff's reply in support of his second motion for judicial notice) (stating that the Posner

retirement are not specifically mentioned in the amended complaint, the Court can take judicial notice of those facts because they are "generally known within the trial court's territorial jurisdiction," and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) ("Kinds of Facts That May Be Judicially Noticed"). Nonetheless, Plaintiff asserts that Defendant's one-time reference to his judicial career being "distinguished" has "infected" these proceedings such that Plaintiff questions whether he and Defendant will be treated equally by the Court.[7] This is attributing more power to a singular adjective than is plausible. The reference was unnecessary but harmless.[8]

Returning to the amended complaint, Plaintiff alleges that he was hired by Defendant for the position of executive director of the Center "for a yearly compensation of at least $80,000.00 and possibly more for which Plaintiff … would be allowed to work from his Indiana home in performing services to Defendant …." [DE 30 ¶ 5]. Plaintiff attaches to the amended complaint an

---

Center "is a national pro bono legal–services organization founded and led by Richard A. Posner, a former judge on the U.S. Court of Appeals for the Seventh Circuit")].

[7] The "distinguished" comment is found in the statement of facts of Defendant's brief in support of his motion to dismiss. While the reference appears only once in Defendant's filings, Plaintiff repeats it some twelve to fifteen times across multiple filings. He then goes beyond merely repeating the reference by presenting numerous facts outside the amended complaint in an attempt to litigate the issue of Defendant's so-called "distinguishment." *See* [DE 36 at 8-10].

[8] Plaintiff should be mindful not to engage in the same improper litigation tactics of which he accuses Defendant, i.e., attempting to influence the result of a judicial decision by referring to unrelated considerations. *See* [DE 36 at 10 (warning the Court that if it "dismiss[es] this case, there will be a significant public firestorm to follow"); DE 47 at 4 (referring to "a consequential public uproar")]. If Plaintiff is dissatisfied with the Court's handling of Defendant's motion to dismiss, he should remember the Seventh Circuit's admonition that "[a]dverse decisions do not establish bias or even hint at bias." *Khor Chin Lim v. Courtcall Inc.*, 683 F.3d 378, 380 (7th Cir. 2012).

email exchange between him and Defendant "evidenc[ing]" the agreement. [*Id.*]. The email chain is reproduced below:[9]

### Re: new role for you?

You forwarded this message on Fri 2/25/2022 3:01 AM

Richard Posner █████████████████

To: You

Yes, working from home is fine; I do almost all my working from home.

I am so pleased that you've accepted my offer. It lifts a great burden from my back. I will message the rest of the company this afternoon.

Dick

On Sat, Feb 24, 2018 at 10:50 PM, Brian Vukadinovich ██████████████████ wrote:
Hi Dick,
It would be an honor working for you in how you said.  Would I be able to do most of my work from home so I wouldn't have to deal with the travel time between Indiana and the city?  I would of course stop in at the office periodically and certainly whenever you would need me to come in.  Would that work out satisfactorily?  I woul be proud and honored to work for you in this role.
Brian

**From:** Richard Posner ████████████████
**Sent:** Sunday, February 25, 2018 4:34 AM
**To:** Brian Vukadinovich
**Subject:** new role for you?

Brian, I'd like to suggest a new role for your in the company; whether to accept it or not is entirely your choice.

More than 80 persons now work for the company. I have very little contact with most of them; the principal exception is you. You are the star. I now have, as you know, regional directors, of whom you are one, but you are the only one with whom I have frequent contact. I need there to be more contact from the top (from me and I hope you) with the others, specifically to learn what if anything they are doing for pro se's in their state or regio I do not have the time to maintain frequent contact with all of them. And this is where you come in. I'd like to divide up the territory in which the company has members between the two of us. Each of us would keep tabs o roughly half the lawyers, nonlawyer legal advisors (the set that includes you), law firms that we might like to wo with, pro bono organizations that we would like to work with, courts, prisons and prisoners, and (other) pro se's

You would receive a substantial salary in the role I envisage for you, though I can't specify salary yet because the company has as yet no money. Within weeks or perhaps days, however, the company will be reorganized as a 501(c)(3), i.e., as a nonprofit that can receive donations without any tax liability; also the donors pay no taxes or their donations, which apparently is a big spur to generous giving. I ought to be able to raise more than $1 millic through donations. I will not take any of it for myself, because my wife and I have ample savings and low expenses. I should be able to pay you at least $80,000 a year and I hope more.

Let me know whether you're interested, Brian, and feel free to ask me any questions about my proposal.

Dick

---

[9] The truncated words on the right side of the email exchange also appear that way on the copy attached to the amended complaint.

[DE 30-1 at 2].

Following this email exchange, Plaintiff and Defendant allegedly had a second discussion about the terms of Plaintiff's employment. According to the amended complaint, on March 19, 2018, Plaintiff and Defendant met in person in Chicago, at which time Defendant "requested that the initial written agreement of February 25, 2018 be orally amended," and further informed Plaintiff that his (Defendant's) "previous statements from the initial agreement regarding money raised by the Posner Center to pay Plaintiff's salary was no longer in play." [*Id.* ¶¶ 7, 9]. Specifically, "in addition to work associated with the Posner Center," Defendant allegedly asked Plaintiff "to provide advisory services" to Defendant in Defendant's "personal capacity." [*Id.* ¶ 7]. The "advisory services" allegedly related to Defendant's "personal ventures" such as his "book writing, interviews, and [ ] grievances with … judges on the Seventh Circuit." [*Id.*]. The amended complaint alleges that the advisory services "would not involve the Posner Center in any way." [*Id.*]. Plaintiff's job duties allegedly "would entail work on the computer and telephone and email correspondence and also [Plaintiff] [would] be on call to" meet with Defendant in Chicago at his request "to discuss pertinent matters pertaining to Defendant[']s … personal ventures for which Plaintiff would provide advice." [*Id.* ¶ 8].

Defendant allegedly told Plaintiff that, because Plaintiff would be providing services related to Defendant's personal affairs, "the responsibility for payment of Plaintiff's services to Defendant [ ] would be the personal responsibility of Defendant … and not a responsibility of the Posner Center." [*Id.* ¶ 9]. For the same reason, Defendant also allegedly increased Plaintiff's salary "to $120,000.00 of which money would be paid … by Defendant." [*Id.* ¶ 8; *see also id.* ¶ 10 ("The orally amended agreement was for yearly compensation for the sum of $120,000.00 per year and would continue to roll over after a year's time unless either party to the oral agreement rescinded the agreement.")]. However, Defendant allegedly told Plaintiff that he "would not be able to utilize

any monies from … his joint savings account [with his wife]" to pay Plaintiff's salary. [*Id.* ¶ 12]. Instead, he allegedly said he would use money from his "personal investments." [*Id.*]. But the personal investments were "tied up for an extended period of time." [*Id.*]. Therefore, Defendant told Plaintiff that he "would have to wait at least a year before the Defendant Posner could pay Plaintiff's compensation in a lump sum." [*Id.*; *see also id.* ¶ 35]. Plaintiff alleges that he "accepted the terms of such amended agreement" [*id.* ¶ 14], and "provided Defendant … with a variety of services some of which involved the Posner Center and separate advisory services to the Defendant as to the Defendant's personal ventures … from February 25, 2018 through July 23, 2019. [*Id.* ¶ 15; *see also id.* ¶ 26 (alleging that Plaintiff "has performed his obligations under the agreement")].

### *Fraud (Count II)*

The amended complaint alleges fraud based on two factual matters that Plaintiff alleges Defendant failed to disclose to him during the March 2018 meeting.

### a.   *Defendant's health*

Plaintiff alleges that, during the March 2018 meeting, Plaintiff and Defendant "discussed the Defendant's advanced age and health." [*Id.* ¶ 13]. Specifically, Defendant allegedly stated that he (Defendant) "was in general good health and alert and had no concerns about anything that would potentially prevent him from honoring the terms of the amended agreement between Plaintiff and Defendant." [*Id.*; *see also id.* ¶ 28 (same)]. Plaintiff allegedly "relied upon" Defendant's representations in accepting the March 2018 offer and providing services to Defendant pursuant to the oral agreement. [*Id.* ¶ 14; *see also id.* ¶ 28 (same)]. Plaintiff alleges further, however, that:

> all the while that Plaintiff worked for the Defendant, … Defendant Posner knew that he had a diagnosis of Alzheimer's which he fraudulently concealed from Plaintiff until Plaintiff demanded

8

payment for his services and such fraudulent concealment continued on until Plaintiff received a letter from Defendant Posner's lawyer at the time, … dated February 28, 2022, of which letter indicated the Defendant's refusal to pay the money he owed to Plaintiff, stating to Plaintiff "What you clearly do not know is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's Disease."

[*Id.* ¶ 29; *see* DE 30-1 at 4].

Plaintiff further alleges that Defendant's deception is also shown by an email Plaintiff received from Defendant's wife on May 8, 2022. Defendant's wife states in the email that, "[d]uring the time you say you entered into a contract with [Defendant], his primary care physician discerned his mental condition and referred us to the University of Chicago Neurology Department, and you are aware of their conclusion." [DE 30-1 at 6; *see* DE 30 ¶ 31]. Plaintiff quotes this language and then alleges that "[s]uch concealment of information by Defendant Posner at the time Plaintiff and Defendant entered into the oral agreement on March 19, 2018, amending the previous agreement, constituted a fraudulent concealment of this information." [DE 30 ¶ 31].

### b.    *Source of funds*

Plaintiff also alleges fraud based on Defendant's alleged statements about the reason Plaintiff had to wait "at least a year" to receive any salary payment. As previously discussed, the amended complaint alleges that Defendant told Plaintiff that he (Defendant) "could not have used the money from [his] joint savings account [with his wife] to pay Plaintiff's compensation," but that he (Defendant) "had a significant amount of money tied up in personal investments that he would use to pay Plaintiff's compensation." [DE 30 ¶¶ 34, 35]. Defendant also allegedly said that the personal investments "were tied up for an extended period of time," and therefore "Plaintiff would have to wait at least a year before the Defendant could pay Plaintiff's compensation in a lump sum." [*Id.* ¶ 35]. Plaintiff alleges that Defendant misrepresented both that he could not have used the joint savings account money and that he had money tied up in personal investments that

he would use to pay Plaintiff's salary, and that this "fraud" resulted in Plaintiff providing free services to Defendant. [*Id.* ¶¶ 34, 35].

 *Unjust Enrichment (Count III)*

In a final count of the amended complaint, Plaintiff alleges that Defendant "acknowledged, accepted and benefitted from the services" Plaintiff provided to him. [*Id.* ¶ 37]. Plaintiff further alleges that "[r]etention of this benefit by Defendant … without payment to Plaintiff … would be unjust." [*Id.* ¶ 38].

**STANDARD OF REVIEW**

A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "if, taking the properly pleaded facts" in the complaint in the light most favorable to the plaintiff, "the complaint fails to describe a claim that is plausible on its face." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). While "detailed factual allegations" are not required, the complaint must "include 'more than an unadorned, the-defendant-unlawfully[-]harmed-me accusation.'" *Id.* at 512 (quoting *Iqbal*, 556 U.S. at 678 (discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Under the *Iqbal/Twombly* pleading standard, "a court need not accept as true 'legal conclusions[, or t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*). "[P]laintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, . . . must do more." *Id.* "First, a plaintiff must provide notice to defendants of h[is] claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's

factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief,'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted).

