UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND

BRIAN VUKADINOVICH,

    *Plaintiff*,

  v.          CAUSE NO.: 2:22-CV-118-TLS-JPK

RICHARD A. POSNER,

    *Defendant*.

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Motion For Audit And Freezing Of Defendant's Assets ("Motion") [DE 48].[1] For the reasons set forth below the Court denies the Motion.

### BACKGROUND

Plaintiff filed this action alleging he is entitled to recover $170,000.00 under an oral employment agreement pursuant to which he provided "advisory" services to Defendant on personal and professional matters in addition to serving as the co-executive director of Defendant's nonprofit corporation. The Motion claims that Plaintiff is at risk of not being able to recover the claimed amount he believes he will ultimately be awarded. The asserted reasons for why this risk has arisen are the passage of time while Defendant's motions to dismiss the original and amended complaints have been pending and what Plaintiff characterizes as "fraudulent arguments by Defendant's lawyers" during the course of this litigation. Plaintiff also states that he is

---

[1] Defendant's response to the Motion states that Plaintiff was served with the response on May 19, 2023 via email by agreement. [DE 55 at 4]. There is an argument that Plaintiff's reply brief was untimely filed on May 31, 2023. Noting the absence of an objection by Defendant, however, the Court will treat the reply with its attached affidavit as timely.

"concern[ed]" that Defendant's wife will "undertake action … to wrongfully shield Defendant's assets in order to insulate Defendant from paying his debt to Plaintiff." [DE 49 at 3]. Accordingly, Plaintiff asks the Court to "audit" and "freeze" Defendant's assets while the case is pending.

## DISCUSSION

The Motion cites Indiana's Fraudulent Transfers Act, Ind. Code § 32-18-2-1 *et seq.*, and Indiana's prejudgment attachment statute, Ind. Code § 34-25-1-1, as the legal authority for the relief that it seeks of "auditing" and "freezing" Defendant's assets.

### A.    FRAUDULENT TRANSFERS ACT

Plaintiff cites Section 14 of the Fraudulent Transfers Act, which states in part that "[a] transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: … with actual intent to hinder, delay, or defraud any creditor of the debtor …." Ind. Code § 32-18-2-14(a)(1). Plaintiff also cites the language in the statute that provides, "[i]n determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether: … before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit …." Ind. Code § 32-18-2-14(b)(3).[2] In his reply brief, Plaintiff cites Section 17 of the Act, which states that "[i]n an

---

[2] Section 14 states in full as follows:

**32-18-2-14 Transfers voidable as to present and future creditors**

Sec. 14. (a) A transfer made or an obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

2

action for relief against a transfer or an obligation under this chapter, a creditor … may obtain … [a]n attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by IC 34-25-2-1 or any other applicable

---

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (B) intended to incur or believed or reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as the debts became due.
>
> (b) In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:
>
>> (1) the debtor retained possession or control of the property transferred after the transfer;
>>
>> (2) the transfer or obligation was disclosed or concealed;
>>
>> (3) before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;
>>
>> (4) the transfer was of substantially all the debtor's assets;
>>
>> (5) the debtor absconded;
>>
>> (6) the debtor removed or concealed assets;
>>
>> (7) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>>
>> (8) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; and
>>
>> (9) the transfer occurred shortly before or shortly after a substantial debt was incurred.
>
> (c) A creditor making a claim for relief under this section has the burden of proving the elements of the claim for relief by a preponderance of the evidence.
>
> Ind. Code § 32-18-2-14.

statute providing for attachment or other provisional remedy against debtors generally." Ind. Code § 32-18-2-17(a)(2).[3]

The current complaint does not assert any claim under the Act. Therefore, the issue of whether the statute has been violated, subjecting Defendant to the remedies under that statute, is not properly before the Court. *See, e.g., Lee's Ready Mix & Trucking, Inc. v. Creech*, 660 N.E.2d 1033, 1036 (Ind. Ct. App. 1996) (referring to allegations of fraudulent transfer in an amended complaint) (cited by Plaintiff [DE 49 at 3]). The Court notes that Plaintiff has filed a motion to

---

[3] Section 17 states in full as follows:

**32-18-2-17 Remedies of creditors**

Sec. 17. (a) In an action for relief against a transfer or an obligation under this chapter, a creditor, subject to the limitations in section 18 of this chapter, may obtain any of the following:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

(2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by IC 34-25-2-1 or any other applicable statute providing for attachment or other provisional remedy against debtors generally.

