IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BRIAN VUKADINOVICH,<br><br>                    Plaintiff,<br>     v.<br>RICHARD A. POSNER,<br><br>                    Defendant. | Cause No. 22 Civ. 118<br><br>Judge Theresa L. Springmann<br>Magistrate Judge Joshua P. Kolar |

**DEFENDANT RICHARD A. POSNER'S PARTIAL OBJECTION TO
MAGISTRATE JUDGE KOLAR'S REPORT AND RECOMMENDATION**

Defendant Judge Richard A. Posner respectfully objects to two portions of Judge Kolar's Report and Recommendation, Dkt. 62 ("R&R" or "Report"). Plaintiff Brian Vukadinovich sues Judge Posner for breach of contract, fraud, and unjust enrichment. Mr. Vukadinovich bases his contract and unjust enrichment claims on a purported oral employment agreement he allegedly reached with Judge Posner in March 2018. The March 2018 oral agreement supposedly amended an earlier agreement, reflected in an email, that on its face identified Mr. Vukadinovich's counterparty as the Posner Center for Justice for Pro Se's (the "Center"), not Judge Posner.

The Report recommends dismissal of Mr. Vukadinovich's fraud claim, but not his claims for breach of contract and unjust enrichment. While the recommendation that the fraud claim be dismissed is correct, the recommendation on the contract and unjust enrichment claims makes two critical errors.

*First*, the Report misapplies Indiana's two-year statute of limitations for claims based on oral agreements. Mr. Vukadinovich filed suit on May 5, 2022, two years and nine months after the Center ceased operation (*i.e.*, July 23, 2019). The Report states that Mr. Vukadinovich's contract and unjust enrichment claims might not have accrued before May 5, 2020 – two years

earlier – because the amended complaint did not specify when Mr. Vukadinovich expected to be paid. But the amended complaint specifically alleges payment was owed as "of July 23, 2019," more than two years before he filed suit. Dkt. 30 (Am. Compl.) ¶24. Yet the Report strains to fashion an argument that the parties had agreed to wait at least a year for payment to become due. If that were correct, the contract would be invalid under Indiana's statute of frauds, because performance would not occur within one year. Ind. Code § 32-21-1-1(b)(5).

**Second**, the Report errs in recommending that Judge Posner could be personally liable under an alleged agreement with the Center. Documents incorporated into the amended complaint show that Mr. Vukadinovich reached an agreement with, if anyone, the Center. The Report instead credits the amended complaint's bare allegation that Judge Posner "promised to personally pay" Mr. Vukadinovich's salary. R&R 42. But documents incorporated into the amended complaint refute that allegation, and Seventh Circuit law provides that such documents control over unsupported allegations. The Report's recommendation is also inconsistent with Indiana's prohibition on orally guaranteeing another party's debts. Ind. Code § 32-21-1-1(b)(2).

## PROCEDURAL HISTORY

On May 5, 2022, Mr. Vukadinovich sued Judge Posner for one count of breach of contract. Dkt. 1.[1] Mr. Vukadinovich alleged that, on February 25, 2018, he accepted an offer to work for

---

[1] Mr. Vukadinovich is no stranger to litigation, having filed at least sixteen cases. *See, e.g.*, *Vukadinovich v. Hanover Cmty. Sch. Corp.*, No. 2:13-cv-00144 (N.D. Ind.); *Vukadinovich v. Sch. City of Hammond*, No. 2:10-cv-00257 (N.D. Ind.); *Vukadinovich v. Crown Point Cmty. Sch. Corp.*, No. 2:10-cv-00256 (N.D. Ind.); *Vukadinovich v. Griffith Pub. Sch.*, No. 02-cv-00472 (N.D. Ind.); *Vukadinovich v. N. Newton Sch.*, No. 4:00-cv-00037-AS (N.D. Ind.); *Vukadinovich v. AFT*, No. 95-cv-00065-ASC (N.D. Ind.); *Vukadinovich v. Gubbins*, No. 3:95-cv-00751 (W.D. Wis.); *Vukadinovich v. Gubbins*, No. 3:95-cv-00036 (N.D. Ind.); *Vukadinovich v. Gubbins*, No. 94-cv-06244 (N.D. Ill.); *Vukadinovich v. Lolkema*, Nos. 46D03-1611-CT-1809 (Ind. Super. Ct. LaPorte Cty.) & 19A-CT-2353 (Ind. App. Ct.); *Vukadinovich v. Rensselaer Monument Co.*, No. 75C01-0810-CC-000529 (Ind. Super. Ct. LaPorte Cty.); *Vukadinovich v. Kussmaul*, No. 64D03-0703-SC-001566 (Ind. Super. Ct. LaPorte Cty.); *Vukadinovich v. Am. Fed'n of Teachers, AFL-CIO*, No. 37D02-9805-CP-00087 (Ind. Super. Ct. Jasper Cty.); *Vukadinovich v. Eichelberger*, No. 45D02-

