-FILED-
JUL 12 2023
At_____M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BRIAN VUKADINOVICH,          )
                             )
        Plaintiff,           )
                             )
    v.                       )   CASE NO. 2:22-CV-0118-TLS-JPK
                             )
                             )
RICHARD A. POSNER,           )
                             )
        Defendant.           )

**PLAINTIFF'S PARTIAL OBJECTION TO MAGISTRATE
JUDGE KOLAR'S REPORT AND RECOMMENDATION**

**I.  OBJECTION TO RECOMMENTATION TO DISMISS COUNT II (FRAUD)**

First, Plaintiff would like to recognize the hard work that was obviously put in by Magistrate Judge Kolar in taking the time to prepare a very detailed Report and Recommendation consisting of 59 pages. This obviously took a long time to do and Plaintiff would like to extend his appreciativeness for Magistrate Judge Kolar's judicial professionalism in crafting such a comprehensive report. While Plaintiff disagrees with the recommendation to dismiss Count II of his amended complaint, he does respect the manner in which the magistrate judge took the time to read all of the relevant information submitted by both sides and the research time involved that was obviously put into the preparation of the Report and Recommendation.

Plaintiff Brian Vukadinovich respectfully objects to only one portion of Magistrate Judge Kolar's Report and Recommendation, which would be the recommendation to dismiss Count II of the amended complaint, i.e., the "fraud" claim.

1

The fraud claim alleges that at the time the Defendant Richard A. Posner entered into the orally amended agreement with Plaintiff Brian Vukadinovich, on March 19, 2018, in Chicago, Illinois, the Defendant represented to Plaintiff that while he was nearing 80 years of age that he was in general good health and alert and had no concerns about anything that would potentially prevent him from honoring the terms of the agreement between Plaintiff and that Plaintiff relied on the material representations made by Defendant to Plaintiff that he was in good health at the time that the oral agreement was made and that he (Defendant Posner) had no concerns about anything that would potentially prevent him from honoring the terms of the agreement.

The fraud claim alleges that all the while that Plaintiff worked for the Defendant, after the Defendant had represented to Plaintiff that he was in general good health and alert and had no concerns about anything that would potentially prevent him from honoring the terms of the agreement, that Defendant knew that he had a diagnosis of Alzheimer's, which he fraudulently concealed from Plaintiff until Plaintiff demanded payment for his services, and such fraudulent concealment continued on until Plaintiff received a letter from Defendant Posner's lawyer at the time, Robert Kaufman, dated February 28, 2022, of which letter indicated the Defendant's refusal to pay the money he owed to Plaintiff, stating to Plaintiff "**What you clearly do not know** is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's Disease.", a copy of which letter is attached to the amended complaint as Plaintiff's Exhibit "2".

The amended complaint alleges that Defendant Posner never told Plaintiff that he had received a confirmed diagnosis of Alzheimer's Disease and fraudulently concealed that information from Plaintiff until February 28, 2022, to the Defendant's advantage and to the Plaintiff's disadvantage in order to unjustly enrich himself through Plaintiff's services to the Defendant, of which services Defendant obtained through fraudulent means.

The amended complaint alleges that an email from the Defendant's wife, Charlene Posner, to Plaintiff on May 8, 2022 evidences that Defendant Posner fraudulently concealed the Alzheimer's disease from Plaintiff when he told Plaintiff he was in good general health during the time that Plaintiff and Defendant entered into the orally amended agreement as the email stated "During the time you say you entered into a contract with Dick his primary care physician discerned his mental condition and referred us to the University of Chicago Neurology Department, and you are aware of their conclusion.". That email is attached to the amended complaint as Plaintiff's Exhibit "3". Plaintiff alleged that such concealment of information by the Defendant at the time Plaintiff and Defendant entered into the oral agreement on March 19, 2018, amending the previous agreement, constituted a fraudulent concealment of this information.

Plaintiff alleged that the Defendant's wife, Charlene Posner, expressed in the May 8, 2022 email to Plaintiff that Defendant "misled" the Plaintiff and offered to pay the Plaintiff $10,000 for Plaintiff's "trouble" as a result of being "misled".

