

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BRIAN VUKADINOVICH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 2:22-CV-0118-TLS-JPK ) |
| RICHARD A. POSNER, | ) ) |
| Defendant. | ) |

**REPLY TO DEFENDANT'S RESPONSE
TO PLAINTIFF'S MOTION TO STRIKE**

The Defendant's response should be taken with a grain of salt; the response lacks even a scintilla of credibility. How gratuitous of this Defendant to open his response by stating that the Court "may refuse in its discretion" to consider the very incorrectly mischaracterized objections as "untimely" but that Defendant does not oppose having Defendant's objections considered on their merits after blatantly mischaracterizing Plaintiff's objections as "untimely". Only after Plaintiff filed his Rule 12(f) motion to strike, did Defendant's counsel concede that Defendant's counsel's response "misstated" why Plaintiff's objections were untimely in incorrectly stating that Plaintiff had "failed to timely serve the objections", and now, in a new twist, Defendant's counsel argues that Plaintiff "failed to timely file the objections."

The Defendant at footnote 1 of his response discusses how the Defendant offered to stipulate that Plaintiff's objections would be considered on their merits if Plaintiff would withdraw his motion, but Defendant's counsel failed to mention that he threatened

1

that if Plaintiff wouldn't accede to his wishes to withdraw the motion, that the Defendant would then file a motion against Plaintiff's partial objection as being untimely filed. Plaintiff declined to play along with Defendant's threatening tactics. Defendant's counsel well knew Plaintiff's motion had merit and Plaintiff is under no obligation to accede to the distasteful tactics of defense counsel in helping the Defendant's team of lawyers clean up the mess that they themselves created.[1]

And then the Defendant would go on to argue that the motion is procedurally improper, and amazingly then argue that Plaintiff's objections are "still untimely" and that Plaintiff's suggestion for sanctions is frivolous. When this Court analyzes Defendant's actions here it will indeed see that the suggestion for sanctions is most certainly warranted as the Defendant's actions are completely out of line.

### I. RESPONSE TO DEFENDANT'S "ARGUMENT"

#### 1. PLAINTIFF'S MOTION IS PROCEDURALLY PROPER

The Defendant's baseless arguments are becoming concerning. It wasn't enough that when Defendant was taken to task for his baseless argument as to the ill fated argument that Plaintiff "failed to timely serve the objections", to which Defendant's attorneys have conceded was a "mistake" on their part (Docket #72, page 1), Defendant now embarks on yet another ill advised venture in baselessly arguing that Plaintiff's

---

[1] The Defendant, himself a lawyer, is represented by a team of lawyers from three states, New York, Illinois, and Indiana, and it is somewhat hard to fathom that with all of these lawyers that not a single lawyer caught the so called "mistake" in falsely arguing that Plaintiff "filed to timely serve the objections". Be that as it is, the Defendant brought an argument that should never have been brought and Plaintiff had every right to avail Trial Rule 12(f) in addressing the Defendant's insufficient defense in blatantly mischaracterizing the governing rule and statute. And as this Court can clearly see, after initially bringing a false argument as to an "untimely service" issue, of which argument had no credibility whatsoever, Defendant now brings yet another frivolous argument as to "untimely filing" issue.

2

motion is an impermissible reply brief in disguise. Defendant goes on to state that neither the Federal Rules of Civil Procedure nor this Court's Local Rules permit replies in support of objections to a magistrate judge's report and recommendation and then goes on to blatantly mischaracterize Plaintiff's motion to strike as a reply brief "in disguise". That is preposterous. The Defendant apparently believes that he should be allowed to make false arguments and not be held accountable due to some nonexistent restrictions that somehow prevent a party from addressing the false arguments. Plaintiff was fully within his rights to file a Rule 12(f) motion to strike insufficient defense, and he was not required to seek leave to do so. Rule 12(f) of the Federal Rules of Civil Procedure explicitly states that in a motion to strike "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The rule goes on to state that the court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading. There is nothing whatsoever in Rule 12(f) that prevents a party from requesting to the Court that it strike an insufficient defense that was made in a response to a Magistrate Judge's Report. Thus, clearly, Plaintiff was well within his rights to do so under Rule 12(f). And the Defendant, and his team of lawyers, should well know that their argument that Plaintiff somewhat was required to seek leave for his Rule 12(f) motion was a baseless argument, and stating that the motion was "improper" and "may be denied on that ground alone" is completely baseless and frivolous.

