

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BRIAN VUKADINOVICH,                    )
                                       )
            Plaintiff,                 )
                                       )
    v.                                 )          CASE NO. 2:22-CV-0118-TLS-JPK
                                       )
                                       )
RICHARD A. POSNER,                     )
                                       )
            Defendant.                 )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS FOR PERJURY COMMITTED BY DEFENDANT'S ATTORNEY JUSTIN M. ELLIS

Plaintiff, Brian Vukadinovich, pro se, submits this memorandum of law in support of his motion for sanctions against Defendant's attorney, Justin M. Ellis, for the crime of perjury as has been clearly shown via his false statement made under penalty of perjury.

### I.  FACTUAL HISTORY

In Defendant's Memorandum in Support of Phased Discovery, one of Defendant's attorneys, Justin M. Ellis, submitted an affidavit fashioned as "Declaration of Justin M. Ellis in Support of Phased Discovery" (Docket #86-1). Mr. Ellis' "Declaration" contained a statement where Mr. Ellis explicitly stated "under penalty of perjury" in item number 6 of the affidavit **"A search of the Gmail account shows that Plaintiff last sent an email to Defendant on May 21, 2019.** (Docket # 86-1, page 2). Mr. Ellis stated **"I declare under penalty of perjury that the foregoing is true and correct."** (Docket # 86-1, page 3). [emphasis added]

1

Mr. Ellis further referred to the statement from his "Declaration" in the Defendant's memorandum in support of phased discovery stating **"Plaintiff's last email to Defendant was on May 21, 2019, two months before his job supposedly ended. Ellis Decl. ¶¶ 5-6."** (Docket # 86, page 3). [emphasis added]. The aforementioned statement by Mr. Justin M. Ellis was in relation to Defendant's arguments on statute of limitations in support of Defendant's request for phased discovery.[1]

Because the statement in Mr. Justin M. Ellis' affidavit was false, Plaintiff informed the Court of its falsity and made an oral motion at the Rule 16 Conference that the Court take judicial notice of an email that Plaintiff sent to the Defendant on November 11, 2020, requesting payment for his services, but Magistrate Judge Kolar refused to accept the copy of the email that Plaintiff attempted to tender to the Court, and refused to take judicial notice as Plaintiff requested, and then abruptly ended the Rule 16 Conference, and the parties left the courtroom.

As Plaintiff was preparing to leave the building a Marshal approached Plaintiff and informed him that Magistrate Kolar wanted the parties to come back to the courtroom. Plaintiff and Defendant's lawyers came back into the courtroom and Magistrate Kolar indicated that he read the email in chambers and the email supported Plaintiff's position against the Defendant's statute of limitations position, and stated that

---

[1] It should be noted that Defendant Posner has publicly boasted about his disregard for legal rules, statutes and constitutional provisions, and Supreme Court precedents when he told the New York Times "I pay very little attention to legal rules, statutes, constitutional provisions," and "When you have a Supreme Court case or something similar, they're often extremely easy to get around." An Exit Interview With Richard Posner, Judicial Provocateur - The New York Times (nytimes.com). Under the circumstances of Mr. Justin M. Ellis' crime of perjury here, it should be noted that Justin Ellis was a research assistant to the Defendant Posner at the Seventh Circuit.

he would enter the email into the record. He did not state whether or not he would take judicial notice of the date of the email and the text of the email as Plaintiff had earlier requested when the magistrate judge refused to do so. Magistrate Judge Kolar told Mr. Ellis that he could proceed with discovery regarding statute of limitations but not Plaintiff's deposition for the time being. Plaintiff stated to the magistrate judge that this would prejudice the Plaintiff and that his decision to allow such one sided discovery was in disregard of the precedent from this district as enunciated in *Albert's Diamond Jeweler's, Inc., v. Aaland Diamond Jewelers, LLC,* Case No. 2:23-CV-39 JD (September 27, 2023) by Chief Judge DeGuilio, but to no avail, notwithstanding that this was the law of this district as written by the Chief Judge of the Northern District of Indiana, Honorable Jon E. Deguilio, and notwithstanding that Magistrate Judge Kolar had tangible evidence in his hands that Defendant's attorney, Justin M. Ellis, committed a very serious act of perjury on an affidavit directly related to the statute of limitations issue.

## II.  PENALTY OF PERJURY

Declaration under penalty of perjury is a statement of facts or testimony accompanied by the declaration that the person making the statement will be found guilty of perjury if the facts declared in the statement are shown to be untrue. A person will be guilty of perjury if they submit false testimony to the court, either orally or in writing, and the false testimony is material to the matters before the court. The person must have acted with knowledge that the testimony was false.

