IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BRIAN VUKADINOVICH,

                    Plaintiff,

v.

RICHARD A. POSNER,

                    Defendant.

Cause No. 22 Civ. 118

Judge Theresa L. Springmann
Magistrate Judge Joshua P. Kolar

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SANCTIONS

    Plaintiff's motion for sanctions (Dkts. 94, 95) is frivolous. It is procedurally improper, because Plaintiff failed to comply with Rule 11's safe harbor requirement. It is also baseless. Plaintiff failed to do any investigation whatsoever before accusing counsel of serious crimes. Nor has he provided proof of his accusations. Because he has refused to provide an electronic copy of the purported November 2020 email that is the basis of his motion, Defendant cannot even tell whether that purported email is authentic.

    But even if that email is authentic, the motion is still meritless. That Plaintiff may have sent Defendant an email in November 2020 does not contradict the statements in the Ellis Declaration (Dkt. 86-1) that a search of Defendant's account revealed no emails from Plaintiff after May 2019. Counsel's statements were, and are, true. Defendant's counsel collected Defendant's Gmail account using e-discovery best practices and accurately reported their findings to the Court. Plaintiff has not given the slightest reason to doubt the reliability of that collection or the accuracy of counsel's statement. Plaintiff's motion is a brazen attempt to intimidate counsel for defending against his meritless allegations. The motion should be denied.

## BACKGROUND

### A. Plaintiff's Complaint and Defendant's Document Preservation

This case involves, among other allegations, a breach of contract claim. Dkt. 30. That claim arises out of Plaintiff's work at the short-lived "Posner Center of Justice for Pro Se's." Dkt. 30 ¶5. While Defendant alleges that he worked at the Center through July 2019, Dkt. 30 ¶15, he had stated in emails to Defendant that he was no longer "substantially involved" in the center by January 2019, Dkt. 86-1, Ex. A. Plaintiff has also been aware since at least July 2018 that Defendant was diagnosed with Alzheimer's disease, Dkt. 108-1, Exs. B, C, D, a condition which required him to enter a nursing home by June 2021, Ellis Decl. ¶2. However, in his complaint, Plaintiff did not allege ever attempting to contact Defendant between July 2019 and February 2022, when he sent a demand letter claiming the money he alleges in this litigation he is owed. *See* Dkt. 30 ¶29; Dkt. 34-1, Ex. D.

Plaintiff filed his complaint in May 2022. Dkt. 1. Since that filing, the litigation has been supervised by Defendant's wife, who holds power of attorney for Defendant. Ellis Decl. ¶2. Shortly after the complaint was filed, counsel for Defendant instructed Defendant's wife to preserve all available documents. *Id.* ¶4. Plaintiff also sent Defendant's wife a document preservation notice in April 2022 shortly before filing the complaint. *Id.* ¶3.

### B. Defendant's Document Collection

Defendant moved to dismiss, asserting statute-of-limitations and statute-of-frauds defenses, among others. Dkts. 33, 34. After the Court denied that motion in September 2023, Dkt. 74, counsel began collecting Defendant's documents and electronically stored data so they could be reviewed and produced in discovery as necessary, Ellis Decl. ¶6. Among other tasks, Defendant's counsel collected data on October 5, 2023 from the Gmail account

rposner62@gmail.com, Defendant's email account used for the Center. Dkt. 86-1 ¶3; Dkt. 108-1 ¶2; Doran Decl. ¶4; Schwend Decl. ¶3.[1]

The collection met e-discovery best practices. Specifically, after consulting with MoloLamken's Chief Technology Officer, counsel chose to use the industry-standard professional forensic tool Aid4Mail to collect data from the Gmail account. Doran Decl. ¶¶3-5; Schwend Decl. ¶¶4-5. The Aid4Mail tool meets industry standards for data collection because it effectively extracts messages, attachments, and metadata reliably and without data loss. Schwend Decl. ¶¶4-5. The Aid4Mail tool was configured to collect the entire available contents of the Gmail account and specifically to process all folders in the account. Schwend Decl. ¶¶5-6; Doran Decl. ¶¶6-7.

That tool worked as expected. MoloLamken staff reviewed the detailed logs produced by Aid4Mail in the collection process and found no error logs indicating that data had been missed. Schwend Decl. ¶¶5-7; Doran Decl. ¶¶6-7, 9-11, 18. That collection yielded 92,251 items from the Gmail account totaling 18.9 gigabytes, or about 49,000 items after deduplication. Schwend Decl. ¶5; Doran Decl. ¶6. A total of 6 items out of the 92,251 collected were corrupt and could not be processed for review; however, counsel has no reason to think that any of the 6 items are related to the Center or to Plaintiff. Dkt. 108-1 ¶2 & n.1; Doran Decl. ¶11.

