IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BRIAN VUKADINOVICH,<br><br>　　　　　　　　Plaintiff,<br>　v.<br>RICHARD A. POSNER,<br>　　　　　　　　Defendant. | Cause No. 22 Civ. 118<br><br>Judge Theresa L. Springmann<br>Magistrate Judge Joshua P. Kolar |

**DECLARATION OF JENNIFER DORAN IN SUPPORT OF DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

Jennifer Doran declares as follows pursuant to 28 U.S.C. § 1746:

1.　My name is Jennifer Doran. I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration. The evidence set out in the foregoing Declaration is based on my personal knowledge. I submit this Declaration in support of Defendant's Response in Opposition to Plaintiff's Motion for Sanctions.

2.　I have been practicing law since 2008. I graduated from Duke University and attended Emory University School of Law. I am currently Discovery Counsel at MoloLamken, LLP. I have 12 years of experience specializing in e-discovery, focusing on all phases from preservation and collection to review, production and presentation of large volumes of electronically stored information ("ESI"). I have been invited to speak on e-discovery and legal technology topics at industry conferences and webinars. I regularly supervise the collection of ESI including but not limited to emails, text and chat application data (e.g., WhatsApp and Slack), and other data from mobile devices, desktop and laptop computers, and file servers. I also routinely examine incoming document productions for completeness in order to meet and confer regarding any potential deficiencies.

3.       My colleague, Harold Schwend, is the Chief Technology Officer of MoloLamken LLP.  Before Mr. Schwend joined MoloLamken LLP, he was employed by a company that offered forensic services.  During that period, I regularly hired, and trusted, Mr. Schwend to perform forensic ESI collections for legal matters.

4.       I and Mr. Schwend collected data from Defendant Hon. Richard A. Posner's email account with the address rposner62@gmail.com (the "Gmail Account") on October 5, 2023, at the direction and under the supervision of Justin M. Ellis and Kenneth E. Notter III, attorneys for Defendant.  Mr. Schwend performed the collection at my direction while I was in contact with him and Mr. Notter.

5.       In advance of this collection, I consulted with Mr. Schwend regarding what forensic tool or strategy should be utilized to effectively collect data from Defendant's Gmail Account.  After considering various options, we decided to use the professional forensic tool Aid4Mail to extract data from Defendant's Gmail Account.  The exact tool and version used was Aid4Mail Converter v5.1.3.889.  Based on my experience and my discussion with Mr. Schwend, I understand that the tool effectively extracts messages, attachments, and metadata reliably.

6.       Once we completed the collection, Mr. Schwend provided me with the collected data.  Before deduplication, the collection included more than 92,000 items, totaling 18.9 Gigabytes.  I reviewed the processing log generated by the tool and confirmed that the tool was configured to process all data (including all folders) held in the Gmail Account.  I understand no error logs were produced for this collection.  According to the processing log, of the 92,251 items in the Gmail Account, only one item in the spam folder did not process successfully, yielding a collection of 92,250 items.  I reviewed the dates of all other items in the spam folder and confirmed that they originated in the window of September 5, 2023 to October 5, 2023.  I then confirmed that

Gmail's retention policy for spam is set to 30 days. Therefore, I am confident that this single item originated in the thirty days prior to (or up to) October 5, 2023, and is outside the scope of relevancy to this action.

7. Due to the reliability of the forensic tool, my review of the processing logs, and my consultations with Mr. Schwend, I have no reason to believe that the tool's processing of the remaining items in the Gmail Account was incomplete.

8. I understand from Mr. Ellis that, in a May 2022 order, the Court directed the parties in this litigation to take all necessary steps to preserve all electronic and other material of potential relevance to the pending case. Mr. Ellis passed along that order to Mrs. Posner and directed her to comply with it. I further understand from Mr. Ellis that Defendant had stopped using or accessing the rposner62@gmail.com account well before May 2022. Therefore, in my professional opinion, our collection of data from the rposner62@gmail.com account on October 5, 2023, captured the potentially discoverable messages, attachments, and metadata that was contained in the account as of May 2022.

9. I received the collected data from Mr. Schwend on October 5, 2023. On October 11, 2023, I imported the PST file containing the items collected from the Gmail Account on October 5 into the e-discovery software platform offered by Nextpoint, Inc. I performed that import so that I and the MoloLamken team could effectively search and review the collected data. I did not alter the data collected between the time it was collected on October 5 and the time it was imported on October 11. Mr. Schwend generated a unique SHA256 hash (or "fingerprint") at the time the data was collected from the Gmail Account. I verified the hash against the data I imported to Nextpoint and confirmed a match, meaning that no one tampered with or altered the data between the time Mr. Schwend collected it and the time I imported it. The timestamps on the files

3

are also consistent with the time that Mr. Schwend completed the collection.

