IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BRIAN VUKADINOVICH, )
)
Plaintiff, )
)
v. ) CASE NO. 2:22-CV-0118-TLS-JPK
)
)
RICHARD A. POSNER, )
)
Defendant. )

**REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SANCTIONS**

Plaintiff, Brian Vukadinovich, pro se, submits this reply to Defendant's response in opposition to Plaintiff's motion for sanctions.

### I. PLAINTIFF'S MOTION FOR SANCTIONS IS WELL GROUNDED

#### A. Crime of Perjury by Justin M. Ellis

Justin M. Ellis committed a felony crime with his perjury, and no amount of deflection can change that. The law is very clear on that. 18 U.S. CODE § 1621 governs that false statements made under penalty of perjury are crimes punishable by imprisonment.[1]

---

[1] It is strange that Defendant discusses 28 U.S.C. §1927 and in this particular diatribe states that "Section 1927 is also unavailable here because the remedy under that statute is limited to recovering the excess costs and fees incurred because of misconduct. 28 U.S.C. §1927. Plaintiff has not alleged or sought any excess costs or fees." This diatribe is strange because Plaintiff did not cite 28 U.S.C. §1927, Plaintiff cited 18 U.S. CODE § 1621 which governs that false statements made under penalty of perjury are crimes punishable by fine or imprisonment or both.

1

As for any responsibility of Plaintiff "to produce any electronically stored information himself" there is a governing process for the production of electronically stored information, and Plaintiff and Defendant are currently involved in that process. Defendant has no standing whatsoever to demand that Plaintiff produce electronically stored information outside of the governing rules of discovery. The rules are the rules and the rules even apply to a former federal court of appeals judge who is a Defendant in his personal capacity. Defendant has not pointed to a single rule to substantiate his distasteful demand that Plaintiff jump when Defendant snaps his finger and demands that Plaintiff do something that he is not at all required to do under the rules. It is public knowledge that the Defendant Posner doesn't like rules as he publicly boasted as such when he told the New York Times "I pay very little attention to legal rules, statutes, constitutional provisions," and "When you have a Supreme Court case or something similar, they're often extremely easy to get around." An Exit Interview With Richard Posner, Judicial Provocateur - The New York Times (nytimes.com). In an interview with Legal Talk Network on March 7, 2018, Defendant Posner cavalierly boasted "Well, I am a maverick, and I don't really like rules, I don't like tradition." https://legaltalknetwork.com/podcasts/chicago-bar/2018/03/the-ill-be-dreaming-about-donkeys-edition-an-interview-with-judge-richard-posner-ret/. This self professed maverick's well documented disdain for rules and his apparent authoritarianism attitude that somehow Plaintiff must bow at his command and produce electronically stored information outside of the governing rules of discovery procedure, is not well taken.

Defendant conveniently fails to recognize that the November 11, 2020 email

2

submitted into evidence at the hearing on December 14 2023, was done so in conjunction with Plaintiff's oral motion for judicial notice of the email. There is no requirement that a party must serve a copy of a document **prior** to the actual time of request for judicial notice of a Rule 201 motion for judicial notice. Rule 201(d) of the Federal Rules of Evidence explicitly states **"The court may take judicial notice at any stage of the proceeding."** Furthermore, the Notes of Advisory Committee on Proposed Rules explicitly states in relevant part in addressing subdivision (e) of Rule 201 of the Federal Rules of Evidence that "**No formal scheme of giving notice is provided**. An adversely affected party may learn in advance that judicial notice is in contemplation, either by virtue of being served with a copy of a request by another party under subdivision (d) that judicial notice be taken, or through an advance indication by the judge. **Or he may have no advance notice at all.**" [emphasis added]. Plaintiff proceeded in full compliance with the requirements of Rule 201 of the Federal Rules of Evidence. Defendant has not cited a single citation of authority otherwise.[2]

As for Defendant's complaint about not being served with a Rule 11 so called safe harbor letter, the motion for sanctions principally is based on Justin M. Ellis' crime of perjury under 18 U.S. CODE § 1621.[3] Rule 11 and 18 U.S. CODE § 1621 are two entirely distinct things.[4]

---

[2] It is clear that the manner in which Plaintiff presented the November 11, 2020 email to the Court and copy to Justin M. Ellis was properly done in accordance with the rules, otherwise the Court would not have been able to admit the email into evidence as it did.

