**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

BRIAN VUKADINOVICH,

                              Plaintiff,

                v.

RICHARD A. POSNER,

                              Defendant.

Cause No. 22 Civ. 118

Judge Theresa L. Springmann
Magistrate Judge John E. Martin

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT**
**OF HIS MOTION FOR SANCTIONS AGAINST PLAINTIFF**

Steven F. Molo (admitted *pro hac vice*)
Kenneth E. Notter III (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL 60654
(312) 450-6700
smolo@mololamken.com
knotter@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY  10022
(212) 607-8160
jellis@mololamken.com

David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Drive
Suite 100
Hammond, IN 46323
dbeach@eichhorn-law.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

I.      Plaintiff's History of Abusive Litigation.................................................... 3

II.     Plaintiff's Misconduct In This Case ............................................................ 5

        A.  Plaintiff Files This Case for Improper Purposes ............................... 5

        B.  Plaintiff Repeatedly Lies Under Oath ............................................... 7

        C.  Plaintiff Repeatedly Files Frivolous and Abusive Motions ........................................ 9

        D.  Plaintiff's Knowing Failure To Cure His Misconduct................................................ 11

ARGUMENT........................................................................................................... 12

I.      Plaintiff's Misconduct Warrants Sanctions Under Rule 11 ......................... 12

        A.  Plaintiff's Lies Under Oath .............................................................. 13

        B.  Plaintiff's Frivolous and Abusive Sanctions Requests ............................................. 15

        C.  Plaintiff's Other Frivolous Motions.................................................. 17

                1.      Plaintiff's Frivolous Objections to the Tentative Phased-Discovery
                        Ruling.................................................................................... 17

                2.      Plaintiff's Frivolous Motion to Stay Discovery ....................................... 18

                3.      Plaintiff's Supplemental Phased-Discovery Briefing.............................. 19

                4.      Plaintiff's Opposition To Defendant's Extension Motion ...................... 19

                5.      Plaintiff's Unauthorized Supplemental Discovery Brief......................... 20

        D.  Plaintiff's Abusive Litigation Tactics ....................................................... 20

II.     Plaintiff's Misconduct Also Warrants Sanctions Under The Court's Inherent
        Power ......................................................................................................... 21

III.    Remedies For Plaintiff's Misconduct........................................................... 23

        A.  Dismissal with Prejudice Is Warranted ........................................... 23

B.  A Significant Monetary Sanction Is Warranted ........................................................ 24

C.  A Filing Bar Is Warranted .................................................................................... 24

D.  There Is No Adequate Alternative Sanction............................................................ 25

CONCLUSION........................................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

### CASES

*Ayoubi v. Dart*,
  640 F. App'x 524 (7th Cir. 2016) ............................................................25

*Carr v. Tillery*,
  591 F.3d 909 (7th Cir. 2010) .........................................................16, 19

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)..........................................................................21, 22

*Davis v. Frontiersmen, Inc.*,
  No. 2:23-cv-108, 2023 WL 4418409 (N.D. Ind. July 10, 2023) ...........19

*Eastgate Invs. I, LLC v. MW Builders, Inc.*,
  No. 2:19-cv-304, 2020 WL 1887936 (N.D. Ind. Apr. 15, 2020)............22

*Foy v. First Nat'l Bank of Elkhart*,
  868 F.2d 251 (7th Cir. 1989) .................................................................16

*Fuery v. City of Chicago*,
  900 F.3d 450 (7th Cir. 2018) ...........................................................23, 25

*Fulks v. Watson*,
  88 F.4th 1202 (7th Cir. 2023) ................................................................23

*Goodvine v. Carr*,
  761 F. App'x 598 (7th Cir. 2019) .....................................................13, 23

*Hinterberger v. City of Indianapolis*,
  966 F.3d 523 (7th Cir. 2020) .................................................................13

*Holly v. Wexford Health Servs., Inc.*,
  339 F. App'x 633 (7th Cir. 2009) ...........................................................23

*Hoskins v. Dart*,
  633 F.3d 541 (7th Cir. 2011) (per curiam)..........................................15, 23

*Jackson v. Murphy*,
  468 F. App'x 616 (7th Cir. 2012) ...........................................................23

*Jones v. City of Elkhart, Ind.*,
  737 F.3d 1107 (7th Cir. 2013) ...............................................................18

*Katz v. Looney*,
  733 F. Supp. 1284 (W.D. Ark. 1990).....................................................19

iv

*Kennedy v. Schneider Elec.*,
   893 F.3d 414 (7th Cir. 2018) .................................................................15, 19

*Koehl v. Bernstein*,
   740 F.3d 860 (2d Cir. 2014).......................................................................19

*Ladien v. Astrachan*,
   128 F.3d 1051 (7th Cir. 1997) ...................................................................22

*In re Mann*,
   229 F.3d 657 (7th Cir. 2000) .....................................................................21

*Martin v. Redden*,
   34 F.4th 564 (7th Cir. 2022) (per curiam) ...............................23, 24, 25

*McGreal v. Village of Orland Park*,
   928 F.3d 556 (7th Cir. 2019) .....................................................................13

*McRoyal v. Commonwealth Edison Co.*,
   263 F. App'x 500 (7th Cir. 2008) .............................................................23

*Nisenbaum v. Milwaukee Cnty.*,
   333 F.3d 804 (7th Cir. 2003) .....................................................................12

*Oliver v. Gramley*,
   200 F.3d 465 (7th Cir. 1999) .....................................................................23

*Outley v. City of Chicago*,
   648 F. Supp. 3d 996 (N.D. Ill. 2022) .......................................................24

*Rivera v. Drake*,
   767 F.3d 685 (7th Cir. 2014) .............................................13, 23, 24, 25

*Sassower v. Field*,
   973 F.2d 75 (2d Cir. 1992).........................................................................21

*Secrease v. W. & S. Life Ins. Co.*,
   800 F.3d 397 (7th Cir. 2015) ........................................................ *passim*

*Support Sys. Int'l, Inc. v. Mack*,
   45 F.3d 185 (7th Cir. 1995) .......................................................................24

*Thomas v. Gen. Motors Acceptance Corp.*,
   288 F.3d 305 (7th Cir. 2002) .....................................................................15

*Twyman v. S&M Auto Brokers*,
   No. 16-cv-4182, 2018 WL 1519159 (N.D. Ill. Mar. 28, 2018) ...............16

*United States v. Rogers Cartage Co.*,
   794 F.3d 854 (7th Cir. 2015) ...................................................................20, 22

*Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*,
   278 F.3d 693 (7th Cir. 2002) ...........................................................................4

*Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*,
   47 F. App'x 417 (7th Cir. 2002) (per curiam) ................................................4

*Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*,
   77 F. App'x 385 (7th Cir. 2003) (per curiam) ...........................................5, 24

*Vukadinovich v. Griffith Pub. Schs.*,
   No. 2:02-cv-472, 2008 WL 5191451 (N.D. Ind. Dec. 10, 2008)............5, 12, 20, 25

*Vukadinovich v. Hanover Cmty. Sch. Corp.*,
   No. 2:13-cv-144, 2017 WL 242985 (N.D. Ind. Jan. 20, 2017)...................5, 21, 25

*Vukadinovich v. McCarthy*,
   59 F.3d 58 (7th Cir. 1995) ..........................................................................4, 6, 24

*Vukadinovich v. McCarthy*,
   901 F.2d 1439 (7th Cir. 1990) ..................................................................4, 13, 25

## STATUTES AND RULES

Fed. R. Civ. P. 11 ................................................................................... *passim*

Fed. R. Civ. P. 11(b) ...................................................................................11, 12, 13

Fed. R. Civ. P. 11(b)(1) ...............................................................................17, 18, 19

Fed. R. Civ. P. 11(b)(2)................................................................................16, 17, 18, 19

Fed. R. Civ. P. 11(b)(3) ...............................................................................15

Fed. R. Civ. P. 11(c) ....................................................................................16

Fed. R. Civ. P. 11(c)(1) ...............................................................................13

Fed. R. Civ. P. 11(c)(2)................................................................................9, 12, 16, 18

Fed. R. Civ. P. 11(c)(4)................................................................................13

Fed. R. Civ. P. 72(a) ....................................................................................18

## OTHER AUTHORITIES

*About Brian*, https://bit.ly/4b3tCW4................................................................4, 6

*Brian Vukadinovich,* Speakerpedia, https://bit.ly/47sABVS ........................................................4, 6

Brian Vukadinovich, "The 'Stench' of the Seventh Circuit Under Chief Judge
    Diane S. Sykes," http://tinyurl.com/bp5wh35h (Dec. 2, 2021) .................................................6

Jenna Greene, "After Posner Retired from 7th Circuit, a Grim Diagnosis and a
    Brewing Battle," Reuters, http://tinyurl.com/yftrtuxv (Mar. 29, 2022)....................................7

*Brian Vukadinovich: No Where for Redress, There Should Be Grand Juries and
    Raised by These Wolves*, YouTube, http://tinyurl.com/k8b8d9j3
    (Oct. 15, 2023) ........................................................................................................................22

## INTRODUCTION

This case is a dishonest attempt to take advantage of someone Plaintiff knows cannot defend himself.  Plaintiff's case is based on a purported March 2018 oral employment agreement he made with Defendant.  His suit relies on the factual claim that, until 2022, he did not know Defendant had Alzheimer's disease.  During the course of this lawsuit, he has made that claim at least twenty times in seven different filings – many of which, starting with his complaint, were made under penalty of perjury.  He has relied on that claim as the basis for two tort counts against Defendant and to escape the statute of limitations for his contract count.

