IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

-FILED-

MAR 06 2024

At_____M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

BRIAN VUKADINOVICH,              )
                                 )
            Plaintiff,           )
                                 )
      v.                         )        CASE NO. 2:22-CV-0118-TLS-JEM
                                 )
                                 )
RICHARD A. POSNER,               )
                                 )
            Defendant.           )

**MEMORANDUM RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR RULE 11 SANCTIONS AGAINST PLAINTIFF**

Plaintiff, Brian Vukadinovich, pro se, submits this memorandum response in

opposition to Defendant's motion for Rule 11 sanctions against Plaintiff as Defendant's

motion has no merit and should be summarily overruled and denied.

**I. DEFENDANT'S MOTION FOR SANCTIONS AGAINST PLAINTIFF
IS A PRETEXT FOR HIS LAWYERS' RETALIATORY CONDUCT
AGAINST PLAINTIFF FOR FILING A MOTION FOR SANCTIONS
AGAINST JUSTIN M. ELLIS FOR HIS CRIME OF PERJURY**

**A. Defendant Seeks to Punish Plaintiff for His
Exercise of His First Amendment Rights**

Defendant has loaded up a basket of rotten eggs in repeatedly trying to make hay

out of Defendant's alleged Alzheimer's, something that there is absolutely no evidence of

anywhere in this litigation, other than self serving statements by lawyers and even a

confederate lawyer, Sakina Carbide, recently recruited by Defendant's lawyers to aid and

abet Defendant's and his lawyers repeated fraudulent statements and repeated fraudulent

1

arguments in this litigation.[1]

The theme of Defendant's motion is many, one theme is (unproven) Alzheimer's,

another theme is attacking Plaintiff's Pro Se history[2] and another theme is attacking

Plaintiff's free speech rights by criticizing Plaintiff for writing books,[3] for writing blog

---

[1] Sakina Carbide is a Chicago lawyer recruited by Defendant's lawyers to submit an affidavit to support Defendant's lies and fraudulent arguments in this litigation. Unfortunately for Defendant and his lawyers, Carbide's submitted lies within this litigation entitles her to serial liar category since an Illinois trial court and Illinois court of appeals previously determined that Carbide's affidavit and testimony is unworthy of belief In re Marriage of Nimisha R. Christian, Petitioner-Appellee, and Roosevelt Christian, Respondent-Appellee (Sakina Carbide, Appellant), No. 1-18-0418, the Illinois Court of Appeals, in addressing Sakina Carbide's credibility wrote **'Carbide's reliance on her own affidavit, attesting to her own "interpretation of the evidence and memory as to what happened," is not well taken.'** https://casetext.com/case/in-re-marriage-of-christian-1. [emphasis added]. This was a case where Carbide tried to fleece a person to the tune of $1777,250 at a rate of $400 an hour. After an evidentiary hearing, the Illinois trial court concluded that Carbide's affidavit and testimony were unworthy and the court ruled that Carbide should receive no money from her claims after hearing and considering her testimony. It should be noted that Carbide's lies via the so called "Declaration of Sakina Carbide" was signed on December 31, 2023 just four days after Plaintiff filed his motion for sanctions for perjury on December 27, 2023, as to the crime of perjury committed by Defendant's attorney, Justin M. Ellis. (Docket #94). To say that Sakina Carbide and Justin M. Ellis were in cahoots with this would be an understatement.

[2] Defendant tries to make hay out of Plaintiff pro se case *Vukadinovich v. Griffith Public Schools*, et al., No. 2:02-cv-472 (N.D. Ind. 2008) and Vukadinovich v. Hanover Community School Corporation, No. 2:13-cv-144), but what Defendant does not state is that Plaintiff ultimately prevailed in both of these cases, in *Vukadinovich v. Griffith*, the Defendants paid Plaintiff the sum of $100,000 after Plaintiff submitted damning evidence of discrimination, in *Vukadinovich v. Hanover Community School Corporation*, Plaintiff represented himself in a five day jury trial in March 2016 and Plaintiff prevailed there as well as the jury awarded Plaintiff the sum of $203,840.39. https://casetext.com/case/vukadinovich-v-hanover-cmty-sch-corp-3, https://www.chicagotribune.com/2016/03/31/no-attorney-no-problem-wheatfield-man-wins-suit-against-hanover-schools/, Pro Se Litigant Brian Vukadinovich Wins in Federal Court, https://vimeo.com/268683488.

[3] In item no. 8 to "Index of Exhibits to Defendant's Motion for Sanctions" Defendant states "Exhibit H to the Ellis Declaration is a collection of exemplary posts on X in which Plaintiff publicizes his book titled Rogues in Black Robes or related interviews. (Docket # 129-1, page 2). In the "Declaration of Justin M. Ellis in Support of Defendant's Motion for Sanctions", Ellis states at item no. 9 "Attached as Exhibit H to this Declaration are true and accurate copies of exemplary posts on X in which Plaintiff publicizes his book *Rogues in Black Robes* or related interviews." (Docket #129-2, page 2).

posts, for posting on X (formerly Twitter), and for offering paid speeches on litigation issues. (Docket #86, page 6). Defendant has critically stated in this litigation "Plaintiff has posted hundreds of times on social media about this case." (Docket #117-2, page 3). Defendant has filed screenshots of 212 postings of Plaintiff's postings on X (formerly Twitter). (Docket #117-5, pages 2-213).

It couldn't be more apparent that Defendant's motion for sanctions against Plaintiff is a pretext as the motion is predicated in large part because of Plaintiff's exercise of his First Amendment rights to free speech. It couldn't be more apparent because Defendant and his attorneys have expressly shown their disdain for Plaintiff's exercising his First Amendment rights directly in the materials in support of their motion. This demonstrates that Defendant's motion was brought for the ulterior motive of punishing Plaintiff for exercising his First Amendment rights, whether his speech be about his books or his interviews even about this case, and for this, this Court should be very concerned and should deny Defendant's motions for sanctions against Plaintiff as Defendant's actions are a clear abuse of Rule 11. The Supreme Court of the United States has made it crystal clear that truthful reports of public judicial proceedings have been afforded special protection against subsequent punishment. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) see *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 420 U.S. 492-493 (1975) see also *Craig v. Harney*, 331 U.S. 367, 331 U.S. 374 (1947). The Supreme Court made clear "With respect to judicial proceedings, in particular, the function of the press serves to guarantee the fairness of trials and to bring to bear the