Plaintiff alleges that the Court must give his allegations a liberal reading because he is pro se. *See* [DE 30 ¶ 4]. In *Greer v. Board of Education of City of Chicago, Illinois*, 267 F.3d 723 (7th Cir. 2001), the Seventh Circuit "address[ed] [the plaintiff's] repeated insinuation [in that case] that the district court did not afford him the liberal construction of pleadings that is due to a *pro se* plaintiff." *Id.* at 727. In rejecting that argument, the court explained that "[t]he 'essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable.' However, a lawsuit is not a game of hunt the peanut," and "district courts are 'not obliged in our adversary system to scour 'the record for factual disputes.'" *Id.* (citations omitted). "Although pro se pleadings are viewed less stringently, a [party] who chooses to proceed pro se must comply with the applicable substantive and procedural rules of law." *Dorsch v. Comm'r*, 46 F.3d 1133 (7th Cir. 1994) (unpublished); *see also Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed, … and have held that some procedural rules must give way because of the unique circumstance of incarceration, … we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Duggins v. Selene Fin., LP*, No. 2:19-cv-201-TLS-JPK, 2022 WL 1449605, at *3 (N.D. Ind. May 6, 2022) ("[T]he Court still holds Plaintiff to the same substantive standards as other civil litigants when it considers the motion [to

dismiss." (internal quotation marks and citation omitted)). Thus, Plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendant raises the following arguments for dismissal of Plaintiff's claims: (1) Plaintiff's breach of contract and unjust enrichment claims are barred by Indiana's two-year statute of limitations for oral employment contracts; (2) Plaintiff has not alleged facts plausibly showing that Defendant agreed to be personally liable for Plaintiff's salary; (3) the alleged oral contract for employment is too indefinite to be enforceable; (4) the fraud claim is duplicative of the breach of contract claim; (5) the facts alleged do not amount to fraud; (6) the unjust enrichment claim fails because Plaintiff has not plausibly alleged that he conferred any benefit on Defendant personally or that denying him equitable relief would be unjust; and (7) recovery under a theory of unjust enrichment should be denied because Plaintiff's years-long delay in suing on the alleged oral promise will prejudice Defendant's ability to defend against Plaintiff's claims. Before turning to these merits arguments, however, the Court must address a number of preliminary issues raised in the motion to dismiss briefing and in the briefing on the motions for judicial notice. The preliminary issues include: (1) whether the Court can consider documents outside the complaint; (2) whether those documents are subject to judicial notice, and if so, what "facts" are established by the Court's judicial notice; (3) whether the motions for judicial notice should be disregarded as improper surreplies; and (4) the parties' dispute over which state's law should be applied to Plaintiff's claims.

I.      **Threshold Issues**

    A.      **Documents Considered on a Motion to Dismiss**

"As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). "If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed .R. Civ. P. 10(c). "[T]his rule [also] includes a limited class of attachments to Rule 12(b)(6) motions. [D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Rosenblum*, 299 F.3d at 661 (internal quotation marks and citation omitted). "The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Id.* (quoting 5 Wright & Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d, § 1327 at 766 (1990)).

In addition to documents described above, a court also may consider on a motion to dismiss "information that is properly subject to judicial notice," *Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013), as well as additional facts offered by a plaintiff in opposing a motion to dismiss "so long as those facts are consistent with the pleadings," *Phillips v. The Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks and citation omitted). "Plaintiffs may augment the allegations of the complaint in opposing a motion to dismiss, but they

13

cannot contradict it." *Atlas IP, LLC v. Exelon Corp.,* 189 F. Supp. 3d 768, 779 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC v. Commonwealth Edison Co.,* 686 F. App'x 921 (Fed. Cir. 2017).

Under these rules, the Court can consider the documents Plaintiff attaches to the amended complaint, which include (1) the email exchange between Plaintiff and Defendant dated February 25, 2018 (Ex. 1) [DE 30-1 at 2]; (2) the letter from Defendant's attorney to Plaintiff dated February 28, 2022 (Ex. 2) [DE 30-1 at 4]; and (3) the email from Defendant's wife to Plaintiff dated May 8, 2022 (Ex. 3) [DE 30-1 at 6]. The Court also will take into consideration any consistent facts set forth in Plaintiff's brief with attached documents [DE 36], and his separately filed affidavit [DE 37]. In addition to the three documents previously attached to the amended complaint, Plaintiff submits with his brief (1) an email from David Zarfes to Jonathan Zell dated July 9, 2019 and an email from Defendant to Jonathan Zell dated July 19, 2019 (Ex. 3) [DE 36 at 38]; (2) an undated email from Defendant to Plaintiff (Ex. 4) [DE 36 at 40]; (3) an article about Defendant from a publication called Litigation Daily dated September 10, 2019 (Ex. 6) [DE 36 at 47-50]; and (4) another article about Defendant dated June 20, 2019 from a publication called Law.Com (Ex. 7) [DE 36 at 52].

As to the documents attached to Defendant's motion to dismiss, there is no dispute that the Court can take judicial notice of the Center's tax forms and the regulatory filing with the Illinois Secretary of State. *See* footnotes 4 and 5, *supra*.[10] But the parties do not directly address whether the Court can consider the demand letter from Plaintiff to Defendant dated February 22, 2022, which is attached as Exhibit D to Defendant's brief. [DE 34-1 at 27]. It appears that Defendant contends the Court can consider the letter under the rule previously discussed that documents

---

[10] Nevertheless, the tax forms have engendered disputes on side issues, which the Court will address in the sections of this report discussing the motions for judicial notice.

attached to a defendant's motion to dismiss may be considered if they are referred to in the plaintiff's complaint and central to his claim. *Rosenblum*, 299 F.3d at 661; *see also Phillips*, 714 F.3d at 1020. But the amended complaint does not refer to the letter; it refers only generally to Plaintiff's "demand" for payment. It is not *necessarily* the case (although perhaps likely) that the "demand" referenced in the amended complaint refers to the letter in question. In any event, Defendant has not presented any argument for considering the letter to be "critical to the amended complaint." A "critical" document that can be considered by the court when attached to the motion to dismiss has been described as "a concededly authentic document central to the plaintiff's claim (the usual example is a contract, in a suit for breach of contract)." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *see also Rosenblum*, 299 F.3d at 661 (stating that "[t]his exception is aimed at cases interpreting, for example, a contract" (internal quotation marks and citation omitted)). The Seventh Circuit has said that the rule allowing consideration of documents not attached to the complaint that are presented by the defendant as part of the motion to dismiss is "narrow …. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Tierney*, 304 F.3d at 738.

Defendant's better argument for the Court's consideration of the demand letter is the rule of completeness, as discussed in *Law Offices of David Freydin, P.C. v. Chamara*, 24 F.4th 1122 (7th Cir. 2022). In that case the court explained that, "[j]ust as a plaintiff cannot prevent a court from considering parts of a contract that doom h[is] claim by including in the complaint only the parts of a contract that support h[is] side, a party's selection of part of a chain of communication does not prevent the court from considering the entire chain." *Id.* at 1126 n.1 (citing *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d 803, 809 n.2 (7th Cir. 2018) (in reviewing grant of motion to dismiss, "we cannot consider in isolation just those contractual provisions that plaintiffs find helpful"), and Fed. R. Evid. 106 (rule of completeness)). Here, Plaintiff has attached as Exhibit

2 to the amended complaint the letter sent by Defendant's attorney in response to his demand letter. Plaintiff's demand letter is part of that chain of communication. In addition, like the plaintiffs in *Chamara*, Plaintiff has not objected to the Court's consideration of the demand letter and its authenticity does not appear to be in question. Accordingly, the Court considers the demand letter as part of the motion to dismiss record.

### B. Motions for Judicial Notice

#### 1. Tax forms' reference to $8,020 payment

Plaintiff's first and third motions for judicial notice ask the Court to take judicial notice of the Center's tax forms submitted by Defendant with his motion to dismiss. [DE 38 at 1; DE 44 at 1].[11] Plaintiff cites *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), for the proposition that public records, such as the Center's tax forms, are proper subjects for judicial notice. [DE 38 at 2; DE 44 at 3]. As noted previously, the Court agrees with this argument. *See* footnote 4, *supra*. But Plaintiff's motions for judicial notice go a step further and ask the Court to take judicial notice of Plaintiff's disputed *characterization* of matters stated in those documents. While "'[a] court may take judicial notice of matters of public record,'" it "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018) (quoting *Lee*, 250 F.3d at 689); *see* Fed. R. Evid. 201(b) (judicial notice is limited to "fact[ s] that [are] not subject to reasonable dispute"); *United States v. Zabka*, No. 10–1078, 2011 WL 13217342, at *2 (C.D. Ill. July 14, 2011) ("documentary evidence, the factual conclusions that [defendants] draw from their interpretation of the evidence, and their legal

---

[11] The third motion for judicial notice requests judicial notice of two matters. This section deals with the first issue raised by the third motion while the second issue is addressed *infra*, in Section I,B,3.

conclusions" are "plainly not the type of adjudicative facts intended for judicial notice under Rule 201").

It is true that Defendant cited to the tax returns in the statement of facts section of his brief and said they show the Center paid $0 in salaries to employees and staff. *See* [DE 34 at 12]. But that was before Defendant knew Plaintiff would dispute the information shown on the tax forms. Plaintiff's first motion for judicial notice argues that the tax returns show that the Center paid another employee a salary of $8,020. [DE 38 at 2]. Defendant responded in his reply brief that the tax returns characterize the $8,020 payment as a settlement, not a salary. [DE 39 at 12 n.7]; *see* [DE 34-1 at 4 (2018 return, reporting "0" on line 12, "Salaries, other compensation, and employee benefits"); *id.* at 15 (2019 return, leaving line 12 blank); *id.* at 24 (2019 return, reporting as "supplemental information" that "[a] settlement of $8,020.00 was paid to a former employee of the Center")]. But according to Plaintiff, the former employee in question "was in fact a paid employee who earned several thousand dollars a month as the Posner Center's research director," and the $8,020.00 payment "was for back wages after [the employee] threatened to sue Defendant Posner for unpaid back wages." [DE 38 at 2].

Plaintiff argues that a court may take judicial notice at any stage of the proceeding and that a court "is required to take judicial notice 'if requested by a party and supplied with the necessary information.'" [DE 43 at 1]. But the reason for denying Plaintiff's requests for judicial notice does not have to do with either of these points. Plaintiff asks the Court to take judicial notice "of the facts presented in [his] motion [for judicial notice]" [DE 38 at 3], by which he presumably means the Court should resolve the parties' dispute over whether the $8,020 payment was properly reported on the 2019 tax return as a settlement, or whether it should have been reported as a salary instead. Plaintiff would have the Court resolve that dispute in his favor, and to find, as a matter of judicial notice, that Defendant has "submitt[ed] false arguments that the Center 'never paid any

employee a salary'" and also "potentially" committed "tax evasion" by submitting false information to the IRS. [DE 38 at 2-3].

For a court to take judicial notice of a fact, it must be beyond reasonable dispute:

> [T]he effect of taking judicial notice under Rule 201 is to preclude a party from introducing contrary evidence and, in effect, directing a verdict against him as to the fact noticed. The key to a fair trial is opportunity to use the appropriate weapons (rebuttal evidence, cross-examination, and argument) to meet adverse materials that come to the tribunal's attention. If a court takes judicial notice of a fact whose application is in dispute, the court removes these weapons from the parties and raises doubt as to whether the parties received a fair hearing.

*Gen. Elec. Cap. Corp.,* 128 F.3d at 1083 (internal quotation marks and citations omitted). Once Plaintiff challenged Defendant's assertion that the Center never paid a salary to any employee, the proper characterization of the $8,020 payment became a disputed matter. Therefore, the Court can only take judicial notice of the undisputed facts that the document in question is the Center's tax return and that the tax form reported an $8,020 payment as a "settlement." The Court cannot resolve the factual dispute that has emerged from the briefing regarding the meaning or correct interpretation or implication of the $8,020 payment shown on the form.[12] *See Tobey,* 890 F.3d at 648 (while noting "the improbability of [the plaintiff's] version of the facts" given that it contradicted certified court records from two different states, court nevertheless holds it was "neither proper nor necessary" to take judicial notice of the court records "to resolve genuinely disputed facts … in order to dismiss Count II"); *Doss v. Clearwater Title Co.,* 551 F.3d 634, 640

---

[12] Defendant argues that "whether the Posner Center paid the employee in question a salary or a settlement is immaterial to the relevant issue of whether Plaintiff and Defendant had a contract or whether Defendant defrauded Plaintiff." [DE 39 at 12 n.7]; *see also* [DE 42 at 2]. That may be true, but it was Defendant who originally presented the factual issue as relevant to his motion to dismiss when he asserted that no employees of the Center were paid a salary. Therefore, it was appropriate counterargument for Plaintiff to challenge that assertion.

(7th Cir. 2008) ("[W]e do not see how … the court could have found that [the deed] was 'not subject to reasonable dispute' within the meaning of Fed. R. Evid. 201(b) once [the plaintiff] filed his response [disputing its contents].");  *see also Khoja,* 899 F.3d at 1000 ("It is improper to judicially notice a transcript when the substance of the transcript is subject to varying interpretations, and there is a reasonable dispute as to what the [transcript] establishes. In that scenario, there is no fact established by the transcript 'not subject to reasonable dispute,' and the fact identified does not qualify for judicial notice under Rule 201(b)." (internal quotation marks and citation omitted)).

For these reasons, the Court recommends that the first and third motions for judicial notice be granted in part, with the Court taking judicial notice of the fact that the documents attached to the Ellis Declaration as Exhibits A and C are the Center's 2018 and 2019 tax returns and state the information shown on them. Whether any of that information is accurate or false is not subject to judicial notice.