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure, any of the following:

(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred, its proceeds, or of other property.

(B) Appointment of a receiver to take charge of the asset transferred or of the property of the transferee.

(C) Any other relief the circumstances require.

(b) If a creditor has obtained a judgement on a claim against the debtor, the creditor, if the court orders, may levy execution on the asset transferred or its proceeds.

Ind. Code § 32-18-2-17.

amend the complaint [DE 61], but that motion is not yet ripe for ruling. In addition, the proposed Second Amended Complaint attached to the motion to amend also does not contain any count alleging a claim under the Fraudulent Transfers Act. *See* [DE 61-2].

In any event, Plaintiff has not alleged facts that would state a claim under the Act. The Act's provisions "appl[y] to all transfers *made* [past tense] and obligations *incurred* [past tense] after June 30, 1994." Ind. Code § 32-18-2-1(a) (emphasis added). Similarly, both Sections 14 and 17 of the Act speak only in terms of transfers that have already taken place. *See* Ind. Code § 32-18-2-14 (referring to "[a] transfer *made* or an obligation *incurred*" (emphasis added)); Ind. Code § 32-18-2-17 ("In an action for *relief against a transfer*," a creditor can obtain "*[a]voidance* of the transfer," "[a]n injunction against *further* disposition … of the asset *transferred*," or "[a]ppointment of a receiver to take charge of the asset *transferred*") (emphasis added). Thus, while the Act does contain "provisional" remedies, as Plaintiff notes, those remedies are "against the asset transferred" or "other property" that *is already in the hands* "of the transferee, i.e. a person or entity other than the debtor to whom the debtor *has* (past tense) transferred the property. Plaintiff has not identified any "transfer" that Defendant has made, or "obligation" that Defendant has incurred, to which the provisions of the Act can be applied. Instead, Plaintiff refers only generally to "assets that *may have already been transferred* to the Defendant's wife, …or any other relatives or person's or entities." [DE 49 at 4 (emphasis added)]. A vague statement about what "may" have happened, however, is not sufficient to plausibly allege that Defendant has already transferred any identifiable property.[4]

---

[4] The language of Ind. Code § 32-18-2-17(a)(2) incorporates the procedure prescribed by Ind. Code § 34-25-2-1 for the attachment of property. But since, as discussed above, no showing has been made of a transfer already having occurred, Plaintiff must invoke the attachment provision (Ind. Code § 34-25-2-1) directly, rather than indirectly through its incorporation in the Fraudulent

**B.     PREJUDGMENT ATTACHMENT**

In addition to the Fraudulent Transfers Act, Plaintiff cites the Indiana prejudgment attachment statute in his reply brief. Sitting in diversity, the Court applies state substantive law and federal procedural law. *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 792 (7th Cir. 2014). Federal Rule of Civil Procedure 64 establishes a framework for the seizure of property in order to enforce judgments and protect property. As such, Rule 64 is a procedural rule that governs how federal courts manage this litigation pending the ultimate resolution of a case. *See Romans v. Orange Pelican, LLC*, No. 22-CV-4169, 2022 WL 16856420, at *7 (N.D. Ill. Nov. 10, 2022). But Rule 64 directs the federal court to apply state procedural law. It states that, "[a]t the commencement of and throughout an action, every remedy is available that, under the *law of the state where the court is located*, provides for seizing a person or property to secure satisfaction of the potential judgment," including "attachment." Fed. R. Civ. P. 64(a), (b) (emphasis added).[5]