2

the Center for an annual salary of $80,000. *Id.* ¶¶ 5-6. He attached to his complaint the email chain that allegedly reflected the offer of employment and its acceptance. *Id.* Ex. 1. Mr. Vukadinovich further alleged that, during a March 2018 meeting, Judge Posner orally agreed to increase the annual salary to $120,000 and that he would guarantee payment "irrespective of whatever financial condition that the Posner Center would find itself in." *Id.* ¶¶ 7-8.

Judge Posner moved to dismiss, raising two arguments relevant here. Dkt. 22. First, Indiana's two-year statute of limitations for oral agreements barred Mr. Vukadinovich's claim. *Id.* at 6-7 (citing Ind. Code § 34-11-2-1). Second, Indiana's statute of frauds prohibited any claim that Judge Posner had orally agreed to "answer for the debt" of the Center. *Id.* at 9-10 (citing Ind. Code § 32-21-1-1).

Mr. Vukadinovich then amended his complaint, adding claims for fraud and unjust enrichment. For the first time, Mr. Vukadinovich alleged that, during the March 2018 meeting, Judge Posner "requested that the initial written agreement" be "orally amended" so that Mr. Vukadinovich would "provide advisory services to the Defendant Posner in Defendant Posner's personal capacity regarding Defendant Posner's personal ventures." Am. Compl. ¶ 7. He further alleged that, during the same meeting, Judge Posner supposedly stated that he "was in general good health and alert and had no concerns about anything that would potentially prevent him from honoring the terms of the amended agreement." *Id.* ¶ 13. Mr. Vukadinovich urged that those statements defrauded him by concealing that Judge Posner had been (or would soon be) diagnosed with Alzheimer's Disease. *Id.* ¶ 29.

---

9505-CP-000520 (Ind. Super. Ct. Lake Cty.); *Vukadinovich v. O'Hara*, No. 37C01-9502-CT-000021 (Ind. Super. Ct. Jasper Cty.); *Vukadinovich v. Bd. Sch. Trs. of Michigan City*, No. 37D02-9301-CP-000009 (Ind. Super. Ct. Jasper Cty.); *Vukadinovich v. Myers*, No. 45C01-8906-CP-002062 (Ind. Super. Ct. Lake Cty.); *Vukadinovich v. Paul*, No. 2011-M6-004070 (Ill. Cir. Ct. Cook Cty.).

Judge Posner again moved to dismiss. First, Indiana's statute of limitations continued to bar Mr. Vukadinovich's claims for breach of contract and unjust enrichment. Dkt. 34 (Opening Br.) at 9-11. Mr. Vukadinovich alleged that he provided services "from February 25, 2018 through July 23, 2019," and ***that payment was due as "of July 23, 2019." Am. Compl. ¶¶ 15, 24.*** Any claim thus accrued in July 2019, more than two years before Mr. Vukadinovich filed suit. Opening Br. 9-10. Second, Mr. Vukadinovich could not hold Judge Posner personally liable under a contract he made with the Center. *Id.* at 11-14. The amended complaint alleged that the March 2018 meeting amended Mr. Vukadinovich's agreement with the Center. *Id.* at 12-13. And Mr. Vukadinovich's own demand letter, which the complaint incorporated by reference, described him as the "executive director ***of the Posner Center***" and made no mention of any personal employment agreement with Judge Posner. Dkt. 34-1, Ex. D (emphasis added).