Plaintiff alleged that when the terms and conditions of the oral agreement were discussed and agreed upon in the meeting in Chicago, Illinois on March 19, 2018

3

between Plaintiff and Defendant of which terms and conditions amended the previous agreement of February 25, 2018, the Defendant told Plaintiff that while he and his wife had ample savings, that he would not be able to utilize any monies from the joint savings account to compensate Plaintiff for his services, but that he had a significant amount of money tied up in personal investments that he would use to pay Plaintiff's compensation, and that because the monies of his personal investments were tied up for an extended period of time, that Plaintiff would have to wait at least a year before the Defendant could pay Plaintiff's compensation in a lump sum, to which Plaintiff relied upon the representation of the Defendant, which was part of the orally amended agreement which amended the previous agreement.

 Plaintiff alleged that Defendant misrepresented to Plaintiff that he could not have used the money from the joint savings account to pay Plaintiff's compensation for Plaintiff's services to the Defendant, and such fraud resulted in injury to Plaintiff as such fraud wrongfully resulted in free services to the Defendant from Plaintiff.

 Plaintiff alleged that Defendant misrepresented to Plaintiff that he had a significant amount of money tied up in personal investments that he would use to pay Plaintiff's compensation, and that because the monies of his personal investments were tied up for an extended period of time, that Plaintiff would have to wait at least a year before the Defendant could pay Plaintiff's compensation in a lump sum, and such fraud resulted in injury to Plaintiff as such fraud wrongfully resulted in free services to the Defendant from Plaintiff.

 The amended complaint may be seen under Docket #30.

The Report and Recommendation recommends dismissal of Plaintiff's fraud claim, but not his claims for breach of contract and unjust enrichment. The recommendation to dismiss Count II of the Amended Complaint —the fraud claim—should not be adopted as the fraud claim is a legally cognizable claim that is supported by the facts and governing caselaws and should proceed.[1]

### A. Reasons that the Recommendation to Dismiss The Fraud Claim Should Not Be Adopted

In the first paragraph under "Fraudulent Concealment" at page 37 of the Report and Recommendation, the Report states "Because the Court concludes that Defendant has not shown that the amended complaint "plainly reveals that [the] action is untimely under the governing statute of limitations, " *Chi. Bldg. Design, P.C.,* 770 F.3d at 614, the issue of fraudulent concealment does not necessarily need to be addressed. Nevertheless, if the issue were to remain pertinent, the Court would recommend that Plaintiff's fraudulent concealment argument be rejected." The "Report then goes on to state that "Fraudulent concealment is an equitable doctrine which operates to prevent a defendant from asserting the statute of limitations as a bar to a claim where the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim.

---

[1] The report discussed at page 3, footnote #2, a possible discrepancy about when emails were sent in February 2018 between Plaintiff and Defendant with the response email showing Plaintiff's acceptance of Defendant's job offer dated as February 24, 2018 at 10:50 p.m., *before* Defendant sent the February 25, 2018 email. The reason for this discrepancy is that Plaintiff's computer was set under a time zone from another part of the world which consequently was showing dates and times from that part of the world rather than from the applicable time zone here in the United States. It was how Plaintiff's computer was set up when he purchased the computer, but the problem has since been corrected and Plaintiff's computer has been reset for the applicable time zone here in the United States. The Report also discussed at page 50, footnote 27, an undated email except as to an ambiguous forwarding notation of July 12, 2022. This is how the particular email printed out from Plaintiff's computer. It is some sort of technical issues with the computer. Plaintiff apologizes for the confusion caused to the Court by these technical computer issues.