In his ill advised legal wrangling, Defendant then preposterously argues that Plaintiff's motion is an improper use of Rule 12(f) erroneously arguing that the Defendant's response to Plaintiff's objection is not a "pleading" and thus not subject to a motion to strike under Rule 12(f).[2]

As for the ridiculousness within Defendant's footnote 2, the diatribe is not worthy of discussion as Defendant simply attempts to muddy the issues with nonsense. Defendant inappropriately stated to this Court that Magistrate Judge Kolar "rejected" Plaintiff's arguments, when in reality Magistrate Judge Kolar made clear that the Court "will not disregard those arguments entirely, as Defendants suggests the Court should do." Defendant once again is not entirely honest with this Court. Be that as it is, the issues addressed by Magistrate Judge Kolar did not involve issues surrounding a Rule 12(f) motion to strike insufficient defense and the interjection of footnote 2 is essentially irrelevant to the central issue of the Rule 12(f) motion that is before the Court. The Defendant's actions should not be well taken.

## II.  PLAINTIFF'S MOTION SUCCEEDS ON THE MERITS

Defendant very incorrectly argues that even if procedurally proper, that Plaintiff's motion to strike fails on the merits. In a new twist Defendant now complains that Plaintiff's objections were "untimely". In Defendant's initial argument he incorrectly

---

[2] Defendant cites *Swoope v. Gary Cmty. Sch. Corp.*, No. 2:10-cv-423, 2015 WL 1443172, at *2 (N.D. Ind. 2015), in falsely stating to this Court "(denying motion to strike brief as improper)". This was a false representation to this Court; in point of fact Magistrate Judge Andrew P. Rodovich granted the motion to strike —contrary to what Defendant and his lawyers misrepresented to this Court. (Docket #72, page 2). This false statement would be yet another Rule 11 violation by Defendant and his team of lawyers. Furthermore, nowhere in *Swoope* does the Court state that an objection is not a "pleading" and thus not subject to a motion to strike under Rule 12(f) as Defendant implies in citing *Swoope*. *Swoope* does not address this issue at all, and Defendant's conduct in such misrepresentation should be dealt with.

argued, and after taken to task with his incorrect argument, he admitted that his position in wrongfully arguing that that Plaintiff "failed to timely serve the objections", was a "mistake" on their part (Docket #72, page 1). And now Defendant amazingly chooses to stretch that baseless argument out to continue the ill advised legal wrangling to the point of even further advancing a baseless argument that Plaintiff did not timely "file" his partial objection with the Court. The game Defendant is playing here is very ill advised in completely ignoring and twisting of the explicitly stated requirements of both 28 U.S.C. §636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure of which both make crystal clear that the tolling period begins within 14 days after being **"served"** with a copy of the magistrate judge's recommendations. [emphasis added].

    The Defendant and his team of lawyers blatantly and egregiously misconstrue and mischaracterize the explicitly stated requirements set forth in both 28 U.S.C. §636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure by stating to this Court that Plaintiff's partial objection was due to be filed within 14 days of the June 21 date that the magistrate judge's Report was mailed; Defendant argues that if the Report was mailed on June 21 then Plaintiff's partial objections were due for filing 14 days later on July 5 —but that is not the rule. The rule is crystal clear that the 14 day tolling period begins after being "served", and because Plaintiff was served with the Report on June 26, the 14 day tolling began on the next day on June 27 and his partial objections were then consequently due 14 days later on July 10, on which date Plaintiff mailed his partial objections to the clerk's office of which partial objections were docketed on July 12, which was a timely filing when Rule 6(d)'s allowance for three additional days to respond

to service by mail is taken into account. Thus, Plaintiff's filing of his partial objection was timely filed with actually one day to spare as July 13 would have been the correct computation when taking the three additional days to respond by mail is taken into account under Rule 6(d). Plaintiff's filing was clearly timely filed under the governing rules and this Court should outright reject Defendant's skullduggery in this matter. No amount of creativity conjured up by Defendant changes the reality that Plaintiff's partial objection was timely filed, even with a day to spare when the three additional days to respond by mail is taken into account under Rule 6(d) under any conceivable scenario conjured up by Defendant and his team of lawyers. Defendant and his team of lawyers are exhibiting the lowest form of legal wrangling. The actions here by Defendant and his team of lawyers has bad faith written all over it.[3]