A declaration under penalty of perjury typically follows such language: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct." A declaration made under penalty of a

perjury can be a signed written statement, such as an affidavit. Such a written statement

need not be verified by oath or affirmation orally before the court if it contains the signed

declaration that it is made under the penalties of perjury. The person presenting the

statement submits themselves to be being charged with perjury and subject to the

penalties assessed against a person found guilty of perjury if the statement is false. A

declaration made under the penalties of perjury carries the same force and consequences

as a sworn statement submitted under oath.

https://www.law.cornell.edu/wex/declaration_under_penalty_of_perjury.[2]

### III.   18 U.S. CODE § 1621

18 U.S. CODE § 1621 governs that false statements made under penalty of

perjury are crimes punishable by imprisonment. 18 U.S. CODE § 1621 explicitly states:

Whoever,

**(1)**
having taken an oath before a competent tribunal, officer, or person, in any case in which
a law of the United States authorizes an oath to be administered, that he will testify,
declare, depose, or certify truly, or that any written testimony, declaration, deposition, or
certificate by him subscribed, is true, willfully and contrary to such oath states or
subscribes any material matter which he does not believe to be true; or

**(2)**
in any declaration, certificate, verification, or statement under penalty of perjury as
permitted under section 1746 of title 28, United States Code, willfully subscribes as true

---

[2] According to Cambridge Dictionary the definition of perjury is "The crime of telling a lie in
court after promising formally to tell the truth."
https://dictionary.cambridge.org/us/dictionary/english/perjury

any material matter which he does not believe to be true; is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States. https://www.law.cornell.edu/uscode/text/18/1621.

## IV. ARGUMENT

This Court has before it tangible evidence of perjury on the part of Defendant's attorney, Justin M. Ellis, in the form of an affidavit signed and submitted by Justin M. Ellis, stating to this Court in relevant part in speaking to the Defendant's Gmail account in item number 6 of the affidavit "A search of the Gmail account shows that Plaintiff last sent an email to Defendant on May 21, 2019. (Docket # 86-1, page 2). This statement was made under penalty of perjury as Mr. Ellis stated "**I declare under penalty of perjury that the foregoing is true and correct.**" (Docket # 86-1, page 3) [emphasis added].[3]

The statement was of course not true as the record demonstrates that Plaintiff sent an email to Defendant on November 11, 2020, requesting payment for his services. Magistrate Judge Kolar is well aware of the significance of this email as it was the subject of a very heated discussion at the Rule 16 Conference on December 14, 2023, when Plaintiff requested that the magistrate judge take judicial notice of the email to which the magistrate judge would not do at the time Plaintiff attempted to have it admitted into the record —and then abruptly ended the Rule 16 Conference.

---

[3] The perjured statement was to buttress the false statement made in Defendant's memorandum in support of phased discovery, i.e., "Plaintiff's last email to Defendant was on May 21, 2019, two months before his job supposedly ended." of which false statements were designed to support fraudulent arguments as to the statute of limitations issue. (Docket # 86, page 3).

In a very strange turn of events, after the magistrate judge abruptly ended the Rule 16 conference, and all of the parties left the courtroom, a marshal approached Plaintiff downstairs as Plaintiff was getting ready to leave the courthouse and told Plaintiff that the magistrate judge wanted the parties back in the courtroom. Magistrate Judge Kolar then indicated that he read the email and after further discussion went ahead and admitted it into the record. There was discussion about why Plaintiff didn't provide a copy of the email to Defendant's lawyers prior to presenting it to the Court at the Rule 16 Conference and the magistrate judge insinuated to Plaintiff that even though Plaintiff was not required to provide the document to the Defendant's lawyers as yet as discovery had not yet commenced, that going forward he would look at the issues in the case in a more negative light against Plaintiff.[4] It is more than clear that what was going on was very unjust and the judicial scales of supposed "justice" were not at all fairly balanced in Magistrate Kolar's courtroom during the Rule 16 Conference.

It is troubling that Magistrate Judge Kolar initially was so hesitant to accept the copy of the email that demonstrated perjury by Defendant's attorney Justin M. Ellis, and even after calling the parties back into the courtroom after he had abruptly adjourned the Rule 16 conference, he went ahead and acceded to the wishes of Defendant's attorney Justin M. Ellis and granted his wish for bifurcated discovery, which of course was a gift, as now, due to Magistrate Judge Kolar's abuse of discretion, while choosing to disregard

---

[4] While Magistrate Kolar inappropriately chastised Plaintiff for not previously providing the document to Defendant's lawyers, even though Plaintiff was not required to do so as discovery had not yet commenced, he did not at all take issue with the Defendant's lawyer, Justin M. Ellis, for submitting a false statement which was made under penalty of perjury and used to buttress fraudulent arguments as to the statute of limitations issue.

6

the precedent from this district in *Albert's Diamond Jeweler's, Inc., v. Aaland Diamond Jewelers, LLC, Id.,* a perjurer attorney, Justin M. Ellis, gains a very unfair advantage in the litigation with one sided discovery. But unfortunately for this perjurer attorney, the Seventh Circuit in *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014 in citing the Supreme Court decision of *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) made it very clear that "perjury is among the worst kinds of misconduct" and that a litigant's misconduct can justify a default judgment. And we certainly have that here with Defendant's attorney Justin M. Ellis' perjured statement under penalty of perjury. In *Rivera v. Drake, Id.,* the Seventh Circuit admonished "If perjury pays benefits when it escapes detection, but has no cost when detected, there will be far too much perjury and the accuracy of judicial decisions will be degraded." And in making this very important point the Seventh Circuit then went on to say "We therefore will send copies of this opinion and the case file to the United States Attorney for the Eastern District of Wisconsin, who may wish to consider prosecuting Rivera for the crime of perjury. 18 U.S. C. § 1621." The remaining question now is, will this Court ultimately do the right thing and follow the law and precedent and take appropriate action against this perjuring attorney by referring this attorney's crime of perjury to the United States Attorney for consideration of prosecution for the crime of perjury under 18 U.S. C. § 1621? We will see.