C. **Defendant's Phased-Discovery Briefing**

On October 25, 2023, the parties submitted their first Rule 26(f) report. Dkt. 82. Because Judge Kolar's report and recommendation had suggested that bifurcated discovery might be appropriate in this case, Dkt. 62 at 36, Defendant advocated for that approach in the

---

[1] Based on counsel's investigation so far, the Gmail account is the only account in Defendant's possession, custody, or control that Defendant used for communications with third parties about the Center.

3

Rule 26(f) report, Dkt. 82 at 7-9. Judge Kolar then directed the parties to submit supplemental briefing on the phased-discovery issue. 11/2/2023 Min. Order. Defendant submitted that briefing on November 16, 2023. Dkt. 86.

In the November briefing, Defendant argued that discovery should proceed in two phases, with the first phase limited to discovery on Defendant's statute-of-limitations defense. Dkt. 86 at 8. In support, Defendant pointed out that his statute-of-limitations defense is very likely to prevail. *Id.* at 2-3. While the Court had ruled that Plaintiff's claim would be timely only if he reasonably expected payment in May 2020 or later, *see* Dkt. 62 at 35, it was unreasonable for Plaintiff to wait that long for payment, Dkt. 86 at 2-3. Among other points, Plaintiff well knew since July 2018 – contrary to his sworn statements in this case – that Defendant had Alzheimer's disease, Dkt. 86 at 3, Plaintiff had stopped being "substantially involved" with the Center since January 2019, *id.*, and even under Plaintiff's allegations his job with the Center had ended by July 2019, *id.*; Dkt. 30 ¶¶ 15, 24.

To prepare that brief, Defendant's counsel also ran two searches of all available data collected from the Gmail account. Dkt. 86-1; Doran Decl. ¶ 12. Those searches are described in a declaration submitted by one of Defendant's attorneys, Justin Ellis. Dkt. 86-1. First, as the declaration explains, counsel "searched the Gmail account for any emails from Plaintiff in which Plaintiff raised his alleged agreement with Defendant." Dkt. 86-1 ¶ 4. That search revealed "no such messages." Dkt. 86-1 ¶ 4. Second, as the declaration provides, "[a] search of the Gmail account shows that Plaintiff last sent an email to Defendant on May 21, 2019." Dkt. 86-1 ¶ 6. Similarly, "[a] search of the Gmail account shows that Defendant last sent an email to Plaintiff on July 20, 2019." *Id.* ¶ 5.

4

### D. The Rule 16 Conference and Plaintiff's Motion

Judge Kolar held a Rule 16 conference on December 14, 2023 to discuss the parties' positions on discovery. Dkt. 90; Dkt. 104 (Hr'g Tr. Vol 1); Dkt. 111 (Hr'g Tr. Vol. 2). At the hearing, Plaintiff submitted surprise paper copies of a purported November 2020 email he allegedly sent to Defendant. Dkt. 90, Ex. A-1. In that purported email, Plaintiff allegedly raises his supposed contract with Defendant and demands payment of $170,000. *Id*. Plaintiff had never raised the purported November 2020 email before the hearing, even though his complaint specifically references the later February 2022 demand letter he sent. *See* Dkt. 30 ¶29. Nor does the February 2022 demand letter mention the purported November 2020 email. Dkt. 34-1, Ex. D. Further, while the paper copy appears to show that Plaintiff forwarded the purported email to himself no earlier than November 23, 2023, Dkt. 90, Ex. A-1, Plaintiff did not notify the Court or Defendant of that email until the conference.

At the conference, Defendant's counsel explained why the statements in the Ellis Declaration are true. Hr'g Tr. Vol. 1 at 23:24-24:3. In particular, counsel described how the search of the Gmail account was conducted and that counsel found no messages from Plaintiff to Defendant in that account after May 2019. *See id.* However, counsel also voluntarily disclosed that, after the date of the Ellis Declaration, a third party had provided to Defendant's counsel copies of what appear to be other emails from Plaintiff to Defendant after May 2019. *Id*. at 24:3-9. Those emails have since been filed with the Court in a second round of supplemental briefing on phased discovery. Dkt. 108-1, Ex. A. However, counsel has not seen any further evidence of emails from Plaintiff to Defendant after May 2019, and Plaintiff has not claimed that there are any. Ellis Decl. ¶7.