10. Often, document collections contain duplicate items. The exact same communication could be included in one mailbox twice. This can occur for a number of reasons. For example, a single transmission can be contained in both the "Inbox" folder and the "All Mail" folder. In a larger collection, multiple custodians might receive the same communication from a sender. After I uploaded the data to Nextpoint, I configured Nextpoint to perform deduplication on the data during processing. This is an industry standard procedure that removes identical duplicates so that the same data is not hosted and reviewed in a database multiple times. That process yielded more than 49,000 items for review.

11. Nextpoint generates PST processing statistics identifying any errors associated with the import of data. The processing statistics for this import indicate that six (6) of 92,251 total items could not be extracted, for a yield of 92,245 items that were successfully extracted for deduplication. The PST processing statistics show that these six (6) items existed as follows: two (2) in the "Inbox" folder; two (2) in the "All Mail" folder; and two (2) in the "Important" folder. According to Gmail's "Help Center," Gmail designates mail as "Important" based on a variety of "signals," including whether the item was sent by someone who has emailed you often, or whether it is an email you might reply to.[1] It is possible that these six items are three copies of the same two emails. I have no reason to think that any of those 6 items are related to the Posner Center or to Plaintiff.

---

[1] "Importance Markers in Gmail," https://support.google.com/mail/answer/186543?sjid=17484478539582411145-NC, *last accessed January 19, 2024*.

12. Between approximately November 13, 2023, through November 16, 2023, I searched the entire collection of Defendant's email account for communications to Defendant from bvukadinovich@hotmail.com, the email address that I understand Mr. Vukadinovich primarily used in his dealings with Defendant. I also searched the entire collection for emails from Defendant's Gmail Account to bvukadinovich@hotmail.com. I repeated the search multiple times during this period to check and double check the reliability of the results. I repeated the search using different search terms, such as "Vukadinovich" alone, to confirm the results.

13. These searches also yielded communications from "Brian Vukadinovich" with an email address of motionforjustice@yahoo.com. I therefore included these communications between Defendant and Brian Vukadinovich at motionforjustice@yahoo.com in my compilation of communications between Defendant and Brian Vukadinovich.

14. Through my searches, I located more than 1,040 emails sent by Brian Vukadinovich in Defendant's email account. The last email in the database collected from Defendant's email account which was sent from bvukadinovich@hotmail.com or motionforjustice@yahoo.com is dated May 21, 2019.

15. Through my searches, I located more than 850 emails in the data collected from the Gmail account that was sent from Defendant to Brian Vukadinovich. The last email in the database collected from Defendant's Gmail Account which Defendant sent to bvukadinovich@hotmail.com or motionforjustice@yahoo.com is dated July 20, 2019.

16. On November 16, I confirmed that the statements made in Mr. Ellis's declaration at paragraphs 5 through 6 of Dkt. 86-1 accurately reflect the data available in the Gmail account at the time of our October 2023 collection.

17. I understand that, on December 14, 2023, the Court held a Rule 16 Preliminary

Pretrial Conference in this case. I was informed, on December 14, that during the conference, Mr. Vukadinovich produced a paper copy of a purported email from bvukadinovich@hotmail.com to Defendant's email account that is dated November 11, 2020. On December 14, 2023, I searched the entire collection for the purported email Plaintiff produced in paper copy at the Rule 16 conference. After extensive searching, I could not find the purported email or any email like it.

18. On December 14, 2023, I also once again confirmed that the statements made in Mr. Ellis's declaration at paragraphs 5 through 6 of Dkt. 86-1 accurately reflect the information available in the Gmail account at the time of collection.

19. Given that six items could not be extracted during processing in Nextpoint, I also returned to the original processing logs generated by the Aid4Mail tool. This tool successfully processed all 99,250 items (that were not the spam item originating on or after September 5, 2023). I reviewed the listing of all items received on November 11, 2020, and none matched the purported email Plaintiff produced in paper copy at the Rule 16 conference. I next performed text searches for words and phrases in the subject line of the purported November 11, 2020 email, and no hits were found. After reviewing this log, it is my understanding and belief that none of the 6 items that could not be extracted in Nextpoint are the November 11, 2020 email.

20. Attached as Exhibit A to this Declaration is a true and accurate copy of a spreadsheet that I prepared showing all emails collected from the Gmail Account that are available in the Nextpoint database from Brian Vukadinovich to Defendant's Gmail Account, and from Defendant's Gmail Account to Brian Vukadinovich. To prepare that spreadsheet, I first created a folder in the database of all emails from Brian Vukadinovich, with Posner as a recipient or copyee. I then created a folder in the database of all emails sent by Posner to Brian Vukadinovich as a recipient or copyee. I then exported a "load file" of both of these folders providing the relevant

6

metadata of each communication. The spreadsheet confirms that there are no emails from bvukadinovich@hotmail.com or motionforjustice@yahoo.com to Defendant's Gmail Account dated after May 21, 2019. Further, the spreadsheet confirms that there are no emails from Defendant's Gmail Account to bvukadinovich@hotmail.com or motionforjustice@yahoo.com dated after July 20, 2019.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 23, 2024
Chicago, Illinois

/s/ Jennifer Doran
Jennifer Doran