[3] Defendant takes issue that Plaintiff did not serve a 21 day Rule 11 letter. The Plaintiff's motion for sanctions was not premised on Rule 11 but was premised under 18 U.S. CODE § 1621. Plaintiff explicitly stated in the motion "…submits this motion for sanctions against

3

As to Defendant's mention of a Rule 11 letter, that letter was sent to Plaintiff in an ill advised attempt to intimidate and coerce Plaintiff into withdrawing the motion for sanctions and even withdrawing the amended complaint. This Court will quickly see that such a motion is groundless and clearly motivated by retaliation because Plaintiff has brought Justin M. Ellis' crime of perjury to light. Preamble [3] the Model Rules of Professional Conduct of the American Bar Association states in relevant part "…a lawyer who commits fraud in the conduct of a business is subject to discipline for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation." Preamble [5] states in relevant part "…**A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others…**" [emphasis added]. Rules

---

Defendant's attorney, Justin M. Ellis, for the **crime** of perjury in this litigation. Plaintiff cited 18 U.S. CODE § 1621. There is no so called "safe harbor" requirement in 18 U.S. CODE § 1621.

[4] The only mention of Rule 11 in Plaintiff's Memorandum is where Plaintiff stated that this Court has the authority to enter Rule 11 sanctions *sua sponte*. Plaintiff cited the "Notes of Advisory Committee on Rules-1983 Amendments" showing that courts have the discretionary authority to enter Rule 11 sanctions *sua sponte*. Plaintiff pointed out that the Advisory Committee made clear that **Courts currently believe they may impose sanctions on their own motion.** *See North American Trading Corp. v. Zale Corp.*, 73 F.R.D. 293 (S.D.N.Y. 1979). [emphasis added]. The Committee wrote that the "authority to do so has been made explicit in order to overcome the traditional reluctance of courts to intervene unless requested by one of the parties. The detection and punishment of a violation of the signing requirement, encouraged by the amended rule, is part of the court's responsibility for securing the system's effective operation. If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both." The Committee admonished that courts have claimed the power to impose sanctions on an attorney personally, either by imposing costs or employing the contempt technique. See 5 Wright & Miller, Federal Practice and Procedure: Civil § 1334 (1969); 2A Moore, Federal Practice 11.02 at 2104 n. 8. The Committee admonished that "The amended rule should eliminate any doubt as to the propriety of assessing sanctions against the attorney. Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client." Plaintiff simply suggested that this Court consider Rule 11 sanctions as espoused by the Advisory Committee. There was no requirement for Plaintiff to send a Rule 11 safe harbor letter in a process for the Court to consider *sua sponte* sanctions for Justin M. Ellis' crime of perjury.

4

8.4(b)(c)(d) of the Model Rules of Professional Conduct of the American Bar Association respectively state that it is professional misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice.

Justin M. Ellis committed perjury under penalty of perjury and has been caught red handed with it. His current actions of harassing and trying to intimidate Plaintiff into withdrawing the amended complaint and withdrawing the motion for sanctions against him for his crime of perjury of which crime was a criminal act under 18 U.S. CODE § 1621 as such criminal act involved conduct involving dishonesty, fraud, deceit or misrepresentation.[5]

Rule 11 of the Federal Rules of Civil Procedure provides that if an attorney files pleadings that are not reasonably based on the law or in fact, or **that are meant to harass**, then "the court upon motion or upon its own initiative, *shall* impose . . . an appropriate sanction." Fed.R.Civ.P. 11. (emphasis added); *see Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1130, (5th Cir. 1987). If the district court concludes that the motion, pleading, or other document was not well-grounded in fact or warranted by the existing law, or **was meant to harass**, then the court must impose a sanction. *See,*

---

[5] Justin M. Ellis attempts to profess his innocence to his perjury, but he fails to provide any independent evidence of it. Plaintiff has asked Justin M. Ellis in three emails if he has any exculpatory evidence such as a forensic review of Defendant's computer and email account, but Justin M. Ellis failed to respond to any of the three emails. The emails were sent on January 3 and 4, 2024 which may be seen in the attached Plaintiff's Exhibit 1, and on January 22, 2024, which may be seen in the attached Plaintiff's Exhibit 2.