But that claim is false.  Plaintiff's own words show that he knew no later than July 14, 2018 that Defendant had Alzheimer's.  For example, in a July 14, 2018 email, Defendant told Plaintiff that he had been diagnosed with Alzheimer's.  Plaintiff replied:  "***Thanks for having the trust in letting me know about your diagnosis of Alzheimer's***."  Ellis Decl., Ex. P (emphasis added).  Plaintiff heard that diagnosis again and again from Defendant himself and from third parties.  He even admits in sworn interrogatory responses that he learned of the diagnosis in July 2018.  Ellis Decl., Ex. GG, at 10 (stating that "***Defendant mentioned Alzheimer's in an email on July 14, 2018***").  In light of that evidence, the following statements Plaintiff has made in this case are lies:

| Filing | Date | False Statement |
|---|---|---|
| Amended complaint (Dkt. 30) ¶29 **(under oath)** | 8/1/22 | "Defendant Posner knew that he had a diagnosis of Alzheimer's which he fraudulently concealed from Plaintiff . . . until Plaintiff received a letter from Defendant Posner's lawyer at the time, Robert Kaufman, dated February 28, 2022, . . . ." |
| Amended complaint (Dkt. 30) ¶30 **(under oath)** | 8/1/22 | "Defendant Posner never told Plaintiff that he had received a confirmed diagnosis of Alzheimer's Disease and fraudulently concealed that information from Plaintiff until February 28, 2022 . . . ." |
| Amended complaint (Dkt. 30) ¶31 **(under oath)** | 8/1/22 | "Defendant Posner fraudulently concealed the Alzheimer's disease from Plaintiff . . . ." |

| Filing | Date | False Statement |
|---|---|---|
| Motion to dismiss brief (Dkt. 36) at 5 **(under oath)** | 9/12/22 | "Plaintiff didn't become aware of the Defendant's fraud until he received a [2022] letter . . . [revealing Defendant had] 'received a confirmed diagnosis of Alzheimer's Disease.'" |
| Motion to dismiss brief (Dkt. 36) at 6 **(under oath)** | 9/12/22 | "Defendant fraudulently concealed this information [Alzheimer's diagnosis] from Plaintiff until February 28, 2022, . . . ." |
| Motion to dismiss brief (Dkt. 36) at 8 **(under oath)** | 9/12/22 | "Plaintiff's contract claim is not time barred by Indiana's two-year statute of limitations because [of] the fraudulent concealment by Defendant Posner [regarding his diagnosis] . . . ." |
| Affidavit (Dkt. 37) ¶11 **(under oath)** | 9/12/22 | "Defendant Posner never told me that he had received a confirmed diagnosis of Alzheimer's Disease and that information was fraudulently concealed from me . . . ." |
| Affidavit (Dkt. 37) ¶12 **(under oath)** | 9/12/22 | "Defendant Posner knew about his mental condition but lied about it to me . . . ." |
| Second amended complaint (Dkt. 61-2) ¶29 **(under oath)** | 6/20/23 | "Defendant Posner knew that he had a diagnosis of Alzheimer's which he fraudulently concealed from Plaintiff . . . until Plaintiff received a letter from Defendant Posner's lawyer . . . dated February 28, 2022, . . . ." |
| Second amended complaint (Dkt. 61-2) ¶30 **(under oath)** | 6/20/23 | "Defendant Posner never told Plaintiff that he had received a confirmed diagnosis of Alzheimer's Disease and fraudulently concealed that information from Plaintiff until February 28, 2022 . . . ." |
| Second amended complaint (Dkt. 61-2) ¶31 **(under oath)** | 6/20/23 | "Defendant Posner fraudulently concealed the Alzheimer's disease from Plaintiff . . . ." |
| Objections to R&R (Dkt. 67) at 2 | 7/12/23 | "Defendant knew that he had a diagnosis of Alzheimer's, which he fraudulently concealed from Plaintiff until Plaintiff demanded payment for his services, and such fraudulent concealment continued on until Plaintiff received a [2022] letter . . . ." |
| Objections to R&R (Dkt. 67) at 3 | 7/12/23 | "Defendant Posner never told Plaintiff that he had received a confirmed diagnosis of Alzheimer's Disease and fraudulently concealed that information from Plaintiff until February 28, 2022 . . . ." |
| Objections to R&R (Dkt. 67) at 3 | 7/12/23 | "Defendant Posner fraudulently concealed the Alzheimer's disease from Plaintiff . . . ." |
| Objections to R&R (Dkt. 67) at 8-9 | 7/12/23 | "The Defendant's failure to disclose to Plaintiff that he had a mental health condition . . . was a fraudulent concealment . . . ." |

| Filing | Date | False Statement |
|---|---|---|
| Objections to R&R (Dkt. 67) at 9 | 7/12/23 | "[T]he evidence demonstrating that the Plaintiff could not have known about the concealment of Defendant's alleged mental condition came by way of a letter . . . dated February 28, 2022, . . . ." |
| Objections to R&R (Dkt. 67) at 9 | 7/12/23 | "[T]he reason Plaintiff didn't know of Defendant's alleged mental condition is because the Defendant concealed it from Plaintiff, and that is a fraudulent concealment, plain and simple." |
| Objections to R&R (Dkt. 67) at 10 | 7/12/23 | "Defendant's failure to disclose his alleged mental status to Plaintiff . . . was an act of deception . . . ." |
| Motion to strike (Dkt. 80) at 5 | 10/18/23 | "Plaintiff did not know about the Defendant's alleged situation with Alzheimer's." |
| Motion for review of magistrate judge's decision (Dkt. 96) at 9 | 12/27/23 | "This was a false statement [*i.e.*, claiming Plaintiff knew of Defendant's diagnosis] as Defendant's prior attorney, Robert Kaufman explicitly stated in a letter to Plaintiff dated February 28, 2022, 'What you clearly do not know is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's Disease.'" |

But Plaintiff's misconduct in this case goes far beyond his lies. When counsel revealed that his statements about the Alzheimer's diagnosis were false, he tried to intimidate the defense with baseless accusations of perjury made to the Court and to the media. He also filed frivolous shotgun motions to waste counsel's and the Court's time. And throughout this case, he has gone above and beyond to abuse the Court, Defendant, counsel, and third parties.

Plaintiff's behavior is not new. This case is only the latest stage of Plaintiff's decades-long campaign of frivolous litigation. Again and again, courts have warned and sanctioned Plaintiff for his misconduct. He refuses to stop. Only the most severe sanctions will protect Defendant, the courts, and others from Plaintiff's abuses. The Court should dismiss the case with prejudice, impose a significant financial penalty on Plaintiff, and impose a filing bar.

## BACKGROUND

### I.   PLAINTIFF'S HISTORY OF ABUSIVE LITIGATION

Plaintiff is no ordinary litigant. He has represented himself in more than twenty lawsuits

over the last thirty-nine years.[1]  On his website, he holds himself out as "the leading *pro se* litigant in the country" and the "foremost expert in the country in the art of *pro se* litigation."  *About Brian*, https://bit.ly/4b3tCW4.  He touts that "expertise" to sell books, make paid speaking appearances, and publicize his decades-long campaign against the federal judiciary.  *See, e.g.*, *id.* (linking to Amazon); https://bit.ly/47sABVS (offering paid speeches).