3

beneficial effects of public scrutiny upon the administration of justice." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), see *Sheppard v. Maxwell*, 384 U.S. 333, 384, U.S. 350 (1966).[4]

### B.  Defendant's Motion for Sanctions Against Plaintiff is a Retaliatory Act Because of Plaintiff's Motion for Sanctions Against Justin M. Ellis for His Crime of Perjury Under 18 U.S.C. § 1621

It couldn't be more apparent that Defendant's motion for sanctions against Plaintiff is a pretext for his actual reason of Plaintiff's taking Defendant's attorney, Justin M. Ellis, to task for his crime of perjury for lying on an affidavit under penalty of perjury falsely stating that "**Plaintiff's last email to Defendant was on May 21, 2019, two months before his job supposedly ended. Ellis Decl. ¶¶ 5-6.**" (Docket # 86, page 3). [emphasis added].    Plaintiff demonstrated to this Court that Justin M. Ellis' statement was a lie when Plaintiff submitted to this Court at the December 14, 2023 Preliminary Pretrial Conference a copy of an email that Plaintiff sent to Defendant on November 11,

---

[4] Defendant and his lawyers throughout their memorandum of law in support of their infected motion for sanctions criticize Plaintiff for his First Amendment activities.  For example, at page 4 of Defendant's memorandum of law Defendant states 'On his website, he holds himself out as "the leading *pro se* litigant in the country" and the "foremost expert in the country in the art of *pro se* litigation." *About Brian*, https://bit.ly/4b3tCW4. He touts that "expertise" to sell books, make paid speaking appearances, and publicize his decades-long campaign against the federal judiciary. *See, e.g. id.* (linking to Amazon): https://bit.ly/47sABVS (offering paid speeches). Defendant even wrote the foreword to Plaintiff's first book *Motion for Justice: I Rest My Case*. (See attached Plaintiff's Exhibit 1).  Citing this information in a Rule 11 matter is clear evidence of Defendant's abuse of Rule 11 showing Defendant's ulterior motive in wrongfully attempting to punish Plaintiff by using the pretext of the Alzheimer's situation as a pretextual basis.  Rule 11 cannot be applied against a plaintiff for having a website, for selling books or for making paid speaking appearances.  Defendant's abuse of Rule 11 and his ulterior motive couldn't be more obvious.

2020, requesting payment for his services of which email demonstrated Defendant's misrepresentation to this Court.[5]

And then two just two weeks later after Plaintiff submitted tangible evidence to this Court of Justin M. Ellis' lie, Justin M. Ellis sent a letter to Plaintiff threatening that if Plaintiff did not "promptly" withdraw the motion for sanctions against Justin M. Ellis that "Defendant will move for the Court to impose all available sanctions under Rule 11 and the Court's inherent authority — including monetary sanctions, and award of all available costs under the relevant rules and statutes, an order entering judgment against you, and an order barring you from filing further litigation." (Docket #131-1, page 9).[6]

It is very obvious that Justin M. Ellis is abusing Rule 11 in order to wrongfully punish Plaintiff for exercising his entitled rights in this litigation.  Plaintiff submitted tangible evidence to this Court that the statement by Justin M. Ellis as submitted to this Court under penalty of perjury stating "Plaintiff's last email to Defendant was on May 21, 2019, two months before his job supposedly ended. Ellis Decl. ¶¶ 5-6." Was in fact a **FALSE** statement.  It is more than obvious that the threat Justin M. Ellis made to

---

[5] The November 11, 2020 email was admitted as Exhibits A and A-1. (Docket #90).  In desperation Justin M. Ellis tries to downplay the email by ridiculously questioning its "authenticity", but yet Ellis has not questioned a single other emails authenticity, the only email he questions is the one that proves his crime of perjury.

[6] Justin M. Ellis sent yet another threatening letter to Plaintiff on January 3, 2024, wherein he stated his discomfort with his perjury and again threatened that "Defendant will move for the Court to impose all available sanctions under Rule 11 and the Court's inherent authority — including monetary sanctions, and award of all available costs under the relevant rules and statutes, an order entering judgment against you, and an order barring you from filing further litigation."

Plaintiff two weeks after Plaintiff submitted tangible evidence of Just M. Ellis' crime of

perjury was indeed retaliation against Plaintiff for taking formal action against Justin M.

Ellis for his crime of perjury. In addition to being a federal crime under 18 U.S.C. § 1621,

Justin M. Ellis' perjury was also a violation of the Model Rules of Professional Conduct

of the American Bar Association and also Rule 11 of the Federal Rules of Civil

Procedure, and his conduct of retaliating against Plaintiff with a motion for sanctions

against Plaintiff is an additional violation of the Model Rules of Professional Conduct.

Preamble [3] the Model Rules of Professional Conduct of the American Bar Association

states in relevant part "…a lawyer who commits fraud in the conduct of a business is

subject to discipline for engaging in conduct involving dishonesty, fraud, deceit or

misrepresentation." Preamble [5] states in relevant part "…**A lawyer should use the

law's procedures only for legitimate purposes and not to harass or intimidate

others…**" [emphasis added]. Rules 8.4(b)(c)(d) of the Model Rules of Professional

Conduct of the American Bar Association respectively state that it is professional

misconduct for a lawyer to: (b) commit a criminal act that reflects adversely on the

lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; (c) engage in

conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct

that is prejudicial to the administration of justice. Rule 11 of the Federal Rules of Civil

Procedure provides that if an attorney files pleadings that are not reasonably based on the

law or in fact, or **that are meant to harass**, then "the court upon motion or upon its own

initiative, *shall* impose . . . an appropriate sanction." Fed.R.Civ.P. 11. (emphasis

added); *see Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1130, (5th Cir.

6

1987). If the district court concludes that the motion, pleading, or other document was not well-grounded in fact or warranted by the existing law, or **was meant to harass**, then the court must impose a sanction. *See, e.g., Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d. 1073, 1082 (7th Cir. 1987); *Thomas v. Capital Security Services, Inc.,* 812 F.2d 984, 989 , (5th Cir. 1987); *Shrock v. Altru Nurses Registry,* 810 F.2d 658, 661 (7th Cir. 1987); *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540, (9th Cir. 1986) (*citing Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254, n. 7 (2d Cir. 1985)); *cf. In re TCI Ltd.,* 769 F.2d 441, 446, (7th Cir. 1985)).