### 2.       *Defendant's arguments regarding the $8,020 payment*

Plaintiff's second motion for judicial notice asks the Court to take judicial notice of Defendant's statements in his brief and reply brief in support of his motion to dismiss that the Center paid the former employee a settlement, not a salary. [DE 40 at 1-2]. "The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records." *Gen. Elec. Cap. Corp*., 128 F.3d at 1081 (quoting 21 Charles Alan Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5106, at 505 (1st ed. 1977 & Supp. 1997)). But filings made in the same case as the request for judicial notice are already part of the record. *Compare In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.,* No. 3:05-MD-527 RM, 2010 WL 1253891, at *4 (N.D. Ind. Mar. 29, 2010) ("Court documents from another case may be used to show that the document was filed, that party took certain position[s], and that certain judicial

findings, allegations or admissions were made."). In any event, Plaintiff's motion goes beyond seeking judicial notice of the fact that Defendant called the payment a settlement in the briefing and asserted that no employees of the Center were ever paid a salary. Plaintiff instead asks the Court to take judicial notice of *Plaintiff's argument* that, by making these statements in his brief, Defendant and his attorneys have submitted "false arguments" to the Court. Plaintiff also wants the Court to take judicial notice of *Plaintiff's argument* that, by designating the payments as a settlement rather than as salary on the 2019 tax form, Defendant submitted false information to the IRS. An argument, however, is not a "fact" subject to judicial notice. Whether Defendant has committed fraud is a conclusion of law based on disputed facts outside the purview of the applicable rules for judicial notice found in Federal Rule of Evidence 201. Accordingly, the Court recommends that the second motion for judicial notice be denied.

### 3. Tax forms' omission under "Officers, Directors, Trustees, and Key Employees"

Plaintiff's third motion for judicial notice asks the Court to take judicial notice of the "fraud" Defendant purportedly committed against Plaintiff by omitting Plaintiff's name from the "list of Officers, Directors, Trustees, and Key Employees" on the Center's tax forms. [DE 44 at 2]. For the reasons previously discussed, the Court can take judicial notice of the tax returns and what they say (or, in this instance, do not say). But whether any omission constitutes a "fraud" is legal argument, not a "fact" subject to judicial notice.[13] For this reason (in addition to the reasons

---

[13] Not only are there disputed legal issues but the underlying facts are in dispute. Defendant argues Plaintiff has not alleged that he was an officer or director of the Center [DE 45 at 1 n.1], and Plaintiff responds that the amended complaint alleges he was an executive *director* of the Center [DE 46 at 3]. While Plaintiff alleges that he was employed as the "executive director" of the Center, that allegation does not appear to relate to whether he was a member of the company's *board of* directors. *See* [DE 34-1 at 5 (listing the names of six corporate directors)].

previously discussed in Section I,B,1), the Court recommends that the third motion for judicial notice be granted in part and denied in part as outlined herein.

### 4.    *Common symptoms of Alzheimer's*

Defendant asserts in his reply brief that the Court can take judicial notice of the fact that common symptoms of dementia disorders, including Alzheimer's disease, include paranoia, irritability, confusion, and agitation. *See* [DE 39 at 13 n.10 (citing 10 KAPLAN & SADCOCK'S COMPREHENSIVE TEXTBOOK OF PSYCHIATRY (10th ed. 2017))]. Although there is no pending motion for judicial notice on this subject, Plaintiff objected to Defendant's assertion that the facts in question were subject to judicial notice in a document he filed titled "Objection to Defendant's Request for Judicial Notice" [DE 41]. Defendant argues that Plaintiff's Objection is "procedurally improper" because it constitutes a surreply. *See* [DE 42 at 1 & n.1 (citing *U.S. Secs. & Exch. Comm'n v. Miller*, No. 3:15-cv-519-JVB-MGG, 2019 WL 4316733, at *3 (N.D. Ind. Sept. 12, 2019) (stating that the Court's local rules only "provide[] for the filing of responses and replies, but no surreply")]. But the Objection also could be construed as a motion to strike the implied request for judicial notice in Defendant's reply brief. Construed as such, the Court finds Plaintiff's objection well taken.

Plaintiff disputes whether a medical diagnose and the symptom manifestations of the diagnose are "fact[s] … not subject to reasonable dispute" within the meaning of Federal Rule of Evidence 201(b). The Court accepts Plaintiff's argument that requiring him to either confirm or refute Defendant's citation to a medical source text is beyond the scope of the motion to dismiss, and that therefore Defendant's request for judicial notice is at the very least premature. Moreover, Defendant's argument for which he cited "the common symptoms of Alzheimer's"—that his "Alzheimer's symptoms are an obvious alternative explanation for his July 2019 statements that [Plaintiff] claims are fraudulent" [DE 42 at 1-2 n.1 (citing DE 39 at 13 n.10)]—is improper

argument for a motion to dismiss. Defendant cannot "defeat otherwise cognizable claims" by arguing his "own version of events." *Khoja*, 899 F.3d at 1002. Accordingly, in discussing the merits issues later in this report and recommendation, the Court will not consider Defendant's citation to evidence outside the complaint concerning the so-called "common symptoms of Alzheimer's," or the incapacity theory alluded to in connection with that evidence.[14]

### 5. Surreply Arguments

While the Court recommends as previously discussed that Plaintiff's motions for judicial notice be denied insofar as the legal arguments in those motions are concerned, the Court will not disregard those arguments entirely, as Defendant suggests the Court should do. The judicial notice motions make legal arguments concerning Defendant's representations and other conduct and whether they amount to fraud. These arguments should have been presented in Plaintiff's response in opposition to Defendant's motion to dismiss. Or, if they relate to a new issue made by Defendant in his reply brief, then Plaintiff should have sought leave of court to file a surreply brief. *See Stack v. Menard, Inc.,* No. 3:19-CV-310-MGG, 2021 WL 1165138, at *2 (N.D. Ind. Mar. 25, 2021) ("'Even if a party raises new issues in its reply, the opposing party is not permitted to submit a

---

[14] Plaintiff notes in a footnote of his brief that, although the February 2022 letter from Defendant's attorney responding to Plaintiff's demand letter asserted a legal incapacity defense to Plaintiff's salary claim, Defendant only alludes to such a defense in the motion to dismiss briefing (as opposed to asserting legal incapacity as a basis for dismissing any part of the amended complaint). *See* [DE 36 at 12-13 n.3]. Plaintiff argues that Defendant's failure to raise the legal incapacity issue in his motion to dismiss somehow violates the "mend the hold" doctrine. [*Id.*]. Defendant does not offer any response to this argument. The "mend the hold" doctrine "is less a set of rules than a flexible concept of equity. It prevents one party to litigation, especially in contract disputes, from trying to change its position or theories at such a late stage in the dispute as to cause unfair prejudice to the opposing party." *Est. of Burford v. Acct. Prac. Sales, Inc.*, 851 F.3d 641, 644 (7th Cir. 2017). Plaintiff has not alleged any unfair prejudice to him. Nor is Defendant required to raise every possible legal issue with which he might defend against Plaintiff's claims in a motion to dismiss. Indeed, he is precluded from raising a legal issue if it involves disputed fact issues, as Plaintiff himself argues the capacity issue involves.

surreply absent leave of the court.'") (citation omitted), *aff'd*, No. 21-1628, 2021 WL 5563951 (7th Cir. Nov. 29, 2021). Nevertheless, the Court has considered Plaintiff's unauthorized surreply arguments under the rule of leniency accorded to *pro se* plaintiffs previously discussed. To the extent that those arguments are relevant to any legal issues raised by the motion to dismiss (which Defendant disputes), the Court will address them in its discussion of those legal issues later in this report and recommendation.

C.    <u>**Choice of Law**</u>

Turning to the parties dispute over choice of law, Defendant argues the Court should apply Indiana law, while Plaintiff argues Illinois law should be applied. A federal court sitting in diversity applies the substantive law of the state where it sits, including the choice of law principles of that state. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). Therefore, the Court applies Indiana's choice of law rules. "Indiana … treats each independent claim separately for purposes of choosing applicable law." *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 357 (N.D. Ind. 2021). "Although Indiana allows different claims to be analyzed separately, it does not allow issues within those counts to be analyzed separately. For example, an Indiana court might analyze a contract claim and a tort claim independently but would not separately analyze and apply the law of different jurisdictions to issues within each claim." *Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004).

*1.    Statute of Limitations*

As an initial matter, the Court agrees with Defendant that Indiana courts view statute of limitations as procedural in nature,[15] and therefore "Indiana choice-of-law rules state that the

---

[15] "Under the *Erie* doctrine, federal courts in diversity cases or any case where state law supplies the rule of decision must apply state 'substantive' law but federal 'procedural' law." *Jacobs v. Thor Motor Coach, Inc.*, 474 F. Supp. 3d 987, 992 (N.D. Ind. 2020) (citing *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 301-02 (7th Cir. 2010), and *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79,

statute of limitations of the forum state, Indiana, will apply." *1st Source Bank v. Vill. of Stevensville*, No. 3:11-CV-205-TLS, 2012 WL 2308647, at *3 (N.D. Ind. June 18, 2012) (quoting *Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 717 F. Supp. 1374, 1385 (S.D. Ind. 1989) (citations omitted), *aff'd*, 917 F.2d 278 (7th Cir. 1990))); *see also Litsinger*, 536 F. Supp. 3d at 347 (quoting *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1157-58 (Ind. Ct. App. 2010))); *Lehman Bros. Holdings, Inc. v. Laureate Realty Servs., Inc.*, No. 1:04–CV–1432–RLY–TAB, 2007 WL 2904591, at *10 (S.D. Ind. Sept. 28, 2007) ("[F]ederal courts sitting in diversity in Indiana routinely apply Indiana's statute of limitations, even where … another stat[e]'s substantive law governs the underlying claims at issue."); *Miller v. Javitch, Block & Rathbone, LLP*, 397 F. Supp. 2d 991, 1002 (N.D. Ind. 2005) ("[U]nder Indiana law, statutes of limitation are procedural, rather than substantive, and are not subject to parties' choice of law disputes."). Plaintiff does not dispute this case law or make any argument against its application to Defendant's statute of limitations argument. *See Bonte v. U.S. Bank, NA.*, 624 F.3d 461, 466 (7th Cir. 2010) (court may conclude that a party concedes an argument to which it fails to respond). Accordingly, the Court finds that Indiana's statutes of limitations apply to Plaintiff's claims, even if Illinois law is the proper choice for resolving substantive issues regarding their sufficiency.

---

(1938)). Federal courts "deem[ ] both" statutes of limitations and choice-of-law rules "'substantive' from a federal perspective, no matter whether a state might characterize its own law different." *Id.* In other words, because statutes of limitations are considered substantive under federal law, *Erie* directs the Court to apply Indiana's rules concerning the statute of limitations, including its rule that statutes of limitations are procedural for purposes of a choice of law analysis. *See id.* (pursuant to federal law, "statutes of limitations, and any rules that are an 'integral part of the statute of limitations, such as tolling and equitable estoppel,' are part of the forum state's substantive law" (quoting *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006))).

### 2.      *Breach of Contract*

"In contract matters, Indiana follows the RESTATEMENT (SECOND) OF CONFLICT OF LAWS." *Reger v. Ariz. RV Ctrs., LLC*, 515 F. Supp. 3d 915, 930 (N.D. Ind. 2021) (citing *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 931 (Ind. Ct. App. 1999)). "If the parties have not made an effective choice of law, the court will consider the different contacts the parties have with the forums at issue. To identify the forum with the most intimate contacts relevant to a particular contract case, courts consider (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." *Id.* (internal quotation marks and citations omitted); *see also Mouser v. Keystone RV Co.*, No. 3:20-CV-494 JD, 2023 WL 2475234, at *3 (N.D. Ind. Mar. 13, 2023) (same). "If the place of negotiating the contract and place of performance are in the same state, the law of that state will usually be applied." *Reger*, 515 F. Supp. 3d at 930 (quoting *Bailey v. Skipperliner Indus., Inc.*, 278 F. Supp. 2d 945, 953 (N.D. Ind. 2003) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (1971))).