"An attachment is an ancillary proceeding auxiliary or incidental to the main action, by which the alleged debtor's property, subject to execution, is taken to secure the payment of any judgment that may be rendered in the main action." *Commercial Cred. Corp. v. Ensley*, 136 Ind. App. 389, 391, 199 N.E.2d 108, 109 (1964); *see also Bowyer Excavating, Inc. v. Comm'r, Ind. Dep't of Env't Mgmt.,* 671 N.E.2d 180, 184 (Ind. Ct. App. 1996) (an attachment is a process by which the "freezing" of a defendant's assets may occur).[6] "Indiana law includes two authorizations

---

Transfers Act (Ind. Code § 32-18-2-17). The Court addresses a direct application of Ind. Code § 34-25-2-1 in the next section.

[5] There is an exception to the general rule that the forum-state law applies for when "a federal statute governs." Fed. R. Civ. P. 64(a). There is no applicable federal statute here.

[6] Garnishment also is a process for "freezing" assets. *Bowyer Excavating, Inc.*, 671 N.E.2d at 184. "[A]n attachment applies when the plaintiff seeks to attach 'the property of the defendant,' and a garnishment applies where a third party possesses or controls the defendant's property." *Id.* (statutory citations omitted). The distinction between the two is important because Indiana law

for pre-judgment attachment: Rule 64 of the Indiana Rules of Trial Procedure and Indiana Code § 34–25–2–1." *Woodward v. Algie*, No. 1:13-CV-1435-RLY-DKL, 2014 WL 1414264, at *2 & n.2 (S.D. Ind. Apr. 14, 2014) (noting that "[t]here is no common-law writ or remedy of pre-judgment attachment in Indiana"). Because neither party has raised Indiana Trial Rule 64 as a basis for the Motion, the Court will focus its attention on the statute.[7]

Ind. Code § 34-25-2-1(a) states as follows:

> **34-2-5-1 Attachment at or after filing of complaint**[8]
>
> Sec. 1. (a) At or after the time of filing a complaint, the plaintiff may have an attachment against the property of the defendant, in the cases described in subsection (b) and in the manner described in this chapter.
>
> (b) The plaintiff may attach property when the action is for the recovery of money and the defendant:
>
> > (1) is, or one (1) of several defendants is, a foreign corporation or a nonresident of Indiana;
> >
> > (2) is, or one (1) of several defendants is, secretly leaving or has left Indiana with intent to defraud:

---

"sets forth separate requirements for each." *Id.* Plaintiff does not identify any third party who possesses or controls the property that he wishes the Court to "seize"; therefore, the Court will assume the Motion is seeking attachment. *See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521 (11th Cir. 1994) ("When faced with motions appearing to call for an attachment but labelled something else, federal courts again look past the terminology to the actual nature of the relief requested.").

[7] From a cursory review of Indiana Trial Rule 64, it does not appear that provision contains any circumstances for attachment potentially relevant here that are not also found in Ind. Code § 34-25-2-1. Therefore, it is unlikely that consideration of that rule would change the analysis.

[8] Prejudgment attachment should not be confused with attachment proceedings in proceedings supplemental. The primary purpose of prejudgment attachment "is to preserve the property of the defendant prior to judgment and to secure any eventual recovery by the plaintiff," whereas proceedings supplemental are intended to subject the defendant's property "to payment of the judgment against the defendant." *Bowyer Excavating, Inc.*, 671 N.E.2d at 186–87 (internal quotation marks and citation omitted). The two processes are controlled by "distinct statutory sources, with the prejudgment setting "demand[ing] greater concern and protection" for the debtor. *Id.*

7

      (A) the defendant's creditors;

      (B) the state;

      (C) a municipal corporation;

      (D) a political subdivision; or

      (E) a school corporation (as defined in IC 20-18-2-16(c));

(3) is concealed so that a summons cannot be served upon the defendant;

(4) is removing or about to remove the defendant's property subject to execution, or a material part of the property, outside Indiana, not leaving enough behind to satisfy the plaintiff's claim;