Mr. Vukadinovich opposed the motion to dismiss. First, he argued that the allegedly fraudulent concealment of Judge Posner's Alzheimer's diagnosis tolled the statute of limitations. Dkt. 36 (Pl. Br.) at 5-8. Then, he argued that Judge Posner faced personal liability under the Center's contracts because a corporate "agent who commits a tortious act is equally liable with the princip[al]." *Id.* at 8-10. He did not contest and therefore conceded the July 2019 accrual date.

The Report accepted most of Judge Posner's analysis on the statute of limitations. It agreed that, because the alleged contract was "partly oral," Indiana's two-year statute of limitations applies to the contract and unjust enrichment claims. R&R 29-30. And it rejected Mr. Vukadinovich's argument about fraudulent concealment. *Id.* at 37-39. It found the alleged misstatements "could not have hidden from Plaintiff the fact that the contract had been breached when payment of the alleged promised salary was not forthcoming." *Id.* at 38.

4

But the Report purported to identify a different, never-raised reason to recommend denying dismissal on statute of limitations grounds. Even though the amended complaint specifically alleged that Mr. Vukadinovich was "owed" his salary as "of July 23, 2019," Am. Compl. ¶ 24, the Report stated that the complaint did not "give a specific date for when the lump sum payments were due," R&R 33. In the Report's view, that ambiguity, combined with the allegation that the parties had agreed to wait "at least a year" from March 2018 to pay the salary, created factual uncertainty regarding when Mr. Vukadinovich reasonably expected payment. *Id.* 33-36. If he reasonably expected payment after May 2020, then his claims would be timely. *Id*.

Turning to the issue of Judge Posner's personal liability, the Report agreed that the February 2018 email attached to the amended complaint "clearly states that Defendant's offer of employment was to work for the Center." R&R 41. The Report did not accept Mr. Vukadinovich's argument that Judge Posner could be liable under the Center's contract. But it found Mr. Vukadinovich had alleged that, in March 2018, Judge Posner had orally amended the contract to retain Mr. Vukadinovich as a "personal advisor" whom Judge Posner would "personally pay." *Id.* at 42. Contrary to Seventh Circuit law, the Report credited that allegation even though it was "inconsistent with the facts alleged in the original complaint" and contradicted by Mr. Vukadinovich's February 2022 demand letter. *Id.* at 42-44.

## **STANDARD OF REVIEW**

This Court reviews objections to the Report *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). If neither party objects to any part of the Report, the Court reviews only for clear error. *Johnson*, 170 F.3d at 739.

**ARGUMENT**

I. **THE COURT SHOULD REJECT THE REPORT'S STATUTE-OF-LIMITATIONS ANALYSIS**

The Court should dismiss Mr. Vukadinovich's contract and unjust enrichment claims as untimely. The Report made three errors when recommending that the Court deny Judge Posner's motion on statute of limitations grounds. *First*, the Report based that recommendation on an argument Mr. Vukadinovich never made, and to which Judge Posner had no chance to respond. *Second*, because the parties never briefed the argument, the Report overlooked that the amended complaint specifically alleges that Mr. Vukadinovich expected payment as "of July 23, 2019." Am. Compl. ¶ 24; *see also* Dkt. 1 ¶ 17. That specific allegation, which Mr. Vukadinovich has twice repeated under oath, proves his claims are untimely. *Third*, the Report's interpretation of the parties' supposed agreement renders it invalid under the statute of frauds. Ind. Code § 32-21-1-1(b)(5).

A. **The Report Erred By Salvaging Mr. Vukadinovich's Claims Based on an Argument He Never Raised**

It was error for the Report to base its recommendation on an argument Mr. Vukadinovich never raised. Federal courts "follow the principle of party presentation." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). They "rely on the parties to frame the issues for decision." *Id.* That approach is based on the "'premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.'" *Id.* at 244. Courts "generally do not craft new arguments for a party." *Horne v. Elec. Eel Mfg. Co.*, 987 F.3d 704, 727 (7th Cir. 2021).