When this occurs, equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay." *Meisenhelder*, 788 N.E.2d at 931 (internal citation omitted). Magistrate Kolar analyzed the statute of limitations issue in great detail devoting eight pages to the issue (pages 29-36 of the Report) and ultimately recommended "Accordingly, the Court recommends that Defendant's motion to dismiss based on the two-year statute of limitations be denied. See *Sidney Hillman Health Ctr. of Rochester v. Abbott Laboratories, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

With all due respect to the magistrate judge, judicially acknowledging that that 'Defendant has not shown that the amended complaint "plainly reveals that [the] action is untimely under the governing statute of limitations,", and in fact recommending that Defendant's motion to dismiss based on the two-year statute of limitations be denied, while at the same time recommending that the fraudulent concealment argument be rejected makes no sense. It stands to reason that with the determination that 'Defendant has not shown that the amended complaint "plainly reveals that [the] action is untimely under the governing statute of limitations,", and the recommendation that the Defendant's motion to dismiss based on the two-year statute of limitations be denied, that the fraudulent concealment argument should proceed. This made no sense.

### B. The Duplication Issue

The so called "Duplication" issue which resulted in the recommendation to dismiss Count II, the fraud claim, because it is duplicative of the breach of contract claim should not be adopted for two reasons. The first reason is that Count II specifically alleges particular frauds in connection to Defendant's conduct of which fraud allegations

are not alleged in the breach of contract allegations found in Count I. The fraud allegations are separate and independent torts of fraud specifically alleged in Count II.

The second reason is that page 55 of the Report states 'Plaintiff also argues that Defendant's fraud based on the allegedly false statements about his wife's lack of authority injured Plaintiff because Plaintiff suffered "emotional distress and headaches" from being "bombarded with questions about the closing of the Posner Center."…**This assertion appears to allege a new injury, different from the injury Plaintiff suffered from the breach of contract**." [emphasis added]. Magistrate Judge Kolar then noted that Defendant's only argument to this newly asserted injury is to "pivot away" from the "duplication argument" and "assert instead that Defendant's alleged misrepresentations about his wife's authority "do not support a fraud given the 'obvious alternative explanation'—that [Defendant] was suffering from Alzheimer's, not that he intended to defraud [Plaintiff]." Magistrate Judge Kolar then went on to correctly reject Defendant's argument stating that "On a motion to dismiss, the Court cannot choose between two alternate explanations if both are "plausible". Magistrate Judge Kolar wrote at page 56 of the Report "Thus, Defendant's futility arguments are not as straightforward as he suggests." It was therefore inappropriate to recommend dismissal of Count II.

C. **Discussion of Events Relative to Fraudulent Concealment**

In addressing the February 2022 letter sent by Defendant's attorney in response to Plaintiff's demand letter in which Defendant's attorney stated: "What you clearly do not know is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheirmer's disease."…Plaintiff also cites the March 2022

7

email from Defendant's wife, in which she too referenced Defendant's mental condition "[d]uring the time [Plaintiff [said] [he] entered into a contract with [Defendant]."[2] The Report then states that "According to Plaintiff, these communications show that Defendant concealed his mental condition from Plaintiff." The Report then goes on to state that this concealment cannot constitute fraudulent concealment for purposes of tolling the statute of limitations. The Report goes on to state that Indiana's fraudulent concealment doctrine tolls a statute limitations only "while a person liable to an action conceals the *cause of action* from the party entitled to bring it."...Thus, a claim of "fraudulent concealment must fail as a matter of law" if, through reasonable diligence, the plaintiff could have discovered the cause of action despite the concealment....(where a plaintiff has "knowledge necessary to pursue a claim," the doctrine does not apply). In particular, the doctrine will not save a contract claim where a defendant has not "concealed from [the plaintiff] the fact that the contract had been breached or prevented him from obtaining the knowledge necessary to pursue a claim, i.e., that the contract had been beached...Defendant's alleged failure to disclose his mental health status when the contract was formed when payment of the alleged promised salary was not forthcoming more than a year later." This is utter nonsense and such nonsense should not be adopted by Judge Springmann. The Defendant's failure to disclose to Plaintiff that he had a mental health condition at the time that Defendant recruited Plaintiff to work for him and

---

[2] In discussing the email from Defendant's wife, the Report neglected to mention that the email also stated that the Defendant "so misled" the Plaintiff and offered to pay Plaintiff $10,000.00 for his "trouble". The definition of "misled" according to Merriam-Webster Dictionary is "to lead in a wrong direction or into a mistaken action or belief often by deliberate deceit." Thus, Magistrate Kolar should not have ignored this crucial evidence of deceit perpetrated by Defendant against Plaintiff as enunciated by Defendant's wife.

at the time the Defendant and Plaintiff entered into the oral agreement was a fraudulent concealment by Defendant and clearly falls within Indiana's fraudulent concealment doctrine.