---

[3] The Defendant and his team of lawyers state that Plaintiff claims "with no support" that his papers were timely because he received the Report on June 26 and further attacked Plaintiff's claim of receiving the Report on June 26 as "dubious" because as the Defendant "understands from the Clerk's Office that court orders such as the report and recommendation are typically mailed out to pro se litigants the day they are entered on the docket." Plaintiff takes exception to such an unfounded and baseless insinuation insinuating that Plaintiff is being untruthful about when he received the Report in the mail. Unless the Defendant and his team of lawyers have any evidence to back up such an insinuation, they should not be making such ridiculously unfounded and baseless accusations. As for the Defendant's so called "understanding" that "from the Clerk's Office that court orders such as the report and recommendation are typically mailed out to pro se litigants the day they are entered on the docket", Defendant has shown no evidence that the Report was actually mailed on that date (June 21) which Defendant could easily have learned if he really wanted to know since Defendant indicated in the accusation that this was his understanding "from the Clerk's Office". While it may be typical for such documents to be mailed out on the date of being entered on the docket, this is not necessarily always the case as clerk's often do not actually mail out the documents until the next day or even a couple of days later. The Magistrate Judge's Report consisted of 59 pages and was a heavy envelope. Plaintiff would venture to say that if this Court chose to inquire of the Clerk's Office as to the date that the 59 page Report was actually mailed, that it very well may have been mailed on a date shortly after June 21. In any event, it was a 59 page Report and didn't arrive in the mail until June 26, and that is not an unreasonable or unusual time period for the U.S. Postal Service to deliver such a heavy large envelope. The Defendant and his team of lawyers are out of line in accusing Plaintiff's claim of delivery of the document to be June 26 to be "dubious". And since the Defendant and his team of lawyers are arguing that there is "no support" for Plaintiff's claims, where is the "support" to back up Defendant's misguided and unfounded accusations? Defendant and his team of lawyers are on a very slippery slope in how they are proceeding which they will learn the hard way when this case makes its way to a jury trial as a jury will undoubtedly see right through the Defendant's and his team of lawyers' chicanery —that is a given.

And then to top off Defendant's and his team of lawyers' penchant for skullduggery, Defendant and his team of lawyers stoop even lower into the sewer by having the audacity to state to this Court that Plaintiff's claim that his papers were timely filed because he received the Report on June 26 is "dubious". Defendant and his team of lawyers make this absurd insinuation stating 'By the afternoon of June 22, Mr. Vukadinovich had already reviewed Judge Kolar's Report in sufficient detail to tell Reuters that he planned to "object to the recommendation that the fraud claim be dismissed." Jacqueline Thomsen, "Court says former Judge Posner should face some claims in wage fixing case," Reuters (June 22, 2023), bit.ly/3NLerHp. And then Defendant and his team of lawyers argue that regardless when Plaintiff received the Report is "irrelevant"; all that matters is when the Clerk mailed the Report in citing *Khor Chin Lim v. Courtcall Inc.*, 683 F.3d 378, 380 (7th Cir. 2012).[4]

It is sad that the Defendant and his team of lawyers have such a disdain for the governing rules, i.e., Federal Rules of Civil Procedure, in arguing that because Plaintiff told Reuters on June 22 that he had planned to object to the recommendation that the fraud claim be dismissed in stating that 'Mr. Vukadinovich had already reviewed Judge Kolar's Report in sufficient detail to tell Reuters that he planned to "object to the recommendation that the fraud claim be dismissed."' Plaintiff does not have Pacer so he

---

[4] In *Khor*, the central issue was the plaintiff's intentional avoidance of service where the court held that plaintiff's avoidable failure to actually read the notice was no excuse. The court held that it was not aware of any authority holding that a litigant may defer "receipt" of a document by failing to open the envelope containing it. The Plaintiff in the instant case has no history of deferring receipt of court documents by failing to open the envelopes containing the documents. Plaintiff is very diligent about promptly opening envelopes sent by the Court, and any insinuation to the contrary by Defendant and his team of lawyers is poppycock, and they know it.

7

does not have immediate access to court filings. However, there are times that people who have such access to information of court filings may contact Plaintiff. In any event, the Defendant and his team of lawyers are completely out of line in arguing that comments made to a major news organization such as Reuters in some way constitutes service of a court order. Nowhere within any federal rules of procedure or statutes is there any support for such a misguided proposition. 28 U.S.C. §636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure of which both make crystal clear that the tolling period begins within 14 days after being "served" with a copy of the magistrate judge's recommendations; this statute and this rule makes no allowance whatsoever for a deviation from these authorities if there is a conversation between a litigant and major news organization such as Reuters. The governing rules are the governing rules whether this Defendant likes it or not, and we know this Defendant doesn't like to follow rules because he publicly proclaimed his disdain for rules when he told the New York Times "I pay very little attention to legal rules, statutes, constitutional provisions," and "When you have a Supreme Court case or something similar, they're often extremely easy to get around." An Exit Interview With Richard Posner, Judicial Provocateur - The New York Times (nytimes.com). In another interview on March 7, 2018, with Legal Talk Network, the Defendant characterized himself as a "maverick" and publicly proclaimed his disdain for rules and tradition when he stated "Well, I am a maverick, and I don't really like rules, I don't like tradition." https://legaltalknetwork.com/podcasts/chicago-bar/2018/03/the-ill-be-dreaming-about-donkeys-edition-an-interview-with-judge-richard-posner-ret/.[5]