7

## V.  THIS CASE IS REPLETE WITH MISREPRESENTATIONS AND FRAUDULENT ARGUMENTS SPEARHEADED BY THE PERJURING ATTORNEY JUSTIN M. ELLIS IN ADDITION TO HIS CRIME OF PERJURY

In *Rivera v. Drake, Id.,* the Seventh Circuit took significant steps to reign in the guilty perjurer including referring his misconduct for the crime of perjury to the United States Attorney for possible prosecution.  The Seventh Circuit stated "We take these steps in part because Rivera has made deceit the norm in this litigation."  So too has Defendant's attorney, Justin M. Ellis, and his fellow associates who have signed their names to documents in this litigation "made deceit the norm in this litigation."  The Defendant's attorney, Justin M. Ellis, and his associates, have falsely stated to this Court that no employees of the Posner Center were paid a salary.  In two separate filings with this Court Justin M. Ellis, and his associates falsely stated that the Center "never paid any employee a salary" (Docket #22, page 7 & Docket #34, page 8) and utilized IRS tax returns containing false information to wrongfully buttress fraudulent arguments to this Court to try to mislead this Court into believing that no employees were paid a salary by pointing this Court to IRS tax returns falsely purporting that the Center paid "$0 in salaries to employees and staff in either year" of 2018 and 2019.[5]

---

[5] In support of the false statement that the Center never paid any employees or staff a salary, the Defendant filed with this Court copies of IRS tax returns purporting that the Center paid $0 in salaries to employees. and staff either in 2018 or 2019. (Docket #22, pages 9 and 12 & Docket #34, page 12).  Lying to the IRS and providing false information that was submitted to the IRS to buttress false arguments to a federal court clearly is against public policy and clearly is against societal interests.  The relevant information would be unearthed in discovery and it is unfortunate that Magistrate Judge Kolar disregarded precedents and acceded to Defendant's attorneys wishes to delay or otherwise prevent Plaintiff from obtaining this crucial information by way of the recent decision to curtail Plaintiff's discovery rights.

8

Submitting false information to the IRS is against public policy, and make no mistake about it, the Defendant submitted false information to the IRS, and Defendant's lawyers with perjuring attorney Justin M. Ellis aiding and abetting the misrepresentations to this Court when Justin M. Ellis purported that the Center "never paid any employee a salary" and furthermore in speaking as to tax information filed with the IRS stated to this Court "Those returns state that the Center paid $0 in salaries to employees and staff in either year." These were blatant false and fraudulent misrepresentations because Joyce Hutchens, an employee of the Posner Center, was paid a salary of several thousands of dollars a month as the Posner Center's research director. The falsehood of Defendant's attorney, Justin M. Ellis, and his associates' misrepresentations to this Court, and Defendant and/or his enablers' submission of false information to the IRS is demonstrated in Defendant's "Exhibit C" of their memorandum of which document explicitly shows that a "A settlement of $8,020.00 was paid to a former employee of the Center." (Docket #34-1, page 1). The "former employee" was Joyce Hutchens, who was in fact a paid employee who earned several thousand dollars a month as the Posner Center's research director. The $8,020 stated in the document was for back wages after Ms. Hutchens threatened to sue Defendant Posner for unpaid back wages.[6]

---

[6] The Defendant likes to call this blatant lie, a "disagreement" but the Defendant has not in any way even attempted to explain that this lie is not a lie but a "disagreement". This Court may rest well assured that discovery, if Plaintiff is allowed to pursue discovery, will unearth evidence that Defendant's statements to this Court and information provided to the IRS were lies. This information will be front and center at the trial.

Lying on official IRS documents is a very serious thing. Lying to a United States District Court is a very serious thing. The evidence is crystal clear that the Defendant, Richard A. Posner, and his enablers, lied to the IRS, and his attorneys, led by the documented perjurer Justin M. Ellis, continue to lie to this Court. This Court should not, and must not, sit idly by in the face of the Defendant's now well documented lies and allow this Defendant, and his team of lawyers, led by the documented perjurer Justin M. Ellis, to perpetrate these lies in their quest of obtaining a judgment from this Court via fraud — and that is exactly what the Defendant and his team of lawyers have been doing here, plain and simple. And the recent action of Magistrate Judge Kolar in acceding to the wishes of the Defendant and his team of lawyers in granting one phase discovery to them to their benefit, and by ignoring the precedent from this district in *Albert's Diamond Jeweler's, Inc., v. Aaland Diamond Jewelers, LLC, Id.,* no less, and in the face of the perjured affidavit by Mr. Justin M. Ellis, does not speak well at all as to the integrity of these proceedings undertaken by Magistrate Judge Kolar. Indeed documented perjurer Justin M. Ellis has made deceit the norm in this litigation. This Court should now step in and correct the grave miscarriage of justice that is currently taking place by Magistrate Judge Kolar and overrule his ruling on the phasing of discovery issue which was a clear abuse of discretion in every way. Magistrate Judge Kolar took no heed to Chief Judge DeGuilio's admonishment that "Bifurcation is the exception, not the rule." *See Real v. Bunn-O-Matic Corp.,* 195 F.R.D. 618, 620 (N.D. Ill. 2000) and further made clear that "A court should order separate trials only in extenuating circumstances." *See Id.* At 621.