Since the December 14 conference, Plaintiff has resisted all attempts to verify whether the purported November 2020 email is authentic. While Defendant has repeatedly asked for an

5

electronic copy of the purported email, Plaintiff has refused to provide one. Dkt. 108-1 ¶¶6-7. Further, while Defendant has served document requests calling for an electronic copy of the purported email, Dkt. 108-1 ¶8, Plaintiff has refused to produce any electronically stored information himself and has also resisted Defendant's attempt to have a special master appointed to collect and produce that ESI, Ellis Decl. ¶8. Defendant also subpoenaed Plaintiff's email provider for metadata about the purported email, but he has not yet received any productions. Dkt. 108-1 ¶9.

For his part, Plaintiff never sought discovery into the facts behind the Ellis Declaration before accusing counsel of a serious crime. Nor did he attempt to understand, for example, whether counsel's statements about the collection, review, and search of the Gmail account are accurate. And Plaintiff made no attempt to comply with Rule 11 by serving a letter or draft motion and providing a 21-day safe harbor to withdraw the supposedly false declaration. *See* Fed. R. Civ. P. 11(c)(2). Instead, based solely on the November 2020 email he refuses to produce in electronic form, Plaintiff has filed this motion accusing Defendant of "perjury." Dkts. 94, 95. In his motion, Plaintiff asks the Court to enter default judgment in his favor and refer Defendant's counsel to the U.S. Attorney for criminal prosecution. Dkt. 95 ("Mot.") at 18, 25. This is Plaintiff's ninth filing requesting sanctions in this case. *See* Dkt. 46 at 4 n.1; Dkt. 46 at 5; Dkt. 66 at 4 n.3; Dkt. 67 at 16; Dkt. 68 at 2 n.1; Dkt. 70 at 3; Dkt. 71 at 5; Dkt. 73 at 4 n.2; Dkt. 73 at 14; Dkt. 80 at 9 & n.7; Dkt. 95. Plaintiff then publicized that motion in dozens of posts on X (formerly Twitter). *See* Ellis Decl., Ex. C.

Defendant's counsel requested that Plaintiff withdraw this motion in a December 22 email because it violated Fed. R. Civ. P. 11(c)(2), because it is legally and factually baseless, and because it was brought for an improper purpose. Ellis Decl., Ex. B. When Plaintiff ignored that

request, Defendant served Plaintiff with a Rule 11 letter giving Defendant a 21-day safe harbor to withdraw his motion. That safe harbor expired on January 19.

## ARGUMENT

I. **THE MOTION IS PROCEDURALLY IMPROPER**

Plaintiff has willfully failed to comply with the Federal Rules' requirements for sanctions motions. His motion invokes Rule 11 as authority for sanctions. Mot. 16, 17. But under Rule 11, a sanctions motion "must not be filed or presented to the court" unless it is first served and a 21-day safe harbor is then provided to withdraw the challenged filing. Fed. R. Civ. P. 11(c)(2). Plaintiff knows this, since Defendant warned him of Rule 11(c)(2) in response to his prior baseless sanctions requests. *See, e.g.*, Dkt. 72 at 5. Plaintiff was reminded of this rule in a December 22 email and a December 29 Rule 11 letter asking him to withdraw this motion. Ellis Decl. ¶10; *id.*, Ex. B. Plaintiff's deliberate choice to defy the rules is reason enough to reject his motion. *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999) ("A court that imposes sanctions by motion without adhering to this twenty-one-day safe harbor has abused its discretion.").

Plaintiff tries to evade Rule 11(c)(2) by asking that the court "sua sponte" impose Rule 11 sanctions. *See* Mot. 16, 17. But a "motion to [grant relief] sua sponte is an oxymoron." *Malukas v. Barr*, 940 F.3d 968, 969 (7th Cir. 2019). The Court should not permit such a blatant attempt to circumvent Plaintiff's obligations under the rule. In any event, a procedurally deficient Rule 11 motion cannot be converted into a *sua sponte* sanctions motion by the Court. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001); *Rojas v. Theobald*, No. 02 Civ. 3623, 2007 WL 2455133, at *10 (E.D.N.Y. Aug. 23, 2007); *see Divane*, 200 F.3d 1025 (making no exception for the rule that courts may not impose sanctions without a safe harbor).