5

e.g., *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d. 1073, 1082 (7th Cir. 1987); *Thomas v. Capital Security Services, Inc.,* 812 F.2d 984, 989 , (5th Cir. 1987); *Shrock v. Altru Nurses Registry,* 810 F.2d 658, 661 (7th Cir. 1987); *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540, (9th Cir. 1986) (*citing Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254, n. 7 (2d Cir. 1985)); *cf. In re TCI Ltd.,* 769 F.2d 441, 446, (7th Cir. 1985)). It is actually the Defendant and his attorneys who should be sanctioned for their tactics of threatening Plaintiff and attempting to coerce Plaintiff into withdrawing the amended complaint and motion for sanctions against Justin M. Ellis for his perjury.

As for Defendant's penchant for bringing in an issue of Defendant's alleged Alzheimer's and threatening tactic of having Plaintiff sanctioned if Plaintiff refuses to withdraw the amended complaint and withdraw the motion for sanctions against Justin M. Ellis for his crime of perjury, it should be noted that Plaintiff was not aware of any confirmed evidence of Defendant's alleged Alzheimer's. Even Defendant's prior attorney, Robert W. Kaufman, explicitly acknowledged to Plaintiff in a letter dated February 28, 2022, that Plaintiff never knew of any "confirmed diagnosis" of Alzheimer's Disease upon the Defendant when attorney Robert W. Kaufman explicitly stated to Plaintiff "**What you clearly do not know is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's Disease**", (Docket #30, Exhibit 2).[6] It should be further noted that

---

[6] In a different pleading before this Court, Defendant's lawyers stated "Plaintiff's reliance on a 2022 quote from Defendant's family lawyer who did not know the parties' history, obj. 9, is

Defendant's wife, stated in a May 8, 2022 email to Plaintiff in referring to Defendant's health issues "I am very sorry that you have found yourself in this unpleasant situation." and further stated **"I am really sorry that you were so misled."** (Docket #30, Exhibit 3).

DEFLECT, DEFLECT, DEFLECT, that is the obvious tactic going on here. In the obvious attempt to deflect attention away from Justin M. Ellis' crime of perjury in this litigation. Justin M. Ellis, tries to make hay out of the issue of Defendant's alleged Alzheimer's and when Plaintiff actually knew about the alleged disease. However, when Plaintiff actually knew about the alleged disease is not even relevant to the issues of this litigation. The legal issue isn't when Plaintiff actually knew about the alleged disease, the legal issue is the Defendant's action of breaching the contract.[7] It should be noted that at no time, prior to and/or during this litigation has Defendant provided Plaintiff with any evidence of confirmed Alzheimer's.[8]

---

misleading. (Docket #118, page 9). It is interesting that when the Defendant's own lawyer, his previous lawyer, documented the fact that Plaintiff "clearly" did not know of Defendant's "confirmed" diagnosis of Alzheimer's, that now suddenly in the legal arguments Defendant's current lawyers pathetically attempt to argue that Defendant's family lawyer, who the family retained to respond to Plaintiff, did not know his client's "history". What we have here now is Defendant's previous attorney saying one thing, and Defendant's current attorneys saying quite another. Defendant's argument has zero credibility. After all, if Defendant's own family attorney doesn't know the facts of Defendant's Alzheimer's, then how could Plaintiff be expected to know it under the circumstances of so much mixed information on the issue? And it should not be forgotten that Defendant's own wife explicitly acknowledged that Plaintiff was "so misled".