Plaintiff's litigation abuses date back to the beginning of his *pro se* career.  The federal courts have repeatedly warned him of – and punished him for – filing frivolous cases and motions. In 1989, this Court imposed the first known sanctions against Plaintiff, fining him $770 for filing a suit that was "frivolous even when his *pro se* status [was] taken into account."  *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990) (frivolous suit against police officer who arrested Plaintiff).  Plaintiff refused to pay that modest fine, wasting judicial resources with more "frivolous" arguments and appellate motions until the defendants were forced to garnish his wages. *Vukadinovich v. McCarthy*, 59 F.3d 58, 60, 62 (7th Cir. 1995).

In 2002, the Seventh Circuit sanctioned Plaintiff again.  He filed, and lost, a meritless appeal of a lawsuit against his former employer.  *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 701 (7th Cir. 2002).  Again, Plaintiff refused to accept the court's ruling and filed another frivolous motion leading to yet another "frivolous" appeal.  *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 47 F. App'x 417, 417 (7th Cir. 2002) (per curiam).  As a result, the Court of Appeals ordered Plaintiff to pay $2,000 of attorney's fees.  *See* Ellis Decl., Ex. K at 5; *id.*, Ex. L.  Again, Plaintiff refused to pay.  *Id.*, Ex. K at 6.  So the court barred Plaintiff from filing papers in the courts of this Circuit until he paid the fees he owed.  *Id.*

---

[1] A list of Plaintiff's known *pro se* lawsuits is attached as Exhibit A to the Declaration of Justin M. Ellis filed contemporaneously with this motion.

Plaintiff's behavior did not change. He racked up another $6,000 sanction from this Court in the same case where the Seventh Circuit had sanctioned him. *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, No. 4:00-cv-0037, Dkt. 93 (N.D. Ind. Nov. 14, 2002). Again, he did not pay. Instead, he appealed, arguing the district court could not sanction him because the appellate court had already done so. *See Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 77 F. App'x 385, 385 (7th Cir. 2003) (per curiam). "He [was] wrong." *Id.* He earned both sanctions by pursuing frivolous appeals and separately "continu[ing] frivolous litigation in the district court of issues long since conclusively resolved against him." *Id.* But Plaintiff **still** did not pay the sanctions until 2005, even disregarding a 2003 order to pay "immediately." *Vukadinovich v. N. Newton Sch. Corp.*, No. 4:00-cv-37, Dkts. 105 & 107 (N.D. Ind. Nov. 24, 2003 and May 19, 2005).

Plaintiff refused to be restrained to abiding by the rules. In a later case against another former employer, he made repeated "jabs aimed at defendants' counsel as well as various rants which stray from the legal issues." *Vukadinovich v. Griffith Pub. Schs.*, No. 2:02-cv-472, 2008 WL 5191451, at *3 (N.D. Ind. Dec. 10, 2008). Any "further personal disrespect," the court warned, would "result in the imposition of sanctions." *Id.* But in yet another case against yet another employer, Plaintiff again "filed numerous spurious pre-trial motions" and made "unwarranted vitriolic allegations." *Vukadinovich v. Hanover Cmty. Sch. Corp.*, No. 2:13-cv-144, 2017 WL 242985, at *3 (N.D. Ind. Jan. 20, 2017). Plaintiff's "long history of frivolous litigation" is beyond dispute. *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 77 F. App'x at 385.[2]

## II.   PLAINTIFF'S MISCONDUCT IN THIS CASE

### A.   Plaintiff Files This Case for Improper Purposes

Plaintiff has long used his association with Defendant to gain publicity for himself. He

---

[2] It is unclear whether there is evidence of Plaintiff's misconduct in pre-PACER case files not available electronically.

uses Defendant's name without permission to promote his latest book, in which he falsely accuses Defendant of confessing to "fixing" a frivolous appeal Plaintiff lost in 1995.  Ellis Decl., Ex. O at 34 (excerpts from Plaintiff's book *Rogues in Black Robes*); *see Vukadinovich v. McCarthy*, 59 F.3d at 62.[3]  He repeatedly touts his work with Defendant on his website, *see About Brian*, https://bit.ly/4b3tCW4, in selling paid speeches, https://bit.ly/47sABVS, and on X (formerly Twitter), Ellis Decl., Ex. H.  And he uses Defendant's name to lend credibility to his war on the federal judiciary.  *See, e.g.*, Brian Vukadinovich, "The 'Stench' of the Seventh Circuit Under Chief Judge Diane S. Sykes," http://tinyurl.com/bp5wh35h (Dec. 2, 2021).

This case is a continuation of those tactics.  Plaintiff has apparently been planning since 2020 to exploit Defendant's Alzheimer's disease to gain money and publicity through this lawsuit. Plaintiff now admits that Defendant told him he had been diagnosed with Alzheimer's no later than July 2018.  Ellis Decl., Ex. FF at 7-8 (requests for admission); *id.*, Ex. GG at 10 (interrogatory responses); *id.*, Ex. P (July 2018 email).  He knew by November 2019 that Defendant stopped answering emails.  Carbide Decl., Ex. A at 1.  And in a March 2020 email to an ex-Center staffer, he thought that Defendant's "Alzheimer's ha[d] probably progressed and that [Defendant] might be institutionalized."  *Id.*, Ex. B at 1.  Plaintiff then allegedly waited another eight months to send Defendant a self-serving email in which – for the first time – he raised a purported oral contract with Defendant and demanded payment for his work.  Ellis Decl., Ex. U.[4]

Fifteen months later, Plaintiff sent a demand letter to Defendant in February 2022 threatening to "tarnish[ ]" Defendant's "legacy" if he was not paid.  Dkt. 34-1, Ex. D.  He then

---

[3] *Cf.* Carbide Decl. ¶ 22 (stating that this purported conversation never happened).

[4] Defendant cannot yet tell whether that email is authentic, since it does not exist in Defendant's email account and because Plaintiff refuses to produce it electronically.  Dkt. 117-2 ¶ 8.  Even if it is, it shows that Plaintiff lied to Defendant.  Plaintiff earlier admitted to another ex-Center staffer that he last heard from Defendant before the Center dissolved in July 2019.  Ellis Decl., Ex. T.  But in the purported November 2020 email, he claimed to Defendant that, *after* the Center's dissolution, Defendant had promised to pay him.  *Id.*, Ex. U.

made good on that threat by revealing Defendant's Alzheimer's diagnosis to the press.  *See* Jenna

Greene, "After Posner Retired from 7th Circuit, a Grim Diagnosis and a Brewing Battle," Reuters,

http://tinyurl.com/yftrtuxv (Mar. 29, 2022) (quoting Plaintiff as a source).  And he then filed this

case in May 2022, giving multiple interviews in the process.  Ellis Decl., Ex. B.  Ever since, he

has used this case to improperly garner publicity for himself and for his campaign against the

judiciary.  Plaintiff has given at least 12 interviews and made several hundred posts on X about

this case directed to everyone from Bloomberg News to Miley Cyrus.[5]  *Id.*, Exs. B, F, G, I, J.

> **B.    Plaintiff Repeatedly Lies Under Oath**

Plaintiff has repeatedly changed his story to keep this lawsuit going.  His pre-suit demand

letter was clear that there was just one alleged agreement "on February 25, 2018" in which he

agreed to work "as the executive director of the Posner Center."  Dkt. 34-1, Ex. D.  Defendant's

counsel explained to him that, under those alleged facts, his claim was not enforceable against

Defendant personally (as opposed to the Center).  *See* Dkt. 30-1, Ex. 2 (Feb. 2022 letter).  But

when Plaintiff sued, he now claimed (under oath) that he and Defendant orally amended the

agreement so that Defendant would "personally pay" Plaintiff's salary.  Dkt. 1 ¶ 8.  And when

Defendant argued in a motion to dismiss that Plaintiff's suit was barred both by Indiana's statute

of frauds and statute of limitations, Dkt. 22 at 6-7, 9-10, Plaintiff changed his story again.  In an

amended complaint, Plaintiff now alleged that he had worked as a personal advisor to "Defendant

Posner in Defendant Posner's personal capacity."  Dkt. 30 ¶ 7.  Conveniently, his new allegations,

while inconsistent with his prior sworn allegations and exhibits, fit into the precise exception to

the statute of frauds that Defendant had identified.  *See* Dkt. 39 at 5-6 (noting inconsistency).