Defendant and Justin M. Ellis hardly have standing to whip up a bunch of creative lies and fraudulent representations and fraudulent arguments in order to wrongfully sanction Plaintiff because Plaintiff is exercising his fundamental rights to obtain justice in this litigation, and because Plaintiff provided this Court with tangible evidence of Justin M. Ellis' crime of perjury. It is actually the Defendant and his attorneys, and certainly Justin M. Ellis, who should be sanctioned for their tactics of threatening Plaintiff and attempting to coerce Plaintiff into withdrawing the motion for sanctions against Justin M. Ellis for his perjury while using [abusing] Rule 11. Abuse of process occurs when a person "uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed. *Brownswell v. Klawitter,* 306 N.W.2d 41, 44 (Wis 1981) (quoting Restatement (Second) of Torts § 682 (ALI 1977). This is exactly what happened here as Defendant's action clearly has an ulterior motive in suppressing Plaintiff's free speech rights and ulterior motive of suppressing Plaintiff's

7

constitutionally protected right to seek remedy for damages from Defendant's breach of the contract.[7]

## II. THE MOTION FOR SANCTIONS IS A PRETEXT FOR COVER FOR DEFENDANT'S DOCUMENTED LIES AND MISREPRESENTATIONS IN THIS LITIGATION AS ADDRESSED BY PLAINTIFF

### A.  The Issue of Unconfirmed Alleged Alzheimer's

Defendant and his lawyers have a very distasteful appetite for inappropriately calling Plaintiff a "liar" in trying to create a self serving and false scenario that Plaintiff somehow "knew" that Defendant had Alzheimer's when in fact because there has never been any verifiable evidence whatsoever shown to Plaintiff that Defendant at the time of any of Plaintiff's statements had Alzheimer's.  (See Affidavit of Brian Vukadinovich contemporaneously filed with this memorandum response).  Defendant's and his lawyers' fraudulent arguments in support of their infected Rule 11 motion for sanctions are so telling that Defendant and his lawyers have just recently taken issue with the statement made by Defendant's own family lawyer who in fact stated to Plaintiff in a letter dated February 28, 2022, "What you clearly do not know is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's Disease." and further stated "As to the substance of your claim, we believe that medical evidence will show that the Judge did not have the legal capacity to enter into contracts in

---

[7] The Notes of Advisory Committee on Rules — 1993 Amendment makes clear that Rule 11 motions should not be prepared to "emphasize the merits of a party's position" or "to intimidate an adversary into withdrawing contentions that are fairly debatable,".  The Notes of Advisory Committee on Rules — 1993 Amendment further guides that "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions."  This Court should strongly consider sanctioning the Defendant and his attorneys for this vexatious conduct.

2018." (Docket #30, Exhibit 2). Because this very telling statement shuts the door on Defendant's and his lawyers' desperate attempt to label Plaintiff as lying as to what he knew about Defendant's alleged Alzheimer's in order to advance their infected motion for Rule 11 sanctions, Defendant and his lawyers now pitifully argue that "Plaintiff's reliance on a 2022 quote from Defendant's family lawyer, who did not know the parties' history, Obj.9, is misleading." (Docket #118, page 9). This Court should not take well to such skullduggery.

The statements by Plaintiff that are being referred to by Defendant regarding Alzheimer's were made in the context that Plaintiff was not aware of any confirmed evidence of Defendant's alleged Alzheimer's, something that even Defendant's family attorney, Robert W. Kaufman, explicitly acknowledged to Plaintiff in a letter dated February 28, 2022, that Plaintiff never knew of any "confirmed diagnosis" of Alzheimer's Disease upon the Defendant when attorney Robert W. Kaufman explicitly stated to Plaintiff "**What you clearly do not know is that, soon after your conversations with Judge Posner in early 2018, he received a confirmed diagnosis of Alzheimer's Disease**", (Docket #30, Exhibit 2). It is interesting that when the Defendant's own lawyer, his previous lawyer, documented the fact that Plaintiff "clearly" did not know of Defendant's "confirmed" diagnosis of Alzheimer's, that now suddenly Defendant's current lawyers pathetically attempt to argue that Defendant's family lawyer, who the family retained to respond to Plaintiff, did not know his client's "history". What we have here now is Defendant's previous attorney saying one thing, and Defendant's

current attorneys saying quite another.  Defendant's argument has zero credibility.  After all, if Defendant's own family attorney doesn't know the facts of Defendant's Alzheimer's, then how could Plaintiff be expected to know it under the circumstances of so much mixed information on the issue?[8]

In Defendant's obvious attempt to deflect attention away from Justin M. Ellis' crime of perjury in this litigation.  It does not take a rocket scientist to figure out that Justin M. Ellis, through desperation, is trying to make hay out of the issue of when Plaintiff actually knew about the alleged disease.  However, when Plaintiff actually knew about the alleged disease is not even relevant to the issues of this litigation.  The legal issue isn't when Plaintiff actually knew about the alleged disease, the legal issue is the Defendant's action of breaching the contract.[9]  It should be noted that at no time, prior to or during this litigation has Defendant provided Plaintiff with any evidence of confirmed Alzheimer's.[10]

---

[8] It should be further noted that Defendant's wife, stated in a May 8, 2022 email to Plaintiff in referring to Defendant's health issues "I am very sorry that you have found yourself in this unpleasant situation." and further stated **"I am really sorry that you were so misled."** (Docket #30, Exhibit 3).  Thus, it is more than clear that Plaintiff never knew that there was a confirmation of alleged Alzheimer's; Defendant's own lawyer, Robert W. Kaufman explicitly stated so, and Defendant's wife verified that Plaintiff was "so misled" about it.