Defendant argues that Indiana has the most significant relationship with the alleged oral contract because Plaintiff alleges he lives in Indiana and was to work from his home in Indiana, only "periodically" traveling to Illinois. Defendant also argues that the alleged original contract was formed in Indiana when Plaintiff accepted Defendant's February 28, 2018 offer via email. [DE 34 at 15 (citing *Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983) (contract formed in Indiana when employee in Indiana accepted job offer over the telephone))]. Plaintiff counters that he "also worked in Illinois." [DE 36 at 11]. And the original contract, which Defendant contends was entered into in Indiana, allegedly was orally amended at a meeting in Illinois. *See* [DE 30 ¶ 7]. Defendant replies that, even though Plaintiff alleges he "also worked in

25

Illinois," his allegations show that the "bulk" of his alleged services were performed in Indiana. [DE 39 at 7]. Defendant further replies that the primary place of performance overrides the fact that the original contract (formed in Indiana) was later amended in Illinois. *See* [*id.* (citing *Zimmer, Inc. v. Sharpe*, 651 F. Supp. 2d 840, 849 (N.D. Ind. 2009) (where employment contracts were executed in both Louisiana and Indiana, Louisiana law applied because the suit concerned Louisiana residents' work in Louisiana)). Defendant also cites the RESTATEMENT, which states that the default law controlling a contract for the rendition of services is the law of "the state where the contract requires that the services, or a major portion of the services, be rendered." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 196 (1971). Although Defendant does not cite any Indiana case relying on §196 of the RESTATEMENT, he cites *Stonington Insurance Co. v. Williams,* 922 N.E.2d 660, 665 (Ind. Ct. App. 2010), for the proposition that "Indiana generally follows the RESTATEMENT ... when confronted with a choice of law issue."

Both parties have good arguments on the choice of law question. On Plaintiff's side are the facts that (1) Defendant is domiciled in Illinois; (2) the Center was incorporated in Illinois; (3) the amended contract, which is the contract being sued on, was negotiated at a meeting in Illinois; (4) the place of contracting was in Illinois where the amended offer was made and accepted; and (5) the place of performance, while mostly in Indiana, also occurred in Illinois at least in part. On Defendant's side are the facts that (1) Plaintiff is domiciled in Indiana; (2) the original alleged agreement was entered into in Indiana when Plaintiff accepted the job offer by email; (3) performance was primarily in Indiana where Plaintiff worked from home; and (4) the injury from Defendant's alleged breach was suffered in Indiana where Plaintiff should have received payment. Although it is a close call, the Court believes that the scales tip slightly in favor of applying Indiana law based on the facts that the contract was for the provision of services and was mostly performed by Plaintiff out of his home in Indiana (*see* RESTATEMENT (SECOND) OF

CONFLICT OF LAWS § 196 (1971)), and the injury from Defendant's alleged breach was suffered in Indiana where Plaintiff should have received the agreed-to salary. *See In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018 (7th Cir. 2002).

In the alternative, the Court does not need to resolve the conflict. Indiana courts follow the rule that, "[b]efore engaging in choice of law analysis … there must be a conflict between state laws 'important enough to affect the outcome of the litigation.'" *Litsinger*, 536 F. Supp. 3d at 357 (quoting *Simon,* 805 N.E.2d at 805). A "potential conflict" between the laws of two candidate states is sufficient for the court to engage in a choice of law analysis. *Id.* (citing *Stonington Ins. Co.,* 922 N.E.2d at 665). Although arguing for application of Illinois law, Plaintiff does not explain how Indiana law differs from Illinois law such that resolving the choice of law issue matters. In fact, he cites mostly Indiana cases to support his arguments. "It is well established in Indiana that if the law of another state is not pleaded or no steps are taken to require the court to take judicial notice of that law ... the court will presume the law in that jurisdiction is substantially the same as the law in Indiana." *Harvest Ins. Agency, Inc. v. Inter–Ocean Ins. Co.,* 492 N.E.2d 686, 691 (Ind. 1986). Because Plaintiff does not argue that a conflict between Indiana and Illinois law exists as to his breach of contract or unjust enrichment claims,[16] the Court recommends that Indiana law be applied to those claims.

---

[16] Indiana courts characterize unjust enrichment as "a quasi-contractual claim," and "therefore [it] also [is] analyzed under the choice of law rules for contracts." *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.,* 155 F. Supp. 2d 1069, 1084 (S.D. Ind. 2001) (citing cases), *rev'd in part on other grounds*, 288 F.3d at 1017-20; *see also Micro Data Base Sys. v. Dharma Sys*., 148 F.3d 649, 653 (7th Cir. 1998) (choice of law for restitution claim should be same as breach of contract claim (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 221, comment d (1971)); *Ormond v. Anthem, Inc*., No. 1:05-CV-1908-DFH-TAB, 2008 WL 906157, at *23 (S.D. Ind. Mar. 31, 2008) (applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 221 to unjust enrichment claim under Ohio choice of law rules).

### 3.   Fraud

Indiana typically follows the traditional *lex loci delicti commissi* choice of law rule for tort claims whereby the court will apply the substantive law of the place where the tort was committed. *See Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987). "[W]here the place of the tort bears little connection to the legal action," however, the Indiana Supreme Court "permit[s] the consideration of other factors such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered. *Id.* at 1073-74 (quoting Restatement (Second) of Conflicts of Laws § 145(2) (1971)).

The tort here is Defendant's alleged fraud, which Plaintiff argues occurred in Illinois during the March 2018 meeting when the parties entered into the oral agreement amending the original email agreement. [DE 36 at 11]. But "[t]he tort is said to have been committed in the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Hubbard Mfg. Co.,* 515 N.E.2d at 1073. And the last event necessary to make an actor liable generally takes place in the state where the loss occurred, *see Eby*, 455 N.E.2d at 626; *Armstrong v. Deere & Co*., No. 1:16-CV-844-TWP-MPB, 2017 WL 4168485, at *3 (S.D. Ind. Sept. 20, 2017) ("Under Indiana law, when determining which law governs tort claims, courts look to the law of the place where the injury or loss occurred."), *not* the place where the conduct that caused the harm occurred, *see In re Bridgestone/Firestone, Inc.,* 288 F.3d at 1016; *see also W. Smelting & Metals, Inc. v. Slater Steel, Inc*., 621 F. Supp. 578, 583 (N.D. Ind. 1985) ("a loss does not occur at the place where the misrepresentations are made"). In cases involving fraud and misrepresentation, the loss occurs where the plaintiff felt the harm, again not where the misrepresentations are made. *See W. Smelting & Metals, Inc.,* 621 F. Supp. at 583-84 (concluding that the place of loss for fraud and

28

misrepresentation is the place where "the economic impact of the misrepresentations" was suffered (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 377)).

The "harm" suffered by Plaintiff was providing services to Defendant for which he was not paid. He provided those services mostly in Indiana, and he suffered the financial loss in Indiana where he lived and did not receive payment. *See Palomar v. SMC Corp. of Am.*, No. 1:19-CV-4693-RLY-MJD, 2021 WL 5364150, at *6 (S.D. Ind. Sept. 27, 2021) ("Plaintiffs felt the harm where they were deprived of the money owed to them, which was in their home state."); *W. Smelting & Metals, Inc.,* 621 F. Supp. at 583-84 (the economic impact of alleged misrepresentation occurred in the state where the plaintiff "cashes the checks from the defendants and is thereby deprived of the money that is not paid"). In addition, "[t]his is not one of the 'exceptional' cases that would warrant breaking from Indiana's presumption that the court must apply the law of the place where the harm occurred." *Palomar,* 2021 WL 5364150, at *6 (citing *In re Bridgestone/Firestone*, 288 F.3d at 1016). Regardless, the Court notes that no conflict between Indiana and Illinois law has been shown as to the fraud claim, so choice of law again is not an issue and forum law can be applied.

## II.   Merits Issues

### A.   Statute of Limitations

To ascertain the applicable statute of limitations, the Indiana Supreme Court "identif[ies] the nature or substance of the cause of action and not of the form of the pleadings." *City of Marion v. London Witte Grp., LLC*, 169 N.E.3d 382, 393 (Ind. 2021). Indiana has a two-year statute of limitations for oral employment agreements:

> An action relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement,

> wages, or salary) must be brought within two (2) years of the date
> of the act or omission complained of.

Ind. Code § 34-11-2-1. The two-year statute applies even if the contract is partly oral and partly written.[17] The reason for the short two-year time limit is that "it is too easy for an employee to make claims against his employer based on alleged oral understandings and too hard for the employer to disprove these claims when they relate to the remote past." *Miller v. Int'l Harvester Co.*, 811 F.2d 1150, 1152 (7th Cir. 1987) (applying two year statute to promissory estoppel claim based on employer's alleged promise to pay employee a pension at age 55). "When an action concerns a privilege of employment and the employment was undeniably the result of an oral contract, I.C. 34–1–2–1.5 [now Ind. Code § 34-11-2-1[18]] controls." *Kemper v. Warren Petroleum Corp.,* 451 N.E.2d 1115, 1117 (Ind. Ct. App. 1983). Thus, Defendant argues and the Court agrees, the two-year limitations period applies not only to Plaintiff's breach of contract claim, but his unjust enrichment claim as well.[19]

---

[17] The statute of limitations on most written contracts is ten years. *See* Ind. Code § 34-11-2-11. Plaintiff does not argue that the longer statute of limitations for written contracts applies because the February email is a written contract. But if he did that argument would likely fail because, under Indiana law, "a contract partly written and partly oral is considered a parol contract." *Majd Pour v. Basic Am. Med., Inc.*, 512 N.E.2d 435, 438 (Ind. Ct. App. 1987).

[18] "Ind. Code § 34-1-2-1.5 is identical to its current version (Ind. Code § 34-11-2-1) in all material respects." *Arena v. ABB Power T & D Co.,* No. IP 99-0391 C-M/S, 2003 WL 21766560, at *5 n.4 (S.D. Ind. July 21, 2003).

[19] *See Knutson v. UGS,* No. 1:05-cv-1319-SEB-TAB, 2007 WL 2122192, at *5 (S.D. Ind. July 19, 2007) ("As for [plaintiff's] unjust enrichment claims based on the same three transactions, these too are subject to a two-year statute of limitations for actions arising from an oral employment agreement, Ind. Code § 34-11-2-1." (citing *Peake v. Int'l Harvester Co.*, 489 N.E.2d 102, 105-106 (Ind. Ct. App. 1986) (applying former version of Indiana's statute of limitations to unjust enrichment claim that turned on an oral employment agreement))), *aff'd sub nom. Knutson v. UGS Corp.*, 526 F.3d 339 (7th Cir. 2008); *Veerkamp v. U.S. Sec. Assocs., Inc.*, No. 1:04-CV-0049-DFH-TAB, 2006 WL 2850020, at *7 (S.D. Ind. Sept. 29, 2006) (applying the two-year statute to claims for conversion, unpaid wages, breach of an implied contract, and unjust enrichment (citing *Miller,* 811 F.2d at 1151-52).

The Seventh Circuit has said that "[w]hen a defendant charges noncompliance with the statute of limitations, [d]ismissal under Rule 12(b)(6) [is] irregular, for the statute of limitations is an affirmative defense." *Chi. Bldg. Design, P.C. v. Mongolian House, In*c., 770 F.3d 610, 613 (7th Cir. 2014) (internal quotation marks and citation omitted). "Because complaints need not anticipate and attempt to plead around defenses, a motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Id.* at 613-14 (internal quotation marks and citations omitted); *see also Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Plaintiff filed this lawsuit on May 5, 2022. According to Defendant, it is plain from the amended complaint that Plaintiff's claim for $170,000 in unpaid salary accrued, at the latest, in July 2019, when the Posner Center was dissolved and Plaintiff had not yet received any salary payment. Accordingly, Defendant asserts, the statute of limitations expired in July 2021, more than nine months before suit was filed.

Plaintiff does not dispute that the applicable statute of limitations is the two-year statute for oral employment contracts or even that he filed suit more than two years after his breach of contract and unjust enrichment claims accrued. Instead, he argues that the running of that statute was tolled by Defendant's fraudulent concealment. [DE 36 at 12]. Before getting to the tolling issue, however, the Court must consider, apart from Plaintiff's fraudulent concealment argument, whether Defendant has shown entitlement to dismissal on the pleadings based on the statute of limitations. *See Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (court must hold the defendant to his burden under Rule 12(b)(6) of showing "entitlement to dismissal," even if the plaintiff fails to "oppose" the dismissal motion).