(5) has sold, conveyed, or otherwise disposed of the defendant's property subject to execution, or permitted the property to be sold with the fraudulent intent to cheat, hinder, or delay:

      (A) the defendant's creditors;

      (B) the state;

      (C) a municipal corporation;

      (D) a political subdivision; or

      (E) a school corporation (as defined in IC 20-18-2-16(c)); or

(6) is about to sell, convey, or otherwise dispose of the defendant's property subject to execution with the fraudulent intent to cheat, hinder, or delay:

      (A) the defendant's creditors;

      (B) the state;

      (C) a municipal corporation;

      (D) a political subdivision; or

      (E) a school corporation (as defined in IC 20-18-2-16(c)).

(c) The plaintiff is entitled to an attachment for the causes mentioned in subsection (b)(2), (b)(4), (b)(5), and (b)(6) whether the cause of action is due or not.

Ind. Code § 34-25-2-1. "Because statutory attachment operates in derogation of the common law, Indiana strictly construes its provisions in determining its applicability. However, once it is

determined that attachment is available in a particular case, the statute should be liberally construed to effect its remedial nature." *Woodward*, 2014 WL 1414264, at *3 (citing *Winstead v. Koonce*, 241 Ind. 440, 449, 172 N.E.2d 859, 864 (Ind. 1961), and *Schwedland v. Bachman*, 512 N.E.2d 445, 451 (Ind. Ct. App. 1987).

As an initial matter, Plaintiff seeks an order freezing all of Defendant's property. In *Woodward,* the court held that a similar request against essentially all of the defendant's property was actually a request for an order for replevin, not attachment. 2014 WL 1414264, at *6 ("This is an order for replevin of specific property, not attachment."). "An attachment is available in an action for the recovery of money. The plaintiff must aver the amount of damages that he ought to recover, and the sheriff (or marshal) seizes only the amount of property, by value, to satisfy the plaintiff's averred claim, beginning with personal property. A plaintiff petitioning for attachment does not identify specific goods to be seized and taken by the sheriff because the purpose of attachment is only to ensure that property, any property, will be available to satisfy a money judgment; it is not to preserve the availability of specific items of property for recovery by the plaintiff." *Id.* (statutory citations omitted). The plaintiff in *Woodward*, like Plaintiff here, had a claim only for money damages, and therefore the requested order to seize all of the defendants' property, i.e., a request for replevin, was held to not be an appropriate remedy.

In addition to improperly seeking an order in replevin rather than attachment, Plaintiff's request does not satisfy the statutory requirements for an order in attachment to issue. Those requirements are set forth in § 34-25-2-1 as well as § 34-25-2-4 and § 34-25-2-5. Section 34-25-2-4 requires that a plaintiff seeking a prejudgment attachment make an affidavit showing:

    (1) the nature of the plaintiff's claim;
    (2) that the plaintiff's claim is just;
    (3) the amount that the plaintiff ought to recover; and

> (4) that one (1) of the grounds for an attachment enumerated in [§ 34-25-2-1] is present.

Ind. Code § 34-25-2-4. Section 34-25-2-5 states that a plaintiff seeking a prejudgment attachment must:

> execute a written undertaking, with sufficient surety, to be approved by the clerk, payable to the defendant, to the effect that the plaintiff will:
>
> > (1) duly prosecute the proceeding in attachment; and
> >
> > (2) pay all damages that may be sustained by the defendant if the proceedings of the plaintiff are wrongful and oppressive.

Ind. Code § 34-25-2-5.