Mr. Vukadinovich's *pro se* status does not change that fundamental principle. The Supreme Court has approved "departures from the party presentation principle . . . 'to protect a *pro se* litigant's rights'" in "***criminal*** cases." *United States v. Sineneng-Smith*, 140 S. Ct. 1575,

6

1579 (2020) (emphasis added). Even then, such departures can only "create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 381-82 (2003). Courts neither seek "out legal 'issues lurking within the confines' of the *pro se* litigant's pleadings," *Kiebala v. Boris*, 928 F.3d 680, 684-85 (7th Cir. 2019), nor act "as counsel or paralegal" for a *pro se*, *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

It was undisputed that Indiana's two-year statute of limitations applies and that Mr. Vukadinovich "filed suit more than two years after his breach of contract and unjust enrichment claims accrued." R&R 31. The parties thus agreed that, without tolling, the contract and unjust enrichment claims were time-barred. Mr. Vukadinovich's sole argument on the statute of limitations was that "fraudulent concealment . . . tolls the Indiana statute of limitations." Pl. Br. 5-8. The Report correctly rejected that argument, because the alleged misstatements about Judge Posner's health could not prevent Mr. Vukadinovich from realizing that he had not been paid. R&R 37-39. That rejection of the only argument Mr. Vukadinovich presented should have ended the matter. *Sineneng-Smith*, 140 S. Ct. at 1579; *Horne*, 987 F.3d at 727.

The Report cannot be understood as creating "better correspondence" between Mr. Vukadinovich's "claim and its underlying legal basis." *Castro*, 540 U.S. at 381-82. The "legal basis" for Mr. Vukadinovich's claim was "fraudulent concealment." Pl. Br. 5-8. The Report ***contradicted*** Mr. Vukadinovich's claims and created a new alleged ***factual*** basis for recommending denial of the motion to dismiss – namely, supposed uncertainty about "when the lump sum payments were due." R&R 33. That was a "new" argument. *Horne*, 987 F.3d at 727. The parties did not address it. And the Report was incorrect, as Judge Posner would have explained if given the opportunity. Moreover, the Report's "factual" basis is flatly contradicted by the

amended complaint – which specifically alleged payment was "owed" as "of July 23, 2019." Am. Compl. ¶24.

The Report's citation (at 31) to *Marcure v. Lynn*, 992 F.3d 625 (7th Cir. 2021), does not change the analysis. That case did not invite courts to craft arguments for litigants. *Marcure* held only that a district court cannot grant a motion to dismiss "on the sole basis that it is unopposed," because the movant "must prove entitlement to relief." 992 F.3d at 631. That is irrelevant here. Mr. Vukadinovich *did* oppose the motion to dismiss. He addressed the statute of limitations with the single argument of fraudulent concealment. Pl. Br. 5-8. *Marcure* explains that a party's opposition on some grounds, but not others, acts "as waiver of the claims that he left unaddressed." 992 F.3d at 633.

Judge Posner *did* establish his right to dismissal based on the statute of limitations. He explained that, on the face of the amended complaint, Mr. Vukadinovich's claims accrued by July 2019, more than two years before he filed suit. Opening Br. 9-10; Am. Compl. ¶24. Judge Posner then disproved Mr. Vukadinovich's argument that fraudulent concealment had tolled the limitations period, Opening Br. 10-11, as the Report agreed, R&R 37-39. That should have resulted in dismissal.