The report states that"... a claim of "fraudulent concealment must fail as a matter of law" if, through reasonable diligence, the plaintiff could have discovered the cause of action despite the concealment....(where a plaintiff has "knowledge necessary to pursue a claim," the doctrine does not apply), but the Report does not state any information or point to any evidence that would in any way demonstrate that Plaintiff somehow could have discovered the cause of action despite the concealment, but didn't. In point of fact, the evidence is such that Plaintiff could not have known about the concealment of Defendant's alleged mental condition; the evidence demonstrating that the Plaintiff could not have known about the concealment of Defendant's alleged mental condition came by way of a letter from the Defendant's lawyer at the time, Robert Kaufman, dated February 28, 2022, who explicitly stated "**What you clearly do not know** is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's Disease.", a copy of which letter is attached to the amended complaint as Plaintiff's Exhibit "2". (Docket #30). [emphasis added]. Thus, the evidence in the record very clearly demonstrates, by the very statement by Defendant's own lawyer at the time, that Plaintiff, in the words of Defendant's lawyer, "clearly do not know" of the Defendant's alleged mental condition, and the reason Plaintiff didn't know of Defendant's alleged mental condition is because the Defendant concealed it from Plaintiff, and that is a fraudulent concealment, plain and simple. The Indiana Court of Appeals has held that

9

the basis for the doctrine of equitable estoppel is actual or constructive fraud on the part of the person estopped. *Marcum v. Richmond Auto Parts Co.*, 270 N.E.2d 884 (Ind. Ct. App. 1971). In *Marcum*, the court quoted from *Beecher v. City of Terre Haute*, 132 N.E.2d 141, 143 (Ind. Ct. App. 1956) as follows:

> Constructive fraud is fraud which arises by operation of law, "from acts of (a) course of conduct which, if sanctioned by law would, either in the particular case, or in common experience, secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud."...'Fraud, however, may exist without any intention to "do a wrong" as the law itself may, under certain conditions, declare a thing to be fraudulent without a real intention to commit fraud having been found. This is known as constructive fraud, or fraud in law, and may consist of any breach of duty, which, if not relieved against, would operate as a fraud.'" [3]
> The report stated "Defendant's alleged failure to disclose his mental health status

The Magistrate Judge misses the point, the point is that by the Defendant's failure to disclose his alleged mental status to Plaintiff, it was an act of deception concealed from Plaintiff in order to solidify Defendant's efforts to entice Plaintiff to work for him for free via his fraudulent ways, which have now been demonstrated. An employee has a right to be informed of what the working conditions were to be, and when an employer fails to disclose an alleged mental state that could potentially have an adverse impact on the employee's working conditions and whether the employee would be paid, then that employer has committed a fraud. The Magistrate Judge completely missed the point.[4]

---

[3] *Marcum* made clear "Equity will estop a party from setting up the statute of limitations as a defense in an action where such party by fraud or other misconduct has prevented a party from commencing his action or induced him to delay the bringing of his action beyond the time allowed by law. The time for commencing an action governed by the general statutes of limitation may thus be extended."

[4] And now we know that the Defendant duped the Plaintiff into working for him under fraudulent pretenses, we know it because the Defendant didn't list Plaintiff name on the IRS form where the IRS form required Defendant to list the names of "Officers, Directors, Trustees and Key Employees" of the Center. As executive director of the Posner Center, Defendant was obligated to list Plaintiff's name, but didn't.