---

[5] One of the Defendant's lawyers in this litigation, Justin Ellis, who is leading the charge with respect to the

While this Defendant conducted himself in a shameful and disgraceful manner by publicly declaring his disdain for governing rules, statutes and constitutional provisions, notwithstanding his sworn oath to follow and enforce them as a judge, he should not now as a citizen defendant expect that this Court should follow his shameful and disgraceful lead, and Plaintiff is quite confident that this Honorable Court will not do so.

And this Defendant's disdain for legal rules, statutes, constitutional provisions and Supreme Court precedents, unfortunately, doesn't stop there, this Defendant has further gone on public record in stating a judicial ruling need not "be supported by 'reason'" and that most "legal technicalities" are "antiquated crap." https://lawliberty.org/features/the-mystery-of-richard-posner/.

And to put this Defendant's indifferent attitude in context with respect to his current conduct in this matter as heretofore addressed, this Defendant in a youtube presentation in September 2008 titled "Let Us Never Blame a Contract Breaker" showed his casual attitude about breach of contract at the 32:39 mark of the presentation; stated that he doesn't want to see moral reasoning brought into contracts at the 49:43 mark of the presentation; stated that judges are confused by "moral language" at the 58:57 mark of the presentation, and very disturbingly stated 'I don't think fair, the word "fair" has any content at all.'" at the 59:31 mark of the presentation. <u>Fault in Contract Law: Richard Posner, "Let Us Never Blame a Contract Breaker" - YouTube</u>.

---

baseless and frivolous arguments in this matter, and even calling Plaintiff's claim of receiving the Magistrate Judge's Report in the mail from the Court on June 26 as "dubious", was a research assistant to the Defendant.

## III. PLAINTIFF'S SUGGESTION FOR SANCTIONS IS PROPER

The Defendant and his team of lawyers have gone overboard in several different instances in making false statements and false arguments to this Court, all of which are well documented as previously addressed, and in fact, Defendant and his team of lawyers continued to bring false arguments even in their latest filing, i.e., Docket #72, where the Defendant and his team of lawyers continued with their false arguments in very incorrectly arguing that Plaintiff did not timely file his partial objections to the Report and even insinuated that Plaintiff's claim of receiving the Report on June 26 was "dubious", but without any information whatsoever to back up such a misguided and unfounded and cheap accusation. In the interest of brevity Plaintiff will not inundate this document with Defendant's prior instances of sanctionable conduct such as with his false and fraudulent arguments as to the false information that Defendant and his enablers submitted to the Internal Revenue Service (IRS) as such sanctionable conduct is already well documented in this litigation.

Defendant and his team of lawyers, after bringing a false argument and taken to task for it, and forced to acknowledge that their argument as to the service issue was inappropriate, now use the excuse that their arguments were "warranted by existing law, even if there was an error in the legal analysis supporting those claims." (Docket #72, page 5). Rule 11(b)(1)(2)(3) makes it clear that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

Clearly, there was no "reasonable inquiry" by any of the Defendant's multi state lawyers as to the "legal analysis" supporting their erroneous claims as to the governing rule as to the service issue to which they now would like to casually act as though it never happened, but admitting when taken to task that they committed "an error in the legal analysis supporting those claims." (Docket #72, page 5).

Clearly there was no "reasonable inquiry" by any of the Defendant's multi state lawyers as to the false arguments made to this Court regarding the false information that Defendant and his enablers submitted to the Internal Revenue Service by falsely stating to this Court that no Posner Center employers were paid a salary.

Clearly there was no "reasonable inquiry" by any of the Defendant's multi state lawyers as to the false arguments made to this Court wherein the Defendant's lawyers falsely stated "(denying motion to strike brief as improper)" in their citing of *Swoope v. Gary Cmty. Sch. Corp.*, No. 2:10-cv-423, 2015 WL 1443172, at *2 (N.D. Ind. 2015), as

11

the Magistrate Judge, Andrew P. Rodovich, actually granted the motion to strike — contrary to what Defendant and his lawyers misrepresented to this Court. (Docket #72, page 2).