See also *Gaston v. Hazeltine*, Case No. 3:21-CV-896 JD (August 30, 2022). There are no

extenuating circumstances here, this is a straightforward breach of contract case and the

impediments caused by the magistrate judge's erroneous decision giving one sided

discovery to the Defendant in potentially preventing Plaintiff from his entitled rights to

discovery has serious implications to the Seventh Amendment. In utilizing a common

sense approach, Judge DeGuilio admonished that bifurcation "would result in more

contentiousness in the discovery process, forcing the Court to review discovery requests

to determine which issue is applicable." *BASF Catalysts*, 2009 WL 523123, at \*4. Judge

DeGuilio found that bifurcation "would not increase efficiency or aid in the speedy

adjudication" of the trial and found that the potential proliferation of discovery disputes

weights against bifurcation. Bifurcation in the instant case likewise would not increase

efficiency or "aid in the speedy adjudication" of the trial —as Judge DeGuilio

admonished should happen— bifurcation would actually **delay** adjudication of the trial

—something that Judge DeGuilio admonished should **not** happen. What Magistrate

Judge Kolar did in acceding to the documented perjurer's wishes is effectively giving

new meaning to the axiom "justice delayed is justice denied"! The perjury committed by

Mr. Justin M. Ellis was designed to convince this Court to believe that there is a statute of

limitations problem with Plaintiff's case and therefore Plaintiff should have to take a

back seat to discovery. There is no problem with statute of limitations as this Court will

see in due course once the false statements, false representations, and perjury is cast by

the wayside. The documented perjury should not have been allowed to stand in the

Plaintiff's rights to discovery, and Plaintiff should now be permitted to conduct discovery

11

in a fair and even handed manner, not in a one way manner as ordered by Magistrate

Judge Kolar in favor of the documented perjurer Justin M. Ellis' request. "**Mutual**

knowledge of all the relevant facts gathered by both parties is essential to proper litigation."

*Hickman v. Taylor*, 329 U.S. 495, 507 (1947). [emphasis added]. "**Discovery, in other words, is**

**not a one-way proposition.** *Hickman v. Taylor, Id.* [emphasis added].[7]

It is well settled that a judgment induced by fraud is void. "A void judgment is

one that has been procured by extrinsic or collateral Fraud...." *Rook v. Rook*, 353 S.E. 2d

756 (Va. 1987). "We think, however, that it can be reasoned that a decision produced by

fraud on the court is not in essence a decision at all, and never becomes final."

*Kenner C.I.R.*, 387 F.2d 689, (7th Cir. 1968; "[D]enying a motion to vacate a void
judgment is a per se abuse of discretion." *Burrell v. Henderson, et al.*, 434 F.3d 826, 831
(6th Cir. 2006).

The rules are designed to secure fairness in judicial administration and to promote

the growth and development of the law of evidence so that truth may be ascertained and

proceedings justly resolved. *Huff v. White Motor Corporation*, 609 F.2d 286 (7th Cir.

Ind. 1979). Fraud is "Anything calculated to deceive another to his prejudice and

accomplishing the purpose, whether it be an act, a word, silence, the suppression of the

truth, or other device contrary to the plain rules of common honesty." 23 AM. J2d Fraud

Section 2. The 6th Circuit put it this way:

---

[7] In a questionnaire related to Magistrate Judge Kolar's nomination to the U.S. Court of Appeals for the
Seventh Circuit, Magistrate Judge Kolar answered "We have an adversarial system, and I am bound to
consider the arguments of counsel and those who appear pro se fairly and impartially." And yet Magistrate
Judge Kolar is doing quite the opposite here in being unfair and partial, and in deference to a documented
perjurer no less. https://www.judiciary.senate.gov/imo/media/doc/09-06-2023_-_qfr_responses_-
_kolar.pdf

> "Accordingly, cases require a party seeking to show fraud on the court to present clear and convincing evidence of the following elements: "1) [conduct] on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceive the court."

*Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010); (quoting *Carter v. Anderson*, 585 F.3d 1007, 1011-12 (6th Cir. 2009).

The Seventh Circuit has made clear that if a convincing case of palpable fraud on the court were presented, it is hard to justify a holding that it could not be considered. "Fraud upon the court' should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication". *Kenner v. C.I.R.*, 387 F.2d 689 (7th Cir. 1968); 7 Moore's Federal Practice, 2d ed. p. 512, 60:23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

Taking into context the seriousness at what Defendant Posner and his enablers did in lying to the IRS on official documentation, and by the documented perjurer Justin M. Ellis' conduct of advancing the lies directly into these formal court proceedings, and even utilizing a perjured affidavit to do so, this Court should take heed to what Justice Owen Roberts made very clear when he admonished that "No fraud is more odious than an attempt to subvert the administration of justice." *Hazel-Atlas Class Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944), and that is exactly what the documented perjurer Justin M. Ellis did when he committed perjury on his affidavit **under penalty of perjury**.