Finally, while sanctions under 28 U.S.C. § 1927 or the Court's inherent power may not require a safe harbor, Plaintiff has not actually requested relief under those authorities.[2] Nor has Plaintiff provided any legal analysis explaining why sanctions would be appropriate under those authorities. For example, Plaintiff has not provided any proof that counsel acted with the sort of bad faith required for sanctions under § 1927 or the Court's inherent power, because they did not. *4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905, 913 (7th Cir. 2019) (§ 1927 requires either "subjective bad faith" or objectively reckless conduct); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) (applying similar test to the Court's inherent powers); *see Scruggs v. Mangold*, No. 18 Civ. 758, 2021 WL 1170203, at *5 (N.D. Ind. Mar. 26, 2021) ("[T]he burden of demonstrating bad faith rests on the party seeking sanctions.").[3] And Plaintiff's *pro se* status is not a reason to ignore his failure to follow procedural rules – especially here, when that failure is deliberate. *See McMasters v. United States,* 260 F.3d 814, 818 (7th Cir. 2001) ("The fact that [a party] [i]s proceeding *pro se* does not excuse her failure to comply with procedural rules."). That failure requires denying the motion.

---

[2] While Plaintiff includes a block quote in his brief that mentions the phrase "inherent power," Mot. 16, that sort of passing reference is not enough to preserve the issue. *See, e.g.*, *Taylor v. AM Gen. LLC*, No. 17 Civ. 427, 2020 WL 1274862, at *3 (N.D. Ind. Mar. 16, 2020) (a "passing reference" in a brief "is insufficient to preserve an argument").

[3] Section 1927 is also unavailable here because the remedy under that statute is limited to recovering the excess costs and fees incurred because of misconduct. 28 U.S.C. § 1927. Plaintiff has not alleged or sought any excess costs or fees.

8

## II. THE MOTION IS BASELESS

Even if Plaintiff had not violated the rules, his motion still must be denied. "As the party seeking sanctions, Plaintiff bears the burden to show that sanctions are appropriate." *Holland v. City of Gary*, No. 10 Civ. 454, 2017 WL 930648, at *5 (N.D. Ill. Mar. 8, 2017). Plaintiff has made no serious attempt to carry that burden. He has refused to provide proof that the purported November 2020 email was authentic and did no investigation into counsel's review of the Gmail account before filing this motion.

But even if the purported email were authentic, it does not show anything approaching "perjury." The fact that Plaintiff may have an email to Defendant in ***his*** email account does not contradict counsel's description of what a search of ***Defendant's*** email account revealed, let alone prove "well documented lies" as Plaintiff claims. *See* Mot. 10. Emails in the Gmail account could obviously have been deleted, lost, or become corrupted and unreviewable.[4] When he filed his motion, Plaintiff simply had no information about counsel's search of the Gmail account. He did not bother to find out what happened before accusing counsel of crimes both in this Court and in the media. *See* Ellis Decl., Ex. C. Such grave accusations should not be made so cavalierly. *See Kennedy v. Schneider Elec.*, 893 F.3d 414, 421 (7th Cir. 2018) (affirming award of sanctions for "leveling fraud accusations at another lawyer" while "offer[ing] only inferences and innuendo").

In fact, everything in the Ellis Declaration is true. Using industry-standard best practices, counsel did a forensic collection of the Gmail account as it existed in October 2023. *See* Ellis Decl. ¶ 6; Schwend Decl. ¶¶ 4-5; Doran Decl. ¶¶ 4-9. Counsel then searched the Gmail account –

---

[4] Notably, Plaintiff does not accuse Defendant of spoliating evidence. To the contrary, Defendant's wife, who holds power of attorney for Defendant, complied with document preservation requirements. Ellis Decl. ¶¶ 2-5.

and doublechecked and triplechecked that search – to confirm that, in the Gmail account, there are no messages from Plaintiff to Defendant after May 2019. Dkt. 108-1 ¶¶3-5; Doran Decl. ¶¶12-14. And in the Ellis Declaration, counsel then accurately described the search by stating that "***A search of the Gmail account shows*** that Plaintiff last sent an email to Defendant on May 21, 2019." Dkt. 86-1 ¶6 (emphasis added).[5]

Counsel has even re-run the search repeatedly after the Ellis Declaration to confirm that the Ellis Declaration is accurate. Dkt. 108-1 ¶¶3-5; Doran Decl. ¶¶17-18. It is. Dkt. 108-1 ¶4; Doran Decl. ¶¶12-20. Filed with this motion is a listing of every email between Plaintiff and Defendant in the Gmail account. Doran Decl., Ex. A. That list confirms that no messages from Plaintiff to Defendant after May 2019 exist. *Id.* Plaintiff's motion must be denied.