[7] In *Market Street Associates Limited Partnership v. Frey*, 941 F.2d 588 (7th Cir. 1991), a contract case, The Seventh Circuit ultimately ruled "To decide what Orenstein believed, a trial is necessary. The author of that opinion was Richard A. Posner. In light of the case law from Defendant Posner's own precedential ruling, so too is "a trial necessary here" in this contract case. Since the Defendant, Richard A. Posner, wrote the opinion in *Market Street Associate, Id.*, he should certainly have no quarrel with this Court doing exactly what he said should be done in his ruling in *Market Street, Id.*

[8] The letter by Defendant's prior attorney, Robert W. Kaufman, stated "As to the substance of your claim, we believe that medical evidence will show that the Judge did not have the legal

7

As for Defendant's [false] statement that Plaintiff "has also resisted Defendant's attempt to have a special master appointed to collect and produce that ESI, Ellis Decl. ¶ 8.", nothing could be further from the truth. Defendant's statement is false.

As for the statement "Defendant also subpoenaed Plaintiff's email provider for metadata about the purported email, but he has not yet received any productions. Dkt. 108-1 ¶ 9.", Defendant has omitted the fact that the legal division for the email provider, Microsoft, has provided appropriate objections to Defendant's counsel.

As for Defendant's diatribe as to the so called collection of information from Defendant's email account, done in "consultation" with the so called "chief technology officer" of the Defendant's law firm, and done "at the direction and under the supervision of Justin M. Ellis and Kennth E. Notter II, attorneys for Defendant" (Docket #'s 117-10, page 2 and 117-12, page 1) gives new meaning to the idiom the fox guarding the hen house. Suffice it to say, a collection of information from a prospective criminal matter done at the "direction and supervision" of the person who committed the crime hardly qualifies as a procedure of integrity by any stretch of the imagination.[9]

This Court should follow the precedent set forth by the Seventh Circuit in *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014 in citing the Supreme Court decision of

---

capacity to enter into contracts in 2018." To date Defendant has failed to produce any evidence whatsoever of a confirmed diagnosis of Alzheimer's, and yet Defendant's attorney tries to score points by attacking Plaintiff's knowledge of Defendant's alleged Alzheimer's while at the same time failing to provide any medical evidence of it, notwithstanding the statement by Defendant's prior attorney. Because Defendant's prior attorney stated that the "medical evidence" goes to the "substance" of Plaintiff's claim, then that "medical evidence" needs to be brought to light.

[9] It is interesting and noteworthy that Justin M. Ellis would be the person to direct and supervise the after the fact collection of information from the Defendant's email account considering that

8

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) which made it very clear that "perjury is among the worst kinds of misconduct" and that a litigant's misconduct can justify a default judgment. This Court should take heed to what was stated by the Seventh Circuit in *Rivera v. Drake, Id.*, in admonishing "If perjury pays benefits when it escapes detection, but has no cost when detected, there will be far too much perjury and the accuracy of judicial decisions will be degraded." And in making this very important point the Seventh Circuit then went on to say "We therefore will send copies of this opinion and the case file to the United States Attorney for the Eastern District of Wisconsin, who may wish to consider prosecuting Rivera for the crime of perjury. 18 U.S. C. § 1621." This Court should likewise send this case file to the United States Attorney for consideration of prosecuting Justin M. Ellis for his crime of perjury under 18 U.S. C. § 1621.[10]

Etched into one of the inside walls of the United States Courthouse building in the lobby is a notable quote by Associate Justice of the United States Supreme Court Sandra Day O'Connor that fits the situation here, of which quote states:

"LAWYERS HAVE IN THEIR POSSESSION THE KEYS TO JUSTICE UNDER A RULE OF LAW—THE KEYS THAT OPEN THE COURTROOM DOOR. THOSE KEYS ARE NOT HELD FOR LAWYERS' OWN PRIVATE PURPOSES; THEY ARE HELD IN TRUST FOR ALL THOSE WHO WOULD SEE JUSTICE, RICH AND POOR ALIKE."

---

Justin M. Ellis is the one and same Justin M. Ellis who committed the crime of perjury.

[10] If this Court sends the case file to the United States Attorney for consideration of prosecuting Justin M. Ellis for his crime of perjury, as it should do so, the crime lab could then conduct a forensic analysis of the Defendant's computer and email account and there would then, and only then, be a credible account of the status of the email of November 11, 2020, rather than the highly questionable collection of after the fact information done by members of the law firm representing the Defendant of which alleged collection of information was done at the "direction and under the supervision" of Justin M. Ellis, who is the very person who committed the perjury.