Plaintiff's amended complaint also featured a new allegation – that Defendant hid his

---

[5] A list of Plaintiff's public statements is attached as Exhibit B to the Ellis Declaration.

Alzheimer's diagnosis from Plaintiff until February 2022.  That was a lie.  Plaintiff swore to this claim under oath in his amended complaint, in an opposition brief, and in an affidavit.  *See* Dkt. 30 ¶¶ 29-31, 36; Dkt. 36 at 5-6, 8 (sworn response); Dkt. 37 ¶¶ 10-12 (affidavit).  Those sworn statements were critical to Plaintiff's complaint.  Plaintiff relied on the claim that he did not know about Defendant's Alzheimer's to bring claims for fraud and unjust enrichment and to argue that his contract claim was timely.  Dkt. 62 at 8-10, 37-39; Dkt. 74 at 3, 16-17.  Brazenly, Plaintiff even accused counsel later of making "a false statement" for pointing out that he in fact knew of the Alzheimer's diagnosis.  Dkt. 96 at 9.

Plaintiff has repeated his Alzheimer's claim at least eleven times in at least four filings made under penalty of perjury.  *See* Ellis Decl., Ex. C (listing sworn statements); *see* pp. 1-2, *supra* (listing the lies).   And he has repeated those statements another nine times in at least three filings subject to Fed. R. Civ. P. 11.  Ellis Decl., Ex. D (listing other false statements); pp. 2-3, *supra*. But those statements are unequivocally false.  At least five separate email chains show that Plaintiff repeatedly discussed Defendant's Alzheimer's disease with Defendant himself and with third parties as early as 2018.  *See* Ellis Decl., Exs. P, Q, R, S, T (listing examples).  For example, in a July 2018 email, Plaintiff told Defendant: "***Thanks for having the trust in letting me know about your diagnosis of Alzheimer's***."  Ellis Decl., Ex. P (emphasis added).

The defense learned of Plaintiff's lies after collecting Defendant's email account in October 2023.  Ellis Decl. ¶ 17.  Counsel then notified the Court and Plaintiff in a November 2023 brief, Dkt. 86 at 3, and submitted the emails as proof in January 2024, Dkts. 108-2, 108-3, 108-4, 108-5.  Still, Plaintiff has stuck by his story.  He repeated the lie about Alzheimer's in a December filing.  Dkt. 96 at 9.  Plaintiff has now stated in sworn interrogatory responses that he knew Defendant had Alzheimer's by July 2018.  Ellis Decl., Exs. FF at 7-8, GG at 10.  Plaintiff's excuse

is that, while he knew Defendant had a "diagnosis" of Alzheimer's, nobody told him until 2022 it was a "confirmed diagnosis." *See id.*, Exs. FF at 7-8, GG at 10. Plaintiff does not explain what difference there could be between a "diagnosis" and a "confirmed diagnosis." Regardless, Plaintiff earlier swore that Defendant hid a "diagnosis of Alzheimer's," without saying anything about the diagnosis being "confirmed." *E.g.*, Dkt. 30 ¶ 29 (amended complaint).

Plaintiff's lies in this case do not appear to be limited to the Alzheimer's issue. More recent discovery reveals that the very foundation of his case is also likely fabricated. While Plaintiff bases his contract claim on a purported oral agreement with Defendant at a March 19, 2018 lunch meeting, Dkt. 30 ¶¶ 7-8; Dkt. 1 ¶¶ 7-8, the only other person who attended that lunch states that Defendant and Plaintiff never discussed that supposed contract, Carbide Decl. ¶¶ 15-16. Moreover, emails from Defendant *after* that meeting repeatedly say that nobody at the Center – including Plaintiff – would be paid a salary. Ellis Decl., Ex. W at 3-4; *id.*, Ex. Y at 3, *id.*, Ex. II at 3; *see also id.*, Exs. V, X. Defendant's counsel is continuing to investigate Plaintiff's conduct.

### C.   Plaintiff Repeatedly Files Frivolous and Abusive Motions

Since Defendant revealed Plaintiff's lies about the Alzheimer's diagnosis, Plaintiff has filed several frivolous motions trying to intimidate the defense. Most notably, Plaintiff has baselessly accused Defendant's counsel of "perjury." After counsel accurately reported in a declaration that a search of Defendant's email account revealed no messages from Plaintiff after April 2019, Plaintiff produced a paper copy of a purported November 2020 email he sent to Defendant, then filed a motion calling the declaration "perjury" and seeking to have counsel sanctioned and referred for prosecution. Dkt. 95. Plaintiff made no attempt to investigate whether counsel's declaration was accurate, refused to prove that the purported email was authentic, and failed to comply with Rule 11's 21-day safe harbor before seeking sanctions. *See* Fed. R. Civ. P. 11(c)(2); Dkt. 117 (response to sanctions motion). Instead, Plaintiff filed his baseless motion then

repeatedly publicized it, accusing counsel of "felony perjury" in podcasts and dozens of social-media posts.  Ellis Decl., Ex. F.  And he has also insulted counsel in emails, accusing counsel of "crime[s]" and insisting that counsel prove his "innocence."  *Id.*, Exs. CC, EE.

Plaintiff then made at least four more frivolous filings in the next two months.  *See* Dkts. 79, 80, 94, 95, 96, 100.  After Judge Kolar tentatively allowed discovery to proceed on a phased basis, Plaintiff moved to stay discovery without attempting to meet, or even citing, the standard for a stay.  Dkt. 100.  He filed premature and frivolous objections to that ruling without attempting to show an abuse of Judge Kolar's extremely broad discretion over discovery matters.  Dkt. 96.  He filed an unauthorized and frivolous reply brief on the phased-discovery issue.  Dkt. 114.  And he filed a frivolous motion for "explanations" doubling down on his previous, frivolous motion to strike Defendant's answer.  Dkt. 105.[6]  Several of these filings repeat the lie that Plaintiff "did not know about the Defendant's alleged situation with Alzheimer's" until 2022.  Dkt. 80 at 5; *see* Dkt. 96 at 9 (similar).  They also repeat the baseless accusations of "perjury."  *E.g.*, Dkt. 100 ¶ 12; Dkt. 101 at 24.  And they are all filled with invective and personal attacks on Defendant, third parties, counsel, and the Court.  *E.g.*, Dkt. 101 at 7-21 (attacking Judge Kolar for fifteen pages).

While Plaintiff's recent papers are the most egregious, Plaintiff has repeatedly filed abusive, frivolous motions since the beginning of this case.  For example, he baselessly sought an order directing the Clerk to stop "discriminating" against him, Dkt. 10; he improperly moved for judicial notice three times, Dkts. 38, 40, 44; he filed a "memorandum" accusing the Court of "sitting on the ruling on the motion to dismiss," Dkt. 47 at 4-5; he filed a frivolous motion to freeze all of Defendant's assets, Dkt. 48; he baselessly moved to disqualify Judge Springmann, Dkt. 52;

---

[6] Plaintiff withdrew the motion to strike.  Dkt. 115.  But sanctions for that motion are still warranted.  *See* pp. 22-23, *infra*.

and he filed untimely objections to Judge Kolar's report and recommendation, Dkt. 67.  Before the current sanctions motion, Plaintiff has requested sanctions against Defendant and his counsel nine separate times.  *E.g.*, Dkt. 46 at 4 n.1, 5; Dkt. 66 at 4 n.3; Dkt. 67 at 16; Dkt. 68 at 2 n.1; Dkt. 70 at 3; Dkt. 71 at 5; Dkt. 73 at 4 n.2, 14; Dkt. 80 at 9; Dkt. 106 at 3.  And Plaintiff has also personally insulted the Court, Defendant, and counsel in crude terms dozens of times.[7]

These repetitive, abusive filings have wasted the Court's and counsel's time.  The Court has been forced to spend far more time than this supposed $170,000 contract case should require because of Plaintiff's unending stream of frivolous motions.  And counsel have been distracted from actually defending this case by the need to deal with Defendant's motions – not least Plaintiff's baseless charges of "perjury."