[9] In *Market Street Associates Limited Partnership v. Frey*, 941 F.2d 588 (7th Cir. 1991), a contract case, The Seventh Circuit ultimately ruled "To decide what Orenstein believed, a trial is necessary.  The author of that opinion was Richard A. Posner.  In light of the case law from Defendant Posner's own precedential ruling, so too is "a trial necessary here" in this contract case.  Since the Defendant, Richard A. Posner, wrote the opinion in *Market Street Associate, Id.*, he should certainly have no quarrel with this Court doing exactly what he said should be done in his ruling in *Market Street, Id.*

[10] The letter by Defendant's prior attorney, Robert W. Kaufman, stated "As to the substance of your claim, we believe that medical evidence will show that the Judge did not have the legal capacity to enter into contracts in 2018." To date Defendant has failed to produce any evidence

## III. **DEFENDANT'S RECRUITMENT OF SAKINA CARBIDE**

### A. **Carbide's Credibility Has Already Been Determined by the Illinois Courts to Be Virtually Nonexistent**

In desperately attempting to portray Plaintiff as a liar, when all else failed, Defendant and his lawyers went for bust and recruited a confederate, Sakina Carbide, to provide them with an affidavit of lies within which to assist them with their skullduggery. The affidavit styled as "Declaration of Sakina Carbide" was filed in this Court by Defendant on February 16, 2024. (Docket #131-90). The confederate, Sakina Carbide, who is no stranger to providing false information in a legal proceeding, came through in signing an affidavit for Defendant and his lawyers replete with lies, but unfortunately for Defendant and his lawyers, Sakina Carbide has already been deemed as a person (lawyer) lacking credibility when it comes to providing the truth on affidavits and testifying about questionable affidavit statements that she provided in a court of law. In an Opinion issued by the Illinois Court of Appeals on May 20, 2020, In re Marriage of Nimisha R. Christian, Petitioner-Appellee, and Roosevelt Christian, Respondent-Appellee (Sakina Carbide, Appellant), No. 1-18-0418, the Illinois Court of Appeals, in addressing Sakina Carbide's credibility as to her own affidavit wrote 'Carbide's reliance on her own affidavit, attesting to her own "interpretation of the evidence and memory as to what happened," **is not well taken.'** https://casetext.com/case/in-re-marriage-of-christian-1.

---

whatsoever of a confirmed diagnosis of Alzheimer's, and yet Defendant's attorney tries to score points by attacking Plaintiff's knowledge of Defendant's alleged Alzheimer's while at the same time failing to provide any medical evidence of it, notwithstanding the statement by Defendant's prior attorney. Because Defendant's prior attorney stated that the "medical evidence" goes to the "substance" of Plaintiff's claim, then that "medical evidence" needs to be brought to light.

Sakina Carbide unsuccessfully sued a person who could not understand the English language well, nor able to speak fluent English, for attorney's fees of $177,250 at a rate of $400 per hour, and after an intense evidentiary hearing, her testimony and submitted affidavits was found not to be credible as the Illinois trial court and appellate court ruled against her in every way.  When Sakina Carbide was taken to task regarding time entries on her time sheet records, Carbide stated that her records are "written contemporaneously with the work," but that they are "not inputted by [Carbide]."  When confronted with this, Carbide stated that sometimes her "writing is not exactly clear" and that "it could be a mistake both by her staff and by [Carbide] in [her] review."  The list goes on to the point that the Illinois Court of Appeals wrote "Carbide claims to challenge many of the trial court's actions, however, she merely lists most of the alleged errors and fails to provide adequate argument, and/or citations to authority, in support of any of those claims."  The Illinois Court of Appeals noted that the trial court conducted an evidentiary hearing regarding an issue as to whether Carbide and petitioner had entered into a written agreement as Carbide claimed, and after the evidentiary hearing the trial court concluded "based on the credibility of the witnesses, that Carbide failed to establish the existence of such an agreement, and denied her petition for fees."[11]

When it came time to come clean as to what Carbide purported on her petition for fees, when Carbide was questioned about the fact that the petition for fees stated that petitioner had not paid anything to Carbide, when Carbide contrarily testified at the

---

[11] Plaintiff has contemporaneously filed with this response a motion and supporting memorandum of law for an evidentiary hearing as to the statements made by Sakina Carbide in her "Declaration" as filed in this litigation for Carbide to be ordered into Court to take the witness stand and answer questions under oath.

hearing that petitioner paid $3,000, Carbide stated that the "petition is incorrect as to costs and, yes, she had paid a total of $3000." When counsel further questioned Carbide about why her petition for fees requested fees in the amount of $74,400, when Carbide subsequently claimed fees based on invoices in the amount of $177,000, and when Carbide was asked how she calculated the total fees, Carbide responded that some files, including some of petitioner's records, "were stolen from her office, and that "a lot of [Carbide's] records did not exist in [Carbide's] office when [she] prepared [her] petition for attorney's fees." When Carbide was asked to explain the differences in the total listed in her fee petition and the subsequent invoice amount, Carbide stated "it could have been that I added it up wrong. When I broke it down, my math could be off, but I stand by my invoice, that that is exactly what the representation was in the case." When push came to shove and Carbide obviously realized that she was in a bad place with her lies, Carbide testified "I stand by my testimony that some of my dates might be incorrect." and further stated "if the invoicing amount is higher than the amount that I pled in my petition, I will stand by my word on the petition and I will not seek the differential in those in that mathematics because if it's my mistake, I will take responsibility for it."

Sakina Carbide did not do so well with the affidavit situation that was addressed in her losing appeal before the Illinois Court of Appeals when she attempted to remedy a portion of the missing transcripts by including a "bystander's affidavit" in which she personally swore to the content of testimony provided by one of the other witnesses who testified during the evidentiary hearing to which the Illinois Court of Appeals determined that the "bystander's affidavit" that Carbide tried to utilize was not a bystander's report as

allowed by Supreme Court Rule 352(c) was not permissible under the governing rules. The Illinois Court of Appeals wrote 'Carbide's reliance on her own affidavit, attesting to her own "interpretation of the evidence and memory as to what happened," is not well taken.'[12]  The credibility of Carbide's affidavit filed in this case by Carbide's partner in crime, Justin M. Ellis, has the same amount of integrity as the affidavit Carbide filed in the Illinois case as denounced by the Illinois courts, and the amount of integrity is ZERO! An evidentiary hearing will bear that out without question.[13]

## IV.  **DEFENDANT HAS ADMITTED THAT HE WAS A CASE FIXING JUDGE**

Defendant states 'He [Plaintiff] uses Defendant's name without permission to promote his latest book, in which he falsely accuses Defendant of confessing to "fixing" a frivolous appeal Plaintiff lost in 1995.'  (Docket #129, page 13).  In point of fact, Plaintiff did not "falsely" accuse Defendant of confessing to "fixing" an appeal, after Defendant abruptly retired from the federal judiciary as a judge on the U.S. Court of Appeals for the Seventh Circuit purportedly because of his disenchantment with the other