1.    *Accrual Date*

"The determination of when a cause of action accrues is generally a question of law." *Franciscan Alliance, Inc. v. Padgett*, 180 N.E.3d 944, 950 (Ind. Ct. App. 2021). "The party pleading a statute of limitation bears the burden of proving the lawsuit was commenced beyond the statutory time allowed." *Id.* Defendant argues that the two-year clock begins to run when the plaintiff can show all the elements of a contract cause of action, including damages. [DE 34 at 16]; *see Franciscan Alliance,* 180 N.E.3d at 951 ("a cause of action accrues when a wrongfully inflicted injury causes some ascertainable damage, though it is not necessary that the extent of damage be known or ascertainable"). The statute itself phrases the applicable accrual rule differently: it states that the two-year limitation period begins to run on the "date of the act or omission complained of." Ind. Code § 34-11-2-1; *see Cmty. State Bank Royal Ctr. V. O'Neill*, 553 N.E.2d 174, 177 (Ind. Ct App. 1990) (stating that "[a] plain reading of the statute" indicates that the two-year clock begins to run on "the date of the act or omission complained of"). Under a third formulation, known as the discovery rule, Plaintiff's claims for non-payment of a salary "accrued when he knew, or in the exercise of ordinary diligence, could have discovered, that his employment contract had been breached." *Meisenhelder v. Zipp Express, Inc.*, 788 N.E.2d 924, 930 (Ind. Ct. App. 2003) (holding "that the discovery rule is applicable to actions for breach of a written contract under I.C. § 34–11–2–11"); *see also Williams v. U.S. Steel*, 877 F. Supp. 1240, 1245 (N.D. Ind.) (applying the discovery rule in a suit by an employee seeking to enforce an arbitration award of back-pay to hold that the two-year period began to run on the date that the employee received his backpay check that did not include the full amount to which the employee believed he was entitled), *aff'd*, 70 F.3d 944 (7th Cir. 1995).

Generally, the occurrence accrual rule written in the statute would trump the discovery accrual rule. *See Carroll v. BMW of N. Am., LLC*, 553 F. Supp. 3d 588, 612 (S.D. Ind. 2021). But

on the facts of this case, it appears that all the potentially applicable accrual rules lead to the same result, with accrual tied to the date on which Plaintiff's salary was *due* but not paid, because that is the date on which (1) Plaintiff sustained ascertainable damage; (2) the act or omission complained of (i.e., failure to pay salary) occurred; and (3) Plaintiff knew or should have known the oral employment contract was breached. Defendant argues that the accrual date is, at the latest, in July 2019, but it is unclear from the amended complaint when Plaintiff's $120,000 yearly compensation [DE 30 ¶ 10] was due to be paid. Defendant asserts without further explanation that Plaintiff's allegation he "was to be paid a yearly lump-sum salary that would 'roll over after a year's time' mean[s] that he would have been *owed* $120,000 in February 2019," and that, "[l]ikewise, [Plaintiff] would have been *owed* the full $170,000 he claims no later than July 2019, when the Center closed and his employment ended." [DE 34 at 17 (emphasis added) (citing DE 30 ¶¶ 10, 24)]. But Defendant does not explain how he reached the conclusion that Plaintiff was *owed* the stated amounts *by* the stated dates, given the allegation in the amended complaint that Plaintiff would have to wait "at least a year" for his salary.

According to Defendant, the amended complaint alleges that he "*agreed to perform at a certain time*," but Defendant describes that "certain time" simply as "*the date the lump-sum payments were due*." [DE 34 at 17 n.7 (emphasis added)]. Defendant can say no more than that because the amended complaint does not give a specific date for when the lump sum payments were due. Instead, it alleges only that Plaintiff agreed to "wait at least a year before the Defendant Posner could pay Plaintiff's compensation in a lump sum." [DE 30 ¶ 12]. "[*A*]*t least* a year" expresses certainty regarding the earliest possible date on which payment would be required; but it does not convey any promise as to when, after a year had expired, Plaintiff had a right to payment. With only the "at least a year" allegation to go on, the Court cannot say for certain that Plaintiff was "owed $120,000 in February 2019," or that Plaintiff "would have been owed the full

$170,000 he claims no later than July 2019, when the Center closed and his employment ended," as Defendant argues.

A potentially relevant case not cited by either of the parties is *Lightle v. Harcourt Management Co.,* 634 N.E.2d 858 (Ind. Ct. App. 1994). The defendant in that case hired the plaintiff as superintendent for a construction project with a promise of a 30 percent bonus of savings realized if construction on the project was completed at a cost less than the original budget. *Id.* at 859. The parties did not discuss a date for payment of the bonus. *Id.* The project was completed a year later at a cost savings. *Id.* More than two years after that, the plaintiff asserted a claim against the defendant for payment of the promised bonus. *Id.* at 859-60. The defendant moved for summary judgment, arguing that the plaintiff's claim was barred by the two-year statute of limitations for employment contracts not in writing. *Id.* at 860. The court said the issue to be decided was how to "determine when the statute of limitations begins to run on an unwritten promise to pay money where there is no definite time for payment." *Id.* at 861. The court first rejected the plaintiff's argument that the statute of limitations did not begin to run until he demanded payment, explaining that such a rule would "effectively place [the plaintiff's] claim beyond the reach of any statute of limitations for an unwritten promise to pay money." *Id.* at 861 (citing *Scates v. State,* 178 Ind. App. 624, 626, 383 N.E.2d 491, 493 (1978) ("[T]he statute of limitations will not await the pleasure or convenience of the plaintiff."))).[20] Instead, the court agreed with an earlier Indiana case that had confronted the same question and adopted the rule that "the applicable statute of limitations did not begin to run until a reasonable time for performance had lapsed. Further, the court determined that the question of reasonable time is one to be

---

[20] In this respect, *Lightly* is consistent with Defendant's argument that the accrual date here was *not* the date on which Plaintiff first demanded payment (the February 22, 2022 demand letter). *See* [DE 34 at 17 n.7].

determined by the trier of fact." *Id.* at 862 (quoting *Rees v. Heyser,* 404 N.E.2d 1183 (Ind. App. 1980) (quoting *Stromblad v. Wilderness Adventurer, Inc.,* 577 P.2d 918 (Okl. App. 1978))).[21]

Applying this rule in the same manner in which the *Lightle* court did, Plaintiff knew he was owed a total of $170,000 on July 23, 2019, the date that the Center was dissolved and Plaintiff alleges his employment was terminated. [DE 30 ¶ 15]. Thus, if the two-year statute of limitations began to run on that date, it would have expired two years later, on July 23, 2021. The present action was filed on May 5, 2022, a little over nine months "after the statute of limitations would have expired without the rule of reasonable time announced in *Rees*." *Lightle*, 634 N.E.2d at 862. Therefore, the question if the rule in *Lightle* applies "is whether [nine] months was a reasonable time for Defendant to perform on the unwritten agreement, tolling the running of the statute of limitations for that time period." *Id.*

It is worth noting that Defendant does not challenge the plausibility of Plaintiff's allegation that the oral agreement was that Plaintiff would have to wait "at least a year" to get paid. Accepting that allegation as true, the date on which Plaintiff's claims for breach of contract and unjust enrichment accrued cannot be resolved on the allegations of the amended complaint. *See Rees,* 404 N.E.2d at 1188.[22] To be sure, Plaintiff may face problems of proof, and the factfinder might not

---

[21] Defendant cites *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48 (Ind. Ct. App. 1986), for a different rule. *Licocci* noted that "[w]here no time is fixed for payment for work, the legal inference under the common law is that payment is to be made upon completion of the work." *Id.* at 54 (citing 17A C.J.S. *Contracts* § 502(1)(d)(1963)). In making this statement, however, *Licocci* was not addressing any issue under the two-year statute of limitations. In addition, the common law default rule would seem to be contrary to the alleged agreement that Plaintiff had to wait "at least a year," meaning Defendant promised to pay Plaintiff a salary but not until *after* the completion of work. And it would not make sense for the Court to insert a default common law rule into a contract that is inconsistent with other express contractual terms.

[22] *See also Golsen-Dunlap v. Elan Motorsports Techs., Inc.,* No. 1:04-CV-00104-LJM, 2012 WL 3027947, at *7 (S.D. Ind. July 24, 2012) (citing *Lightle* for the proposition that "[w]hen the contract includes payment provisions without a specified time for payment, the statute of limitations does not begin to run until a 'reasonable time for performance' has lapsed," and denying

buy that Defendant ever made the promise to personally pay Plaintiff's salary as alleged in the amended complaint. But for present purposes, the Court must accept the truth of those allegations. And given the lack of clarity in the amended complaint as to the exact timing of when Defendant promised to pay Plaintiff's salary, the accrual question cannot be decided without factual development of the record. The Court notes that it has broad discretion to structure discovery, including ordering that discovery proceed under a phased approach. The parties should be prepared to discuss at the first scheduling conference in this matter whether such an approach would be appropriate in this case, with phase one limited to the potentially dispositive issue of when Plaintiff's claims for breach of contract and unjust enrichment accrued.

Accordingly, the Court recommends that Defendant's motion to dismiss based on the two-year statute of limitations be denied. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (reversing a district court's dismissal on statute of limitation grounds because knowing when the cause of action accrued required "factual determinations not appropriately made at the pleadings stage"); *Mauger v. Metropolitan Life Ins. Co.*, 589 F. Supp. 3d 954, 959 (N.D. Ind. 2022) ("Because it is unclear before discovery when the statute of limitations began to toll in this case, the Court denies [the defendant's] motion to dismiss Count I.").

---

summary judgment where "the parties have introduced evidence about a previous course of payment and the parties' understanding of when payment would occur, evidence which could result in a finding for either party on the statute of limitations issue"); *Cmty. State Bank Royal Ctr.*, 553 N.E.2d at 177 (after holding that statute of limitations ran from the date that an attorney sent a bill for services rendered, court acknowledges that the law implies that a contract will be performed within a reasonable time if the time for performance is not specified in the contract, and concluding that a delay of one year in rendering a bill for legal services was not unreasonable as a matter of law).

### 2. *Fraudulent concealment*

Because the Court concludes that Defendant has not shown that the amended complaint "plainly reveals that [the] action is untimely under the governing statute of limitations," *Chi. Bldg. Design, P.C.,* 770 F.3d at 614, the issue of fraudulent concealment does not necessarily need to be addressed. Nevertheless, if the issue were to remain pertinent, the Court would recommend that Plaintiff's fraudulent concealment argument be rejected.

"Fraudulent concealment is an equitable doctrine which operates to prevent a defendant from asserting the statute of limitations as a bar to a claim where the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim. When this occurs, equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay." *Meisenhelder*, 788 N.E.2d at 931 (internal citation omitted). "Under this equitable exception, ... a plaintiff must institute an action within a reasonable time after he discovers information which would lead to discovery of the cause of action." *Id.* The party alleging fraudulent concealment bears the burden to prove that tolling applies. *Carrol v. BMW of N. Am., LLC*, 553 F. Supp. 3d 588, 614 (S.D. Ind. 2021).

Plaintiff claims fraudulent concealment based on the February 2022 letter sent by Defendant's attorney in response to Plaintiff's demand letter in which Defendant's attorney stated: "What you clearly do not know is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's disease." [DE 36 at 12 (quoting DE 36 at 34)]. Plaintiff also cites the March 2022 email from Defendant's wife, in which she too referenced Defendant's mental condition "[d]uring the time [Plaintiff] [said] [he] entered into a contract with [Defendant]." [*Id.* at 13 (quoting DE 36 at 36)]. According to Plaintiff, these communications show that Defendant concealed his mental condition from Plaintiff.

Whether the alleged concealment states a claim for fraud is a separate question discussed later in this report and recommendation. But as a matter of law, it cannot constitute fraudulent concealment for purposes of tolling the statute of limitations. Indiana's fraudulent concealment doctrine tolls a statute of limitations only "while a person liable to an action conceals *the cause of action* from the party entitled to bring it." *Gittings v. Deal*, 109 N.E.3d 963, 972 (Ind. 2018) (citing Ind. Code § 34-11-5-1) (emphasis added). Thus, a claim of "fraudulent concealment must fail as a matter of law" if, through reasonable diligence, the plaintiff could have discovered the cause of action despite the concealment. *Kaken Pharm. Co. v. Eli Lily & Co*., 737 F. Supp. 510, 516 (S.D. Ind. 1989); *see Meisenhelder*, 788 N.E.2d at 931 (where a plaintiff has "knowledge necessary to pursue a claim," the doctrine does not apply). In particular, the doctrine will not save a contract claim where a defendant has not "concealed from [the plaintiff] the fact that the contract had been breached or prevented him from obtaining the knowledge necessary to pursue a claim, i.e. that the contract had been breached." *Meisenhelder*, 788 N.E.2d at 931. Defendant's alleged failure to disclose his mental health status when the contract was formed could not have hidden from Plaintiff the fact that the contract had been breached when payment of the alleged promised salary was not forthcoming more than a year later.

Plaintiff also asserts that Defendant's failure to list his name as an "Officer, Director, Trustee or Key Employee" on the Center's tax form "demonstrates that Defendant defrauded Plaintiff when he hired him." [DE 36 at 23 n.8]. Plaintiff asserts that this "fraud" was recently discovered by him, and "further tolls the statute of limitations. [*Id*.]. Plaintiff also cites to the other instances of alleged "fraud" he sets forth in detail in his motions for judicial notice. [*Id*.]. But none of the alleged fraud in the judicial notice motions prevented Plaintiff from knowing that the alleged oral employment contract had been breached by Defendant's non-payment of Plaintiff's salary.