After Defendant pointed out that Plaintiff had not submitted an affidavit in compliance with § 34-25-2-4, Plaintiff submitted an affidavit with his reply brief containing the required statutory information (the nature of Plaintiff's claim; a statement that the claim is just; the amount Plaintiff seeks to recover; and the grounds for an attachment enumerated in § 34-25-2-1). *See Wayne Mfg. LLC v. Cold Headed Fasteners & Assemblies Inc.*, No. 1:21-CV-290-HAB-SLC, 2022 WL 2704478, at *3 (N.D. Ind. July 12, 2022) (citing *Wee Scots, LLC v. Fleming*, 765 N.E.2d 668, 671 (Ind. Ct. App. 2002) (explaining that a party need only meet "notice pleading" standards for the affidavit)). However, Plaintiff has not shown that he has executed a written undertaking with sufficient surety to cover the damages Defendant would incur if the attachment is "wrongful and oppressive," in satisfaction of the requirements of § 34-25-2-5. For this reason alone, Plaintiff's Motion must be DENIED without prejudice. *See Wayne Mfg. LLC,* 2022 WL 2704478, at *4 (denying motion for prejudgment attachment after finding that the plaintiff's "offer to deposit $300,000 in a segregated fund as surety [was] woefully inadequate").

Other material issues exist as well with Plaintiff's Motion. To begin with, Plaintiff's affidavit identifies subsection (b)(6)(A) of § 34-25-2-1 as the applicable grounds for a prejudgment

10

attachment. *See* [DE 60 ¶ 15; *see also* DE 59 at 3]. But Plaintiff has not shown those circumstances by a preponderance of the evidence.[9] Subsection (b)(6)(A) allows for an attachment in actions "for the recovery of money" in which "the defendant … is about to sell, convey, or otherwise dispose of the defendant's property subject to execution with the fraudulent intent to cheat, hinder, or delay … the defendant's creditors[.]" Ind. Code § 34-25-2-1(b)(6)(A). Plaintiff only discusses the "fraudulent intent" issue, and overlooks the requirement that the defendant must be "about to sell, convey, or otherwise dispose of [his] property." Plaintiff argues the Court can infer Defendant "is about to sell, convey, or otherwise dispose of [his] property" based on the allegedly "fraudulent arguments" that Defendant supposedly has made in this case, as well as Defendant's allegedly false IRS tax filings. But that argument conflates the fraudulent intent element of the cited statutory provision with the imminent transfer requirement.[10] Plaintiff asserts without citation to specific

---

[9] The *Wee Scots* court held that a party is "not required to offer 'evidence' of [his] allegations before the court [can] issue a prejudgment attachment," and that the "mere recitation of the statutory language" in an affidavit is sufficient. 765 N.E.2d at 671. But the Indiana Court of Appeals later distinguished *Wee Scots*, stating that case (and the cases cited therein) "all dealt with situations in which no hearing was held on a motion for prejudgment attachment." *Squibb v. State ex rel. Davis,* 860 N.E.2d 904, 914 n.7 (Ind. Ct. App. 2007). The court held that, "[i]n a hearing on a motion for prejudgment attachment, the plaintiff is required to establish [the statutory] elements by a preponderance of the evidence." *Id.* at 914 (citing *Waring v. Fletcher*, 152 Ind. 620, 626, 52 N.E. 203, 205 (1898)). The court explained that "*Wee Scots* … did not contradict *Waring*" because, in *Wee Scots,* the defendant "fail[ed] to request a hearing date," and thereby "'declined the opportunity to force [the plaintiff] to reveal the specific facts or "evidence" supporting its motion to the trial court.'" *Id.* at 914 n.7 (quoting *Wee Scots*, 765 N.E.2d at 671 n. 2). Although Defendant has not requested a hearing, his opposition to Plaintiff's Motion challenges the evidentiary basis for Plaintiff's assertion of a statutory grounds for a prejudgment attachment. A hearing is only necessary if resolution of the issue turns on disputed questions of fact. The Court agrees with Defendant, as discussed above, that even if Plaintiff's factual allegations are accepted as true, he has not shown the existence of the asserted grounds for relief. Therefore, at least based on the current record, no hearing is necessary.