### B. The Report's Statute-of-Limitations Analysis Is Wrong

#### 1. *The Report Based Its Analysis on a Mistake of Fact*

The Report's statute-of-limitations analysis is also wrong on the merits. It posits that "the amended complaint does not give a specific date for when the lump sum payments were due." R&R 33. That is incorrect. The amended complaint alleges that as "of ***July 23, 2019***, Plaintiff Brian Vukadinovich ***is owed [$170,000] from Defendant Richard A. Posner."*** *Am. Compl.* ¶24

8

(emphasis added).² The original complaint contains the same allegation. Dkt. 1 ¶17. Both complaints were filed under oath. Dkt. 1; Dkt. 30. The specific and consistent allegation on this point explains why *neither party* disputed the date the alleged debt was due was July 23, 2019. Opening Br. 9-10; Pl. Br. 5-8; Dkt. 39 (Reply Br.) at 3. Indeed, the Center closed in July 2019 and thus any employment would have ended then. Mr. Vukadinovich's contract and unjust enrichment claims accrued in July 2019, more than two years before he filed suit. The statute of limitations bars both claims. Ind. Code § 34-11-2-1; R&R 30.

    2. *Mr. Vukadinovich Could Not Reasonably Expect Payment After May 2020*

Regardless, the Report's analysis fails on its own terms. The Report asks "whether nine months was a reasonable time for Defendant to perform on the unwritten agreement." R&R 35 (brackets omitted). But Mr. Vukadinovich waited more than *twenty-six* months for the performance he alleges was due. That is unreasonable as a matter of law. Mr. Vukadinovich alleges that, by July 2019, he had been working "day and night to no end" for *seventeen months* without compensation. Dkt. 37 ¶14 (sworn affidavit); Am. Compl. ¶¶15-17, 20-24. Then, his employment ended, and the Posner Center closed. Am. Compl. ¶15. It is not reasonable for someone who has already gone seventeen months without payment and has his employment terminated to wait *another* nine months for payment.³ Nearly every state in the country requires

---

² The words "owed" and "due" are synonymous in this context. *See Merriam-Webster's Collegiate Dictionary* 385 (11th ed. 2020) ("due" means "owed or owing as a debt").

³ Courts routinely deem similar delays unreasonable in other contexts. *See, e.g.*, *Ind. Farmers Mut. Ins. Co. v. North Vernon Drop Forge, Inc.*, 917 N.E.2d 1258, 1275 (Ind. Ct. App. 2009) (year-and-a-half delay in notifying insurer of claim was unreasonable); *Shelter Mut. Ins. Co. v. Barron*, 615 N.E.2d 503, 507 (Ind. Ct. App. 1993) (thirteen-month delay in notifying insurer of lawsuit was unreasonable); *Elmore v. Henderson*, 227 F.3d 1009, 1013 (7th Cir. 2000) (no tolling given unreasonable four-month delay); *Athmer v. C.E.I. Equip. Co.*, 121 F.3d 294, 297 (7th Cir. 1997) (same for six-week delay); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 268 (7th Cir. 1995) (same for ten-month delay); *Tate v. I.B.E.W.-N.E.C.A. Tech. Inst.*, No. 09-cv-1592, 2009 WL

that employers pay wages monthly, if not more often. *See* U.S. Dep't of Labor, *State Payday Requirements*, https://www.dol.gov/agencies/whd/state/payday (last visited July 3, 2023). Even the amended complaint's unusual allegation that Mr. Vukadinovich "would have to wait at least a year," Am. Compl. ¶12, accounts only for the time until March 2019. It does not justify awaiting payment for an ***additional*** year, after circumstances dramatically changed. By any reasonable estimation, Mr. Vukadinovich's claims accrued before May 2020 and are barred by the statute of limitations.

The cases the Report cites do not prove otherwise. *See* R&R 34-36 & n.22. In *Lightle v. Harcourt Management Co.*, 634 N.E.2d 858 (Ind. Ct. App. 1994), for example, the question was whether a plaintiff could reasonably wait ten months, "until all subcontractors had been paid," to expect a 30% bonus. *Id.* at 861. The court emphasized the need for plaintiffs to seek performance within a reasonable time. *Id.* Claims for an "unwritten promise to pay money," it held, are not "beyond the reach of any statute of limitations." *Id.* But on the specific facts there, the court could not say as a matter of law that ten months was an unreasonable time to wait for payment. *Id.* at 862.