And in stating "Plaintiff also asserts that Defendant's failure to list his name as an "Officer, Director, Trustee or Key Employee" on the Center's tax form "demonstrates that Defendant defrauded Plaintiff when he hired him. Plaintiff asserts that this "fraud" was recently discovered by him, and "further tolls the statute of limitations. [*Id.*]. Plaintiff also cites to the other instances of alleged "fraud" he sets forth in detail in his motions for judicial notice. [Id.]. But none of the alleged fraud in the judicial notice motions prevented Plaintiff from knowing that the alleged oral employment contract had been breached by Defendant's non-payment of Plaintiff's salary..." Again, the Magistrate Judge misses the point. The missed point being that the Defendant's action of omitting Plaintiff's name from the IRS forms when the forms called for the listing of names of the officials of the Posner Center demonstrates Defendant's fraud from when he deceived Plaintiff into working for him in part as the executive director of the Posner Center, but yet didn't list Plaintiff's name on the IRS form when required to do so. The omission of Plaintiff's name from the IRS form is EVIDENCE of Defendant's fraud when he deceived Plaintiff into working for him, and that fraud is an actionable wrong. It is well settled that fraud may consist of intentional deception, relied upon by another which induces him to part with property or surrender a legal right such as a cause of action. The Indiana Supreme Court has held that in Indiana obtaining a formal release of a cause of action through fraud and deception, constitutes an actionable wrong. *Guy v. Schuldt*, 138 N.E.2d 891 (Ind. 1956). *Guy* also made clear that estopped to plead statute of limitations may arise from the defendant's conduct or even his silence when under an affirmative duty to speak." 53 C.J.S., Limitations of Actions, § 25, pp. 962, 964.

11

With all due respect, it is somewhat disappointing that the Magistrate Judge assumed a somewhat carefree attitude as to Defendant Posner's well documented fraud upon this Court, and fraud upon the IRS, in lightly brushing over this very serious issue.[5] The Defendant, a clear fraudster, as is demonstrated by the evidence, after receiving the kid gloves treatment as to his demonstrated fraud, now cavalierly argues that Plaintiff's fraud claims against the fraudster Defendant should be cast by the wayside. The evidence of Defendant's fraud is well documented, and well briefed, so Plaintiff will not rehash the abundantly well stated details of Defendants fraud here in the interest of brevity.[6] But an appropriate enunciation as to what the Supreme Court of the United States and various appellate courts have weighed in on the issue is in order here under the circumstances.

Lying on official IRS documents is a very serious thing. Lying to a United States District Court is a very serious thing. The evidence is crystal clear that the Defendant, Richard A. Posner, and his enablers, lied to the IRS and have lied, and continue to lie to

---

[5] The Report states at page 17 "It is true that Defendant cited to the tax returns in the statement of facts section of his brief and said they show the Center paid $0 in salaries to employees and staff...But that was before Defendant knew Plaintiff would dispute the information shown on the tax forms." This is a very strange justification. The Defendant was obligated to submit truthful information on the IRS tax forms irrespective of whether he knew that Plaintiff would dispute the information shown on the tax forms. The bottom line is, Defendant lied on the IRS tax forms, and submitted false information on IRS tax forms which is fraud! Further concern of a somewhat lackadaisical attitude about the false information submitted on IRS forms by Defendant is shown in footnote #13 on page 20 of the Report where the Court states "While Plaintiff alleges that he was employed as the "executive director" of the Center, that allegation does not appear to relate to whether he was a member of the company's board of directors..." This is a very concerning statement as the IRS forms were very clear in asking for the names of "Officers, Directors, Trustees and Key Employees" and not simply for names of just board of directors as the Report implies. As executive director Plaintiff's name clearly should have been listed. This is very concerning.