Clearly, there was no "evidentiary support" shown by any of the Defendant's multi state lawyers as to the unfounded and baseless accusation that Plaintiff's claim that he didn't receive the Magistrate Judge's Report in the Mail until June 26 was "dubious". (Docket #72, page 4).

Clearly following up with a baseless argument that Plaintiff's partial objections to the Report was untimely was a clear form of harassment after Plaintiff declined to accommodate the Defendant's lawyers request for a joint stipulation after Plaintiff took Defendant and his lawyers to task for bringing the false arguments as to the service issue.

Defendant and his team of lawyers then go on to incorrectly argue that Plaintiff has "blatantly ignored the procedural requirements for Rule 11 motions because he did not make a separate motion and that he did not first serve the motion giving the Defendant and his team of lawyers 21 days advance notice. Defendant's argument holds no water as the "Notes of Advisory Committee on Rules-1983 Amendments" demonstrate that Courts indeed have the discretionary authority to enter Rule 11 sanctions sua sponte. The Advisory Committee makes clear that Courts currently believe they may impose sanctions on their own motion. *See North American Trading Corp. v. Zale Corp.*, 73 F.R.D. 293 (S.D.N.Y. 1979). The Advisory Committee wrote that the "authority to do so has been made explicit in order to overcome the traditional reluctance of courts to intervene unless requested by one of the parties. The detection and

12

punishment of a violation of the signing requirement, encouraged by the amended rule, is part of the court's responsibility for securing the system's effective operation. If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both." The Advisory Committee further wrote that courts have claimed the power to impose sanctions on an attorney personally, either by imposing costs or employing the contempt technique. See 5 Wright & Miller, Federal Practice and Procedure: Civil § 1334 (1969); 2A Moore, Federal Practice 11.02 at 2104 n. 8. The Advisory Committee went on to make clear that "The amended rule should eliminate any doubt as to the propriety of assessing sanctions against the attorney. Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client."

During the August 2, 2023 telephone call with one of Defendant's lawyers, Justin Ellis, Mr. Ellis told Plaintiff that he wasn't at all worried about being sanctioned by the Court. Perhaps therein lies the problem as Mr. Ellis and the Defendant's team of other lawyers feel they are Teflon and can do whatever they want, be damned with the rules. The Defendant and his team of lawyers are out of control; the record is replete with their Rule 11 violations. This Court has the authority to on its own motion impose appropriate sanctions against the Defendant and his team of lawyers for their egregious and ongoing Rule 11 violations, and it has a substantial basis do so, and justice suggests that it do so. *North American Trading Corp. v. Zale Corp.*, 73 F.R.D. 293 (S.D.N.Y. 1979).

Defendant and his team of lawyers conclude by arguing that the sanctions requested by Plaintiff are "wildly disproportionate to the dispute involved" and that sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." The Defendant and his team of lawyers are their own worst enemy in this regard because the Defendant and his team of lawyers after initially bringing false argument as to the "service" issue, then followed up by further harassing Plaintiff with an argument as to a conjured up "filing" issue as a form of harassment against Plaintiff because he declined to accommodate the Defendant and his team of lawyers with a joint stipulation after Plaintiff took them to task for their wrongful arguments, and Defendant and his team of lawyers were upset that they were caught and upset that they weren't able to intimidate the Plaintiff into acceding with their wishes in a classic power play attempt by Defendant and his team of lawyers, as Justin Ellis threatened Plaintiff in a telephone call on August 2, 2023, that if Plaintiff didn't accede to their wishes, that they would bring a further argument as to a "filing" issue, which they have in fact done, and of which arguments are equally as baseless as the initial argument as to the "service" issue. Sanctions are clearly in order to deter such repetitious wrongful conduct.

## IV. CONCLUSION

The Court should summarily overrule the Defendant's response to Plaintiff's motion to strike, and grant Plaintiff's motion to strike the insufficient defenses, and it should impose appropriate sanctions against the Defendant and his team of lawyers for the aforementioned Rule 11 violations in the interest of justice.

Respectfully submitted,

*/s/ Brian Vukadinovich*
Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, Indiana 46392
(219) 956-2462

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 12, 2023, the foregoing was sent to the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division, via U.S. Postal Service and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the Defendant's below listed counsel of record per agreement to receive such papers via email.

>Justin M. Ellis
>jellis@mololamken.com
>
>Steven F. Molo
>smolo@mololamken.com
>
>Kenneth Notter
>knotter@mololamken.com
>
>David Beach
>dbeach@eichhorn-law.com

*/s/ Brian Vukadinovich*
Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, IN 46392
Tel. (219) 956-2462