13

[emphasis added]. Justice Roberts further stated that when members of the bar have knowingly participated in the fraud that *"Remedies are available to purge recreant officers from the tribunals on whom the fraud was practiced."* The documented perjurer Justin M. Ellis is an officer of the tribunal on whom the fraud was practiced to which is perpetuating the Defendant's fraud by submitting false statements to this Court and submitting Internal Revenue (IRS) documents with fraudulent information to advance fraudulent arguments. Justice Roberts went on to state that the resources of the law are ample to undo the wrong and to pursue the wrongdoer, and to do both effectively with due regard to the established modes of procedure. The Supreme Court has made clear that such a proceeding is required by settled federal law, and would be tried, as it should be, in open court with living witnesses. The Supreme Court admonished that the Court should not resort to a disorderly remedy, by disregarding the law as applied in federal courts ever since they were established, in order to reach one inequity at the risk of perpetrating another. This is exactly what Magistrate Kolar did by rewarding a documented perjuring attorney with a gift of one sided discovery at the expense of Plaintiff's rights to be fairly and equally treated by disregarding the law as applied in federal courts which was clearly a very unsound "disorderly remedy" frowned upon by the Supreme Court of the United States. *Hazel-Atlas Class Co. v. Hartford-Empire Co., Id.*

There are no case laws or other legitimate protections that provide cover as to fraudulent conduct by a lawyer who commits perjury, and quite frankly, the casual attitude of Magistrate Judge Kolar as to the documented perjury by Justin M. Ellis'

14

demonstrated fraud is tantamount to a "disorderly remedy" —which is supposed to be

disallowed, not rewarded. When you lie you lose, or at least that is supposed to be how it

should go, and that is certainly not how this went, in this instance, when you committed

documented perjury under penalty of perjury, you won. That should not be the standard

of this Court, and this Court should now do the right thing and take steps to effect justice

and hold the documented perjurer Justin M. Ellis accountable for his fraud, done under

the penalty of perjury, and not allow this documented perjurer to benefit from his perjury,

which he is currently doing, and this Court should take the benefit of the unfairly

imposed one track discovery back from him by overruling the magistrate judge's rulings

and order that discovery take place simultaneously. "**Mutual** knowledge of all the relevant

facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495,

507 (1947). [emphasis added]. "**Discovery, in other words, is not a one-way proposition.**

*Hickman v. Taylor, Id.* [emphasis added].[8]

Defendant Posner and his lawyers led by the documented perjurer Justin M.

Ellis simply have been caught in their own web of deceit. As the Court stated in *Aoude v.

Mobil Oil Corporation*, 892 F.2d 1115 (1st Cir. 1989) "These facts, we believe, bring into

play the doctrine in pari delicto." See, e.g., *Pantely v. Garris, Garris & Garris, P.C.*, 180

Mich.App. 768, 447 N.W.2d 864, 868 (1989); *cf. Montplaisir v. Leighton*, 875 F.2d 1, 7-

8 (1st Cir.1989); id. at 8 (Aldrich, J., concurring). There is not the slightest unfairness in

---

[8] In a questionnaire related to Magistrate Judge Kolar's nomination to the U.S. Court of Appeals for the Seventh Circuit, Magistrate Judge Kolar answered "We have an adversarial system, and I am bound to consider the arguments of counsel and those who appear pro se fairly and impartially." And yet Magistrate Judge Kolar is doing quite the opposite here in being unfair and partial, and in deference to a documented perjurer no less. https://www.judiciary.senate.gov/imo/media/doc/09-06-2023_-_qfr_responses_-_kolar.pdf

holding Defendant Posner and his lawyers responsible for the bitter fruit of the scheme

they undertook to intentionally subvert justice including documented perjury by Justin M.

Ellis. The Court admonished that:

> "[T]ampering with the administration of justice in the manner indisputably
> shown here involves far more than an injury to a single litigant. It is a wrong
> against the institutions set up to protect and safeguard the public, institutions
> in which fraud cannot complacently be tolerated consistently with the good order
> of society.... The public welfare demands that the agencies of public justice be not
> so impotent that they must always be mute and helpless victims of deception and
> fraud. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246, 64 S.Ct.
> 997, 1001, 88 L.Ed. 1250 (1944). All in all, we find it surpassingly difficult to
> conceive of a more appropriate use of a court's inherent power than to protect the
> sanctity of the judicial process--to combat those who would dare to practice
> unmitigated fraud upon the court itself. To deny the existence of such power
> would, we think, foster the very impotency against which the Hazel-Atlas Court
> specifically warned. *Aoude v. Mobil Oil,* supra.

The "Notes of Advisory Committee on Rules-1983 Amendments" demonstrate

that **Courts indeed have the discretionary authority to enter Rule 11 sanctions sua**

**sponte.** The Advisory Committee makes clear that **Courts currently believe they may**

**impose sanctions on their own motion.** *See North American Trading Corp. v. Zale*

*Corp.*, 73 F.R.D. 293 (S.D.N.Y. 1979). [emphasis added]. The Advisory Committee

wrote that the "authority to do so has been made explicit in order to overcome the

traditional reluctance of courts to intervene unless requested by one of the parties. The

detection and punishment of a violation of the signing requirement, encouraged by the

amended rule, is part of the court's responsibility for securing the system's effective

operation. If the duty imposed by the rule is violated, the court should have the discretion

to impose sanctions on either the attorney, the party the signing attorney represents, or

both." The Advisory Committee further wrote that courts have claimed the power to impose sanctions on an attorney personally, either by imposing costs or employing the contempt technique. See 5 Wright & Miller, Federal Practice and Procedure: Civil § 1334 (1969); 2A Moore, Federal Practice 11.02 at 2104 n. 8. The Advisory Committee went on to make clear that "The amended rule should eliminate any doubt as to the propriety of assessing sanctions against the attorney. Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client."