### III. PLAINTIFF'S OTHER ARGUMENTS ARE IRRELEVANT AND BASELESS

Plaintiff also repeats two prior arguments: (1) that Defendant lied to the IRS in tax returns by reporting that the Center did not pay salaries in either year of its existence, and that counsel repeated "blatant lie[s]" by filing those tax returns with Defendant's motion to dismiss, Mot. 8-10, 23-25; and (2) that there is supposedly a mystery about how the $20,600 of donations the Center received were used, Mot. 21-23. Neither of those arguments has any bearing on whether the Ellis Declaration is accurate. And to the extent Plaintiff uses those arguments to request that "Magistrate Judge Kolar's ruling on phased discovery be overruled," Mot. 22, he has also violated Rule 11's requirement that a sanctions motion "must be brought separately from any other motion," Fed. R. Civ. P. 11(c)(2). Together with Plaintiff's lengthy references to press reports about this case, Plaintiff's arguments make clear that he brought his motion for the

---

[5] At the December 14 conference, counsel also volunteered to the Court the fact that Defendant had received post-May 2019 communications between Plaintiff and Defendant. Hr'g Tr. Vol. 1 at 24:3-9.

improper purposes of gaining publicity and seeking leverage in a discovery dispute by intimidating counsel. *See* Fed. R. Civ. P. 11(b)(4).[6]

The arguments are also both wrong. *First*, the available discovery in Defendant's possession so far shows that, in fact, the Center never paid any employee of the Center a salary. While Plaintiff notes that Joyce Hutchens, a former employee, was paid a salary and ultimately threatened to sue Defendant over back wages, Mot. 24, he omits the fact that Ms. Hutchens's salary was always paid by third parties – **not** Defendant or the Center. Originally, Defendant had planned for Ms. Hutchens to be paid by the University of Chicago. Ellis Decl., Ex. D (5/15/2018 R. Posner email). Ultimately, a benefactor of the Center, Selvyn Seidel, paid Ms. Hutchens for a few months but then fell behind in payments after a personal dispute with her. *Id.*, Ex. E (9/14/2018 email). After Ms. Hutchens filed a state-law administrative complaint against Defendant for back pay, another staffer paid her a settlement of $8,020 and then was reimbursed by the Center. *Id.*, Ex. F (10/01/2018 email). The Center's 2019 tax return thus accurately recorded the $8,020 expense as a "settlement," not a salary. *Id.*, Ex. G. The Center, in fact, never paid Ms. Hutchens any salary. Despite using the $8,020 payment to repeatedly accuse Defendant and counsel of tax fraud, *see, e.g.*, Mot. 23-24, Plaintiff has never provided any proof of that claim.

*Second*, there is no mystery about how the $20,600 of the Center's donations was spent. The tax returns account for how 99.997% of that money was allocated. As they report, in 2018, the Center paid $7,580 in rent and $37.05 in "other expenses," leaving $12,982.95 remaining. Ellis Decl., Ex. G at 1. And in 2019, the Center paid another $4,100 in rent and $8,020 in the

---

[6] This improper purpose is made especially clear by the fact, in social media, Plaintiff made posts accusing Defendant's counsel of perjury to a swathe of targets ranging from Bloomberg Law to Miley Cyrus. Ellis Decl., Ex. C. Defendant will more fully address Plaintiff's use of this case for publicity purposes in the forthcoming sanctions motion.

11

settlement with Ms. Hutchens. *Id.* Of the $862.95 remaining at that point, $862.50 was donated to Illinois Legal Aid – leaving 45 cents unaccounted for. *Id.* at 10. Plaintiff has the tax forms, of course. But he has never provided proof of any impropriety in the Center's spending. In any event, the Center's spending is wholly irrelevant either to Plaintiff's contract claim for his unpaid wages or for his sanctions motion.

## CONCLUSION

Plaintiff's motion must be denied.[7]

---

[7] Under Rule 11, the Court may award the prevailing party in a sanctions motion its reasonable attorney's fees. Fed. R. Civ. P. 11(c)(2). Such an award is appropriate here. Defendant will address the need for a fee award and other remedies for Plaintiff's misconduct in the forthcoming sanctions motion.

New York, New York
January 23, 2024

        /s/ Justin M. Ellis
Steven F. Molo (admitted *pro hac vice*)
Kenneth E. Notter III (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL 60654
(312) 450-6700
smolo@mololamken.com
knotter@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY 10016
(212) 607-8160
jellis@mololamken.com

David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Drive, Suite 100
Hammond, IN 46323
dbeach@eichhorn-law.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 23, 2024, the foregoing was electronically filed with the Clerk of the Court via CM/ECF and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on *pro se* Plaintiff Brian Vukadinovich per his agreement to receive such papers via email.

/s/ Justin M. Ellis
Justin M. Ellis