9

The keys to justice held by Justin M. Ellis are not for his private purposes to undermine justice by committing perjury to win a legal point. This is something that Justice Sandra Day O'Connor would have denounced, and this Court should certainly do so in making short work of the ridiculous notion that somehow a collection of after the fact information done by members of the law firm representing the Defendant of which collection of information was done at the "direction and under the supervision" of the very person who committed the perjury, Justin M. Ellis, was somehow acceptable.[11]

Defendant takes issue with the press reports about this case and incorrectly states that Plaintiff brought his motion for sanctions for an improper purpose of gaining publicity and seeking leverage in a discovery dispute by intimidating counsel. Defendant then goes on and states that "the Center never paid any employee of the Center a salary." and that "the available discovery in Defendant's possession so far shows that, in fact, the Center never paid any employee a salary" and discusses Plaintiff's statement that "Joyce Hutchens, a former employee, was paid a salary and ultimately threatened to sue Defendant over back wages." And then after a wishy washy diatribe, Defendant went on to state that "After Ms. Hutchens filed a state-law administrative complaint against Defendant for back pay, **another staffer paid her a settlement of $8,020 and then was reimbursed by the Center.** (Docket #117, page 11). Defendant further stated "And in 2019, **the Center paid** another $4,100 in rent and **$8,020 in the settlement with Ms.**

---

[11] As for Defendant's discussion of "Defendant's Phased-Discovery Briefing", that issue is misplaced by Defendant as it has no relevance to the issue at hand with respect to the motion for sanctions for Justin M. Ellis' crime of perjury. The pending issues surrounding phased discovery have been separately briefed by both parties and it inappropriate to utilize time and resources in

10

**Hutchens.**" (Docket #117, pages 11-12). [emphasis added].

Indeed the Defendant and/or his enablers lied to the IRS in tax returns by reporting that the Center did not pay any employee a salary, and indeed Defendant's lawyers submitted fraudulent arguments by falsely stating to this Court and also to the IRS that no employees of the Posner Center were paid a salary. In two separate filings with this Court, the Defendant, by and through his lawyers, falsely stated that the Center "never paid any employee a salary" (Docket #22, page 7 and Docket #34, page 8) and utilized IRS tax returns containing false information to wrongfully buttress the false arguments to this Court to try to mislead this Court into believing that no employees were paid a salary by pointing this Court to IRS tax returns falsely purporting that the Center paid "$0 in salaries to employees and staff" in either year of 2018 and 2019, when in fact the Center did pay a salary to a Posner Center employee, Joyce Hutchens, which is evidenced by the information that Defendant unwittingly let out of the bag. i.e., "After Ms. Hutchens filed a state-law administrative complaint against Defendant for back pay, **another staffer paid her a settlement of $8,020 and then was reimbursed by the Center**. (Docket #117, page 11). Defendant further stated "And in 2019, **the Center paid** another $4,100 in rent and **$8,020 in the settlement with Ms. Hutchens**." (Docket #117, pages 11-12). The back pay was salary! Defendant's lawyers cannot even keep their lies straight.

The former employee who received a salary notwithstanding Defendant's and his lawyers' false statements to the contrary, sent a choice email to Defendant on Sunday, September 9 2018 (Docket #117-7, pages 4-5, which stated:

---

this proceeding since the issues of phased discovery are being separately addressed.

Dick Posner:

Today is Sunday, a day on which I do not have to work. However, I have worked this entire weekend for the Center, even when it meant taking time from my family and other things I must do. During the past 24 hours--and actually during the past week, you have insulted, offended, berated, threatened and harassed me for no reason with your nearly 20 epic emails which remain and will continue to remain in my possession. I'm not sure what your issue is with me and frankly I do not care. Effective immediately, I resign from the Posner Center of Justice for Pro Se's and I DO NOT want to receive another email from you. I have NEVER been disrespected like this. Slavery ended more than 100 years ago, and I am not your slave. To ensure that you do not contact me, I am immediately blocking you from my emails—forever.