### D.    Plaintiff's Knowing Failure To Cure His Misconduct

Plaintiff is uniquely aware of the risk of sanctions.  He has been repeatedly sanctioned and warned of sanctions already.  *See* pp. 3-5, *supra* (collecting examples).  He has repeatedly attested that he has "conducted an extensive review of the Federal Rules of Civil Procedure" and this Court's "Local Rules."  Dkt. 10 ¶3; *see* Dkt. 11 at 2 (same); Dkt. 16 at 2 (same).  He has quoted Rule 11(b)'s text in full and the perjury statute in past filings.  *See* Dkt. 73 at 10-11; Dkt. 106 at 3. And he has requested sanctions himself many times.  *See* pp. 9-11, *supra*.

Plaintiff has been repeatedly warned about the misconduct raised in this motion.  Defendant first asked Plaintiff to withdraw the sanctions motion in a December 22 email.  Ellis Decl., Ex. Z. On December 29, counsel then followed up with a Rule 11 letter requesting that Defendant withdraw his amended complaint, sanctions motion, motion to stay discovery, objections to Judge

---

[7] A partial list of Plaintiff's personal attacks – for example. accusing counsel of having a "thirst for lying," asking "[w]hat were [they] smoking," and accusing Judge Kolar of lying to Congress and violating his judicial oath – is attached as Exhibit E to the Ellis Declaration.

Kolar's discovery ruling, and supplemental briefing on bifurcated discovery. *Id.*, Exs. AA, BB. After Plaintiff filed his objection to the extension motion, Defendant served Plaintiff with a Rule 11 letter about that filing as well. *Id.*, Exs. CC, DD. And in his filed responses to the sanctions motion, motion to stay discovery, and supplemental discovery briefing, Defendant has warned Plaintiff that his filings were frivolous and asked the Court to defer ruling on them so Plaintiff could withdraw them within the safe harbor. *E.g.*, Dkt. 108 at 2 n.1; Dkt. 109 at 1; Dkt. 112 at 1. Courts have also warned Plaintiff before that frivolous motions and "personal disrespect" will lead to the "imposition of sanctions." *Vukadinovich v. Griffith Pub. Schs.*, 2008 WL 5191451, at *3.

Plaintiff has refused to respond to these warnings. The safe harbor for Plaintiff to withdraw the amended complaint, sanctions motion, motion to stay discovery, objections to Judge Kolar's discovery ruling, and supplemental briefing on bifurcated discovery expired on January 19. *See* Fed. R. Civ. P. 11(c)(2). The safe harbor to withdraw the response to Defendant's extension motion expired on January 24. *See id.* But rather than withdraw those sanctionable filings, Plaintiff has piled on more. *See* pp. 10-11, *supra*.

## ARGUMENT

### I. PLAINTIFF'S MISCONDUCT WARRANTS SANCTIONS UNDER RULE 11

By signing the papers he filed with this Court, Plaintiff certified under Rule 11 that, based on a reasonable inquiry, those papers were not presented for any improper purpose; that their legal claims were warranted by existing law or a nonfrivolous argument for changing the law; and that their factual contentions had evidentiary support. Fed. R. Civ. P. 11(b). A party may enforce Rule 11 by serving a letter or draft motion that warns the wrongdoer of his misconduct and gives him a 21-day safe harbor to withdraw the improper filings. Fed. R. Civ. P. 11(c)(2); *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir. 2003) (service of a letter satisfies Rule 11(c)(2)). If a party refuses to withdraw the improper filings within the safe harbor, then on motion a court may

impose any appropriate sanction that will suffice to deter that party or others in a similar situation. Fed. R. Civ. P. 11(c)(1), (c)(4).  Whether to grant Rule 11 sanctions is in the district court's "considerable discretion." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020).

Plaintiff's *pro se* status is not a defense to sanctions. *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1445 (7th Cir. 1990).  He has violated Rule 11 in at least four ways: (1) his lies to the Court, including his lies under oath in his complaint and other sworn statements; (2) his frivolous and improper sanctions motion; (3) his five other frivolous pending filings; and (4) his abusive litigation tactics and profound disrespect to the Court, Defendant, and counsel.  Defendant gave Plaintiff ample warning of this misconduct in an informal email and in two Rule 11 letters.  Ellis Decl., Exs. Z, BB, DD.  But Plaintiff has refused to withdraw his complaint or other sanctionable filings.  Sanctions under Rule 11 are not just warranted – they are necessary.

### A.    Plaintiff's Lies Under Oath

"[L]ies under oath" are "misconduct of a different degree." *Goodvine v. Carr*, 761 F. App'x 598, 602 (7th Cir. 2019) (unsigned order).  They are "among the worst kinds of misconduct." *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014).  Filings "'laden with disingenuous and misleading statements'" are equally sanctionable. *McGreal v. Village of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019); *see* Fed. R. Civ. P. 11(b).  A willful lie of any kind "to secure a court victory undermines the most basic foundations of our judicial system." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 402 (7th Cir. 2015).

Plaintiff has indisputably lied under oath.  He has claimed under penalty of perjury in four different filings, including his complaint, that Defendant "fraudulently concealed" his Alzheimer's diagnosis until 2022.  Dkt. 30 ¶ 30; *see* Ellis Decl., Ex. C (more examples).  And he has also made that statement in other filings subject to Rule 11.  Ellis Decl., Ex. D.   As the chart at the beginning of this brief shows, Plaintiff has repeated his lie throughout this case, in filings ranging from two

versions of his complaint, motion to dismiss briefing, a motion to strike, and briefing about the scope of discovery in this case.  *See* pp. 1-3, *supra*.

Plaintiff's own words show these statements are all false.  Plaintiff received an email from Defendant in July 2018 and another in October 2018 that told Plaintiff that Defendant had been "diagnosed with Alzheimer's disease (a very serious brain disease)."  Ellis Decl., Ex. P at 2; *id.*, Ex. R at 3.  Plaintiff thanked Defendant for "having the trust in letting [him] know about [Defendant's] diagnosis of Alzheimer's."  *Id.*, Ex. P at 2.  In August 2018, he sympathized with an email from Defendant about how his "brain scan" showed "damage . . . to a part of the brain that controls memory."  *Id.*, Ex. Q.  And Plaintiff told another ex-Center staffer in March 2020 how he thought Defendant's "Alzheimer's has probably progressed and that [Defendant] might be institutionalized."  *Id.*, Ex. T.  There is no way to reconcile Plaintiff's words with his later claim that the Alzheimer's diagnosis was "fraudulently concealed" from him.

Plaintiff's false testimony was material.  Plaintiff added that false testimony to the amended complaint as the factual basis for his fraud and unjust-enrichment claims.  Dkt. 30 ¶¶ 29-31; *see* Dkt. 62 at 8-9 (recognizing this).  He relied on that false testimony in his opposition to Defendant's motion to dismiss (made under penalty of perjury) to avoid the statute of limitations.  Dkt. 36 at 5-6.  As the Court recognized, the claim that Defendant concealed his diagnosis was a pillar of Plaintiff's "fraudulent concealment" argument.  Dkt. 62 at 37-38.  Plaintiff repeated the false testimony in his proposed second amended complaint for the same reasons – to influence the Court's ruling on the motion to dismiss.  *See* Dkt. 61-2 ¶¶ 29-31.  And the Court ***did*** rely on Plaintiff's lie in ruling on the motion to dismiss.  *E.g.*, Dkt. 74 at 3 (taking as fact that "Defendant had never told the Plaintiff about the Alzheimer's diagnosis").

The false testimony was also willful.  There is no innocent explanation.  Defendant told

Plaintiff in two separate email chains about the diagnosis *in 2018*.  Ellis Decl., Ex. Q at 2; *id.*, Ex. P at 2.  In those email chains, Plaintiff showed he knew the seriousness of what Defendant had told him.  That is why Plaintiff **thanked** Defendant in those emails "for having the trust [in him] in letting [him] know about [Defendant's] diagnosis of Alzheimer's."  *Id.*, Ex. P.  Another ex-Center staffer independently confirms that Plaintiff "knew about Defendant's Alzheimer's disease" years before 2022.  Carbide Decl. ¶8.  In fact, emails from Plaintiff to that staffer show that he not only knew of "Defendant's compromised cognitive condition", *id.* ¶9, but also that he thought as early as 2020 that "[Defendant] might be institutionalized," *id.* ¶10.  No one goes from thinking Defendant "might be institutionalized" to forgetting Defendant's Alzheimer's at all.