---

[12] When it was all said and done, in rejecting Carbide's appeal, the Illinois Court of Appeals wrote "For most of Carbide's claims of error, she merely states a legal conclusion and fails to set forth any cogent argument or legal support for her position." and put the nail in the coffin of her appeal by stating "Carbide offers no evidence in support of her allegations, and nothing in the record supports her claim that the trial judge inappropriately "spoke off the record," "threatened" or "misled" Carbide, attempted to prevent Carbide's appeal, or otherwise was biased against her." In other words, the Illinois Court of Appeals didn't believe a word Carbide had to say.  If this Court chooses to hold an evidentiary hearing as to Carbide's statements from her "Declaration", without doubt this Court will come to the same conclusion that the Circuit Court of Cook County and Illinois Court of Appeals came to after Carbide's submissions were scrutinized, and that conclusion will be that Carbide lied in her "Declaration".

[13] The lies within the "Declaration of Sakina Carbide" constitute a crime of perjury under 18 U.S.C. § 1621.  An evidentiary hearing will bear that out.  It is becoming very clear that a pattern is beginning to develop on Defendant's end with perjured affidavit statements.

judges on the Seventh Circuit over alleged unfairness issues against pro se litigants and after Defendant recruited Plaintiff to work for him, Defendant decided to come with Plaintiff and indeed confessed to Plaintiff that he took part in fixing a decision of an appeal in favor of Valparaiso Indiana police from a civil rights case as a favor to a brethren judge, Michael S. Kanne, who had it in for Plaintiff according to the Defendant. When Plaintiff reported to the Seventh Circuit the Defendant's confession of the case fixing that he took part in, via a judicial misconduct complaint against Michael S. Kanne, No. 07-21-90056, the chief judge of the Seventh Circuit, Diane Sykes, was so afraid of getting a confirmation from Defendant Richard A. Posner as to his case fixing activity in fixing the decision as a favor to Michael S. Kanne, that Sykes chose not to contact the Defendant Richard A. Posner for confirmation of his confession of his case fixing activity as he disclosed it to Plaintiff. The fact that Sykes chose not to obtain a confirmation or denial from the Defendant Richard A. Posner as to his case fixing activity, speaks volumes as to the cover up of it. After the Seventh Circuit decided to cover up the case fixing activities, Plaintiff submitted a petition for review to the Judicial Conference of the United States where it remains today without action and has been swept under the rug as the Judicial Conference of the United States does not want the public to know about the case fixing and is afraid to deal with the case fixing activities that Defendant Richard A. Posner took part in at the request of a favor from Michael S. Kanne. These are the facts.

**V. THE DEFENDANT RICHARD A POSNER HAS PUBLICLY PROCLAIMED THE FEDERAL JUDICIARY AS "A VERY CRAPPY JUDICIAL SYSTEM" AND HE THEREFORE HAS NO STANDING TO TAKE ISSUE WITH PLAINTIFF'S <u>PUBLIC CRITICISMS OF THE JUDICIARY</u>**

The Defendant argues that Plaintiff should be sanctioned for "waging a publicity campaign against the courts". (Docket #129, page 25). This is hypocrisy of the highest possible level in light of Defendant's own personal publicly conducted campaign against the courts such as when Defendant publicly proclaimed that "America has a "very bad" judicial system and that "we have a very crappy judicial system...that contaminates much of government." https://promarket.org/2017/03/28/richard-posner-real-corruption-ownership-congress-rich/. The Defendant has also publicly stated in an opinion piece published by Slate on June 24, 2016, "I worry that law professors are too respectful of the Supreme Court...I think the Supreme Court is at a nadir..." and further wrote "I don't think there are any real stars among them. https://slate.com/news-and-politics/2016/06/law-school-professors-need-more-practical-experience.html. The Defendant publicly proclaimed his disdain for following rules when he told the New York Times "I pay very little attention to legal rules, statutes, constitutional provisions," and "When you have a Supreme Court case or something similar, they're often extremely easy to get around." An Exit Interview With Richard Posner, Judicial Provocateur - The New York Times (nytimes.com). In another interview on March 7, 2018, with Legal Talk Network, the Defendant characterized himself as a "maverick" and publicly proclaimed his disdain for rules and tradition when he stated "Well, I am a maverick, and I don't really like rules, I don't like tradition." https://legaltalknetwork.com/podcasts/chicago-bar/2018/03/the-ill-be-dreaming-about-donkeys-edition-an-interview-with-judge-richard-posner-ret/

The Defendant has further gone on public record in stating a judicial ruling need not "be supported by 'reason'" and that most "legal technicalities" are "antiquated crap." https://lawliberty.org/features/the-mystery-of-richard-posner/. The Defendant further publicly proclaimed that he saw no value to a judge in studying the Constitution. https://slate.com/news-and-politics/2016/06/law-school-professors-need-more-practical-experience.html. The Defendant has publicly stated that he sees "Absolutely no value" in studying the Constitution.  https://www.campusreform.org/article?id=7771. A piece published by The Hill on July 11, 2016, stated that "By laying bare is contempt for the Constitution, Posner violated his oath of office and permanently stained the honor of the federal judiciary." and suggested that "Posner...quietly resign his seat to a more fitting occupant..." https://thehill.com/homenews/287228-resign-or-impeach-judge-posner-must-go/

And to put the Defendant's indifferent attitude in context with respect to his current conduct in this litigation insofar as the claim of breach of contract, the Defendant in a youtube presentation in September 2008 titled **"Let Us Never Blame a Contract Breaker"** showed his casual attitude about breach of contract at the 32:39 mark of the presentation when he stated that he doesn't want to see moral reasoning brought into contracts, and at the 49:43 mark of the presentation he stated that judges are confused by "moral language", and at the 58:57 mark of the presentation he stated **'I don't think fair, the word "fair" has any content at all."'** Fault in Contract Law: Richard Posner, "Let Us Never Blame a Contract Breaker" - YouTube.