Therefore, those fraud allegations are not a basis for tolling the statute of limitations under the doctrine of fraudulent concealment.

### B.   Personal Liability Under the Alleged Contract

Defendant argues that Plaintiff's breach of contract claim fails as a matter of law for the additional reason that the email correspondence attached to the amended complaint shows on its face that Plaintiff was hired to be an employee of the Posner Center, and so only the Center, not Defendant personally, is liable for the unpaid salary. Defendant cites the rule that "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998). Defendant therefore argues that the Court "need not credit Plaintiff's allegations" that are inconsistent with the February 25, 2018 email exchange.

By way of additional background, the original complaint[23] alleged that, on March 19, 2018, Defendant orally agreed to increase Plaintiff's salary from $80,000.00 to $120,000.00, "which was

---

[23] Plaintiff disputes whether it is proper to even mention his previous allegations in the original complaint. *See* [DE 36 at 10 n.2 (stating that Defendant's "repeated references to Plaintiff's original complaint … are inappropriate and borderline frivolous" because, "'[w]hen an amended complaint is filed, the prior pleading is withdrawn and the amended pleading is controlling.'" (quoting *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008))]. The Seventh Circuit has explained, however, that "[a]n amended pleading does not operate as a judicial *tabula rasa*," and that, "'[u]nder some circumstances, a party may offer earlier versions of its opponent's pleadings as evidence of the facts therein.'" *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1048–49 (7th Cir. 2019) (quoting *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 736 (7th Cir. 2002)). Furthermore, "[a]bsent a claim that there is a plausible, good-faith basis to challenge the legitimacy of [a prior complaint], the court is entitled to take judicial notice of a complaint and its contents." *Id.* (internal quotation marks and citation omitted). Thus, while the allegations in the amended complaint control for purposes of Defendant's motion to dismiss, the Court may include a discussion of the original complaint's allegations in providing relevant background to the motion under advisement. That having been said, as discussed above, Plaintiff does have a point that Defendant's argument for dismissal of the breach of contract claim based on Plaintiff having a contract with the Center rather than with Defendant does proceed at times as if the old allegations in the original complaint, rather than the new allegations in the amended complaint, were controlling.

to be paid by Defendant … in a lump sum payment after a year of service." [DE 1 ¶ 7]. The original complaint alleged that Defendant told Plaintiff "not to worry about being paid his $120,000.00 a year compensation … as … payment of Plaintiff's services … would be the responsibility of Defendant … irrespective of whatever financial condition … the Posner Center would find itself in, and that Defendant … *guaranteed* that he would *personally* pay … the $120,000.00 per year compensation." [*Id.* ¶ 8 (emphasis added)]. Defendant filed a motion to dismiss the original complaint in which he argued that the alleged personal guarantee of Plaintiff's salary from Plaintiff's employment with the Posner Center was unenforceable under Indiana's statute of frauds. *See* Ind. Code § 32-21-1-1 (providing that any promise "to answer for the debt, default, or miscarriage of another" must be in writing). Plaintiff then filed the amended complaint, and significantly changed the allegations regarding the terms of the March 2018 oral amendment to the February 2018 agreement in a way that avoids the statute of frauds problem raised by Defendant's first motion to dismiss. The amended complaint omits any reference to a personal guarantee of Plaintiff's salary, and instead alleges, as previously discussed, that on March 19, 2018, Defendant and Plaintiff met in person at which time Defendant told Plaintiff:

> that the previous statements from the initial agreement regarding money raised by the Posner Center to pay Plaintiff's salary was no longer in play since Plaintiff would be providing advisory services to Defendant Posner in the Defendant's personal ventures in addition to serving as executive director of the Posner Center, and that because Plaintiff would be working for Defendant Posner in Defendant Posner's personal capacity regarding Defendant Posner's personal affairs, that the responsibility for payment of Plaintiff's services to Defendant Posner would be the personal responsibility of Defendant Posner to pay and not the responsibility of the Posner Center to which Plaintiff agreed and to which Plaintiff and Defendant shook hands.

[DE 30 ¶ 9].[24]

The Court agrees with Defendant that the February 25, 2018 email exchange, reproduced earlier in this report, clearly states that Defendant's offer of employment was to work for the Center. *See* [DE 30-1 at 2 ("I'd like to suggest a new role for your [sic] *in the company*[.]") (emphasis added)]; *see also* [DE 30 ¶ 5 (alleging that the February 2018 email offer was to work as "executive director *of the Posner Center*") (emphasis added)]. The email also makes clear that Plaintiff's salary would be paid by the Center. *See* [*id.* ("You would receive a substantial salary … though I can't specify salary yet because *the company* has as yet no money. Within weeks or perhaps days, however, … I ought to be able to raise more than $1 million through donations. … I should be able to pay you at least $80,000 a year and I hope more." (emphasis added)). The Court also agrees with Defendant that, as to the terms and conditions of the original February 25, 2018 agreement, the email exchange attached to the amended complaint trumps any contrary allegations regarding the identity of Plaintiff's employer and source of funds to pay his salary. The email exchange unambiguously shows that the original February 25, 2018 agreement was for Plaintiff to be employed and paid by the Center, and Defendant cannot be held personally liable under that agreement. *See Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1231 (Ind. 1994) ("It is a matter of black-letter law that where the agent acted within the scope of the agent's authority in signing a contract on behalf of the principal, the remedy of one seeking to enforce the contract is against the principal and not the agent. As a result, corporate officers and shareholders are

---

[24] Defendant alludes to a different statute of frauds issue raised by Plaintiff's new allegation that Plaintiff would have to wait "at least a year" to receive his salary: Indiana law provides that an "agreement that is not to be performed within one (1) year from the making of the agreement" must be in writing to be legally enforceable. *See* Ind. Cod § 32-21-1-1(b)(5); [DE 34 at 19 n.11]. But since Defendant does not develop the argument further, the Court will not address it at this time.

generally not personally liable for the contractual obligations of the corporation." (citations omitted)).

The problem with Defendant's argument is that the amended complaint alleges the parties agreed in March 2018 to orally amend the February 25, 2018 agreement to give Plaintiff additional duties as Defendant's personal advisor with a promise that Defendant would personally pay for Plaintiff's entire salary out of his own funds (even though, according to the allegations, Plaintiff continued to be employed as executive director of the Center). Defendant acknowledges that, in amending a complaint as of right pursuant to Rule 15(a), Plaintiff was entitled to alleges new facts even if they are inconsistent with the facts alleged in the original complaint. *See* [DE 34 at 20 n.12]. (That is not necessarily the case when a plaintiff moves under Rule 15(b) for leave of court to amend the complaint, as discussed *infra* in Section II,D,3). And Plaintiff correctly points out that, once the amended complaint is filed, its allegations supersede the allegations in the original complaint. *See Johnson,* 515 F.3d at 780. Nevertheless, Defendant argues the Court need not credit the amended complaint's allegations about Defendant asking and Plaintiff agreeing to work for Defendant personally because they contradict the February 25, 2018 email exchange. But that argument does not carry the day on a motion to dismiss. Plaintiff alleges that Defendant promised to personally pay his salary as part of the March 2018 agreement, not the February 25, 2018 agreement, and that allegation is assumed to be true at this stage of the proceedings. Therefore, Plaintiff's new allegation of a March 2018 contract with Defendant personally is not inconsistent with the email exchange showing the February 25, 2018 agreement.

Moreover, the fact that Defendant was the President of the Center, *see* [DE 34-1 at 5], at the time he allegedly entered into the March 2018 agreement with Plaintiff does not by itself render implausible Plaintiff's new allegation that his contract was with Defendant, not the Center. Plaintiff cites *Tolliver v. Mathas*, 538 N.E.2d 971 (Ind. App. Ct. 1989), in which the plaintiff

reached an agreement with the president of a company to purchase certain shares of stock for which the president promised the plaintiff would be reimbursed by the company. *Id.* at 973. The plaintiff testified that he knew the president was speaking on behalf of the company when he made the promise of reimbursement, but he also testified that the president told him "that he would pay me after the company became his; … he had agreed to pay the $65,000 for the stock … he made it very clear to me that 'I'm a man of my word. If I tell you that I'm going to do something, I'm going to do it.'" *Id.* at 976. The jury apparently interpreted the president's statements as a promise to personally pay the plaintiff, and the court held that the jury's view of the evidence was supported by the plaintiff's testimony. *Id.* ("Based upon all the evidence, we believe the jury could have concluded that Tolliver spoke on his own behalf."). Even if *Tolliver* does not involve "precisely the identical fact situation" as this case, as argued by Plaintiff [DE 36 at 17], it is close enough to say that Plaintiff's allegations survive a motion to dismiss. Defendant argues that, since Plaintiff contends "[t]here is no contract between [him] and the Center" [DE 36 at 15], "there is no basis for [Defendant] to be liable as the Center's agent." [DE 39 at 11]. But that is the precise argument rejected in *Tolliver*, where the president argued that the company ratified the contract thereby terminating his liability as an agent, and the court responded: "Tolliver's personal liability flowed from his statements that *he* would pay [the plaintiff], not from his alleged status as an agent acting without authority" 538 N.E.2d at 976 (emphasis in original).[25]

---

[25] Defendant also argues that *Tolliver* stands for the proposition that corporate officers and agents may be personally liable if they actively participate in the corporation's tort. [DE 39 at 10 n.5]. But that was only an alternative basis for the court's decision. *See Tolliver,* 538 N.E.2d at 976 ("*Furthermore*, even if Tolliver had been acting as the agent of [the company] at the time he contracted with [the plaintiff], the tortious nature of his conduct prevents him from escaping personal liability." (emphasis added)).

Finally, Defendant points to Plaintiff's February 2022 demand letter, in which Plaintiff claimed that he had been hired "to work as the executive director of the Posner Center of Justice for Pro Se's at a yearly salary of $120,000" [DE 34-1 at 27], without mentioning being employed by Defendant himself as a personal advisor. The demand letter does indeed appear to contradict Plaintiff's allegation that he was hired in March 2018 to work for Defendant personally. But Defendant is incorrect that the Court must credit the demand letter over Plaintiff's contrary allegations. The Court could do so only if the demand letter formed the basis of Plaintiff's contract claim. It does not. The demand letter was written after the alleged contract was formed. Therefore, it amounts to no more than evidence supporting "a defense to the well-pled allegations in the complaint," which, on a motion to dismiss, does not override the factual allegations themselves. *Khoja*, 899 F.3d at 1002. In short, the conflict between Plaintiff's demand letter and Plaintiff's inconsistent allegations as to the terms of the oral agreement cannot be resolved at the motion to dismiss stage.

### C.   *Contract Terms*

Defendant's final argument for dismissal of the breach of contract claim is that the alleged March 2018 oral agreement is unenforceable because the parties never formed a binding agreement on the terms of Plaintiff's compensation or nature of his services.

The analytical framework for an oral contract is the same as a written one. There must be an offer, acceptance, and consideration. *Tolmie v. United Parcel Serv., Inc.*, 930 F.2d 579, 581 (7th Cir. 1991) (applying Illinois law). "Under Indiana law, and in fact the law of every jurisdiction, a meeting of the minds on all essential terms must exist in order to form a binding contract." *Mays v. Trump Ind., Inc.*, 255 F.3d 351, 357 (7th Cir. 2001). "Only essential terms need be included to render a contract enforceable." *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016). The essential terms for employment contracts include: (1) the place of employment; (2) the

period of employment; (3) the nature of the services the employee is to render; and (4) the compensation the employee is to receive. *Majd Pour*, 512 N.E.2d at 439. To be valid and enforceable, the essential contract terms "must be reasonably definite and certain." *Allen v. Clarian Health Ptners., Inc*., 980 N.E.2d 306, 309 (Ind. 2012) (internal quotation marks and citation omitted); *see also Wenning v. Calhoun*, 827 N.E.2d 627, 629 (Ind. Ct. App. 2005) ("In order to be enforceable, a contract must be reasonably definite and certain in its material terms so that the intention of the parties may be ascertained."). "Only 'reasonable' certainty is necessary; absolute certainty in all terms is not required." *Jernas*, 53 N.E.3d at 445 (internal quotation marks and citation omitted). The existence of a contract is a question of law. *Id.*

Defendant argues that the parties did not reach a sufficiently definite agreement to make the contract enforceable on two essential terms of the oral employment agreement: compensation and job duties. But Defendant does not cite any case in which a claim for breach of an oral agreement was dismissed on the complaint. The Court's own research found several such cases outside this jurisdiction, but the missing information that the court said was crucial is information Plaintiff *does* allege here. For example, in *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996), the court affirmed dismissal of a breach of oral contract claim where the complaint failed to allege a start date or agreed salary. In *Kolbe v. CZS Holdings LLC*, No. 20 C 6886, 2021 WL 4864143, at *4 (N.D. Ill. Oct. 19, 2021), the court dismissed where there were "zero factual allegations to identify when the oral offer and acceptance took place." And in *Shelton v. Ernst & Young, LLP*, 143 F. Supp. 2d 982, 992 (N.D. Ill. 2001), the court dismissed a breach of oral contract claim where the plaintiff failed to plead the duration of the agreement or adequate consideration. In addition, these cases were decided under Illinois law, pursuant to which allegations of oral employment contracts are scrutinized more closely. *See Tolmie*, 930 F.2d at 581 ("[O]ral employment contracts, at least under Illinois law, are viewed with more skepticism than their

formal, written counterparts. … In particular, not just any offer will support an oral employment contract. On the contrary, the offer must encompass terms that are 'clear and definite,'" a "requirement … [that] prevents employers from incurring contractual liability for informal statements that were never intended to be anything more than expressions of long continuing good will and hope for eternal association.") (internal quotation marks and citations omitted)). Defendant has not pointed to any similar Indiana law.