[10] *Cf. Serembus v. Comfort Lines, Inc.*, 689 F. Supp. 1499, 1501 (N.D. Ill. 1988) ("Simply being the alter ego of a company is not evidence of fraud or wrongdoing and does not evince an intent on the part of Diversey to transfer its property beyond the scope of [the court's] jurisdiction. The

11

facts that Defendant "is about to sell, convey, or otherwise dispose of" his property, but speculation is insufficient to justify the extraordinary remedy of prejudgment attachment. *See Woodward v. Algie*, No. 1:13-CV-1435-RLY-DKL, 2014 WL 1233530, at *8 (S.D. Ind. Mar. 21, 2014) ("Mr. Woodward has shown no persuasive evidence that either of the Algies 'is removing or about to remove' the Business Assets out of the country."); *see also NFS Leasing, Inc. v. SA Hosp. Acquisition Grp., LLC*, No. 4:23-CV-00203-AGF, 2023 WL 2265580, at *2 (E.D. Mo. Feb. 28, 2023) ("the extraordinary remedy of prejudgment attachment" held not warranted where the plaintiff's affidavit did "not demonstrate that the equipment at issue has been or is about to be fraudulently conveyed or disposed").

In any event, even if Plaintiff alleged facts to support his bald assertion that Defendant is about to sell or transfer his property, he still has not shown by a preponderance of the evidence that Defendant acted with the fraudulent intent as required by Ind. Code § 34-25-2-1(b)(6)(A). Plaintiff describes only allegedly "fraudulent" arguments of Defendant's attorney's and false information in Defendant's tax filings—the same "fraud" Plaintiff alleges or seeks to allege as substantive claims in this case. Regardless of whether those fraud accusations have merit,[11] they relate to the alleged fraud in the underlying transactions at issue in the case. It does not automatically follow from alleged fraud in the underlying transactions that any property transfer Defendant may make going forward is motivated by a "fraudulent intent to cheat, hinder, or delay" Plaintiff's recovery in this case. *See Woodward*, 2014 WL 1233530, at *9 ("Mr. Woodward has

---

record reveals no threat of such harm, and should this harm arise [the court] ha[s] the power to respond with the appropriate remedies.").

[11] This Court has recommended that Plaintiff's fraud claim in the amended complaint be dismissed. *See* [DE 62]. And while Plaintiff has filed a motion to amend the amended complaint to allege additional fraud claims [DE 61], that motion has not yet been ruled on, which means Plaintiff's new fraud claims are not currently before the Court.

not shown that the Algies have sold, conveyed, or otherwise disposed of, or are about to sell, convey, or otherwise dispose of, any of the listed Business Assets for fraudulent or non-fraudulent intentions.").

Subsection (b)(6)(A) is the only provision identified in Plaintiff's affidavit as warranting prejudgment attachment. To the extent that any other subsection might apply, the Court notes that the statute speaks in permissive not mandatory terms in granting the court the authority to order prejudgment attachment. *See* Ind. Code § 34-25-2-1(a) ("the plaintiff *may* have an attachment" (emphasis added)). Further, some courts have held that "[p]re-judgment attachments are not favored, principally because they are subject to a constitutional attack on due process grounds." *NFS Leasing, Inc.,* 2023 WL 2265580, at *2 (quoting *State ex rel. Belle Starr Saloon, Inc. v. Patterson*, 659 S.W.2d 789, 791 (Mo. App. 1983) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972))). "Any significant taking of property by the State is within the purview of the Due Process Clause." *N. Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 606 (1975) (internal quotation marks and citation omitted) (holding that a Georgia statute was unconstitutional because it allowed the impounding of the defendant's bank account "during the pendency of the litigation on the alleged debt" without sufficient safeguards against an unduly burdensome deprivation of property). As the United States Supreme Court explained:

> Permitting a court to authorize attachment merely because the plaintiff believes the defendant is liable, or because the plaintiff can make out a facially valid complaint, would permit the deprivation of the defendant's property when the claim would fail to convince a jury, when it rested on factual allegations that were sufficient to state a cause of action but which the defendant would dispute, or in the case of a mere good-faith standard, even when the complaint failed to state a claim upon which relief could be granted. The potential for unwarranted attachment in these situations is self-evident and too great to satisfy the requirements of due process absent any countervailing consideration.