On the facts ***here***, the opposite is true. The *Lightle* plaintiff did not allege when payment was due. Mr. Vukadinovich did. Am. Compl. ¶24. The *Lightle* plaintiff was waiting for only a portion of his total payment. Mr. Vukadinovich was waiting for his ***entire salary***. *Id.* ¶¶15-17. The *Lightle* plaintiff explained his delay. Mr. Vukadinovich did not. *See* Pl. Br. The *Lightle* plaintiff did not terminate his employment before waiting years to sue. Mr. Vukadinovich did. Am. Compl. ¶15. The *Lightle* plaintiff waited ***ten*** months. Mr. Vukadinovich waited ***twenty-six***

---

3839319, at *3 (N.D. Ill. Nov. 10, 2009) (same for three-month delay); *Wiley v. Johnson*, 436 F.Supp.2d 91, 97 (D.D.C. 2006) (same four-month delay).

– seventeen before his employment ended, and nine after. *See id.* ¶¶ 13-15; Dkt. 1. Neither party cited *Lightle*, because it is easily distinguished.

The other cases the Report cites are equally off base. In *Golsen-Dunlap v. Elan Motorsports Technologies, Inc.*, No. 1:04-cv-00104, 2012 WL 3027947 (S.D. Ind. July 24, 2012), the court considered conflicting "evidence about previous course of payment and the parties' understanding of when payment would occur." *Id.* at *7. There was no previous course of conduct here, and there was no dispute about when Mr. Vukadinovich claimed the money was due – July 2019. *See* pp. 8-9, *supra*. In *Community State Bank Royal Center v. O'Neill*, 553 N.E.2d 174 (Ind. Ct. App. 1990), the court found only that it was not "unreasonable as a matter of law" for an attorney to send a client bill seven months after closing the file on a "complex[ ] and protracted" litigation. *Id.* at 177. Here, Mr. Vukadinovich did not demand payment until almost four years after the alleged oral agreement, and more than two years after his employment terminated. Such delay was unreasonable as a matter of law.

Finally, the Report's recommendation ignores the purpose of Indiana's two-year limitations period for oral employment agreements. The shortened limitations period seeks to prevent an employee from making "claims against his employer based on alleged oral understandings" that will be "too hard for the employer to disprove." *Miller v. Int'l Harvester Co.*, 811 F.2d 1150, 1152 (7th Cir. 1987). If the Report's logic was correct, any employee could circumvent the shortened limitations period by claiming that they reasonably did not expect payment until years in the future. *But see* Ind. Code § 32-21-1-1(b)(5) (oral employment contracts for more than a year are unenforceable). That is exactly what happened here. Mr. Vukadinovich sued in May 2022 based on an agreement he supposedly entered in March 2018. He alleged he

11

did not expect payment for "at least a year," *i.e.*, until March 2019. Am. Compl. ¶12. Indiana's statutory limitations period bars his claims.

### C. The Report's Statute-of-Limitations Analysis Would Invalidate the Contract

Finally, the Report's statute-of-limitations analysis, if adopted, would require dismissal under the statute of frauds. Indiana law prohibits any oral "agreement that is not to be performed within one (1) year from the making of the agreement." Ind. Code § 32-21-1-1(b)(5). That bar applies even if one side partly performs within a year, so long as the entire agreement is not performed during that time. *Coca-Cola Co. v. Babyback's Int'l, Inc.*, 841 N.E.2d 557, 567 (Ind. 2006) (rejecting argument that oral agreement was enforceable because one party had performed within a year and its performance could be explained only by the existence of the oral agreement). If, as the Report accepts, the parties agreed to postpone the employer's performance, *i.e.*, payment, for at least a year, then the March 2018 agreement is invalid and unenforceable. *See* R&R 33. The Report ignores this fundamental flaw.