[6] See Plaintiff's response to Defendant's motion to dismiss (Docket #36); Affidavit of Brian Vukadinovich (Docket #37); motion for judicial notice (Docket #38); motion for judicial notice (Docket #40); Plaintiff's reply to Defendant's response in opposition to motion for judicial notice (Docket #43); motion for judicial

this Court. This Court should not, and must not, sit idly by in the face of the Defendant's now well documented lies and allow this Defendant, and his team of lawyers, to perpetrate these lies in their quest of obtaining a judgment from this Court via fraud — and that is exactly what the Defendant and his team of lawyers are attempting to do here, plain and simple. It is well settled that a judgment induced by fraud is void. "A void judgment is one that has been procured by extrinsic or collateral Fraud...." *Rook v. Rook*, 353 S.E. 2d 756 (Va. 1987).

> "We think, however, that it can be reasoned that a decision produced by fraud on the court is not in essence a decision at all, and never becomes final."

*Kenner C.I.R.*, 387 F.2d 689, (7th Cir. 1968; "[D]enying a motion to vacate a void judgment is a per se abuse of discretion." *Burrell v. Henderson, et al.*, 434 F.3d 826, 831 (6th Cir. 2006).

The rules are designed to secure fairness in judicial administration and to promote the growth and development of the law of evidence so that truth may be ascertained and proceedings justly resolved. *Huff v. White Motor Corporation*, 609 F.2d 286 (7th Cir. Ind. 1979). Fraud is "Anything calculated to deceive another to his prejudice and accomplishing the purpose, whether it be an act, a word, silence, the suppression of the truth, or other device contrary to the plain rules of common honesty." 23 AM. J2d Fraud Section 2. The 6th Circuit put it this way:

> "Accordingly, cases require a party seeking to show fraud on the court to present clear and convincing evidence of the following elements: "1) [conduct] on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceive the court."

---

notice (Docket #44); Plaintiff's reply to Defendant's response in opposition to motion for judicial notice (Docket #46).

*Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010); (quoting *Carter v. Anderson*, 585 F.3d 1007, 1011-12 (6th Cir. 2009).

The Seventh Circuit has made clear that if a convincing case of palpable fraud on the court were presented, it is hard to justify a holding that it could not be considered. "Fraud upon the court' should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication". *Kenner v. C.I.R.*, 387 F.2d 689 (7th Cir. 1968); 7 Moore's Federal Practice, 2d ed. p. 512, 60:23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

Taking into context the seriousness at what Defendant Posner and his enablers did in lying to the IRS on official documentation, and advancing the lies directly into these formal court proceedings, Justice Owen Roberts has made it very clear that "No fraud is more odious than an attempt to subvert the administration of justice." *Hazel-Atlas Class Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). Justice Roberts further stated that when members of the bar have knowingly participated in the fraud that *"Remedies are available to purge recreant officers from the tribunals on whom the fraud was practiced."* Defendant Posner is a former officer of the tribunal on whom the fraud was practiced to which his current lawyers are perpetuating the Defendant's fraud by submitting false statements to this Court and submitting Internal Revenue (IRS) documents with fraudulent information to advance their fraudulent arguments. Justice

Roberts went on to state that the resources of the law are ample to undo the wrong and to pursue the wrongdoer, and to do both effectively with due regard to the established modes of procedure. The Supreme Court has made clear that such a proceeding is required by settled federal law, and would be tried, as it should be, in open court with living witnesses. The Supreme Court admonished that the Court should not resort to a disorderly remedy, by disregarding the law as applied in federal courts ever since they were established, in order to reach one inequity at the risk of perpetrating another.

There are no case laws or other legitimate protections that provide cover as to fraudulent conduct by a fraudster Defendant, and quite frankly, the casual attitude of Magistrate Judge Kolar as to the Defendant's demonstrated fraud is tantamount to a "disorderly remedy" —which is disallowed. This Court should now take steps to effect justice and hold the Defendant accountable for his frauds and not allow this Defendant to hide behind caselaws that do not have the legal authority to shield the Defendant from his fraud. As Justice Owen Roberts stated: "Whether the suit concern a decree in equity or a judgment at law, it is for relief granted by equity against an unjust and inequitable result, and is subject to all the customary doctrines governing the award of equitable relief." *Hazel-Atlas Class Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