During an August 2, 2023 telephone call with Justin M/ Ellis, Mr. Ellis told Plaintiff that he wasn't at all worried about being sanctioned by the Court. Perhaps therein lies the problem as Mr. Ellis and the Defendant's team of lawyers feel they are Teflon and can do whatever they want, be damned with the rules. The Defendant and his team of lawyers are out of control; the record is replete with their Rule 11 violations. This Court has the authority to on its own motion impose appropriate sanctions against the Defendant and his team of lawyers for their egregious and ongoing Rule 11 violations, and it has a substantial basis do so, and justice suggests that it do so. *North American Trading Corp. v. Zale Corp.*, 73 F.R.D. 293 (S.D.N.Y. 1979).

Defendant Posner and his lawyers' demonstrated penchant for submitting false statements on federal court pleadings to advance false arguments, including fraudulent statements made under penalty of perjury by Justin M. Ellis in order to obtain a judgment by such fraud, requires this Court to take appropriate action(s). The rules are designed to secure fairness in judicial administration and to promote the growth and development of

17

the law of evidence so that truth may be ascertained and proceedings justly resolved. *Huff v. White Motor Corporation*, 609 F.2d 286 (7ᵗʰ Cir. 1979). This Court should now do its duty and follow the controlling precedent from *Rivera v. Drake, Id.*, and take appropriate action against the perjuring attorney Justin M. Ellis by referring this attorney's crime of perjury to the United States Attorney for consideration of prosecution for the crime of perjury under 18 U.S.C. § 1621.

## VI. THE PERJURY COMMITTED BY JUSTIN M. ELLIS WAS A CRIME AGAINST THE PEOPLE

In *Albert's Diamond Jeweler's, Inc., v. Aaland Diamond Jewelers, LLC, Id.*, Judge DeGuilio made clear in citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7ᵗʰ Cir. 2002) that "There is a strong public policy in favor of disclosure of relevant materials" and there is a "societal interest in furthering the truth-seeking function in the particular case before the court". The public policy and societal interest element in the instant case is quite evident as several very prominent national news media organizations such as Reuters and others have been reporting on the developments of this case.[9] https://www.reuters.com/legal/litigation/after-posner-retired-7th-circuit-grim-diagnosis-brewing-battle-2022-03-29/?fbclid=IwAR04KXjuM32mt6yyM85ta7-EaENu7GB9-bmBEmPQMOkA7bY_Qq7L0nsGQPA;

https://www.reuters.com/legal/government/retired-7th-circuit-judge-posner-sued-wages-short-lived-pro-bono-center-2022-05-

---

[9] Defendant is well aware of the news media attention this case is receiving. Defendant has in a memorandum cited a "news media" report by Reuters "After Posner retired from 7th Circuit, a grim diagnosis and a brewing battle" https://reut.rs/3OpQW47. (Docket #22, page 10, footnote 4).

06/?fbclid=IwAR0R_d4kONj9PLQcjzUZ_DUkIpEETliuZ5IapnzAbFNdTHP3l0sZtq0p-

HU; https://www.law360.com/articles/1491130/posner-stiffed-ex-pro-se-project-exec-

170k-suit-

says?fbclid=IwAR26SZ_9qnbeWuiCikgqmapkUDExHxPYP58is36D5It3VIwFLjZ7jmz

C19Q; https://www.reuters.com/legal/legalindustry/former-judge-richard-posner-seeks-

dismissal-170000-wage-case-2022-07-12/?fbclid=IwAR2pB-

HOmjKCM4RjSjQl8dQRi2EuNCctY5x7230vMrN0Po2KNnEgDTqzetI;

https://www.reuters.com/legal/litigation/former-judge-richard-posner-loses-latest-bid-

dismiss-wage-lawsuit-2023-09-26/?fbclid=IwAR04KXjuM32mt6yyM85ta7-

EaENu7GB9-bmBEmPQMOkA7bY_Qq7L0nsGQPA;

https://www.law.com/nationallawjournal/2023/09/26/retired-judge-posner-must-face-

wage-lawsuit-trial-court-says/?fbclid=IwAR1VJY_J1K8tzB1aOnLTF34LWnwxkCddr-

1_A5k3ke477MByFrpN8MgPCtE; https://www.abajournal.com/news/article/co-leader-

of-posners-former-pro-se-center-can-continue-his-wage-suit-court-

says?fbclid=IwAR3X_rSiQBOD9aIvROpQT37F9U_9DNZCRJ5mRpJgRfsQ0UbYaLib

0nWzGYw;

https://l.facebook.com/l.php?u=https%3A%2F%2Fwww.law360.com%2Farticles%2F16

91867%2Fmagistrate-judge-not-keen-to-nix-wage-suit-against-

posner%3Ffbclid%3DIwAR2hPASOMOUHnG_yjpYidPk57JUhNC6xxifzT-

l8de2Ew1J9oxs2oqeKtX8&h=AT3ki_hxaNR8G1oc_Mgykt0gVSvXhB_NjGv0vDY5dz

C939OqRKFvoe78eGtKphIrI7Mm5UV94-3_DTk81zsu6-

NTIB4z0uXQ0wxBD6whDl9P7Vu3av76nW3xYyNTqO_X7ydL.