I am the second Black woman that has exited your so-called "justice center" within the last 60 days in an unpleasant way. That doesn't look very good, sir--particularly for a so called "justice center" and it says plenty about your integrity and lack thereof. Perhaps you could use some diversity training. Moreover, it is absolutely incomprehensible that you think I give a hoot about working for your center when I don't even get paid. Get over yourself. I DO NOT have to work for you. Finally getting you out of my life is one of the happiest days of my life--something I had planned to do this week anyway. I am not putting up with your BS another second.

It's no wonder the law school, the 7th Circuit and Lord knows who else doesn't want to be bothered with you. I will leave instructions with someone else on where I am leaving the work of yours I have in my possession AFTER I receive the salary I am owed. I will leave everything at 227 W. Monroe along with my ID. In the meantime, do not bother me. Good riddance.

Joyce

This email is evidence that this former employee was a paid employee of the Posner Center which directly contradicts the statements by Defendant's lawyers to the contrary, and also is evidence that the information provided by Defendant and/or his enablers to the IRS was fraudulent information.[12] Furthermore, this email is evidence of

---

[12] Amazingly, Defendant once again reiterates the false statement that the Center never paid any employee of the Center a salary." (Docket #117, page 11).

a custom on the part of the Defendant to hire employees to work for him, and then not pay for the work —which is exactly what he did with Plaintiff.

It is unfortunate that Defendant's attorneys take issue with Plaintiff's fundamental right to free speech guaranteed under the First Amendment. Defendant's attorneys have stated in their response in discussing the state-law administrative complaint by Joyce Hutchens against Defendant for back pay, and the Center's 2019 tax returns on the issue, that because Plaintiff made posts on social media regarding Defendant's counsel's perjury, that Defendant's counsel will be addressing Plaintiff's social media postings in a forthcoming sanctions motion.[13] That is very unfortunate, and quite unlawful as such a retaliatory action by an attorney against a citizen litigant would not only violate the First Amendment of the Constitution of the United States, but would also violate Preamble [5] of the Model Rules of Professional Conduct of the American Bar Association of which preamble states in relevant part "**A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others…**" [emphasis added]. Furthermore, the filing of a motion for sanctions against a citizen litigant because of the exercise of his constitutionally protected right to express himself on public social media outlets would be a violation of Rule 8.4(d) of the Model Rules of Professional Conduct of the American Bar Association of which rule states that it is professional misconduct for a

---

[13] Defendant has previously taken issue with Plaintiff's free speech rights by criticizing Plaintiff for writing books, for writing blog posts, for posting on X (formerly Twitter) and for offering paid speeches on litigation issues. (Docket #86, page 6). Defendant has critically stated in this litigation "Plaintiff has posted hundreds of times on social media about this case." (Docket #117-2, page 3). Defendant has filed screenshots of 212 postings of Plaintiff's postings on X (formerly Twitter). (Docket #117-5, pages 2-213).

13

lawyer to "engage in conduct that is prejudicial to the administration of justice".[14]

Defendant incorrectly states "Together with Plaintiff's lengthy references to press reports about this case, Plaintiff's arguments make clear that he brought his motion for the improper purpose of gaining publicity and seeking leverage in a discovery dispute by intimidating counsel." (Docket #117, page 10). That is ludicrous. Plaintiff brought his motion for the proper purpose of addressing the severe conduct of perjury by Justin M. Ellis, plain and simple. Justin M. Ellis falsely stated in a "Declaration" filed in this Court that "Plaintiff's last email to Defendant was on May 21, 2019, two months before his job supposedly ended. Ellis Decl. ¶¶ 5-6." (Docket # 86, page 3). This was a false statement calculated to gain an advantage on the critical issue of phased discovery of which issue Justin M. Ellis was pushing in order that Defendant would be able to conduct discovery against Plaintiff as to his benefit, but Plaintiff would not be able to conduct simultaneous