The sheer volume and type of lies puts Plaintiff's conduct in rare company.  The Seventh Circuit has affirmed dismissal with prejudice as a sanction for a single lie on an application for *in forma pauperis* status, *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 306-07 (7th Cir. 2002), or on a form listing prior litigation history, *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (per curiam).  Plaintiff, by contrast, lied at least **twenty** times in **seven** different filings.  Ellis Decl., Exs. C, D.  Those lies had a clear purpose: to evade the statute of limitations and support his fraud and unjust-enrichment claims.  Dkt. 30 ¶¶29-31; Dkt. 36 at 5-6.  Such lies to influence a court "undermine[] the most basic foundations of our judicial system."  *Secrease*, 800 F.3d at 402.

### B.    Plaintiff's Frivolous and Abusive Sanctions Requests

Plaintiff's sanctions motion is equally sanctionable.  Plaintiff made zero attempt to investigate counsel's collection of the Gmail account before he accused them of "perjury."  *See* Dkt. 95.  He thus violated his duty under Rule 11 to make a reasonable inquiry into the factual support for his claims.  Fed. R. Civ. P. 11(b)(3); *Kennedy v. Schneider Elec.*, 893 F.3d 414, 421 (7th Cir. 2018) (failing to investigate "before leveling fraud accusations" violates Rule 11).  And he also violated his Rule 11 duty to make legally warranted claims by defying the safe-harbor

requirement.  Fed. R. Civ. P. 11(b)(2), (c)(2).

The motion is also baseless on the merits.  As Defendant explained to Plaintiff and the Court at the December 14 hearing, the statements in counsel's declaration (Dkt. 86-1) are true.  *See* Dkt. 104 (Hr'g Tr. Vol. 1) at 29:21-30:15.  A search of Defendant's Gmail account **did** show that "Defendant last sent an email to Plaintiff on July 20, 2019."  Dkt. 86-1 ¶ 5.  Likewise, a search of Defendant's Gmail account **did** show that "Plaintiff last sent an email to Defendant on May 21, 2019."  *Id.* ¶ 6.  While Plaintiff submitted a purported November 2020 email from himself to Defendant at the December 14 hearing, he has refused to provide any proof that the purported email is authentic.  But even if authentic, that email does not undermine counsel's statements about the search of Defendant's Gmail account in 2023.  *See* Dkt 117 at 9-10.

Plaintiff knew all along that his sanctions motion was frivolous.  Defendant earlier warned Plaintiff about Rule 11(c)'s procedural requirements.  *See* Dkt. 72 at 5.  Defendant also warned Plaintiff that "frivolous sanctions motions can themselves be grounds for sanctions."  *Id.* at 6 n.5; *see Foy v. First Nat'l Bank of Elkhart*, 868 F.2d 251, 258 (7th Cir. 1989) ("frivolous request for sanctions is itself sanctionable").  And Defendant has explained why the motion is frivolous.  Ellis Decl., Ex. Z at 1 (Dec. 22); *id.*, Ex. BB at 3-4 (Dec. 29); Dkt. 97 ¶ 2 (Dec. 29).

Plaintiff has not relented.  He has repeatedly asked the Court to refer counsel for prosecution.  Dkt. 94 at 9; *see* Dkt. 95 at 7, 18, 25.  He continues to accuse counsel of "perjury" on social media, tagging Miley Cyrus, Selena Gomez, Taylor Swift, and hundreds of media outlets.  Ellis Decl., Ex. F at 191, 200, 203.  He refuses to withdraw his motion.  *See id.*, Ex. BB at 8.  And he has taunted counsel, calling the Rule 11 letter "very desperate" and "sad!"  *Id.*, Ex. I at 1.

Plaintiff's statements show his bad faith and intent to harass.  *Cf. Carr v. Tillery*, 591 F.3d 909, 920 (7th Cir. 2010) ("vitriolic tone" shows "motive to harass"); *Twyman v. S&M Auto*

*Brokers*, No. 16-cv-4182, 2018 WL 1519159, at *6 (N.D. Ill. Mar. 28, 2018) ("unsubstantiated accusations" of perjury and request to refer opponent for prosecution show "bad faith").  That, in turn, shows that Plaintiff violated Rule 11 by filing his motion for an improper purpose.  Fed. R. Civ. P. 11(b)(1).  The timing of Plaintiff's motion makes his motive clear.  ***Only after Defendant first noted that Plaintiff had known about the Alzheimer's diagnosis did Plaintiff start accusing counsel of the very thing he had done.***  That shows how Plaintiff has tried to use meritless criminal allegations and sanctions motions to intimidate counsel for exposing his misconduct.

Finally, Plaintiff's motion merits punishment because it is his ***eleventh*** baseless request for sanctions.  Dkt. 46 at 4-5; Dkt. 66 at 4 n.3; Dkt. 67 at 16; Dkt. 68 at 2 n.1; Dkt. 70 at 3; Dkt. 71 at 5; Dkt. 73 at 14; Dkt. 80 at 9; Dkt. 94 at 1; Dkt. 95 at 1.  The first ten requests were just as frivolous as this one.  None complied with Rule 11's safe harbor; none was made "separately from any other motion," Fed. R. Civ. P. 11 (c)(2); and none identified any sanctionable misconduct, *see* p. 11, *supra*.  Defendant has warned Plaintiff that these requests are baseless and sanctionable.  Dkt. 72 at 5, 6 n.5; Ellis Decl., Ex. BB at 3-4.  But Plaintiff will not stop.

### C.    **Plaintiff's Other Frivolous Motions**

In addition to Plaintiff's sanctions motion, he has five other pending frivolous filings.  Each of those papers, too, merits sanctions.

### 1.    *Plaintiff's Frivolous Objections to the Tentative Phased-Discovery Ruling*

Plaintiff's purported "objections" violate Rule 11 by repeating the lie that Plaintiff did not know about Defendant's Alzheimer's diagnosis until 2022.  Dkt. 96 at 9.  He did so even though Defendant had already warned that discovery would show that, by mid-2018, "Plaintiff had already known . . . that Defendant had been diagnosed with Alzheimer's disease."  Dkt. 86 at 3.  Such a blatant falsehood demands sanctions.  *See Secrease*, 800 F.3d at 402.

Like the other filings, the "objections" also violate Rule 11(b)(2) and (3) because they lack

any factual or legal support.  The central premise is that Judge Kolar has already ordered phased discovery.  *See* Dkt. 96 at 1 (objecting to "rulings").  That is false, and Plaintiff knows it.  Judge Kolar specifically **deferred** ruling on phased discovery until the parties filed supplemental briefing on January 10.  Dkt. 90.  The "objections" are premature and thus frivolous.

But even if they were ripe, the "objections" offer no legal basis to disturb Judge Kolar's tentative ruling.  Magistrate judges enjoy "extremely broad discretion" in controlling discovery that may be overturned only if it is "clearly erroneous or is contrary to law."  *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115-16 (7th Cir. 2013) (citing Fed. R. Civ. P. 72(a)).  And discovery rulings should not be disturbed "absent a clear showing that the denial of discovery resulted in actual and substantial prejudice."  *Id.*  But Plaintiff never addresses that authority.  Nor does he explain how a **tentative** ruling is an abuse of discretion.  The "objections" thus violate Rule 11 because Plaintiff made no attempt to show that the arguments are warranted by existing law or a nonfrivolous argument for changing the law.  *See* Fed. R. Civ. P. 11(b)(2).

The "objections" are also sanctionable because they were made for the improper purposes of waging a publicity campaign against the courts and harassing and intimidating Defendant and counsel.  Plaintiff repeats the claim that counsel committed "perjury."  Dkt. 96 at 10; *see* pp. 9-10, *supra*.  He distorts what happened at the December 14 hearing.  *Compare* Dkt. 96 at 3-5, 10-13, *with* Hr'g Tr. Vol. 1 at 28:8-31:10.  He attacks Judge Kolar personally.  *E.g.*, Dkt. 96 at 14 n.8.  And he attempts to use the filing to publicize irrelevant issues such as Judge Kolar's nomination to the Seventh Circuit.  *Id.* at 18-25.  That is sanctionable.  Fed. R. Civ. P. 11(b)(1).