While this Defendant conducted himself in a shameful and disgraceful manner by publicly declaring his disdain for governing rules, statutes and constitutional provisions,

17

notwithstanding his sworn oath to follow and enforce them as a judge, and while the Defendant's ethics were so unacceptable when he was a federal judge, he should hardly be criticizing Plaintiff's constitutionally entitled right to publicly criticize unfairness and corruption issues of the judiciary. To state that the Defendant's criticism within the legal brief was out of line and as hypocritical as could be would be an understatement. But that is what desperate defendants and desperate lawyers do when they have no valid legal arguments —which is exactly the case here.[14]

## VI.  EVEN UNITED STATES SUPREME COURT JUSTICE ANTONIN SCALIA CHARACTERIZED RICHARD A. POSNER AS A LIAR

While the Defendant and his lawyers are working overtime to try to wrongfully label Plaintiff as a liar, with their distasteful and false innuendos, the reality is that it is the Defendant himself, Richard A. Posner, who has been characterized as a liar by one of the most influential justices of the Supreme Court of the United States, Antonin Scalia, as Justice Scalia has publicly stated that Richard A. Posner is a liar. In responding to statements by Richard Posner in connection to his review of a book authored by Justice Scalia, Justice Scalia stated "To say that I used legislative history is simply, to put it bluntly, a lie," Scalia told Reuters. https://www.reuters.com/article/usa-court-scalia-idCNL1E8KI1RW20120918/.

It is unfortunate that the Defendant, Richard A. Posner, who after recruiting

---

[14] Raising an issue against Plaintiff's constitutionally protected right to criticize the judiciary by borders on sensationalism of which issue clearly was brought into the matter to deflect away from the frivolousness of Defendant's ill advised motion for sanctions. Someone once famously said "I don't trust the lawyers"; that someone was this very Defendant, Richard A. Posner. "The theory of our judicial system is that the lawyers pick all the witnesses and make all the arguments, and the judge is just an arbitrator, basically. I find that very unsatisfactory, because **I don't trust the lawyers**." Richard Posner: "The Real Corruption Is the Ownership of Congress by the Rich" - ProMarket.

Plaintiff to work for him and characterized Plaintiff as the "Poster Child" of the Posner

Center of Justice for Pro Se's and called Plaintiff a "star" while Plaintiff was working

hard for Plaintiff, but then after stiffing Plaintiff in failing to pay Plaintiff for his work to

the Defendant, then does a sudden about face, utilizing his lawyers, to try to wrongfully

demean Plaintiff by attempting to label him as a liar when push comes to shove in trying

to evade his financial responsibilities to Plaintiff.[15]  Justice Scalia had it right when he

characterized Defendant Richard A. Posner as a "liar" as Defendant Posner is showing

his lying stripes front and center in this litigation by way of his lawyers' distasteful

chicaneries and skullduggeries.

## VII.  EXAMPLES OF SKULLDUGGERY ISSUES BY DEFENDANT

The Defendant and his lawyers have interjected within their infected Rule 11

motion several frivolous and untrue issues which Plaintiff will briefly address that will

demonstrate to the Court just how deep down this Defendant and his lawyers will go to

win a legal point in an unjustified manner in order to obtain unjustified and unwarranted

sanctions against Plaintiff.[16]

---

[15] In Defendant Posner's 2018 book "Justice for Pro Se's" the Defendant included a section in the book titled 'Introducing the "Poster Child" of the Posner Center' where Defendant stated 'The "Poster Child" of the Posner Center is Brian Vukadinovich —a non-attorney from Indiana who has the distinction of being one of the most successful litigants in modern history.' (See attached Plaintiff's Exhibit 2).  In a November 28, 2017 email to Plaintiff, Defendant stated to Plaintiff "You're the number one star of my enterprise." (See attached Plaintiff's Exhibit 3).  Funny how Defendant had such a high opinion of Plaintiff while Plaintiff was providing services to him, but then after Defendant reneged on the contract and refused to pay Plaintiff for his services, Defendant hires a bunch of lawyers who are on a mission to wrongfully destroy Plaintiff's integrity with their demonstrated distasteful tactics in order to win legal points.

[16] Defendant's memorandum is replete with frivolous issues which Defendant simply cited without much, and in some cases, no discussion, simply for the sake of sensationalizing some

### A. Defendant's False Argument Related to Plaintiff's Successful Motion for the Clerk to Not Discriminate Against Him By Refusing to Issue Requested Subpoenas

Defendant and his lawyers apparently have no bounds when it comes to submitting false arguments to this Court. In continuing on with the ongoing skullduggeries, Defendant states to this Court "While Plaintiff's recent papers are the most egregious, Plaintiff has repeatedly filed abusive, frivolous motions since the beginning of this case. **For example, he baselessly sought an order directing the Clerk to stop "discriminating" against him. Dkt. 10**;" (Docket #129, page 17). There was nothing "baseless" about Plaintiff's motion for an order directing the Clerk to stop discriminating against him by refusing to issue requested subpoenas; the Court in fact GRANTED Plaintiff's motion on July 1, 2022 and issued an order directing the Clerk to issue the requested subpoenas to Plaintiff. (Docket #20). [17]

### VIII.   THE SO CALLED "ATTACKS" ON DEFENDANT, THIRD PARTIES, COUNSEL, AND THE COURT

Defendant very foolishly expects Plaintiff to sit back and allow his skullduggeries to take place in this litigation in order that Defendant, who proclaims himself to be a

---

things which are calculated to somehow cause the Court to have a biased view against Plaintiff and his claims in this litigation. Page limitations, make it impossible to address each and every nuance and the exorbitant number of pages of exhibits, that overload Defendant's motion.

[17] As Defendant always does when it comes to Plaintiff's discovery rights in this litigation, Defendant attempted to thwart issuance of the subpoenas to Plaintiff stating that Plaintiff's motion "may be unripe" and "…there may be no need to resolve whether Plaintiff may obtain subpoenas for use in this case." (Docket #15, page 2). But the Court did not agree and saw it in a much different way and ultimately determined that Plaintiff was indeed entitled to the requested subpoenas and GRANTED Plaintiff's motion, contrary to what Defendant has blatantly misrepresented in his current skullduggery in falsely stating to this Court that Plaintiff's motion was baseless. Such skullduggery should not be accepted and this Court should summarily

"maverick" who doesn't like "rules" or "tradition" and who doesn't think the word

"'fair" has any content at all."' can escape liability for his breach of contract with

Plaintiff by way of his and his lawyers' skullduggeries and chicanery in this case, but that

is a very misguided expectation by Defendant.[18]