In arguing that the parties never reached an enforceable agreement on the issue of salary, Defendant cites to the February 25, 2018 email exchange, in which Defendant stated that once the Center raised enough money, it "should be able to pay at least $80,000 a year and [Defendant] hope[d] more." [DE 30-1 at 2]. Defendant argues that, at most the email shows that the offer was contingent on the Center raising enough money and that the salary amount was merely a prediction of what the Center would be able to pay. But Defendant once again is ignoring the March 2018 agreement, whereby Defendant allegedly offered to pay Plaintiff $120,000 and removed the contingency regarding the Center raising enough money. Defendant suggests that the Court can infer that the same contingency applied to the March 2018 agreement because the amended complaint does "not allege that the [$120,000] figure was anything more than what the $80,000 figure was in the February 2018 email—an estimate of what a possible future salary might be." [DE 34 at 22]. But that argument fails to give Plaintiff the benefit of all favorable inferences. In particular, Plaintiff alleges that Defendant promised to pay the salary himself, which would mean that the offer was in fact different from the February 2018 email, not just in terms of the salary amount but also specifically in that it no longer depended on the Center raising sufficient funds.

Similarly, Defendant once again asserts that the demand letter overrides Plaintiff's contrary allegations in the amended complaint that the March 2018 oral agreement was for him to work for Defendant personally, and, on that theory, argues the Court can ignore the allegation that

Defendant told Plaintiff that "the previous statements from the initial agreement regarding money raised by the Posner Center to pay [Plaintiff] salary [were] no longer in play." [DE 34 at 22]. The Court rejected Defendant's theory for dismissal based on the demand letter in the previous section, and therefore Defendant's similar argument on the present issue must be rejected as well. The theory may have merit after discovery, but disputed issues of fact prevent dismissal under Rule 12(b)(6).

Defendant makes one last argument on salary, which is that the amount of Plaintiff's compensation was too indefinite for the agreement to be enforceable because Plaintiff does not allege what portion of the $120,000 was for his work at the Center and what portion if any was for the alleged "personal services." [DE 34 at 23]. It is not clear on the current record, however, that apportionment would be required given the allegation, accepted at true at this stage of the proceedings, that Defendant promised to pay the entire $120,000. While that allegation might strike some as incredible, it is assumed true on a motion to dismiss. *See Iqbal,* 556 U.S. at 696 ("[A] court must take the allegations as true, no matter how skeptical the court may be. The sole exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel. That is not what we have here.") (internal citations omitted).

Finally, Defendant argues that the scope of Plaintiff's advisory services is also too indefinite to form a binding contract. The Court agrees that the amended complaint does not provide enough detail on this point for the Court to conclude as a matter of law that an enforceable agreement was formed. But there is sufficient information about the purported advisory services to *allege* an enforceable oral agreement, and that is all that is required at this point. Defendant cites *Grant v. Van Natta*, No. 1:10-CV-01220-MJD, 2013 WL 466212, at *14 (S.D. Ind. Feb. 7, 2013), but, significantly, that case was decided on summary judgment.

All this is not to say that Plaintiff's allegations don't lead to many more questions than they answer, or that Plaintiff's specific allegations about salary and the promise of payment by Defendant notwithstanding job duties that still entailed work for the Center paint an entirely credible story. But those are the facts alleged, nonetheless. And "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Twombly*, 550 U.S. at 556; *see also id.* at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"). The plausibility rule only requires that the pleader allege sufficient factual content to put the defendant on notice of what the claim is and to raise the right to relief above the speculative level. If, after discovery, the evidence shows, for example, that the terms of the alleged agreement as to timing or source of funding for the asserted salary, or Plaintiff's job duties, are too vague for a Court to enforce, then Defendant is free to raise that issue on either summary judgment or at trial. *See, e.g., Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 230 (S.D.N.Y. 2021) (dismissing breach of oral contract claim on summary judgment where "[t]he plaintiff did not delineate any of the specific terms of the putative oral contract at her deposition or in the affidavit that she submitted in opposition to the defendants' motion for summary judgment," but "simply described the oral contract as 'a mutual agreement that [the plaintiff] would move to New York and work for Zip'"); *Irving v. PAE Gov't Servs., Inc.*, 249 F. Supp. 3d 826, 837 (E.D. Va. 2017) (holding that unenforceability argument "is unavailing at the motion to dismiss stage, as the plaintiff's factual allegations must be accepted as true and all reasonable inferences must be granted in plaintiff's favor"); *Zucker v. Katz*, 708 F. Supp. 525, 532 (S.D.N.Y. 1989) ("In the present action, the complaint generally identifies essential material terms such as the subject matter, the time for performance and also the consideration provided. Whether

48

these terms are too indefinite to be enforced is an issue better left for summary judgment or trial, at which time the Court can better consider whether the parties themselves meant to make a contract and to bind themselves." (internal quotation marks and citation omitted)).

    **D.**    <u>**Fraud Claim**</u>

       *1.*    *Duplication*

Defendant's first argument for dismissal of Plaintiff's fraud claim (Count II) is that it is duplicative of Plaintiff's breach of contract claim. "Indiana law requires a claimant who brings both a breach of contract and a fraud claim to prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *Mauger*, 589 F. Supp. 3d at 962 (internal quotation marks and citations omitted). "While breaches of contract will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent, the claimant must nonetheless prove the independent tort to recover punitive damages." *Id.* (internal quotation marks and citations omitted).

Plaintiff's fraud claim is based on the allegations that, at the time the parties entered into the March 2018 oral amendment to the February 25, 2018 employment agreement, Defendant misrepresented that (1) he was in general good health and had no concerns about anything that would potentially prevent him from honoring the terms of the employment agreement, *see* [DE 30 ¶¶ 28-32]; and (2) he could not have used money from his joint savings account with his wife to pay Plaintiff's compensation, *see* [*id.* ¶¶ 33-35]. Assuming that these allegations plausibly allege a separate tort of fraud, Indiana law still requires Plaintiff to allege facts showing that the fraud "resulted in injury distinct from that resulting from the breach." *Mauger*, 589 F. Supp. 3d at 962. And, as Defendant correctly points out, no facts are alleged that would plausibly suggest that either the alleged misrepresentations about his health or the alleged misrepresentations about the source of funds to pay Plaintiff's salary caused Plaintiff any injury separate and distinct from Plaintiff's

injury from the alleged breach of contract. As the amended complaint alleges, the only consequence of those misrepresentations was that Plaintiff did not get paid for his services. *See* [DE 30 ¶ 30 (alleging that Defendant's misrepresentations about his health resulted in Defendant being "unjustly enrich[ed]" by receiving "Plaintiff's services"); *id.* ¶ 35 (alleging that Defendant's misrepresentation about the source of funds for payment resulted in "free services to the Defendant from Plaintiff")]; *see also* [*id.* at 11 (prayer for relief requesting judgment in the sum of $170,000, plus costs, fees, and other expenses)]. Thus, the amended complaint's allegations are insufficient to allege a fraud claim that is separate and distinct from the breach of contract claim. *See Pattee v. Nexus RVs LLC*, No. 3:19-cv-162 JD, 2022 WL 834330, at *16 (N.D. Ind. Mar. 21, 2022) (dismissing fraud claims on summary judgment as duplicative); *Mauger*, 589 F. Supp. 3d at 962 (same, only dismissing on motion to dismiss).

In opposing Defendant's motion to dismiss the fraud claim, Plaintiff does not rely on the allegations of fraud in the amended complaint. Instead, Plaintiff sets forth an entirely new theory of fraud. According to this new theory, when rumors started to develop about the closing of the Posner Center in July 2019, Defendant stated that he found it "impossible" to imagine that his wife intended to dissolve the Center, and that his wife had "absolutely no authority over the Center." [DE 36 at 19; *id.* at 38 (July 19, 2019 email from Defendant to Jonathan Zell[26])]. Defendant also expressed his outrage to Plaintiff in an email Plaintiff claims to have received on July 20, 2019 [*id*. at 19],[27] about a "recent note" from Zell "purporting to terminate the Posner Center in part because" Zell said Defendant was "100 percent retired," which Defendant stated was "totally

---

[26] It appears from the record that Zell is an attorney in Ohio who served with Plaintiff as co-executive director of the Center. *See* [DE 46 at 8].

[27] The email attached to Plaintiff's brief is undated except as to as an ambiguous forwarding notation of July 12, 2022. [DE 36 at 40].

false." [*Id.* at 19; *id.* at 40]. Plaintiff also alleges that Defendant called him on July 21, 2019 and told Plaintiff that he "suspected that his wife … was in cahoots with Zarfes[28]." [*Id.* at 19]. Defendant allegedly confirmed in the phone call to Plaintiff that his wife "had no authority over the Center and couldn't have it closed." [*Id.*]. Plaintiff argues that Defendant's statements about his wife's authority to close the Center were false, citing to the Center's 2019 tax form, which shows that, on July 15, 2019, Defendant's wife signed Defendant's name followed by her name and the initials "POA" (Power of Attorney). [*Id.* at 19-20; *see* DE 34-1 at 18 and DE 36 at 45].

While the Court may "rely[ ] on the expanded statements in the plaintiff['s] memoranda" in opposition to a motion to dismiss to "flesh out" the complaint, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984) (citing cases). Plaintiff's new fraud allegations in his opposition to Defendant's motion to dismiss violate this rule. *See, e.g., Buell v. Experian Info. Sols., Inc.,* No. 1:22-CV-14-HAB, 2022 WL 1166713, at *1 (N.D. Ind. Apr. 20, 2022) ("The problem with Plaintiff's argument is that her explanation, even if true, isn't in her complaint. … Unless and until Plaintiff amends her complaint, she is stuck with her allegations [in that document]."). In addition, Defendant correctly points out [DE 39 at 12 n.9] that the Seventh Circuit has held that the rule allowing a plaintiff to expand upon the allegations in the complaint in opposing a motion to dismiss does not apply to claims of fraud, which are subject instead to the requirements of Rule 9(b). *See United States ex rel. Hanna v. City of Chicago,* 834 F.3d 775, 779 (7th Cir. 2016) ("Rule 9(b) … is an exception to the notice pleading regime. Fraud and mistake must be pleaded with particularity; the pleader is not free to hold back and add facts via affidavit

---

[28] It appears that David Zarfes was a corporate director of the Center. *See* [DE 34-1 at 5; DE 36 at 19]. In an email to Zell on July 9, 2019, Zarfes states that Defendant's wife, acting as Defendant's attorney–in–fact, had provided instructions to dissolve the Center. *See* [DE 36 at 38].

or brief. Indeed, the purpose of Rule 9(b) is to force the plaintiff to do more than the usual investigation before filing his complaint.") (internal quotation marks and citation omitted)).

Accordingly, the Court recommends that Defendant's motion to dismiss be granted as to Plaintiff's fraud claim because, as currently pleaded, it is duplicative of Plaintiff's breach of contract claim.

### 2.    *Sufficiency*

Defendant also argues that Plaintiff fails to state a fraud claim because his allegations do not satisfy the elements of such a claim. Fraud is established by proof of "(1) a material representation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013) (internal quotation marks and citation omitted). But a ruling in Defendant's favor on the issues to which Defendant alludes— whether the alleged statements were merely expressions of opinion as to future facts; whether they were false; if they were, whether Defendant made them with knowledge or in reckless ignorance of its falsity; and whether Defendant acted with the intent to deceive—can only be made on a full record following discovery. Accordingly, Defendant's arguments are premature.