*Connecticut v. Doehr*, 501 U.S. 1, 13–14 (1991).[12] At the very least, Plaintiff would have to show a likelihood of success on the merits of his $170,000 claim. *See id.* at 16 (holding that "the plaintiff's interest in attaching the property [did] not justify the burdening of [the defendant's] ownership rights *without a hearing to determine the likelihood of recovery*" (emphasis added)).[13]

The Court also notes that the only property that may be attached under subsection (b)(6) is "the defendant's property *subject to execution*." Ind. Code Ann. § 34-25-2-1(b)(6) (emphasis added). Some of defendant's property may be exempt from execution under various provisions of the law, and only "the goods and chattels of the person within the jurisdiction of the [executing] officer" may be executed on. Ind. Code § 34-55-1-12(a). Plaintiff's request to attach all of

---

[12] *Cf. De Beers Consol. Mines v. United States,* 325 U.S. 212, 222–23 (1945) ("To sustain the challenged order[s] would create a precedent of sweeping effect. … Every suitor … may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. … No relief of this character has been thought justified in the long history of equity jurisprudence."); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.,* 191 F.3d 457, 1999 WL 623851, at *1 (7th Cir. 1999) ("[F]ederal courts may not issue injunctions freezing assets unrelated to the underlying litigation in order to ensure that any future judgment can be paid." (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999) (holding that federal district courts do not have the power to grant preliminary injunctions in an action for money damages to prevent a defendant from transferring assets in which no lien or equitable interest is claimed))); *Mitsubishi Int'l Corp.,* 14 F.3d at 1523 ("Prejudgment attachment of the type sought by Mitsubishi is simply not appropriate on the facts presently before us. Mitsubishi …contend[s] primarily that the defendants are scoundrels who will try to escape judgment, an allegation that, even if true, would not justify the preliminary injunction.").

[13] Defendant argues that Plaintiff has not shown that Defendant is a "creditor." As Plaintiff points out, however, neither the Fraudulent Transfers Act nor the attachment statute requires that Defendant be adjudicated a 'creditor" for their provisions to apply. *See* Ind. Code § 32-18-2-2 (defining "Creditor" as "a person that has a claim" and "Claim" as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"); Ind. Code § 34-25-2-1 (stating that "*the plaintiff* [not creditor] may have an attachment against the property of *the defendant* [not debtor]" (emphasis added)). For a prejudgment order attaching Defendant's property, however, Due Process may require that Plaintiff show a likelihood of success in establishing a debt exists on which Plaintiff can recover against Defendant.

Defendant's property without a showing that all of Defendant's property is subject to execution is improper. Further, Plaintiff has not shown either that Defendant owns property in Indiana or that the Indiana attachment statute allows him to attach Defendant's property located outside Indiana. *See Transcontinental Credit Corp. (Ill.) v. Simkin*, 150 Ind. App. 666, 674, 277 N.E.2d 374, 379 (1972) (holding that a plaintiff "may have an attachment against the property of the defendant … [w]here … four requirements [are] … met … : 1) A complaint filed; 2) for the recovery of money; 3) against a non-resident defendant; and 4) *owning property in the State of Indiana*." (emphasis added)). Plaintiff states that he intends to register the Court's attachment order in Illinois and seek enforcement of it there, but he has not shown that Indiana's attachment statute would have any extraterritorial effect. *See Wayne Mfg.*, 2022 WL 2704478, at *4 n.4 ("Indiana has a general policy of refusing to give statutes extraterritorial effect. In fact, multiple cases have found various state attachment statutes do not authorize attachment of property located outside the state." (internal quotation marks and citations omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion For Audit And Freezing Of Defendant's Assets **[DE 48]** is **DENIED**.

SO ORDERED this 3rd day of July, 2023.

                                                s/ Joshua P. Kolar
                                                MAGISTRATE JUDGE JOSHUA P. KOLAR
                                                UNITED STATES DISTRICT COURT