Judge Posner specifically argued that, if Mr. Vukadinovich had to wait "'at least a year to receive his salary,'" then the statute of frauds would bar his claim. Opening Br. 12 n.11. Mr. Vukadinovich failed to respond, Pl. Br. 4-12, effectively conceding the point, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failing to respond to an argument raised in motion to dismiss concedes that argument). **Both parties** thus read the amended complaint to allege that payment would be due no later than a year after the services rendered and the full amount "no later than July 2019." Opening Br. 10 (citing Am. Compl. ¶¶10, 24); *see* Pl. Br. 5-8 (never disputing that reading).

The Report, however, declined to "address" the statute of frauds because Judge Posner supposedly did "not develop the argument." R&R 41 n.24. That is incorrect. The issue, the relevant facts, and the controlling legal authority are clearly stated in the Opening Brief in Support

12

of the Motion to Dismiss. Opening Br. 12 n.11. No further "development" was necessary. *See Firkins v. Astrue*, No. 1:09-cv-00923, 2010 WL 3037257, at *4 (S.D. Ind. Aug. 3, 2010) (citing "relevant legal authority" and facts enough); *United States v. Gray*, 780 F.3d 458, 464 (1st Cir. 2015) ("short but on-point argument" was "sufficiently developed"). Nor did Judge Posner have any obligation to anticipate errors the Report might make. *Cf. Verizon Commc'ns, Inc. v. F.C.C.*, 535 U.S. 467, 530 (2002) (issue preserved if "passed upon below"). That is particularly true here, where the Report erred in adopting an argument no party had raised. *See* pp. 6-8, *supra*. There was no basis for the Report to fail to "address the statute of frauds at all." *Vess Beverages, Inc. v. Paddington Corp.*, 886 F.2d 208, 213 (8th Cir. 1989).

The Report's own analysis requires dismissal. Either the parties expected payment within a year – making the claims untimely – or they did not, making the oral agreement invalid.

## II. THE COURT SHOULD REJECT THE REPORT'S PERSONAL-LIABILITY ANALYSIS

The Court should also reject the Report's conclusion that Mr. Vukadinovich plausibly alleged Judge Posner is personally liable for the alleged contract. R&R 39-44. Documents incorporated into the amended complaint proved that any contract bound only Mr. Vukadinovich and the Center. The Report nonetheless credited bare allegations of a contract with Judge Posner. That contradicts Seventh Circuit law. It also threatens to nullify Indiana's prohibition on oral guarantees of another party's obligations.

The Seventh Circuit takes "a relatively expansive view of the documents that a district court properly may consider in disposing of a motion to dismiss." *Williamson v. Curran*, 714 F.3d 432, 443 (7th Cir. 2013). Courts can consider any document that is either attached to a complaint or relied on "to some degree" as support for the claims. *Id.* at 436; *see Miranda-Sanchez v. Sprinkle*, 715 F. App'x 563, 564 (7th Cir. 2018) (document considered if it "'form[s] the basis for a claim or part of a claim'"). Even the contents of investigative reports drafted **by the defendant**

13

may be treated as part of the complaint absent "any indication" from plaintiff that the documents were "falsified in some way." *Williamson*, 714 F.3d at 436. And where a plaintiff incorporates and relies on "part of a chain of communications," courts may "consider[] the entire chain" and credit those documents over inconsistent allegations. *Law Offices of David Freydin v. Chamara*, 24 F.4th 1122, 1126 n.1 (7th Cir. 2022); *see N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (exhibit trumps contrary allegations).

Two documents incorporated into the complaint show that Mr. Vukadinovich formed a contract, if at all, with the Center. First, the amended complaint attached a February 2018 email chain. R&R 6. The Report agreed that email chain "clearly states that Defendant's offer of employment was to work for the Center." *Id.* at 41. Second, the amended complaint alleges that Mr. Vukadinovich "demanded payment for his services," Am. Compl. ¶¶ 16, 29, and it describes responses to that demand by Judge Posner's attorney and separately by his wife, *id.* ¶¶ 29-31. Those references permit consideration of Mr. Vukadinovich's 2022 demand letter. The complaint relied on the 2022 demand letter to plead that Mr. Vukadinovich learned of alleged fraud in 2022. *Miranda-Sanchez*, 715 F. App'x at 564. And Mr. Vukadinovich's reliance on responses to that demand permits consideration of the "entire chain." *Chamara*, 24 F.4th at 1126 n.1. The demand letter makes clear that Mr. Vukadinovich worked "as the executive director of **the Posner Center**." Dkt. 34-1, Ex. D (emphasis added). Two documents, from years apart, thus demonstrate that Mr. Vukadinovich worked for and contracted with the Center, not Judge Posner.

The Report erred in reaching the opposite conclusion. It recognized that "[t]he demand letter does indeed appear to contradict Plaintiff's allegation that he was hired in March 2018 to work for Defendant personally." R&R 44. Yet it refused to "credit" the demand letter because that letter supposedly did not "form[] the basis of Plaintiff's contract claim." *Id.* The Report

14

concluded that "the conflict between Plaintiff's demand letter and Plaintiff's inconsistent allegations as to the terms of the oral agreement cannot be resolved at the motion to dismiss stage." *Id.*

That was error for at least two reasons. First, Mr. Vukadinovich did not dispute that his new allegations contradicted the demand letter. Pl. Br. 8-10. Nor did he dispute that the demand letter would trump contrary allegations. *Id.*; *Bonte*, 624 F.3d at 466 (failing to respond to an argument raised in motion to dismiss concedes that argument). His primary contention was that Judge Posner, as an officer, could be liable under the Center's supposed contract. Pl. Br. 9-10. The Report did not accept that contention, because it is wrong. Reply Br. 5-6. Going beyond that issue was error. *See* pp.6-8, *supra* (explaining party presentation principle).

Second, the Report is wrong on the merits. When a complaint incorporates a document, that documents "trumps" any contrary allegations. *N. Ind. Gun*, 163 F.3d at 454. Mr. Vukadinovich never claims that his demand letter was "falsified in some way," such that the Court could not consider it. *Williamson*, 714 F.3d at 436. The Report based its disregard of the demand letter on a decision from the Ninth Circuit holding that an incorporated document cannot support "a defense to the well-pled allegations in the complaint." *See* R&R 44 (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)). But controlling Seventh Circuit law rejects that approach and adopts an "expansive view of the documents that a district court properly may consider." *Williamson*, 714 F.3d at 443. The demand letter and February 2018 email chain control, compelling the conclusion that any contract bound the Center, not Judge Posner.

That conclusion is particularly appropriate here. Mr. Vukadinovich's original verified complaint alleged, under oath, that Judge Posner merely provided a "personal guarantee" for the Center's contract. Dkt. 1 ¶ 8. Only after the motion to dismiss explained that oral guarantees are

15

invalid under Indiana law, Dkt. 22 at 9-10 (citing Ind. Code § 32-21-1-1(b)(2)), did Plaintiff allege – contrary to the February 2018 email, the February 2022 demand letter, and his own verified complaint – that he had contracted for employment by Judge Posner personally. Mr. Vukadinovich's own statements doom his complaint. Any unscrupulous plaintiff can recast an alleged oral guarantee as an oral amendment to substitute one party for another. Judge Posner is ***not*** a party to the supposed contract here. The claim should be dismissed.

## CONCLUSION

The Court should reject the Report's recommendation on the contract and unjust enrichment claims, dismissing Mr. Vukadinovich's complaint in its entirety with prejudice.

Chicago, Illinois
July 5, 2023

/s/ Steven F. Molo
Steven F. Molo (admitted *pro hac vice*)
Kenneth E. Notter III (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL 60654
(312) 450-6700
smolo@mololamken.com
knotter@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY 10016
(212) 607-8160
jellis@mololamken.com

David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Drive, Suite 100
Hammond, IN 46323
dbeach@eichhorn-law.com

*Attorneys for Hon. Richard A. Posner*

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 5, 2023, the foregoing was electronically filed with the Clerk of the Court via CM/ECF and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on *pro se* Plaintiff Brian Vukadinovich per his agreement to receive such papers via email.

/s/ Steven F. Molo
Steven F. Molo