Defendant Posner and his lawyers simply been caught in their own web of deceit. As the Court stated in *Aoude v. Mobil Oil Corporation*, 892 F.2d 1115 (1st Cir. 1989) "These facts, we believe, bring into play the doctrine in pari delicto." See, e.g., *Pantely v. Garris, Garris & Garris, P.C.*, 180 Mich.App. 768, 447 N.W.2d 864, 868 (1989); *cf. Montplaisir v. Leighton*, 875 F.2d 1, 7-8 (1st Cir.1989); id. at 8 (Aldrich, J.,

concurring). There is not the slightest unfairness in holding Defendant Posner and his lawyers responsible for the bitter fruit of the scheme they undertook to intentionally subvert justice. The Court admonished that

> "[T]ampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.... The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944). All in all, we find it surpassingly difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial process--to combat those who would dare to practice unmitigated fraud upon the court itself. To deny the existence of such power would, we think, foster the very impotency against which the Hazel-Atlas Court specifically warned. *Aoude v. Mobil Oil*, supra.

Defendant Posner and his lawyers' demonstrated penchant for submitting false statements on federal court pleadings to advance false arguments in order to obtain a judgment by such fraud requires this Court to take appropriate action(s). The rules are designed to secure fairness in judicial administration and to promote the growth and development of the law of evidence so that truth may be ascertained and proceedings justly resolved. *Huff v. White Motor Corporation*, 609 F.2d 286 (7th Cir. Ind. 1979).

Because the tangible evidence that has been submitted into the record of this case, of which tangible evidence of fraud has been utilized to advance fraudulent arguments constitute a fraud upon this Court, and further constitutes a fraud upon the Internal Revenue Service (IRS), Plaintiff respectfully submits that this Court needs to take the evidence of fraud that has been submitted to this Court for adjudication into a serious

posture, as we, as a country, cannot, and should not, have to tolerate influential people, including former federal court of appeals judges, perpetrating frauds against the public, and then utilizing creative arguments while hiding behind caselaws as to the issues in the litigation of which caselaws are not designed to protect fraudsters from their wrongful actions. As has been made crystal clear by the Seventh Circuit, if a convincing case of palpable fraud on the court were presented, it is hard to justify a holding that it could not be considered. "Fraud upon the court' should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication". *Kenner v. C.I.R.*, 387 F.2d 689 (7th Cir. 1968); 7 Moore's Federal Practice, 2d ed. p. 512, 60:23. The record very demonstrates that the Plaintiff has indeed presented a convincing case of palpable fraud on this Court (and on the IRS), and it would indeed be hard to justify a holding that it could not be considered. This Court must now do the right thing. *Hazel-Atlas Class Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

      The Defendant has submitted official IRS documents into this litigation of which official IRS documents contain false and fraudulent information as submitted by Defendant and his enablers, and are now trying to tiptoe around Defendant's fraud since Defendant has been caught. Plaintiff submits to this Court that a Defendant who has submitted false and fraudulent information contained on official IRS documents, as Defendant has done here, should not receive favorable dismissal rulings and that such evidence of demonstrated fraud should be brought to the attention of a jury.

## II. CONCLUSION

For all of the foregoing reasons, the Court should decline the Magistrate Judge's recommendation to dismiss Count II, and allow the fraud claims to proceed.

Respectfully submitted,

*Brian Vukadinovich*
Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, Indiana 46392
(219) 956-2462

**CERTIFICATE OF SERVICE**

The undersigned certifies that on July 10, 2023, the foregoing was sent to the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division, via U.S. Postal Service and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the Defendant's below listed counsel of record per agreement to receive such papers via email.

>Justin M. Ellis
>jellis@mololamken.com
>
>Steven F. Molo
>smolo@mololamken.com
>
>Kenneth Notter
>knotter@mololamken.com
>
>David Beach
>dbeach@eichhorn-law.com

*/s/ Brian Vukadinovich*
Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, IN 46392
Tel. (219) 956-2462