The national reporting of the instant case demonstrates the public's interest, so in addition to the Plaintiff's interests, there is an additional element of the public's interest as well that must be considered and safeguarded in light of the public policy in favor of disclosure of relevant materials as Judge DeGuilio made clear when he admonished "There is a strong public policy in favor of disclosure of relevant materials" a "societal interest in furthering the truth-seeking function in the particular case before the court". *Albert's Diamond Jeweler's, Inc., v. Aaland Diamond Jewelers, LLC, Id.,* citing *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002)

In light of the public's interest and public policy favoring disclosure of relevant materials, the two phase discovery proposal by the Defendant as espoused and granted by Magistrate Judge Kolar was quite inappropriate in the instant case —for several reasons as there are significant questions about what happened to the money that was donated to the Posner Center and false information that was submitted to the Internal Revenue Service (IRS) each of which concern matters of public policy and societal interests.[10]

The rules are designed to secure fairness in judicial administration to eliminate unjustifiable expense and delay, and to promote the growth and development of the law of evidence so that truth may be ascertained and proceedings justly resolved. *Huff v. White Motor Corporation,* 609 F.2d 286 (7th Cir. 1979). The development of the law of evidence cries out against Magistrate Judge Kolar's erroneous determination that discovery should be conducted in such a manner where Defendant is allowed to conduct

---

[10] "The Vetting Room" wrote that this case is a "notable case" being handled by Magistrate Judge Joshua Kolar. https://vettingroom.org/2023/08/10/judge-joshua-p-kolar/. It is clear that there is a societal interest in what is taking place in this case and Magistrate Judge Kolar's handling of it.

discovery to his benefit while the Plaintiff must take a back seat and is disallowed to

simultaneously conduct discovery as to the law of evidence. *Huff v. White Motor*

*Corporation, Id.*

## VII.   THE PUBLIC HAS A RIGHT TO KNOW WHAT HAPPENED TO THE MONEY THAT WAS DONATED TO THE POSNER CENTER

The "Posner Center of Justice for Pro Se's," was a nonprofit corporation that was

formally incorporated in Illinois on February 6, 2018. (Memorandum in Support of

Motion to Dismiss, Docket #34, page 9).[11]  According to information provided on tax

returns filed with the IRS which have been submitted to this Court as exhibits to a

memorandum of law filed by the Defendant, "the Center received $20,600 of donations

in 2018 and $0 in 2019." (Docket #22, pages 9 and 10 & Docket #34, page 12).  The

information submitted by Defendant further explicitly stated that "The Center dissolved

in July 2019 without assets."   Furthermore, the memorandum made reference to a letter

from Defendant's previous lawyers to Plaintiff where the lawyer stated "…that the Center

had dissolved in 2019 with no assets." (See Memorandum in Support of Motion to

Dismiss, Docket #34, page 12).[12]  This begs the question, what happened to the $20,600

that was purportedly donated to the Center?  Public policy and societal interests dictate

that the complete financial records including bank records and records of all persons

affiliated with the former Posner Center must be disclosed in order that the public will

---

[11] Because the Posner Center was a $501(c)(3)$ charitable foundation rather than a profit-making entity, it was exempted from federal taxes, and the donors to it were exempt from having to pay federal income tax on their donations to the Center.

[12] The letter from Robert W. Kaufman stated in relevant part "…the Posner Center dissolved as of July 23, 2019 and, to our knowledge, the entity had no assets with which to pay its liabilities at

have an explanation as to what happened to the money since it was all gone when the Posner Center dissolved. Who received the money? Who wrote the checks? Who cashed the checks? What did he/she do with the money? What do the banking records show? What do receipts show in terms of expenditures of the money? What was the money used for? Who had access to the money? Public policy and societal interests dictate that these questions must be answered —and they must be answered in discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

Since society donated thousands of dollars to the Posner Center, of which monies were all gone when the Posner Center dissolved, society also has an interest in the truth seeking process of this case which needs to be respected as a matter of public policy as Judge DeGuilio made clear in citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) that "There is a strong public policy in favor of disclosure of relevant materials" and there is a "societal interest in furthering the truth-seeking function in the particular case before the court". Inasmuch as the Posner Center was a publicly licensed organization operating under an Illinois license that sought and received donations, the public has a right to know what happened to the donations. It is axiomatic that society is entitled to an explanation of what happened to the money that was donated to the Posner Center by members of society. In light of the public policy and societal interest questions involved here, Magistrate Judge Kolar's ruling on phased discovery as espoused by the documented perjurer attorney, Justin M. Ellis, must be overruled, and Plaintiff should be allowed to proceed with his entitled discovery in order that he may get this information

---

such time. The letter may be seen in Plaintiff's Amended Complaint, Exhibit 2. (Docket #30).

that is of major public importance, also of which evidence has a direct impact on the

issues of this case.

### VIII.  LIES TO THIS COURT AND TO IRS THAT NO EMPLOYEES WERE PAID A SALARY

The Defendant has falsely stated to this Court, and also to the IRS, that no

employees of the Posner Center were paid a salary.  In two separate filings with this

Court, the Defendant, by and through his lawyers, led by the documented perjurer Justin

M. Ellis, falsely stated that the Center "never paid any employee a salary" (Docket #22,

page 7 & Docket #34, page 8) and utilized IRS tax returns containing false information to

wrongfully buttress false arguments to this Court to try to mislead this Court into

believing that no employees were paid a salary by pointing this Court to IRS tax returns

falsely purporting that the Center paid "$0 in salaries to employees and staff in either

year" of 2018 and 2019.[13]  Submitting false information to the IRS is against public

policy, and make no mistake about it, the Defendant submitted false information to the

IRS and also to this Court when the Defendant purported that the Center "never paid any

employee a salary" and furthermore in speaking as to tax information filed with the IRS,

the Defendant, by and through his lawyers, led by the documented perjurer Justin M.

---

[13] In support of the false statement that the Center never paid any employees or staff a salary, the Defendant filed with this Court copies of IRS tax returns purporting that the Center paid $0 in salaries to employees. and staff either in 2018 or 2019. (Docket #22, pages 9 and 12 & Docket #34, page 12).  Lying to the IRS and providing false information that was submitted to the IRS to buttress false arguments to a federal court clearly is against public policy and clearly is against societal interests.  The relevant information would be unearthed in discovery.  It was erroneous and an abuse of discretion for Magistrate Judge Kolar to accede to the documented perjurer Justin M. Ellis' request to delay or otherwise prevent Plaintiff from obtaining this crucial information utilizing a bifurcation of discovery argument to keep this information away from Plaintiff.

Ellis stated to this Court "Those returns state that the Center paid $0 in salaries to employees and staff in either year." These were blatant false and fraudulent misrepresentations because Joyce Hutchens, a former employee of the Posner Center, was paid a salary of several thousands of dollars a month as the Posner Center's research director. The falsehood of Defendant's misrepresentations to this Court and to the IRS is demonstrated in Defendant's "Exhibit C" of their memorandum of which document explicitly shows that a "A settlement of $8,020.00 was paid to a former employee of the Center." (Docket #34-1, page 24). The $8,020 stated in the document was for back wages after Ms. Hutchens threatened to sue Defendant Posner for unpaid back wages.[14]

And since the Defendant by and through his representatives and/or agents purported to the IRS that the Center "never paid any employee a salary" and purported on IRS tax returns that the Center paid "$0 in salaries to employees and staff in either year" of 2018 and 2019, when in fact this was not true, the IRS, and society at large, is entitled to the information that would be unearthed in discovery that will show that Defendant by and through his representatives and/or agents provided false information to the IRS. It is well settled that the court, under its broad discretion, considers "… **taking into account society's interest in furthering the truth-seeking function in the particular case**

---

[14] The Defendant likes to call this blatant lie, a "disagreement" but the Defendant has not in any way even attempted to explain that this lie is not a lie but a "disagreement". This Court may rest well assured that discovery will unearth evidence that Defendant's statements to this Court and information provided to the IRS were lies, that is if this Court will overrule the magistrate judge and allow Plaintiff to proceed with his entitled discovery. This information will be front and center at the trial.

**before the court.**" *Berning v. UAW Local 2209*, 242 F.R.D. 510, 512 (N.D. Ind. 2007)

(examining *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)

(internal quotations and citations omitted). See also *Hunt v. DaVita, Inc.*, 680 F.3d 775,

780 (7th Cir. 2012). [emphasis added].

There is a substantial question as to fraud in connection to the false information

that Defendant and/or his representatives/agents submitted to the IRS of which false

information was submitted directly into this litigation as a way for Defendant to gain

favorable rulings from this Court.  A court may investigate a question as to whether there

was fraud in the attempt to procure a judgment.  *Universal Oil Products Co. v. Root*

*Refining Co.*, 328 U.S. 575, 66 S.Ct. 1176, 90 L.Ed. 1447.  This is to be done in

adversary proceedings such as in the instant case.  *Hazel-Atlas Glass Co. v. Hartford-*

*Empire Co.*, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250; *Sprague v. Ticonic National.*

## IX.  CONCLUSION

The Court should order appropriate sanctions against Mr. Justin M. Ellis for his

documented perjury including consideration of entering a default judgment in Plaintiff's

favor and against Defendant, and it should refer the matter of Justin M. Ellis' perjury to

the United States Attorney.  *Rivera v. Drake, Id.,* 18 U.S. CODE § 1621.

Respectfully submitted,

Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, Indiana 46392
(219) 956-2462

25

## CERTIFICATE OF SERVICE

The undersigned certifies that on December 20, 2023, the foregoing was sent to the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division, via U.S. Postal Service and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the Defendant's below listed counsel of record per agreement to receive such papers via email.

> Justin M. Ellis
> jellis@mololamken.com
>
> Steven F. Molo
> smolo@mololamken.com
>
> Kenneth Notter
> knotter@mololamken.com
>
> David Beach
> dbeach@eichhorn-law.com

Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, IN 46392
Tel. (219) 956-2462