---

[14] Defendant has brazenly stated that "Plaintiff has the tax forms, of course. But he has never provided proof of any impropriety in the Center's spending." This is precisely one of the reasons that Plaintiff is being severely prejudiced by phased discovery. It is hardly a fair process when a Defendant espouses a position against the principles of two sided discovery, and then brazenly challenges the affected party to provide evidence, evidence that is being concealed due to the unfairness of the discovery procedures. Discovery would shed light as to any impropriety issues of improprieties in the Center's spending. Judge DeGuilio made clear in *Albert's Diamond Jeweler's, Inc., v. Aaland Diamond Jewelers, LLC,* in citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) that "There is a strong public policy in favor of disclosure of relevant materials" and there is a "societal interest in furthering the truth-seeking function in the particular case before the court". In light of the false statements, fraudulent arguments, and perjury by one of the attorneys for the Defendant, we cannot take at face value a casual attitude that everything was on the up and up with respect to the money that flowed into the Center by way of donations from the public. The fact that Defendant and/or his enablers lied to the IRS and the fact that Defendant's attorneys submitted fraudulent arguments as to the IRS issues, those were red flags which now must be addressed in discovery. It is a blatant miscarriage of justice for this Court to curtail Plaintiff's discovery rights in the face of the falsehoods that have been submitted by Defendant and his attorneys.

discovery against Defendant for his benefit. Plaintiff provided to this Court at the Rule 16 conference a copy of an email that Plaintiff sent to Defendant on November 11, 2020 requesting payment for his services to Defendant. The email demonstrates that Justin M. Ellis' statement on his "Declaration" that "Plaintiff's last email to Defendant was on May 21, 2019, two months before his job supposedly ended" was in fact a false statement. Such conduct is a felony punishable by fine and/or imprisonment. 18 U.S. C. § 1621. As a country we cannot have attorneys submitting false statements on affidavits and pleadings in federal court cases in order to cheat and gain an unfair and unlawful advantage. Plaintiff not only had a right to post about this attorney's unethical and unlawful conduct, but he had an obligation as well in order to focus a light on the very serious problem in our country with unbridled attorneys who are involved in skullduggery in order to win legal points and then walk away with no consequence. Justice suffers when unbridled attorneys are allowed to commit perjury and society is the loser when this is allowed to happen. Justin M. Ellis is very wrong when he states that Plaintiff "brought his motion for the improper purpose of gaining publicity and seeking leverage in a discovery dispute", Plaintiff brought his motion because Justin M. Ellis committed perjury and violated the law in doing so. 18 U.S. C. § 1621.

                                                  Respectfully submitted,

                                                  */s/ Brian Vukadinovich*

                                                  Brian Vukadinovich, Pro Se
                                                  1129 E. 1300 N.
                                                  Wheatfield, Indiana 46392
                                                  (219) 956-2462

## Re: Service of Pleadings Sent for Filing

**Brian Vukadinovich** <bvukadinovich@hotmail.com>
Thu 1/4/2024 3:27 PM
To: Ellis, Justin <JEllis@mololamken.com>

Hello Justin,

So are you refusing to answer my question as to whether or not you have forensic evidence, or evidence of any kind for that matter, showing that the November 11, 2020 email was not in Mr. Posner's email account at the time you executed your affidavit? Your failure/refusal to provide any such exculpatory evidence is very telling. You seem to very mistakenly think that your bullying tactics will work with me, you can rest well assured, they won't. The fact that you refuse to answer the question and you fail to provide any exculpatory evidence that could potentially exonerate you of your crime demonstrates that you are guilty. Show any exculpatory evidence or stop claiming innocence of your crime.

Brian

---

**From:** Ellis, Justin <JEllis@mololamken.com>
**Sent:** Thursday, January 4, 2024 1:44 PM
**To:** Brian Vukadinovich <bvukadinovich@hotmail.com>
**Cc:** Molo, Steven <smolo@mololamken.com>; Notter, Kenneth <Knotter@mololamken.com>; David Beach - Eichhorn & Eichhorn, LLP (dbeach@eichhorn-law.com) <dbeach@eichhorn-law.com>
**Subject:** RE: Service of Pleadings Sent for Filing

Brian,

Our letters are clear. As they describe, your failure to investigate the facts before baselessly accusing me of perjury is independently sanctionable. The fact that you have submitted a paper copy of a purported November 2020 email to the Court does not make my description of the Gmail account search inaccurate. It is not.

If you do not withdraw your sanctions motion, as we've requested, we will respond to that motion more fully on the schedule set by the Court.

We also repeat our request that you provide an electronic copy of the purported November 2020 email.

Justin

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY 10022
T: (212) 607 8159
F: (212) 607 8161
jellis@mololamken.com

---

**From:** Brian Vukadinovich <bvukadinovich@hotmail.com>
**Sent:** Wednesday, January 3, 2024 4:55 PM
**To:** Ellis, Justin <JEllis@mololamken.com>
**Subject:** Re: Service of Pleadings Sent for Filing

Hello Justin,



your continued threats against me are an abuse of process and you may rest assured that I will accordingly be addressing your continued threats. What you did was a crime; the perjury you committed under penalty of perjury is a crime punishable by fine or imprisonment, or both, under 18 U.S. CODE § 1621. You keep professing your innocence to perjury, but yet you provide no proof of any innocence to it. Have you had a forensic analysis done on Mr. Posner's computer system regarding this matter? Do you have any forensic reports showing that the November 11, 2020 email was not in Mr. Posner's email account at the time you executed your affidavit? If so, show it.
Brian

---

**From:** Ellis, Justin <JEllis@mololamken.com>
**Sent:** Wednesday, January 3, 2024 11:48 AM
**To:** Brian Vukadinovich <bvukadinovich@hotmail.com>
**Cc:** Notter, Kenneth <Knotter@mololamken.com>; Molo, Steven <smolo@mololamken.com>; dbeach@eichhorn-law.com <dbeach@eichhorn-law.com>
**Subject:** RE: Service of Pleadings Sent for Filing

Brian,

Please see the attached letter regarding your response to the extension motion. A copy is also being served on you via FedEx.

Justin

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY 10022
T: (212) 607 8159
F: (212) 607 8161
jellis@mololamken.com

---

**From:** Brian Vukadinovich <bvukadinovich@hotmail.com>
**Sent:** Tuesday, January 2, 2024 8:02 PM
**To:** Ellis, Justin <JEllis@mololamken.com>
**Cc:** Notter, Kenneth <Knotter@mololamken.com>; Molo, Steven <smolo@mololamken.com>; dbeach@eichhorn-law.com
**Subject:** Service of Pleadings Sent for Filing

Hello Justin,
Here are copies of three pleadings sent today for filing.
Brian

---

This e-mail may contain attorney work product, privileged and/or confidential information. It is intended to be subject to the Attorney Client privilege. It is intended only for the original recipients, and no other person is authorized to receive it. Please do not copy or forward this e-mail without the consent of the author. If you have received this e-mail in error please delete it immediately from your system and contact the author. Molo Lamken LLP is a limited liability partnership formed under the laws of New York and the liability of its partners is limited accordingly. The names Molo Lamken and MoloLamken shall refer to Molo Lamken LLP.

This email has been scanned for viruses and malware.

## Third Request for Exculpatory Evidence

Brian Vukadinovich <bvukadinovich@hotmail.com>
Mon 1/22/2024 12:56 AM
To: Ellis, Justin <JEllis@mololamken.com>

Justin,

As you know, I have previously on two separate occasions asked you to provide any evidence you might have that would exonerate you of the perjury charge. You have provided no evidence whatsoever. For the third time now, provide any evidence that you might have that could exonerate you. The fact that you fail/refuse to provide any exculpatory evidence of your crime of perjury speaks volumes as to your guilt. What you did is a felony crime. The fact that you fail/refuse to provide any exculpatory evidence demonstrates your guilt. Be advised that should you choose to tamper with your client Mr. Posner's computer and/or email account in any way that would in any way compromise the evidence of your guilt in any attempt to cover up your crime, that such conduct will be reported to law enforcement for prosecution for such crime.

Brian



## CERTIFICATE OF SERVICE

The undersigned certifies that on January 29, 2024, the foregoing was sent to the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division, via U.S. Postal Service and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the Defendant's below listed counsel of record per agreement to receive such papers via email.

>Justin M. Ellis
>jellis@mololamken.com
>
>Steven F. Molo
>smolo@mololamken.com
>
>Kenneth Notter
>knotter@mololamken.com
>
>David Beach
>dbeach@eichhorn-law.com

Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, IN 46392
Tel. (219) 956-2462