2.      *Plaintiff's Frivolous Motion To Stay Discovery*

Plaintiff's motion to stay discovery violates Rule 11 at least twice.  In his "objections," Plaintiff complains that Judge Kolar's tentative ruling on phased discovery will delay discovery. Dkt. 96 at 17.  Yet he moved to stay discovery indefinitely until the Court reviews the ruling that

he claims would cause delay.  Dkt. 100 at 6.  And Plaintiff makes no argument and cites no authority about why a stay is warranted, even though Defendant informed Plaintiff of those requirements.  Ellis Decl., Ex. HH at 1 (citing *Davis v. Frontiersmen, Inc.*, No. 2:23-cv-108, 2023 WL 4418409, at *1 (N.D. Ind. July 10, 2023) (Kolar, J.)).  Plaintiff's motion defies his duty to file only papers that are warranted by law.  Fed. R. Civ. P. 11(b)(2).

The motion also violates Rule 11 because it was made for the same improper purposes – to publicize his war on the judiciary and to intimidate counsel.  Plaintiff repeats his accusation that counsel "committed a very serious act of perjury."  Dkt. 100 ¶ 12; *see id.* ¶ 13 (similar).  And he continues his attacks on Judge Kolar.  *Id.* ¶ 14.  Both unwarranted attacks are sanctionable. *Kennedy*, 893 F.3d at 421 (baseless accusation of fraud sanctionable); *In re Mann*, 229 F.3d 657, 659 (7th Cir. 2000) ("disparaging remarks about the judges of the Seventh Circuit" sanctionable); *Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014) ("insulting language directed at the Magistrate" sanctionable); *Katz v. Looney*, 733 F. Supp. 1284, 1288 (W.D. Ark. 1990) ("personal attacks" on magistrate sanctionable).  And Plaintiff's "vitriolic" language illustrates his sanctionable "motive to harass."  *Carr*, 591 F.3d at 920.

### 3.  *Plaintiff's Supplemental Phased-Discovery Briefing*

Though the Court invited this filing, Dkt. 90, it violates Rule 11(b)(1) and (b)(2) by repeatedly accusing counsel of "perjury."  Dkt. 101 at 6-8, 24.  It also spends fifteen pages attacking Judge Kolar personally.  *Id.* at 7-21.  Those unwarranted, irrelevant, and baseless attacks are designed to intimidate the Court into allowing full discovery and call for sanctions.  *See* Ellis Decl., Ex. G (hundreds of social media posts attacking Judge Kolar).

### 4.  *Plaintiff's Opposition to Defendant's Extension Motion*

Even after receiving Defendant's first Rule 11 letter, Plaintiff has continued his abuse with a document styled as a "response to Defendant's motion for extension."  He repeats his frivolous

request for sanctions and his "right" to have counsel "properly disciplined." Dkt. 106 at 2.  He repeats his request to have counsel "prosecuted for his perjury."  *Id.*  He accuses counsel of "blackmail," *id.* at 3, and violating "the Model Rules of Professional Conduct," *id.* at 4.  He mocks counsel as "this perjurious [sic] lawyer."  *Id.* at 3.  This, too, is sanctionable.

5.   *Plaintiff's Unauthorized Supplemental Discovery Brief*

Plaintiff's latest filing on phased discovery is also sanctionable.  Dkt. 114.  He filed an unauthorized 25-page reply brief on the issue even though Judge Kolar only called for one round of simultaneous briefing.  *See* Dkt. 90.  He repeats his baseless and abusive "perjury" accusation several times.  *See, e.g.*, Dkt. 114 at 2 n.2, 4 n.3, 5, 5 n.4, 6-8, 9, 10, 15, 16.  He misrepresents Defendant's Rule 26(a)(1) disclosures by falsely stating that Defendant intends to call Seventh Circuit judges as witnesses – and has repeated that claim dozens of times on X.  *Id.* at 14-15; Ellis Decl., Ex. J.[8]  He repeats his lie about not knowing Defendant had a "confirmed" Alzheimer's diagnosis.  *Id.* at 8.  He spends eight pages attacking Judge Kolar and demanding that he withdraw his nomination to the Court of Appeals.  *See* Dkt. 114 at 18-25.  And he repeatedly attacks Defendant's counsel by name.  *See, e.g., id.* at 14-16.  This, too, merits sanctions.[9]

**D.   Plaintiff's Abusive Litigation Tactics**

Plaintiff has long been on notice that his disrespectful, abusive, and hostile conduct may "result in the imposition of sanctions."  *Vukadinovich v. Griffith Pub. Schs.*, No. 2:02-cv-472, 2008

---

[8] In fact, Defendant stated in his disclosures:  "All potential judicial witnesses . . . are listed solely out of necessity and an abundance of caution . . . .  [A]ny issues in remaining discovery, such as Defendant's capacity defense, can and should be adjudicated without testimony or documents from these judicial witnesses."  Ellis Decl. ¶ 38.

[9] While Defendant has not served Plaintiff with a Rule 11 letter for this filing, no letter is needed.  The Seventh Circuit has excused the safe-harbor requirement where "there was substantial compliance [or] where it was impossible to comply."  *United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015).  Defendant has substantially complied by serving Plaintiff with two Rule 11 letters addressing this same misconduct, as well as multiple warnings in emails and public filings.  There is little point to making counsel pile on a new Rule 11 letter for every filing.  Regardless, if Rule 11 does not apply, the Court should invoke its inherent power.  *See* pp. 21-23, *infra*.

20

WL 5191451, at *3 (N.D. Ind. Dec. 10, 2008). Yet he has carried on making "unwarranted vitriolic allegations" for years. *Vukadinovich v. Hanover Cmty. Sch. Corp.*, No. 2:13-cv-144, 2017 WL 242985, at *3 (N.D. Ind. Jan. 20, 2017).

This case is no different. The docket overflows with Plaintiff's vitriol against the Court, Defendant, third parties, and counsel. *See* Ellis Decl., Ex. E (listing hundreds of examples). For example, in two briefs on the scope of discovery, Plaintiff suggested Judge Kolar lied to Congress, accused Judge Kolar of violating his judicial oath, and demanded that Judge Kolar withdraw his nomination to the Seventh Circuit, *see, e.g.*, Dkt. 101 at 17 n.10, 19; Dkt. 114 at 18-25; Ellis Decl., Ex. G (example posts). In motion to dismiss briefing, he threatened a "firestorm," Dkt. 36 at 3, and "uproar" if the Court rules against him, Dkt. 47 at 4. And he has accused counsel of fraud and perjury hundreds of times without any evidence, *see* pp. 9-11, *supra*; Ellis Decl., Ex. E (listing examples), and called for counsel to be prosecuted, *e.g.*, Dkt. 94 ¶ 9.

Pending filings with abusive language include the sanctions motion (Dkts. 94, 95), the objections to Judge Kolar's ruling (Dkt. 96), the motion to stay (Dkt. 100), and Plaintiff's unauthorized reply brief on phased discovery (Dkt. 114). However, Plaintiff's pattern of personal attacks throughout this case warrants sanctions. *See Ladien v. Astrachan*, 128 F.3d 1051, 1057 (7th Cir. 1997) (describing how the cumulative effect of misconduct can justify sanctions); *Sassower v. Field*, 973 F.2d 75, 78 (2d Cir. 1992) (affirming sanctions award for " 'continual personal attacks on the opposing parties and counsel' ").

## II.    PLAINTIFF'S MISCONDUCT ALSO WARRANTS SANCTIONS UNDER THE COURT'S INHERENT POWER

In addition to Rule 11, district courts have "inherent power to sanction a party who 'has willfully abused the judicial process or otherwise conducted litigation in bad faith.' " *Secrease*, 800 F.3d at 401; *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991). Notably, the Court may

use its inherent powers even if Rule 11 covers the same conduct.  *Chambers*, 501 U.S. at 49. However, before using their inherent powers, courts should explain why Rule 11 was not sufficient for their purposes.  *United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015).

If the Court finds that Rule 11 does not reach any of Plaintiff's misconduct, it should invoke its inherent powers to impose sanctions.  Two categories of filings particularly warrant sanctions under the inherent power.  *First*, the Court should use that power to reach Plaintiff's sanctionable filings made after Defendant served his Rule 11 letters – specifically, his unauthorized and frivolous reply brief on the phased-discovery issue, Dkt. 123, his reply in support of his motion for sanctions, Dkt. 122, and any further frivolous filings Plaintiff makes before the disposition of this motion.  There is ample evidence that Plaintiff made these filings in bad faith, given his past litigation abuses, his disregard of multiple warnings in this case, and his public statements about his desire to intimidate and harass Defendant.  *See* pp. 5-7, 9-12, *supra.*

*Second*, the Court should use its inherent powers to punish Plaintiff for sanctionable filings that are no longer pending, including his frivolous motion to strike Defendant's answer.  Dkt. 115. While Plaintiff withdrew that motion, he should not escape accountability for it.  Plaintiff's motion repeated the lie about the Alzheimer's diagnosis, Dkt. 80 at 5; it ignored that Defendant's answer was timely, *id.* at 2; and it tried to strike Defendant's affirmative defenses for lack of "evidence," even though Defendant "need not 'provide a factual basis to assert an affirmative defense,'" *Eastgate Invs. I, LLC v. MW Builders, Inc.*, No. 2:19-cv-304, 2020 WL 1887936, at *2 (N.D. Ind. Apr. 15, 2020) (Kolar, J.).  He has made clear on a podcast that he did this in bad faith by reading Defendant's answer and mocking counsel for getting their "hind ends beat."  *Brian Vukadinovich: No Where for Redress, There Should Be Grand Juries and Raised by These Wolves*, YouTube at 6:30-7:00 http://tinyurl.com/k8b8d9j3 (Oct. 15, 2023).  Plaintiff then persisted in this frivolous

motion after repeated warnings from the Court, Dkts. 81, 90, and Defendant, Ellis Decl., Ex. BB at 6-7.  He withdrew his motion only after he forced Defendant to file an opposition.  Dkt. 112. Sanctions are warranted for this conduct.

## III.   REMEDIES FOR PLAINTIFF'S MISCONDUCT

Plaintiff's conduct demands the most drastic sanctions available – dismissal with prejudice, a significant monetary sanction, and a filing bar until he pays that monetary fine.

### A.   Dismissal with Prejudice Is Warranted

Dismissal with prejudice is a standard sanction for perjury, which is "among the worst kinds of misconduct." *Rivera*, 767 F.3d at 686.[10]  While Plaintiff's lies may well constitute criminal perjury, lies short of that standard also justify dismissal – particularly where, as here, they are "intended to mislead the court." *Secrease*, 800 F.3d at 402.[11]  Plaintiff lied at least *twenty* times across *seven* different filings.  *See* pp. 1-3, *supra*.  He did so *eleven* times under penalty of perjury in *four* different filings.  *See* pp. 1-2, *supra*.  He built two of his three claims on those lies, Dkt. 30 ¶¶ 29-31, and deployed those lies to evade a statute of limitations on the other claim, Dkt. 36 at 5-6.  That "behavior is so egregious, inexcusable, and destructive that no lesser sanction than dismissal with prejudice could be adequate." *Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999).

Plaintiff's other misconduct also warrants dismissal with prejudice.  *See* pp. 5-12, *supra* (cataloging misconduct); *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018) ("repeated, frequent, willful and intentional" misconduct justifies dismissal).  Given his thirty-nine-year history of frivolous litigation, the *five* frivolous pending filings merit dismissal too.  *See* pp. 3-5,

---

[10] *See, e.g.*, *Fulks v. Watson*, 88 F.4th 1202, 1208-09 (7th Cir. 2023) (affirming dismissal with prejudice of *pro se* suit as sanction for perjury); *Martin v. Redden*, 34 F.4th 564, 566 (7th Cir. 2022) (per curiam) (same); *Goodvine*, 761 F. App'x at 599 (same); *Jackson v. Murphy*, 468 F. App'x 616, 619-20 (7th Cir. 2012) (unsigned order) (same).

[11] *E.g.*, *Hoskins*, 633 F.3d at 543 (affirming dismissal for lie on litigation history form); *Holly v. Wexford Health Servs., Inc.*, 339 F. App'x 633, 635 (7th Cir. 2009) (unsigned order) (affirming dismissal with prejudice for lie on IFP petition); *McRoyal v. Commonwealth Edison Co.*, 263 F. App'x 500, 502-03 (7th Cir. 2008) (unsigned order) (same);

*supra*; *Outley v. City of Chicago*, 648 F. Supp. 3d 996, 1016-17 (N.D. Ill. 2022) (dismissal for "history of . . . frivolous claims" in present and past cases).

### B.      A Significant Monetary Sanction Is Warranted

Dismissal with prejudice is a necessary but not a "sufficient response to [Plaintiff's] perjury." *Rivera*, 767 F.3d at 687.  This case is headed for dismissal under either the statute of limitations or the statute of frauds.  *See* Dkt. 86 at 2-3; Dkt. 108 at 2-5.  Merely "dismissing [Plaintiff's] case, given that it [is] doomed to fail on the [affirmative] defense he was trying to evade, would [be] no sanction at all." *Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022) (per curiam); *see Rivera*, 767 F.3d at 687 (similar).  Thus, dismissal would not by itself deter Plaintiff from lying in future cases.  Given Plaintiff's litigiousness over the last four decades, dismissal is also unlikely, by itself, to deter him from bringing more frivolous and abusive litigation.

Under the circumstances, Plaintiff should be required to pay a monetary penalty to the Court.  That penalty must be significant enough to deter Plaintiff and others like him from misconduct of this scale.  In addition, if Plaintiff claims that he is unable to pay an appropriate sanction, the Court should order prompt discovery into his finances.  Given Plaintiff's lies in this case, there is little reason to take any claims of indigency at face value.

### C.      A Filing Bar Is Warranted

Courts may bar litigants who abuse the judicial system from filing papers within the jurisdiction until they pay a monetary sanction.  *See Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186-87 (7th Cir. 1995).  A *Mack* bar is needed here.  Plaintiff has proved that, absent a filing bar, he will not pay.  He did not pay his first sanction without further litigation.  *See Vukadinovich v. McCarthy*, 59 F.3d 58, 60, 61-62 (7th Cir. 1995).  He did not pay his second or third monetary sanctions without further litigation either.  *See* Ellis Decl., Ex. K at 6; *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 77 F. App'x at 385.  That is why the Seventh Circuit imposed a

*Mack* bar on him years ago.  *See id.*  Another bar is necessary both to ensure that he pays the monetary sanction and to protect the judicial system from his abuses.  *Id.*; *see Martin*, 34 F.4th at 569 ("history of litigation misconduct" favors filing bar).

### D.    There Is No Adequate Alternative Sanction

Because "the circumstances justify imposition of the ultimate penalty – dismissal with prejudice" – the "appropriateness of lesser sanctions need not be explored."  *Fuery*, 900 F.3d at 464.  In any event, there is no alternative in the face of Plaintiff's pervasive abuse of the judicial system.  *See Rivera*, 767 F.3d at 686-87.  A warning would be woefully inadequate.  "[N]o one needs to be warned not to lie to the judiciary."  *Ayoubi v. Dart*, 640 F. App'x 524, 529 (7th Cir. 2016) (unsigned order).   Plus, courts have already warned Plaintiff about his conduct. *Vukadinovich v. Griffith Pub. Schs.*, 2008 WL 5191451, at *3.  Warnings have not worked.

Monetary sanctions alone have not worked, either.   Courts have imposed monetary sanctions of $871, $2,000, and $6,000 on Plaintiff.  *Vukadinovich v. McCarthy*, 901 F.2d at 1445; Ellis Decl., Ex. K at 5; *id.*, Ex. N at Dkt. 93.  But he continued his "spurious" filings filled with "vitriolic allegations" in past cases, *Vukadinovich v. Hanover Cmty. Sch. Corp.*, 2017 WL 242985, at *3, and the misconduct has escalated in this case, *see* pp. 6-12, *supra*.  While Defendant does not ask for dismissal or a filing bar lightly, only the most severe sanctions will stop Plaintiff.

## CONCLUSION

The Court should dismiss Plaintiff's complaint with prejudice, order him to pay a monetary sanction to the Court, and bar him from filing papers in this District until he pays that amount.

New York, New York
February 16, 2024

/s/ Justin M. Ellis

Steven F. Molo (admitted *pro hac vice*)
Kenneth E. Notter III (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL  60654
(312) 450-6700
smolo@mololamken.com
knotter@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY  10016
(212) 607-8160
jellis@mololamken.com

David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Drive, Suite 100
Hammond, IN  46323
dbeach@eichhorn-law.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on February 16, 2024, the foregoing was electronically filed with the Clerk of the Court via CM/ECF and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on *pro se* Plaintiff Brian Vukadinovich per his agreement to receive such papers via email.


/s/ Justin M. Ellis
Justin M. Ellis