### A. Plaintiff's Citing of Magistrate Judge Kolar's Testimony Before the Senate Judiciary Committee Regarding his Testimony that He Always Follows Precedent Was Appropriate Since Magistrate Judge Kolar Refused to Follow Precedent from this Division

As for Defendant's characterization that Plaintiff "attacked" Magistrate Judge

Kolar, i.e., (attacking Judge Kolar for fifteen pages) (Docket #129, page 17), Plaintiff

would not characterize his detailed criticism in citing Magistrate Judge Kolar's testimony

before the Senate Judiciary Senate Judiciary Committee nomination hearing of

September 6, 2023, where he testified that he follows "binding precedent" but yet did not

do so in this came when it came to following the binding precedent from this case from

this division as set in the decisions of *Albert's Diamond Jeweler's, Inc., v. Aaland*

*Diamond Jewelers, LLC,* Case No. 2:23-CV-39 JD (September 27, 2023) and *Kedron*

*Gaston v. Jackie C. Hazeltine,* Case No. 3:21-CV-896 JD (August 30, 2022), both of

which decisions rejected the notion of bifurcated discovery, to which Magistrate Judge

---

overrule and deny Defendant's motion for sanctions against Plaintiff.

[18] Defendant's public proclamation of being a "maverick" who doesn't like "rules" or "tradition" and who doesn't think the word "'fair" has any content at all."' May be seen at https://legaltalknetwork.com/podcasts/chicago-bar/2018/03/the-ill-be-dreaming-about-donkeys-edition-an-interview-with-judge-richard-posner-ret/. Defendant's public statement that he doesn't think the word "'fair" has any content at all."' may be seen at the 59:31 mark of the presentation. Fault in Contract Law: Richard Posner, "Let Us Never Blame a Contract Breaker" - YouTube.

Kolar ignored as an "attack" as Defendant incorrectly portrays it, but a factual statement as to Magistrate Judge Kolar's verbatim testimony. Plaintiff had every right to raise the issue of Magistrate Judge Kolar's refusal to follow the precedent from those cases especially in light of his contrary testimony to the Senate Judiciary Committee when he repeatedly testified that he follows binding precedent but would not do so in the instant case here by his refusal to follow the precedents from *Diamond Jeweler's, Inc., v. Aaland Diamond Jewelers, LLC, Id.*, and *Kedron Gaston v. Jackie C. Hazeltine, Id.*[19]

It is unfortunate that the Defendant, a former federal judge no less, has such disrespect for free speech. Plaintiff was well within his rights to point out the problems with Magistrate Judge Kolar's testimony before the Senate Judiciary Committee since it was at odds with how he conducted himself in the instant case with respect to following binding precedent. The Supreme Court of the United States has made it crystal clear that truthful reports of public judicial proceedings have been afforded special protection against subsequent punishment. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) see *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 420 U.S. 492-493 (1975) see also *Craig v. Harney*, 331 U.S. 367, 331 U.S. 374 (1947). The Supreme Court made clear "With respect to judicial proceedings, in particular, the function of the press serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the

---

[19] A verbatim listing of Magistrate Judge Kolar's testimony to the Senate Judiciary Committee that he follows binding precedent may be seen in Plaintiff's Supplemental Brief on the Bifurcation Issue, pages 8-13. (Docket #101). The various questions by the senators and Magistrate Judge Kolar's responses to the questions may be seen in the Senate Judiciary Questionnaire https://www.judiciary.senate.gov/imo/media/doc/09-06-2023_-_qfr_responses_-_kolar.pdf. The video of Magistrate Judge Kolar's testimony before the members of the Senate Judiciary Committee may be see at https://www.youtube.com/watch?v=tLtHJiw7tz0.

administration of justice." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), see

*Sheppard v. Maxwell*, 384 U.S. 333, 384, U.S. 350 (1966)

### B. Defendant Is Out of Line in Characterizing Plaintiff's Inquiry of the Court's Inordinate Time Period for Ruling as to Defendant's Motion to Dismiss as "Egregious"

Defendant writes that '...he filed a "memorandum" accusing the Court of "sitting

on the ruling on the motion to dismiss, Dkt. 47 at 4-5"'. Docket #129, page 17.

Defendant of course conveniently failed to discuss the circumstances of the motion, of

which circumstances were that at the time that Plaintiff filed his "Plaintiff's

Memorandum to Court Regarding Inordinate Time Period for Ruling" on April 19, 2023,

that in just a few days from then it was going to be eight months since Defendant filed his

motion to dismiss which was filed on August 22, 2022 (Docket #33) and that there had

been no ruling issued.[20]  As the Court is aware, on June 21, 2023 the magistrate judge

denied Defendant's motion to dismiss Counts I and II (Docket #65) to which the

Defendant objected on July 5, 2023 (Docket #65), to which Judge Springmann overruled

Defendant's objections in an order on September 25, 2023.  (Docket #74).  Defendant has

---

[20] Defendant's interjection of this issue is quite suspect in taking issue with Plaintiff's concern that there had been no ruling as to the motion to dismiss for eight months. Defendant's interjection of this issue is suspect under the circumstances because the Defendant here, Richard A. Posner, as a judge, was highly critical of a district judge who had held motions for summary judgment under advisement for **eight months** of which motions were then referred to a magistrate where they remained for another seven months to which the district judge took another four and a half months to rule.  The very Defendant here, as a judge, admonished that "There is no justification for such delay.  It is time that the district judge took firm control of this case and guided it to a swift conclusion.  The governing principles are clear,..." *Nelson, Jr. v. Streeter*, 16 F.3d 145 (7th Cir. 1994).  And yet, again in his typical hypocritical fashion, complains about things that he as a judge previously denounced.

no justification to even suggest that Plaintiff's memorandum was "egregious", let alone make such a ridiculous and frivolous argument.

### C. The Unnamed "Third Party" that Defendant Seeks to Protect is a Murderer Who Bludgeoned His Father to Death Who Purports to Be a "Close Friend" of Defendant and Defendant's Family

Defendant writes in his memorandum in support of motion for sanctions against Plaintiff "The docket overflows with Plaintiff's vitriol against the Court, Defendant, **third parties**, and counsel." [emphasis added] (Docket #129, page 28). Presumably the unnamed third party is William Bond, who according to an Opinion by the U.S. Court of Appeals for the Fourth Circuit, 317 F.3d 385 (4th Circuit 2003), is a deranged societal misfit who changed his name after beating his grandfather to death with a hammer who by *ex parte* email to this Court on April 20, 2023, purports to be a "close friend" of Defendant Posner and his wife, Charlene, and "His sons too" who according to an Opinion by the U.S. Court of Appeals for the Fourth Circuit, 317 F.3d 385 (4th Circuit 2003). A documented murderer who purports to be friends of the Defendant and his family are not deserving of any protections by this Court, irrespective of what Defendant's attorneys may complain about when it comes to Plaintiff's addressing of *ex parte* emails to this Court from a murder who purports to be a "close friend" of Defendant Posner and his family.

### IX. DEFENDANT'S MOTION IS FRIVOLOUS

Defendant well knows his arguments are frivolous. At page 22 of his motion he writes "If the Court finds that Rule 11 does not reach any of Plaintiff's misconduct, it should invoke its inherent powers to impose sanctions." In other words, Defendant wishes that

this Court will go ahead and unfairly punish Plaintiff even though Plaintiff did not commit any Rule 11 violations. Clearly, the Defendant's motion is brought in bad faith and this Court should issue an appropriate sanction against Defendant and his lawyers for such abuse of process of which abuse of process is more than evident here.

Rule 11 of the Federal Rules of Civil Procedure provides that if an attorney files pleadings that are not reasonably based on the law or in fact, or **that are meant to harass**, then "the court upon motion or upon its own initiative, *shall* impose . . . an appropriate sanction." Fed.R.Civ.P. 11. (emphasis added); *see Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1130, (5th Cir. 1987). If the district court concludes that the motion, pleading, or other document was not well-grounded in fact or warranted by the existing law, or **was meant to harass**, then the court must impose a sanction. *See, e.g., Szabo Food Service, Inc. v. Canteen Corp., Id.*; *Thomas v. Capital Security Services, Inc., Id*; *Shrock v. Altru Nurses Registry, Id*; *Golden Eagle Distrib. Corp. v. Burroughs Corp., Id*) (*citing Eastway Construction Corp. v. City of New York, Id*; *cf. In re TCI Ltd., Id.*

## X. CONCLUSION

The Court should summarily overrule and deny Defendant's motion for sanctions.

Respectfully submitted,

Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, Indiana 46392
(219) 956-2462

Foreword by Richard A. Posner,
—*Retired Judge of United States Court of Appeals for the 7th Circuit, Chicago*

"Brian. Congratulations on your victory. It's a rare one indeed. It's easy to
see how this story could become a film."
—*Scott Turow, Acclaimed author of "Presumed Innocent"*

"Brian congratulations on your victory, you have gone against the age old
saying an attorney who represents himself has a fool for a client."
—*Robert Shapiro, Member of "Dream Team" in O.J. Simpson Trial*



# MOTION for JUSTICE
## ~I REST MY CASE~

# BRIAN VUKADINOVICH

A true story about a teacher's one man fight for justice for his freedom
and for his right to work fighting and beating corporate and governmental
lawyers in court by representing himself

PLAINTIFF'S
EXHIBIT
1

PENGAD Bayonne, N.J.

PLAINTIFF'S EXHIBIT

PENGAD · Bayonne, N.J.



## Brian's Future

Brian is brilliant, but he is also colorful, as brought out in this description of his plans and opportunities by Jonathan Zell, Brian's and my colleague in the Posner Center of Justice for Pro Se's:

## Introducing the "Poster Child" of the Posner Center

The "Poster Child" of the Posner Center is Brian Vukadinovich—a non-attorney from Indiana who has the distinction of being one of the most successful pro se litigants in modern history. Brian is also one of two Executive Directors of the Posner Center (the other one being attorney Jonathan Zell).

In his earliest major pro se case, a federal case, Brian, the plaintiff, suing the public school system that had fired him, sued and in the suit defeated a team of 5 attorneys led by the "Am Law 200" law firm of Frost Brown Todd, winning a jury verdict of $203,840 that made headlines nationwide. And Brian did all of this—despite never having attended even one day of law school—by representing himself!

That, of course, is what the Posner Center of Justice for Pro Se's hopes to duplicate with hundreds, if not thousands, of other pro se litigants throughout the country. By helping deserving pro se's to represent themselves in court (the way that Brian did), we hope to make justice available for everyone—not just those who can afford expensive lawyers.

However, neither what Brian did nor what the Posner Center hopes to accomplish is easy. Besides having to convince a jury in the rightness of one's cause, pro se's also have to deal with judges who are often indifferent or hostile to them. As Brian explains:

LET'S MAKE MY COMPANY

... in my case the
way he could to
judge had alread
speaking] that I v
several very bias
important eviden
would be able to
ed, pro-governme
spread problem—

However, my fri
pointment in the
see what was goin
And, thank God,

I [Posner] agree
Many judges treat pr
the pro se's don't ever
judges, juries tend to b
up against a gaggle of

To make pro se's
Brian, can represent t
sistance, Jonathan Zel
a theatrical reenactme
around the U.S. Until
and later read about B
Motion for Justice—I Re
at https://motionforjus
Here is a brief sy

Rich in informati
Case shares Bria
intimate knowle
corruption and t

**Re: Review of Your Book**

RP

Richard Posner <rposner62@gmail.com>

To:You

Tue 11/28/2017 8:07 PM

Thanks so much, Brian!


P.S. You're the number one star of my enterprise, but I think I have a number 2. This is a woman who is not a lawyer (in this respect like you) but an extremely experienced office manager who has worked for a variety of federal and state agencies. She is very smart, very hard working, very hostile to my bete noire Chief Judge Wood before whom she a case very unfairly, and I think will be a superb office manager for our firm.

PP.S. When she was four years old, she lived on a farm in Germany with her family-- her father was in the army. There were small pigs on the farm and she liked to pinch them. They took it for a while and then got angry and chased her! They nipped at her but didn't actually bite her. There's a lesson there!


Dick



PLAINTIFF'S EXHIBIT 3

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 6, 2024, the foregoing was sent to the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division, via U.S. Postal Service and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the Defendant's below listed counsel of record per agreement to receive such papers via email.

Justin M. Ellis
jellis@mololamken.com

Steven F. Molo
smolo@mololamken.com

Kenneth Notter
knotter@mololamken.com

David Beach
dbeach@eichhorn-law.com

Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, IN 46392
Tel. (219) 956-2462