By way of example, Defendant's arguments on these issues rely extensively (either directly or inferentially) on facts outside the amended complaint that are likely in dispute, including the asserted facts that: Defendant was diagnosed with Alzheimer's; the diagnosis happened *after* the alleged misrepresentations were made; Defendant's alleged statement to Plaintiff that he was in good health was an opinion, not a factual claim; Defendant sincerely believed he was in good health; Defendant could not have known at the time of the alleged misrepresentations that his health in fact was not good; Defendant's statement about having a significant amount of money

tied up in personal investments that he could use to pay Plaintiff's compensation did not involve any presently existing fact; the source of funds Defendant would use to pay Plaintiff's salary was unimportant to the contract; Defendant could *not* use the funds in his joint savings account with his wife to pay Plaintiff's salary, or else he did not know that he could have used them; Defendant's wife, not Defendant, was in charge of all their financial dealings for the last sixty years; Defendant almost never wrote a check himself; and Defendant did not intend to defraud Plaintiff when he made the alleged misrepresentations.

While some of these asserted facts appear in the emails and letters that are part of the motion to dismiss record, the Court considers the contents of those emails and letters as potential evidence that might be admissible at trial to establish a given fact. But they are not dispositive on a motion to dismiss. *See Bahena v. Aahil Corp.,* No. 21-CV-6298, 2022 WL 4609620, at *3 (N.D. Ill. Sept. 30, 2022) (declining to consider evidence outside the complaint submitted by the parties, stating that "[t]he Court cannot at this early stage accept as true facts that are outside the four corners of the pleadings or draw from those facts inferences unfavorable to Plaintiff[,] [n]or are these facts the sort for which judicial notice ordinarily is appropriate" (internal quotation marks and citation omitted)).

In short, Defendant fails to accord Plaintiff's allegations the presumption of truth to which they are entitled and makes arguments that, if accepted, would mandate the pleading of factual matters well beyond what Rule 8(a) requires. The Court also notes that, as Plaintiff correctly points out, Chief Judge DeGuilio examined the issue of whether a plaintiff needs to plead every element of a fraud claim in the *Mauger* case, where he concluded that "the weight of authority in this circuit has held that a plaintiff need not lay out every element of common law fraud in his complaint to survive a motion to dismiss." 589 F. Supp. 3d at 962. While Rule 9(b) applies to a fraud claim, it "does not demand that the plaintiff's 'theory of the case' be explained, but merely that the 'who,

what, when, where and how of the fraud' be described." *Id.* at 961 (citation omitted). Like the allegations in *Mauger*, the allegations in the amended complaint here are specific enough to satisfy the "who, what, when, where and how" standard.

### 3.      *Leave to Amend*

In his brief in opposition to Defendant's motion to dismiss, Plaintiff requests leave to file a second amended complaint to allege his new fraud theories. *See* [DE 36 at 21]. "Amendments at this stage may only be made with the consent of the opposing party or with leave of the court under Federal Rule of Civil Procedure 15(a)(2), but a 'special responsibility' is owed to *pro se* litigants, under which a district court must 'allow ample opportunity for amending the complaint when it appears that by so doing the pro se litigant would be able to state a meritorious claim.'" *Novak v. State Parkway Condo. Ass'n*, No. 13 C 08861, 2015 WL 1058014, at *4 (N.D. Ill. Mar. 6, 2015) (quoting *Donald v. Cook Cnty. Sheriff's Dep't,* 95 F.3d 548, 555 (7th Cir. 1996)). Defendant opposes Plaintiff's request to amend, arguing in his reply brief that any proposed amendment would be futile and would prejudice Defendant by forcing him to move to dismiss for a third time.

Federal Rule of Civil Procedure 15(a) provides that if a party is not entitled to amend a pleading as a matter of course, he may amend "with the opposing party's written consent or the court's leave." The court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, this right is not absolute and is appropriately denied when, among other reasons, the amendment would be futile." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). "An amendment is futile when it merely restates the same facts using different language, or reasserts a claim previously determined"; "when it fails to state a valid theory of liability"; or when it "could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (internal quotation marks and citations omitted). Ultimately, though, "the decision to grant or deny a motion to file an amended pleading is a matter purely within the sound

discretion of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (quoting *Brunt*, 284 F.3d at 720).

Most of Plaintiff's new fraud theories would fail for the same reason that the currently pleaded fraud theories fail—they are duplicative of the breach of contract claim because Plaintiff's alleged injury is the same, which is Defendant's non-payment of the allegedly promised salary for Plaintiff's work. To the extent that is not what Plaintiff is arguing, it is unclear how the new allegedly fraudulent statements impacted Plaintiff (for example, the alleged fraud of Defendant's failure to list Plaintiff on the Center's tax form as a "Key Employee," and the false statement that there were no employees of the Center who were paid a salary). Plaintiff argues that he "would not have agreed to come on board" if he had known that Defendant was deceiving him about his wife not having authority over the Center. [DE 36 at 20-21]. But this alleged misrepresentation occurred in 2019 around the time that the Center was closed (which also is when Plaintiff alleges he stopped working for Defendant), and therefore could not have had any connection with Plaintiff's decision in March 2018 to "come on board."

Plaintiff also argues that Defendant's fraud based on the allegedly false statements about his wife's lack of authority injured Plaintiff because Plaintiff suffered "emotional distress and headaches" from being "bombarded with questions about the closing of the Posner Center." [DE 36 at 20]. This assertion appears to allege a new injury, different from the injury Plaintiff suffered from the breach of contract. Defendant's only argument in relation to this newly asserted injury is to pivot away from the duplication argument and assert instead that Defendant's alleged misrepresentations about his wife's authority "do not support a fraud claim given the 'obvious alternative explanation'—that [Defendant] was suffering from Alzheimer's, not that he intended to defraud [Plaintiff]." [DE 39 at 13 (quoting *Twombly*, 550 U.S. at 567)]. *Twombly*'s reference to an "obvious alternative explanation," however, was not the reason given for why the complaint in

that case was deficient. *Twombly* holds that to survive a motion to dismiss, the plaintiff must allege

facts sufficient to "nudge[ ] [his] claims across the line from conceivable to plausible." *Id.* at 570.

On a motion to dismiss, the Court cannot choose between two alternative explanations if both are

"plausible." Instead, Defendant must argue that Plaintiff's explanation is not plausible because it

is not supported by sufficient well-pleaded facts, not that his (Defendant's) explanation is the better

one. Further, Defendant must do so without reference to disputed facts outside the complaint such

as Defendant's medical diagnosis and the symptoms he was suffering in a particular point in time

from that condition. Defendant has not done that.[29]

Thus, Defendant's futility arguments are not as straightforward as he suggests. Defendant

also argues that the Court should not grant Plaintiff "leave to change his story yet again." [*Id.* at

18]. The Court agrees that leave to amend can be denied if the plaintiff seeks "to alter the factual

basis of [his] suit in response to an explanation of why [his] suit lacks merit (rather than on the

basis of new evidence)." *Atlas IP, LLC*, 189 F. Supp. 3d at 779 (denying leave to amend "for the

additional reason that no amendment can permissibly contradict the facts on which [the plaintiff]

has repeatedly grounded its claim for relief, rather than clarify or supplement them"); *see also Kant*

*v. Columbia Univ.,* No. 08 Civ. 7476(PGG), 2010 WL 807442, at *7 (S.D.N.Y. Mar. 9, 2010)

(stating that the plaintiff's "unexplained new recollection concerning this critical aspect of his

alleged oral agreement with [Defendant] —first asserted ten months after his original complaint

was filed and after Defendant had moved to dismiss under the statute of frauds—strongly suggests

bad faith," and observing that "[c]ourts are free to consider direct contradictions between earlier

---

[29] This is not to say that there are no other possible grounds that Defendant might be able to argue for why an amendment to the complaint to allege "emotional distress and headaches" as a separate injury from the breach of contract injury would be futile. Any other grounds, however, have not been argued here.

pleadings and a proposed amended pleading in determining whether to grant leave to amend, particularly when the proposed amendments concern facts clearly within the plaintiff's knowledge when previous complaints were filed").[30]

But it is not clear in the current posture of Plaintiff's request for leave to amend whether this rule would apply to any proposed second amended complaint. Rule 7(b)(1) requires that "[a] request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). And N.D Ind. L.R. 15-1 requires that a motion for leave to amend include the proposed second amended complaint as an attachment. Accordingly, rather than act on a request imbedded in a response brief, the Court will reserve decision on the leave to amend issue until Plaintiff has brought a motion to file an amended complaint to which he attaches the proposed second amended complaint, so that the parties may properly brief the relevant issues. *See, e.g., Novak,* 2015 WL 1058014, at *4.

## E.   Unjust Enrichment

"Also referred to as quantum meruit or quasi-contract, unjust enrichment requires a party who has been unjustly enriched at another's expense to make restitution to the aggrieved party."

---

[30] Some district courts outside this circuit have disallowed inconsistent factual allegations even under Rule 15(a), pursuant to which the amendment is filed as of right. *See, e.g., Dozier v. Deutsche Bank Tr. Co. Americas*, No. 09 Civ. 9865(LMM), 2011 WL 4058100, at *2 (S.D.N.Y. Sept. 1, 2011) (citing *Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ 0400(NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) ("Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss ... [and] directly contradicts the facts set forth in his original complaint a court is authorized to accept the facts described in the original complaint as true." (internal quotation marks and citation omitted)), *aff'd*, 356 F. App'x 535 (2d. Cir. 2009))); *Wallace v. N.Y. City Dep't of Corr.*, No. 95 CV 4044, 1996 WL 586797, at * 1–2 (E.D.N.Y. Oct. 9, 1996) (declining to credit an amended complaint which alleged a "policy" where the plaintiff previously alleged the act in question was an "aberration"); *but see Vidunas v. O'Reilly*, No. 13-CV-1746, 2015 WL 5177762, at *7 (W.D. Pa. Sept. 4, 2015) ("The Third Circuit Court of Appeals … [has] held that dismissal of an amended complaint is not warranted simply because there are allegations in the amended complaint that contradict allegations set forth in the original complaint." (citing *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165 (3d Cir. 2013))).

*Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016) (quoting *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012)). "To recover for unjust enrichment, the plaintiff must show that (1) he rendered a measurable benefit to the defendant at the defendant's express or implied request; (2) he expected payment from the defendant; and (3) allowing the defendant to retain the benefit without restitution would be unjust. *Id.* "[A] benefit is conferred upon another not only when one adds to the property of another but also where … one is saved from expense or loss." *Cmty. Care Ctrs., Inc. v. Sullivan*, 701 N.E.2d 1234, 1240 (Ind. Ct. App. 1998).

In addition to his statute of limitations argument on the unjust enrichment count (addressed previously), Defendant argues that Plaintiff has not plausibly alleged that he conferred any benefit on Defendant. But Defendant's argument is the same as his argument for finding the contract is unenforceable for indefiniteness—the allegation of providing "advisory services" is too vague and conclusory. For the reasons previously given, the Court concludes that the amended complaint's allegation of advisory services is sufficient to put Defendant on notice of the claim. The Court also notes that the amended complaint does have a discussion of the matters that the advisory services would concern. Further specifics regarding Plaintiff's activities on Defendant's behalf can be obtained in discovery.

Defendant also argues that Plaintiff cannot allege that denying him equitable relief would be unjust. But that argument depends on the Court accepting Defendant's argument that Plaintiff has not sufficiently alleged he provided any benefit to Defendant. Plaintiff has sufficiently alleged both a benefit to Defendant (Plaintiff's services) and detriment to him (the provision of services without compensation).

Defendant finally argues that Plaintiff's years' long delay in suing over a purported oral contract will prejudice Defendant's ability to defend against Plaintiff's claims, so the equities favor Defendant, not Plaintiff. This argument overlaps Defendant's statute of limitations argument. To

the extent that Defendant is suggesting application of a shorter time limit for bringing the claims than the statute of limitations, he does not explain his theory or present any case law to support it. Moreover, the argument depends entirely on the facts, which are not yet fully known. Accordingly, it is not proper to raise it at the motion to dismiss stage.

## **CONCLUSION**

For the reasons discussed above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss **[DE 33]** be **GRANTED IN PART AND DENIED IN PART**, with the Court granting the motion as to Count II and denying it as to Counts I and III. The Court further **RECOMMENDS** that Plaintiff's first and third Motions for Judicial Notice **[DE 38, 44]** be **GRANTED IN PART AND DENIED IN PART**, as specified in Sections I,B,1 and I,B,3 of this Report and Recommendation, and that Plaintiff's second Motion for Judicial Notice **[DE 40]** be **DENIED**.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc*., 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp*., 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

So ORDERED this 21st day of June, 2023.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT