**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

BRIAN VUKADINOVICH,

                                         Plaintiff,

          v.

RICHARD A. POSNER,

                                         Defendant.

Cause No. 22 Civ. 118

Judge Theresa L. Springmann
Magistrate Judge John E. Martin

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF**

Steven F. Molo (admitted *pro hac vice*)
Kenneth E. Notter III (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL  60654
(312) 450-6700
smolo@mololamken.com
knotter@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY  10022
(212) 607-8160
jellis@mololamken.com.

David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Drive
Suite 100
Hammond, IN  46323
dbeach@eichhorn-law.com

*Attorneys for Defendant*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 1

I.      Background ............................................................................................................. 1

        A.      Plaintiff Agrees To Work Unpaid for the Posner Center ........................... 1

        B.      The Supposed Contract ............................................................................... 2

        C.      Plaintiff Learns of Defendant's Deteriorating Health Long Before
                July 2019 ..................................................................................................... 4

        D.      Plaintiff's Resignation and the Center's Closure ...................................... 5

        E.      Plaintiff Waits Until November 2020 To Demand Payment ...................... 6

II.     Procedural History ................................................................................................. 7

        A.      Plaintiff Waits Years To Sue ..................................................................... 7

        B.      Plaintiff Amends His Complaint with "New" Allegations ....................... 8

        C.      The Court Defers Decision on the Statute-of-Limitations Defense ........... 9

        D.      Nearly Five Years After the Supposed Agreement, Plaintiff Claims for the
                First Time That Payment Was Due in July 2020 ....................................... 10

ARGUMENT ................................................................................................................... 11

I.      Defendant Is Entitled to Summary Judgment Under the Statute of Frauds ....................... 12

        A.      The Alleged Oral Agreement Could Not Be Fully Performed
                Within a Year ............................................................................................. 12

        B.      No Exception to the Statute of Frauds Applies .......................................... 13

II.     Defendant Is Entitled to Summary Judgment on the Statute of Limitations ................... 14

        A.      The Contract Claim Is Untimely Because It Accrued Before May 2020 ............. 15

                1.      Plaintiff's Sworn Statements Establish the Claim Accrued
                        in July 2019 ...................................................................................... 15

                2.      At Worst, the Contract Claim Accrued Before May 2020 ........................ 16

3.      Plaintiff's Newest Assertion That Payment Was Due in July 2020 Cannot Create a Fact Dispute ................................................................... 20

B.      The Unjust-Enrichment Claim Accrued in July 2019 .......................................... 22

C.      Any Tolling or Waiver Arguments Would Fail .................................................... 22

CONCLUSION ............................................................................................................................ 24

## <u>TABLE OF AUTHORITIES</u>

Page(s)

C<small>ASES</small>

*Akin v. Simons*,
180 N.E.3d 366 (Ind. Ct. App. 2021)..............................................................................13, 14

*Auffenberg v. Bd. of Trs. of Columbus Reg'l Hosp.*,
646 N.E.2d 328 (Ind. Ct. App. 1995)...................................................................................16

*Boostrom v. Bach*,
622 N.E.2d 175 (Ind. 1993) .................................................................................................23

*Brown v. Branch*,
758 N.E.2d 48 (Ind. 2001) ...................................................................................................14

*Buckner v. Sam's Club, Inc.*,
75 F.3d 290 (7th Cir. 1996) ..................................................................................................22

*Matter of Carroll's Est.*,
436 N.E.2d 864 (Ind. Ct. App. 1982)...................................................................................22

*Clacks v. Kwik Trip, Inc.*,
108 F.4th 950 (7th Cir. 2024) ....................................................................................11, 21, 23

*Classic Cheesecake Co. v. JPMorgan Chase Bank, N.A.*,
546 F.3d 839 (7th Cir. 2008) ................................................................................................13

*Coca-Cola Co. v. Babyback's Int'l, Inc.*,
841 N.E.2d 557 (Ind. 2006) .................................................................................................13

*Community State Bank Royal Ctr. v. O'Neil*,
553 N.E.2d. 174 (Ind. Ct. App. 1990)..................................................................................20

*Costello v. Bd. of Trs. of Flavius J. Witham Mem'l Hosp.*,
No. 19-cv-2956, 2019 WL 6252258 (S.D. Ind. Nov. 22, 2019)...........................................14

*Craven v. Craven*,
181 Ind. 553 (1913)...............................................................................................................23

*Devbrow v. Gallegos*,
735 F.3d 584 (7th Cir. 2013) ...........................................................................................15, 20

*Est. of Hann v. Hann*,
614 N.E.2d 973 (Ind. Ct. App. 1993)...................................................................................22

*Gordon v. Shurpit*,
No. 23-1158, 2023 WL 7318079 (7th Cir. Nov. 7, 2023) .....................................................15

*Hadley v. DuPage County*,
 715 F.2d 1238 (7th Cir. 1983) ...................................................................20

*Haggerty v. Williams*,
 84 Conn. App. 675 (2004) ........................................................................24

*Harrison v. Thomas*,
 761 N.E.2d 816 (Ind. 2002) ......................................................................16

*Hunt v. JP Morgan Chase Bank*,
 No. 2:16-cv-459, 2019 WL 5727906 (N.D. Ind. Nov. 5, 2019) ............................11

*James v. Hale*,
 959 F.3d 307 (7th Cir. 2020) ........................................................21, 22, 23

*Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*,
 134 N.E.3d 370 (Ind. 2019) ......................................................................22

*Knapp v. Est. of Wright*,
 76 N.E.3d 900 (Ind. Ct. App. 2017)............................................................12

*Licocci v. Cardinal Assocs., Inc.*,
 492 N.E.2d 48 (Ind. Ct. App. 1986)....................................................16, 17

*Lightle v. Harcourt Mgmt. Co.*,
 634 N.E.2d 858 (Ind. Ct. App. 1994)...................................................16, 19

*Martin v. Levinson*,
 409 N.E.2d 1239 (Ind. Ct. App. 1980) ......................................................24

*Martin v. Noble County Sheriff's Dep't*,
 No. 18-cv-121, 2021 WL 26310 (N.D. Ind. Jan. 4, 2021)......................................22

*Miller v. Int'l Harvester Co.*,
 811 F.2d 1150 (7th Cir. 1987) ...................................................................24

*Needham v. Innerpac, Inc.*,
 No. 04-cv-393, 2006 WL 2710617 (N.D. Ind. Sept. 19, 2006) ............................14

*Packer v. Trs. of Ind. Univ. Sch. of Med.*,
 800 F.3d 843 (7th Cir. 2015) ....................................................................11

*Powers v. Coil Tran, LLC*,
 No. 2:23-cv-86, 2024 WL 578613 (N.D. Ind. Feb. 13, 2024)............................24

*Stocker v. Extendicare Health Servs., Inc.*,
 No. 3:16-cv-69, 2016 WL 4181279 (N.D. Ind. Aug. 8, 2016) ..............................13

*Straub v. B.M.T. by Todd*,
    645 N.E.2d 597 (Ind. 1994) .................................................................23

*Wallem v. CLS Indus. Inc.*,
    725 N.E.2d 880 (Ind. Ct. App. 2000)............................................12, 13

*Ward v. Pots*,
    91 N.E.2d 643 (Ind. 1950) .................................................................12

*Zusy v. Int'l Med. Grp., Inc.*,
    500 F. Supp. 2d 1087 (S.D. Ind. 2007) .............................................14

### STATUTES & RULES

Ind. Code § 32-21-1-1 .............................................................................8

Ind. Code § 32-21-1-1(b)(5)............................................................10, 12

Ind. Code § 34-11-2-1 ............................................................................14

Fed. R. Civ. P. 56(a) ..............................................................................11

Fed. R. Civ. P. 56(c)(2)...........................................................................11

### OTHER AUTHORITIES

1 A.L.R.2d 1445.....................................................................................24

U.S. Dep't of Labor, State Payday Requirements, https://bit.ly/4eIMvPd ...................17

4 *Williston on Contracts* § 8:49 (4th ed.) .............................................24

## INTRODUCTION

Both Indiana's statute of frauds and statute of limitations bar Plaintiff's claims for breach of a purported oral contract. The statute of frauds applies because it is undisputed that the purported agreement could not be performed within a year. And the statute of limitations bars the contract and unjust-enrichment claims because Plaintiff waited until May 2022 to sue. He waited that long even though he knew his supposed wages were due no later than July 2019, when his job ended, the Posner Center dissolved, and he last spoke with Defendant. He also knew Defendant had been diagnosed with Alzheimer's years earlier. And he knew as well that Defendant had repeatedly, and publicly, said that Plaintiff would not be paid for his services, despite the purported contract. Because no reasonable person in Plaintiff's position would have waited for payment as long as Plaintiff did, his claims are untimely under Indiana law. The Court should enter summary judgment for Defendant.

## STATEMENT OF FACTS

### I.    BACKGROUND

#### A.    Plaintiff Agrees To Work Unpaid for the Posner Center

In 2017, Plaintiff was a retired teacher in his mid-60s. SMF ¶1.[1] He was living off "a teacher's pension and Social Security," totaling a few thousand dollars per month. Ex. 1 (Pl.'s Dep.) at 11:3, 12:11-13:18; *see* SMF ¶¶60-61.[2]

Until September 2017, Plaintiff had never met Defendant. SMF ¶11. He wrote Defendant that month calling Defendant "a hypocrite and a fraud" and threatening to publicize "how corruptly and unfairly [sic] the 7th Circuit is." Ex. 3 at 3-4. Days later, Plaintiff wrote Defendant again

---

[1] Plaintiff has refused to provide any more information about his work history or educational background. Pl.'s Dep. 10:2-12, 201:14-20.

[2] All exhibit citations are to the exhibits to the Declaration of Justin M. Ellis dated October 4, 2024. Citations to page numbers are to the PDF pages, excluding the slipsheet introducing the exhibit.

unsolicited and asked him to "write a forward" for Plaintiff's book. Ex. 5 at 1. Defendant agreed. SMF ¶ 7. Plaintiff was "absolutely elated," telling Defendant "[y]ou don't know what it means." Ex. 5 at 1; *see* SMF ¶ 9.

Days later, Defendant offered Plaintiff "an advisory role" with the newly formed nonprofit Posner Center of Justice for Pro Se's. Ex. 6 at 2. Plaintiff accepted, emphasizing he "would be honored to help [Defendant] with [the] company in any way that [he] can." *Id.* Until at least February 2018, Plaintiff worked as an unpaid "volunteer[ ] helper" at the Center. Pl.'s Dep. 26:25-27:4; *see* SMF ¶¶ 10-14.

### B.    The Supposed Contract

In an email on February 25, 2018, Defendant "suggest[ed] a new role for [Plaintiff ]" at the Center. Dkt. 30-1, Ex. 1 at 2.[3] In that role – which Plaintiff describes as "executive director" – Plaintiff would help Defendant "keep tabs" on the Center's operations. Dkt. 30 (Am. Compl.) ¶ 5. Defendant suggested that Plaintiff could eventually "receive a substantial salary," though Defendant could not "specify salary yet because the company ha[d] as yet no money." Dkt. 30-1, Ex. 1 at 1. Defendant "hope[d]" the Center could someday "raise more than $1 million through donations." *Id.* at 2. If so, the Center "should be able to pay [Defendant] at least $80,000." *Id.* at 1. Plaintiff responded that "[i]t would be an honor" to take on that new role. *Id.*; *see* SMF ¶¶ 15-19.

About three weeks later, on March 19, Defendant met Plaintiff and Sakina Carbide (another Center volunteer) for lunch in Chicago. SMF ¶¶ 23-26. At that lunch, Plaintiff claims he and Defendant "orally amended" the February 25 agreement to pay Plaintiff "$120,000 per year" as the Center's executive director. Am. Compl. ¶¶ 7, 10. Plaintiff would also supposedly provide

---

[3] Plaintiff's filings at the following docket entries were all sworn under penalty of perjury and are therefore admissible evidence at summary judgment: Dkt. 1 (verified complaint); Am. Compl. (same); Dkt. 30-1 (exhibits incorporated into verified complaint); Dkt. 36 (sworn filing); Dkt. 37 (affidavit); Dkt. 61-2 (verified proposed complaint); Dkt. 141 (affidavit).

new "advisory services" to Defendant personally. *Id.* ¶ 9.[4]  Under that alleged amended agreement, Plaintiff would be paid "after a year of service ha[d] been provided." Dkt. 1 ¶ 7.  Alternatively, Plaintiff "would have to wait at least a year before [Defendant] could pay [Plaintiff's] compensation." Dkt. 37 ¶ 7.  Defendant would supposedly pay that compensation using "personal investments [that] were tied up for an extended period." Am. Compl. ¶ 12.  According to Plaintiff, Defendant could not pay "for at least a year," and that agreement "was never amended, changed, rescinded, or otherwise modified after March 19, 2018." Ex. 35 at 7, 5.[5]

Hours after the meeting, Plaintiff emailed Defendant thanking him without mentioning any oral agreement.  SMF ¶¶ 27-29.  Nor did Defendant's response mention any contract.  SMF ¶¶ 27-29.  Instead, a week later on March 25, the Center issued a press release announcing the Center was "Open for Business." Ex. 14 at 1; SMF ¶¶ 30-31.  The press release stated that "none of the Center's representatives is paid (although that may change)." Ex. 14 at 3; SMF ¶ 31.  Plaintiff read the press release.  SMF ¶ 32.  He also received a legal publication repeating the press release's statement that "[a]ll staff are currently unpaid." Ex. 15 at 2; SMF ¶ 34.

On March 26, Defendant emailed Plaintiff offering (again) to name Plaintiff "the Executive Director of the Posner Center." Ex. 16 at 2.  "Because the company ha[d] almost no money," Defendant wrote, Plaintiff would not receive "a salary immediately." *Id.*  But Defendant hoped the Center would receive "significant donations" in the future that, if received, could be used to

---

[4] Ms. Carbide swears none of this occurred at the March 19 lunch she attended, and that she was at the entire lunch other than a five-minute bathroom break. Dkt. 131-9. That is consistent with multiple emails from both Defendant and Plaintiff confirming that they would all arrive at the lunch at 1:00 p.m. SMF ¶¶ 23-26; Ex. 10 at 1; Ex. 11 at 1-2; Ex. 12 at 1. However, Plaintiff claimed for the first time at his deposition that Defendant called him the night before and told him to arrive separately around 12:15, and that the alleged contract took place before Ms. Carbide arrived at 1:00 p.m. Pl.'s Dep. 40:10-41:22, 44:5-45:18.

[5] The post-meeting email exchange also did not suggest Ms. Carbide was absent from any part of the meeting. SMF ¶¶ 27-29; Ex. 13 at 1.

pay Plaintiff. *Id.* In response, Plaintiff did not remind Defendant that – just days before – Plaintiff had already (supposedly) accepted that role at a six-figure salary. SMF ¶¶ 37-38. Rather, he accepted this (new) offer, despite no promise of pay. SMF ¶¶ 36-38. Plaintiff never mentioned providing services to Defendant personally. SMF ¶¶ 37-38.

A copy of the Center handbook reiterated that Center "representatives" were unpaid. Ex. 17 at 15. Defendant wrote: "I do not at present pay my representatives . . . partly for lack of money (the Center has none as yet) and partly because I view their efforts to help pro se's as pro bono service – service for the sake of the good rather than for the sake of compensation." *Id.* Defendant also wrote that Plaintiff would be "monitoring the activities" of other Center staff – "again without compensation, at least for the present." *Id.* Plaintiff received a copy of that handbook in June 2018 and read it. SMF ¶¶ 39-43.

### C. Plaintiff Learns of Defendant's Deteriorating Health Long Before July 2019

Even before the alleged agreement, Defendant warned Plaintiff that he was "not sure [he'd] be able or willing to continue running" the Center after he "hit 80" in January 2019. Ex. 19 at 1-2. He pointed out his family history of "dement[ia]" and warned he had "no idea what's in store for [him]." *Id.* at 1. Days after the March 2018 meeting, Defendant reiterated that he would soon "turn 80" and "may want to reduce [his] work significantly." Ex. 16 at 3; *see* SMF ¶¶ 46-47.

In July 2018, Defendant told Plaintiff that he had been "diagnosed . . . with Alzheimer's disease." Ex. 20 at 2. A month later, Defendant told Plaintiff that he "had a health collapse" and was having "difficulty walking and difficulty keeping awake." Ex. 22 at 4. In October 2018, Defendant again relayed to Plaintiff that he had been "diagnosed with Alzheimer's disease (a very serious brain disease)" and that his health was "deteriorating" so much so that he had been "advised by medical personnel to give up driving." Ex. 23 at 2; *see* SMF ¶¶ 48-53.

D.      **Plaintiff's Resignation and the Center's Closure**

By January 2019, Plaintiff was, in his own words, no longer "substantially involved in the day to day operation" of the Center.  Ex. 24 at 1; SMF ¶ 55.  In May 2019, Plaintiff "resign[ed] effective immediately" from the Center, though he claims that resignation "was not accepted."  Ex. 25 at 1; *see* Pl.'s Dep. 148:5-11.  Plaintiff's resignation email never mentioned providing personal services to Defendant, never noted that Defendant owed him more than $120,000, and never asked for payment.  SMF ¶¶ 56-58.

At his deposition, Plaintiff could not recall or identify what services he provided either to the Center or to Defendant personally from May through July 2019.  Pl.'s Dep. 185:9-191:10.  Available records produced in discovery show that from May through July 2019 Plaintiff sent about ten emails to Defendant, suggesting Plaintiff had in fact "resigned" from the Center in May.  *See* Dkt. 117-11 at 65-66 (Defendant's records showing ten emails); Dkt. 184 at 92-94 (Plaintiff's records showing zero).[6]  Records before May 2019 also show little evidence that Plaintiff performed more than minimal work for the Center and offer no evidence of work that could be characterized as "advisory services" to Defendant personally.  *See* Pl.'s Dep. 81:19-82:10 (claiming all evidence of work performed would be in the emails already produced).

Acting as power of attorney, Defendant's wife dissolved the Center in July 2019.  SMF ¶¶ 69-70.  Plaintiff learned of the planned dissolution by at least July 20.  SMF ¶ 71.  Though a press release indicated the Center closed because of a lack of volunteers, Plaintiff told others that the Center closed "due to [Defendant's] age and declining health."  Ex. 31 at 3; SMF ¶ 72.  The Center was formally dissolved on July 23, 2019.  Dkt. 34-1, Ex. B at 1.  That is also the last date

---

[6] These figures are drawn from indexes of all emails in the parties' email accounts, which represent the most complete available records.  *See* Dkt. 117-10 (explaining process used for Defendant's account); Dkt. 183-2 (same for Plaintiff's account).

on which Plaintiff claims he provided any "services, assistance, work, or other benefits to Defendant" personally.  Ex. 35 at 6; *see* Pl.'s Dep. 149:2-150:7.

### E.    Plaintiff Waits Until November 2020 To Demand Payment

The parties last met in person in 2018.  SMF ¶ 52.  Plaintiff never spoke with Defendant again after July 2019.  SMF ¶ 75.  Available records show that Defendant never emailed Plaintiff after July 2019.  SMF ¶¶ 73-74.  Plaintiff later told Ms. Carbide that his communications with Defendant had "stopped just before [the Center closed]."  Dkt. 108-2 at 5; *see* SMF ¶¶ 76-77.

In October 2019, Plaintiff told others that Defendant's health was "declining as he has Alzheimer's."  Ex. 31 at 2-3.  Plaintiff added that Defendant's condition had "seemingly advanced from all indications" and that his "heath issues" were noticeable when the Center was still running. *Id.* at 2.  Around the same time, Plaintiff told Ms. Carbide that he knew Defendant was no longer returning emails and that he thought Defendant's "condition ha[d] worsened."  Dkt. 108-2 at 4. By March 2020, Plaintiff believed Defendant's "Alzheimer's ha[d] probably progressed and that [Defendant] might be institutionalized" or dead.  *Id.* at 5; *see* SMF ¶¶ 76-78.

Plaintiff "waited and [he] waited and [he] waited" before requesting payment by email in November 2020.  Pl.'s Dep. 163:24-164:2.  That November 2020 email was the first time Plaintiff raised the purported oral contract with Defendant in writing or demanded payment.  SMF ¶ 82. Even then, Plaintiff never mentioned providing services to Defendant personally on top of his supposed work for the Center.  SMF ¶ 83.  Nor did the email say Defendant agreed to pay Plaintiff's salary on a specific date.  SMF ¶ 84.

Fifteen months later, in February 2022, Plaintiff sent a demand letter threatening to "tarnish[ ]" Defendant's "legacy" if he was not paid.  Ex. 34 at 1; SMF ¶ 85.  In that letter, Plaintiff claimed Defendant hired him in February 2018 as the Center's "executive director" at an annual "salary of $120,000."  Ex. 34 at 1.  It never mentioned the March 2018 oral agreement or any

agreement to provide services to Defendant personally. SMF ¶ 87. Nor did it allege Defendant would pay Plaintiff's salary or that payment was due on a specific date. SMF ¶ 87.

Plaintiff testified for the first time at his August 2024 deposition that he planned to use the money he was allegedly owed "to go to law school." Pl.'s Dep. 77:22. He alleged that he did not ultimately apply to law school because he "needed the money to go." *Id.* at 78:5-6. In May 2019, however, Plaintiff had asked Defendant to write a "letter of recommendation" for a law school application. Ex. 26 at 1; SMF ¶¶ 62-64. Plaintiff did not mention that he could not apply to law school until Defendant paid him. SMF ¶¶ 62-64. When Defendant did not respond, Plaintiff sent another request, again without mentioning the money Defendant supposedly owed him. SMF ¶¶ 62-66. There is no record of any response to that request, either. SMF ¶¶ 64, 66.

At his deposition, Plaintiff refused to answer questions about when he began preparing to sue Defendant. SMF ¶ 88; *see* Pl.'s Dep. 164:15-165:1. But discovery shows that Plaintiff, in June 2019, forwarded himself the February 25, 2018, email about possible employment. SMF ¶¶ 67-68. And as of December 2019, Plaintiff's computer or email account contained a copy of the 2019 version of the Indiana model jury instructions for breach of contract. SMF ¶ 79.[7]

## II.  PROCEDURAL HISTORY

### A.    Plaintiff Waits Years To Sue

On May 5, 2022, Plaintiff filed a verified complaint asserting one count of breach of contract. Dkt. 1. He alleged that he agreed "to serve as Defendant Richard A. Posner's executive director of the Posner Center." *Id.* ¶ 5. He also alleged that Defendant supposedly guaranteed Plaintiff's salary, but he did not allege any employment with Defendant personally. *Id.* ¶¶ 5-11.

---

[7] Plaintiff claimed he could not remember why he had a copy of Indiana's jury instructions for breach of contract in December 2019, but he speculated that he may have done so as he was "watching things on the news and-so-forth," such as "what's going on with Trump and all this court stuff and everything." Pl.'s Dep. 182:8-21.

Plaintiff swore he would receive his salary "in a lump sum payment after a year of service ha[d] been provided." *Id.* ¶ 7. Plaintiff's "service[]" began on "February 25, 2018." *Id.* ¶ 9.

Defendant moved to dismiss. He argued that Plaintiff's sworn allegation that Plaintiff "was to be paid a lump-sum salary 'after a year of services has been provided'" meant payment for $120,000 was due in February 2019, with the rest due "when his employment ended in July 2019." Dkt. 22 at 7 (quoting Dkt. 1 ¶ 7). Thus, the "contract claim[] accrued, at the latest, in July 2019," making it untimely under Indiana's two-year statute of limitations for oral employment contracts. *Id.* Defendant also invoked Indiana's statute of frauds, which precludes suits on oral personal guarantees. *Id.* at 9-10; *see* Ind. Code § 32-21-1-1. In the brief, Defendant noted an exception to the statute if the guarantor receives a personal benefit. Dkt. 22 at 9-10.

## B.    Plaintiff Amends His Complaint with "New" Allegations

In response, Plaintiff amended his complaint under oath to revise his story. In that complaint, Plaintiff for the first time raised the purported March 2018 oral agreement to provide "advisory services" to Defendant personally. Am. Compl. ¶ 7. That allegation fit the exception to the statute of frauds Defendant had mentioned. Dkt. 22 at 9-10. But the allegation was inconsistent with Plaintiff's first verified complaint, a 2022 demand letter Plaintiff sent, and a November 2020 email from Plaintiff to Defendant, all of which described Plaintiff as the "executive director of the Posner Center" without mentioning any work for Defendant personally. Dkt. 1 ¶ 5; SMF ¶¶ 80-87.

Plaintiff also revised his allegations to evade the statute of limitations. He removed the allegation that he would receive "a lump sum payment after a year of service ha[d] been provided." Dkt. 1 ¶ 7. Instead, he alleged he "would have to wait at least a year" to be paid because Defendant's funds were supposedly "tied up for an extended period." Am. Compl. ¶ 12. He added that the alleged agreement would "roll over after a year's time unless either party . . . rescinded the agreement," *id.* ¶ 10, and that Defendant had supposedly represented that he was in "good health"

8

and "had no concerns about anything that would potentially prevent him from honoring the terms of the amended agreement," *id.* ¶ 13. And separately, the amended complaint added claims for fraud and unjust enrichment on the basis that Defendant had "fraudulently concealed" his Alzheimer's diagnosis and "misrepresented . . . that he could not have used the money from the joint savings account to pay Plaintiff's compensation." *Id.* ¶¶ 29-31, 34.

Defendant again moved to dismiss. Defendant understood Plaintiff to be alleging payment was due within a year from the date of the agreement, and that the agreement would then "'roll over after a year's time'" unless terminated. Dkt. 34 at 10 (quoting Am. Compl. ¶ 10). Reading the complaint to allege payment was due ***more*** than a year later, Defendant explained, would render the contact claim unenforceable under the statute of frauds. *Id.* at 12 n.11. Thus, construing the complaint in Plaintiff's favor meant $120,000 was due in February 2019, with the rest due "no later than July 2019, when the Center closed and [Plaintiff's] employment ended." *Id.* at 10 (citing Am. Compl. ¶ 24). "As a result," Defendant argued, Plaintiff's "claims are time-barred because he did not bring suit on them by July 2021." *Id.*

Plaintiff opposed the motion but never disputed that payment was due by at least July 2019. He argued only that Defendant's supposed "fraudulent concealment" of the Alzheimer's diagnosis tolled the statute of limitations. Dkt. 36 at 5-8, 16-17. And in his proposed second amended complaint filed (under oath) six months later, Plaintiff did not allege payment was due on another date besides July 2019. *See* Dkt. 61-2.

### C. The Court Defers Decision on the Statute-of-Limitations Defense

Judge Kolar issued a report in June 2023 recommending denying the motion to dismiss. Dkt. 62 (R&R or Report). The Report found that Indiana's two-year statute of limitations applied to the contract and unjust-enrichment claims. R&R 29-30. And it rejected Plaintiff's fraudulent-concealment arguments. *Id.* at 37-39. However, although neither party disputed that payment was

due by at least July 2019, Judge Kolar found that the amended complaint did not "give a specific date for when the lump sum payments were due." *Id.* at 33. That ambiguity, plus the allegation Plaintiff had to wait "at least a year" for payment, created uncertainty about when Plaintiff expected payment. *Id.* at 33-36. Thus, the statute-of-limitations analysis for the contract claim turned on whether Plaintiff could reasonably expect payment after May 2020. *Id.* at 35-36.[8]

Defendant objected. He argued the Report improperly disregarded the parties' undisputed understanding that the alleged payment was due no later than July 2019. Dkt. 65 at 6-9. And Defendant observed that if payment was due after May 2020 the contract claim would be unenforceable under Indiana's statute of frauds because the agreement could not "be performed within one (1) year from the making of the agreement." *Id.* at 12 (quoting Ind. Code § 32-21-1-1(b)(5)). In response, Plaintiff never argued that the alleged agreement included a time for payment. *See* Dkts. 67, 68. Rather, he advocated for the analysis that applies to oral contracts "where there is no definite time for payment." Dkt. 68 at 10.

The Court adopted the Report's statute-of-limitations analysis. Dkt. 74. The Court declined to address Defendant's argument that Plaintiff's sworn allegations he was "owed" $170,000 in July 2019 meant payment was due by that date. *Id.* at 12-13. Nor did the Court address Defendant's argument that "there is no reasonable payment due date within the statute of limitations period" or that any payment date within the limitations period would render the contract claim unenforceable under the statute of frauds. *Id.* at 13.

### D.    Nearly Five Years After the Supposed Agreement, Plaintiff Claims for the First Time That Payment Was Due in July 2020

After the Court denied Defendant's motion to dismiss, Plaintiff again revised the supposed oral agreement's terms. He no longer alleged payment was due "after a year of service ha[d] been

---

[8] The Report did not separately address the timeliness of the unjust-enrichment claim. R&R 33-36.

provided" or "at least a year" from the date of agreement, as he had earlier claimed under oath. Dkt. 1 ¶ 7; Am. Compl. ¶ 12; Dkt. 61-2 ¶ 12. Nor was payment due by July 2019, as Plaintiff earlier conceded in his sworn filings. Dkts. 36, 37. Instead, after nineteen months of litigation, Plaintiff alleged for the first time in December 2023 that payment "was due in July 2020." Dkt. 96 at 6 n.2. Though the alleged contract had not changed, Plaintiff now claimed it called for payment "at least a year after his employment to the Defendant ended." *Id.* at 6. In discovery, Plaintiff refined his new allegation by claiming payment was due exactly "one year from July 23, 2019," when his employment ended. Ex. 35 at 6.

Plaintiff's account of the purported oral contract evolved again at his August 2024 deposition. Then, Plaintiff claimed for the first time in two years of litigation that, at the March 2018 lunch meeting, Defendant told him not to "worry about any statute of limitations." Pl.'s Dep. 64:11-65:19. Plaintiff also claimed at his deposition that Defendant twice assured him over the phone in July 2019 that Defendant would honor their supposed contract. *Id.* at 55:4-59:6. But Plaintiff never alleged Defendant set any time for payment on these supposed phone calls. *Id.*

## ARGUMENT

Summary judgment is "appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 957 (7th Cir. 2024); *see* Fed. R. Civ. P. 56(a). To survive summary judgment, a plaintiff must identify specific "admissible evidence that would permit the trier of fact to make a finding in [his] favor." *Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 847 (7th Cir. 2015); *see* Fed. R. Civ. P. 56(c)(2). This Court holds *pro se* plaintiffs "to the same standards as other civil litigants when it considers the motion for summary judgment." *Hunt v. JP Morgan Chase Bank*, No. 2:16-cv-459, 2019 WL 5727906, at *1 (N.D. Ind. Nov. 5, 2019).

Defendant is entitled to summary judgment on his statute-of-frauds and statute-of-

limitations defenses.  The statute of frauds bars Plaintiff's contract claim because there is no dispute that the supposed oral employment contract could not "be performed within one (1) year from the making of the agreement."  Ind. Code § 32-21-1-1(b)(5).  And the statute of limitations also bars the contract claim because the record is clear that any alleged payment was due by at least July 2019.  At worst, the supposed contract lacked a set time for payment, and it was unreasonable for Plaintiff to expect payment after May 2020.  And because the limitations period for the unjust-enrichment claim began on Plaintiff's last day of employment in July 2019, that claim is also untimely.  Summary judgment is required.

I.    **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT UNDER THE STATUTE OF FRAUDS**

A.    **The Alleged Oral Agreement Could Not Be Fully Performed Within a Year**

Indiana's statute of frauds bars claims for oral contracts that are "not to be performed within one (1) year from the making of the agreement."  Ind. Code § 32-21-1-1(b)(5).  Here, Plaintiff asserts an oral contract under which he has repeatedly claimed "that Defendant could not pay for Plaintiff's services for at least a year."  Ex. 35 at 7; *see also* Dkt. 1 ¶ 7 ("payment after a year of service has been provided"); Am. Compl. ¶ 12 (Plaintiff had "to wait at least a year" for payment); Dkt. 61-2 ¶ 12 (same).[9]

The undisputed facts make this case just like *Wallem v. CLS Industries, Inc.*, 725 N.E.2d 880 (Ind. Ct. App. 2000).  The oral agreement there called for an employer to pay an employee a bonus in installments beginning when the employee's job ended six weeks later.  *Id.* at 886.  But the payments would not **end** until more than a year later.  *Id.*  Thus, the agreement "could not be fully performed within one year," and the employer was entitled to summary judgment under the

---

[9] Plaintiff's contract is an oral contract under the statute even though the original purported February 2018 agreement was in writing.  *Ward v. Pots*, 91 N.E.2d 643, 645 (Ind. 1950) ("contract partly in writing and partly in parol is a parol contract"); *Knapp v. Est. of Wright*, 76 N.E.3d 900, 907 (Ind. Ct. App. 2017) (similar).

statute of frauds.  *Id.* at 887.  The same is true here, and the same conclusion follows – the statute of frauds bars Plaintiff's contract claim because the contract could not be performed in a year.

Similarly, in *Stocker v. Extendicare Health Services, Inc.*, No. 3:16-cv-69, 2016 WL 4181279 (N.D. Ind. Aug. 8, 2016), the plaintiff alleged breach of a 36-month oral employment contract that provided "an annual salary of $150,000 and a one-time bonus of $50,000 at the end of that term."  *Id.* at *3.  This Court held that any contract requiring payment more than a year from the date of the agreement "would have to be in writing to survive Indiana's Statute of Frauds."  *Id.*  This Court thus dismissed the contract claim before discovery.  *Id.*  Here, Plaintiff has had discovery and still **swears** the supposed agreement required him to wait for "at least a year" for payment.  Ex. 35 at 7.  The statute of frauds bars his contract claim.

### B.    No Exception to the Statute of Frauds Applies

Plaintiff cannot show any genuine dispute of fact about whether any exception to the statute of frauds applies.  While Plaintiff may claim he performed his end of the supposed contract, the statute of frauds applies unless the agreement can be performed by **both** parties within a year.  *Coca-Cola Co. v. Babyback's Int'l, Inc.*, 841 N.E.2d 557, 567 (Ind. 2006).  For example, the employees in *Wallem* and *Stocker* both performed their services, but still lost because payment could not be made within a year.  *Wallem*, 725 N.E.2d at 887; *Stocker*, 2016 WL 4181279, at *3.

Nor can Plaintiff invoke promissory estoppel.  That doctrine applies only where a plaintiff can carry the "heavy burden" of proving a reliance injury that is both (1) "independent from the benefit of the bargain and resulting incidental expenses and inconvenience" and (2) "so substantial as to constitute an unjust and unconscionable injury."  *Akin v. Simons*, 180 N.E.3d 366, 380-81 (Ind. Ct. App. 2021).  Conduct that might establish "routine promissory estoppel" falls short of the "enhanced" showing needed "in Indiana to defeat a defense of statute of frauds."  *Classic Cheesecake Co. v. JPMorgan Chase Bank, N.A.*, 546 F.3d 839, 846-47 (7th Cir. 2008).

Here, Plaintiff has no injury independent of the wages he is purportedly owed. Nor is there anything "unjust" about applying the statute of frauds. And Plaintiff's earlier suggestion that he suffered "emotional distress and headaches" (Dkt. 67 at 7) by having to answer questions about the Center's dissolution cannot clear the high hurdle to evade the statute of frauds. *Akin*, 180 N.E.2d at 381. There is no evidence Plaintiff suffered any "distress and headaches" at all (nor are those ***reliance*** injuries). And Plaintiff has never explained, as he must, how Defendant's supposed misrepresentations ***caused*** those injuries. *Id.* at 380; *see* Dkt. 69 at 3-4 (no causation). Nor are those injuries "so substantial as to constitute an unjust and unconscionable injury." *Akin*, 180 N.E.3d at 381. The Supreme Court of Indiana has held that even a plaintiff who "quit her job, dropped out of school, . . . and moved [States]" in reliance on a promise could not show an "unjust and unconscionable injury." *Brown v. Branch*, 758 N.E.2d 48, 50, 53 (Ind. 2001).[10]

Plaintiff cannot rely on constructive fraud, either. That doctrine applies only if the person claiming it was owed a fiduciary duty. *Zusy v. Int'l Med. Grp., Inc.*, 500 F. Supp. 2d 1087, 1099 (S.D. Ind. 2007). As Plaintiff's employer, Defendant did not owe him a fiduciary duty. *Costello v. Bd. of Trs. of Flavius J. Witham Mem'l Hosp.*, No. 19-cv-2956, 2019 WL 6252258, at *9 (S.D. Ind. Nov. 22, 2019); *see Needham v. Innerpac, Inc.*, No. 04-cv-393, 2006 WL 2710617, at *14 (N.D. Ind. Sept. 19, 2006) ("breach of an employment contract is insufficient . . . [for] constructive fraud"). Because no exception to the statute of frauds applies, summary judgment is warranted.

## II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE STATUTE OF LIMITATIONS

Plaintiff's contract and unjust-enrichment claims are also untimely under Indiana's two-year statute of limitations for oral employment contracts. *See* Ind. Code § 34-11-2-1; *see* Dkt. 74

---

[10] Plaintiff's latest proposed amended complaints are unsworn and thus not evidence at summary judgment. *See* Dkts. 216-1, 227. Regardless, one repeats that the supposed "injury" was ***only*** the provision of supposed "free services to the Defendant." Dkt. 216-1 ¶36. The other mentions "headaches" and "distress," which are insufficient as explained above. Dkt. 227 ¶26.

(ruling Indiana law applies). There is no genuine dispute that payment under the supposed agreement was due before May 2020, more than two years before Plaintiff filed his complaint. Plaintiff's unjust-enrichment claim is also untimely because that claim accrued in July 2019 when Plaintiff's supposed employment ended. And Plaintiff cannot invoke any tolling doctrines.

**A.    The Contract Claim Is Untimely Because It Accrued Before May 2020**

1.    *Plaintiff's Sworn Statements Establish the Claim Accrued in July 2019*

This Court ruled that the two-year limitations period for the contract claim began no later than "the date the payment was due and not paid by the Defendant." Dkt. 74 at 12. But at the pleading stage, the Court did not address when Plaintiff's sworn statements prove payment was due. *See* Dkt. 74 at 12-13. That question is now squarely before the Court.

Plaintiff's verified complaints leave no room for dispute. A "verified complaint is the equivalent of an affidavit for summary judgment purposes." *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013).[11] Plaintiff's first verified complaint alleged "Defendant . . . would pay to Plaintiff . . . a lump sum payment after a year of service ha[d] been provided." Dkt. 1 ¶ 7. That "service[ ]" began on "February 25, 2018." *Id.* ¶ 9. Thus, payment was due by February 2019, and Plaintiff was "owed" his remaining salary "[a]s of July 23, 2019," when the Center closed. *Id.* ¶ 17.

The second verified complaint is equally clear. Plaintiff swore that, under the purported March 2018 oral agreement, he "would have to wait at least a year" – *i.e.*, until March 2019 – to be paid. Am. Compl. ¶ 12. But once Plaintiff's employment ended or either party "rescinded the agreement," Plaintiff would be "owed" all outstanding amounts. *Id.* ¶¶ 10, 24. Thus, under both

---

[11] Even when superseded by an amendment, the "factual allegations within [a verified complaint] remain[ ] admissible for evidentiary purposes" at summary judgment. *Gordon v. Shurpit*, No. 23-1158, 2023 WL 7318079, at *1 n.1 (7th Cir. Nov. 7, 2023).

verified complaints, the two-year limitations period began when Plaintiff's job ended in July 2019. Even when Defendant argued Plaintiff had "admit[ted] that he knew no later than July 2019 that the $170,000 he says he was owed had not been paid when due," Dkt. 39 at 3, Plaintiff did not disagree; he **reaffirmed** under oath that he was "owed" $170,000 "[a]s of July 23, 2019." Dkt. 61-2 ¶24. Even now, he repeats that same allegation in unsworn proposed amended complaints. Dkt. 216-1 ¶12; Dkt. 227 ¶12. There is no genuine dispute payment was due by at least July 2019.

### 2. *At Worst, the Contract Claim Accrued Before May 2020*

If payment was not due by July 2019, it is undisputed the supposed contract lacked a definite time for payment, meaning the limitations period started once "a reasonable time for performance had lapsed." R&R 34 (quoting *Lightle v. Harcourt Mgmt. Co.,* 634 N.E.2d 858, 862 (Ind. Ct. App. 1994)). That is, without a definite time for payment, the contract claim is timely only if it was reasonable for Plaintiff to expect payment after May 5, 2020. *Id.* at 33-36. "What constitutes a reasonable time depends on the subject matter of the contract, the circumstances attending performance of the contract, and the situation of the parties to the contract." *Harrison v. Thomas*, 761 N.E.2d 816, 819 (Ind. 2002). Where the performance is payment for services, the law presumes "payment is to be made upon completion of the work." *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 54 (Ind. Ct. App. 1986). And where "the underlying material facts are undisputed," what is a "reasonable time . . . is a question of law." *Auffenberg v. Bd. of Trs. of Columbus Reg'l Hosp.*, 646 N.E.2d 328, 331 (Ind. Ct. App. 1995).

No reasonable person in Plaintiff's position would have expected payment after May 2020. Plaintiff's knowledge of Defendant's deteriorating health – alone – renders waiting that long unreasonable. By that time, it had been nearly **two years** since Plaintiff learned of Defendant's Alzheimer's diagnosis and **six months** since Plaintiff suspected Defendant might be dead or institutionalized. *See* pp. 4-6, *supra*. And Plaintiff has never offered a serious explanation for

why he waited so long.  Rather, he has merely claimed that he had "[n]o obligation according to the agreement" to demand payment sooner.  Pl.'s Dep 163:17-164:7; *see also* Ex. 38 at 8-9.  So he "waited and [he] waited and [he] waited," Pl.'s Dep. 163:24-164:2, knowing that Defendant's health was deteriorating each day.  That is unreasonable.

Plaintiff's personal circumstances make it even more unreasonable.  According to Plaintiff, he "is a common person, a retiree, who . . . needed the income that was promised by Defendant." Dkt. 68 at 15 (unsworn).  By 2018, he was already in his mid-60s and living off a few thousand dollars per month in a teacher's pension and Social Security.  SMF ¶¶ 1, 61; Pl.'s Dep. 11:3, 12:11-13:18.  When his supposed employment ended in July 2019, he had already gone seventeen months without receiving any of the wages he supposedly "needed" either to live on or "to go to law school," as he later claimed.  Pl.'s Dep. 77:22-78:6.  During that time, Plaintiff was supposedly working "day and night to no end."  Dkt. 37 ¶ 14.  And by May 2020, ***another*** nine months would have passed without Plaintiff receiving a dime.  It is not reasonable for a person in Plaintiff's position to go twenty-six months without expecting pay.

More broadly, expecting such delayed payment for an employment contract is unreasonable in itself.  Nearly every State requires employers to pay wages monthly, if not more often.  *See* U.S. Dep't of Labor, State Payday Requirements, https://bit.ly/4eIMvPd.  Indiana law presumes the reasonable time for payment of wages is "upon completion of the work."  *Licocci*, 492 N.E.2d at 54.[12]  By contrast, Plaintiff had never before been paid in arrears as the purported

---

[12] The Report believed that considering "the common law default rule" of payment once services are complete would be inconsistent with the allegation that "Plaintiff had to wait 'at least a year'" for payment.  R&R 35 n.21.  Not so.  The "at least a year" allegation was that Plaintiff would have to wait at least a year ***from March 2018***.  Am. Compl. ¶ 12.  That payment would be made in ***July 2019*** when Plaintiff's alleged employment ended is consistent with the claim that Plaintiff had to wait at least a year from March 2018.

contract provided for and, at his deposition, could not name anyone else who had.  SMF ¶92.

Against those baselines, expecting no payment for *years* after the employment began and more

than *nine months* after the employment ended is not reasonable.[13]

Defendant's statements effectively repudiating the alleged contract add to the unreason-

ableness.  Just days after the supposed oral agreement, Defendant issued a press release – which

Plaintiff read – stating "none of the Center's representatives is paid (although that may change)."

Ex. 14 at 3; SMF ¶¶30-34; *see* Pl.'s Dep. 123:5-10.  The next day, Defendant proposed appointing

Plaintiff as "Executive Director of the Posner Center" – the same role as in the purported contract

– but with no promise of pay.  Ex. 16 at 3; SMF ¶¶35-37.  A copy of the Center handbook that

Plaintiff received in June 2018 also stated that Defendant did "not at present pay [his]

representatives," including Plaintiff.  Ex. 17 at 15; SMF ¶¶38-44.  If Defendant had really

promised Plaintiff money in March 2018, Plaintiff should have known *that same month* that

Defendant did not intend to pay.

The circumstances surrounding the end of Plaintiff's supposed employment reinforce that

conclusion.  By January 2019, Plaintiff was no longer "substantially involved" with the Center.

Ex. 24 at 1.  In fact, available records show Plaintiff *never* performed anything beyond ordinary

volunteer work for the Center and nothing like "advisory services" to Defendant personally.  *See*

Pl.'s Dep. 81:19-82:10 (claiming all evidence of work performed would be in the emails already

produced).  In May, he tried to resign "effective immediately" from the Center.  Ex. 25 at 1; SMF

¶¶56-58.  From May through the Center's dissolution in July, available records show that Plaintiff

sent around ten emails to Defendant, suggesting Plaintiff had in fact resigned from the Center in

---

[13] Even *Plaintiff* admitted he was "concern[ed]" at the time of the supposed oral agreement about the unusual (alleged) terms.  Pl.'s Dep. 65:20-67:3.

May.  *See* p.5 & n.6, *supra*.  And Plaintiff told others that "the last time [he] spoke to [Defendant] . . . was somewhere about a couple of months or so right **before** the Posner Center was reportedly dissolved."  Dkt. 108-2 at 5 (emphasis added); SMF ¶¶ 75-77.  If anything, Plaintiff's involvement ended **sooner** than July 2019, making May 2020 an even more unreasonable date for payment.

That Plaintiff supposedly demanded payment in November 2020 is irrelevant.  *See* Dkt. 62 at 34 & n.20 (noting how the date of a demand is irrelevant to accrual).  If anything, it makes Plaintiff's delay **less** reasonable.  By then, Plaintiff knew for more than a year that Defendant was no longer answering emails, and he had suspected in March 2020 that Defendant might even be dead or "institutionalized."  Dkt. 108-2 at 4-5; SMF ¶ 78.  That Plaintiff still waited **another** seven months before raising the alleged agreement in writing or requesting payment speaks volumes.

Nor do the cases cited in the motion-to-dismiss rulings help Plaintiff.  *See* Dkt. 62 at 34-36; Dkt. 74 at 9-13.  In *Lightle*, the agreement called for "a 30% bonus" to be paid at an unspecified time if the contractor finished construction under budget, which he did.  634 N.E.2d at 859.  The bonus was not paid, and the contractor sued about two-and-a-half years after the first possible date of payment.  *Id.* at 862.  The contractor claimed he delayed because he was waiting "until all subcontractors had been paid."  *Id.* at 861.  On those facts, the court could not say that the delay was unreasonable as a matter of law.  *Id.* at 862.

The facts here are starkly different.  The *Lightle* contractor was waiting for a bonus.  Plaintiff was waiting for his **entire salary**.  The *Lightle* contractor explained his delay.  Plaintiff never has.  The *Lightle* contractor did not wait years knowing his counterparty's health was deteriorating.  Plaintiff did.  The *Lightle* contractor was not a retiree who needed the money.  Plaintiff is.  The *Lightle* defendant did not repudiate the contract.  Defendant did.  Those differences compel a different result here – expecting payment after May 2020 would be unreasonable.

The same is true for *Community State Bank Royal Center v. O'Neil*, 553 N.E.2d. 174 (Ind. Ct. App. 1990). That case involved an in-house attorney for a bank who was paid by the hour "for the litigation he handled." *Id.* at 175. The attorney submitted a bill for a lawsuit seven months after he "close[d] the file" on the matter. *Id.* at 177. Months later, the attorney resigned. *Id.* at 176. He sued within two years of closing the file, within two years of submitting a bill, and about a year after his resignation. *Id.* at 177. On those facts, the court could not conclude the attorney's delay was unreasonable. *Id.* Again, the opposite is true here. Plaintiff sued almost **three years** (not one) after his employment ended. He waited more than **fifteen months** (not seven) to first seek payment for his work, and **after** (not before) he resigned. Plaintiff is a retiree who "needed" the money (not a well-paid lawyer), and his counterparty is an elderly individual with Alzheimer's (not a bank). On **those** facts, Plaintiff's delay **was** unreasonable as a matter of law.

3.   *Plaintiff's Newest Assertion That Payment Was Due in July 2020 Cannot Create a Fact Dispute*

Plaintiff's recent suggestion that payment was due in July 2020 – "a year after his employment to the Defendant ended" – changes nothing. Dkt. 96 at 6. That new assertion first appeared in an unsworn filing in December 2023, nearly five years after the alleged contract, more than four years after Plaintiff's supposed employment ended, well over a year after Plaintiff filed his original complaint, and only after Defendant had argued Plaintiff's claims "are timely only if the money was due sometime after May 2020." Dkt. 86 at 2.

Such a convenient, "conclusory assertion[ ]" – even one made under oath – cannot defeat summary judgment. *Devbrow*, 735 F.3d at 587. A genuine fact dispute "requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. DuPage County*, 715 F.2d 1238, 1243 (7th Cir. 1983). Plaintiff offers no concrete facts showing the parties agreed payment would be due a year after Plaintiff's employment ended. In fact, at the

pleading stage, Plaintiff never disputed payment was due "no later than July 2019." Dkt. 39 at 3. Even after Judge Kolar's Report applied the rule for contracts lacking a time for payment, R&R 34-36, Plaintiff agreed that rule applied, Dkt. 68 at 11 n.5. Particularly in that context, Plaintiff's bald assertion that payment was due in July 2020 cannot create a fact dispute.

Even if not conclusory, Plaintiff's new assertion should be disregarded. The Court has a "duty at the summary-judgment stage" to "disregard" a new assertion that "contradicts prior [sworn] testimony." *James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020). Courts may even "disregard affidavits that add new factual details not previously disclosed in [sworn] testimony." *Clacks v. Kwik Trip, Inc.*, 108 F.4th 950, 956 (7th Cir. 2024). That rule applies here. Plaintiff's original verified complaint was clear that payment was due once "a year of service ha[d] been provided." Dkt. 1 ¶7. Plaintiff hit a year of service in February 2019. *Id.* ¶9. His second verified complaint alleged the parties agreed in March 2018 that payment "would have to wait at least a year" to be paid – *i.e.*, until March 2019. Am. Compl. ¶12. A third proposed verified complaint and a fourth proposed (unsworn) complaint said the same. Dkt. 61-2 ¶12; Dkt. 216-1 ¶12. Those sworn assertions are inconsistent with Plaintiff's new allegation that payment was due in July 2020. At a minimum, Plaintiff added a detail conspicuously missing from prior sworn filings that just happened to address Defendant's defenses. Either way, the Court should disregard it.

*Clacks* is instructive. There, the plaintiff's affidavit at summary judgment claimed he reported harassment by a coworker. 108 F.4th at 956. But in earlier testimony, he said that he reported the coworker "was an awful trainer" without noting harassment. *Id.* That inconsistency warranted disregarding his affidavit. *Id.* Here, Plaintiff withheld his new assertion about the due date ***and*** his earlier sworn statements contradicted it. *See* pp. 6-11, *supra*. Plaintiff's shifting story is even more egregious than in *Clacks* and must be disregarded.

21

Other cases also support disregarding Plaintiff's new story. In *James*, the then–*pro se* prisoner's affidavit offered a timeline of key events contradicting his deposition. 959 F.3d at 317. In *Buckner v. Sam's Club, Inc.*, 75 F.3d 290 (7th Cir. 1996), the plaintiff gave a vague description in a deposition of the object she tripped over but offered a "highly specific description" in her later affidavit. *Id.* at 293. In *Martin v. Noble County Sheriff's Department*, No. 18-cv-121, 2021 WL 26310 (N.D. Ind. Jan. 4, 2021), the *pro se* plaintiff said she could not identify the officers who used excessive force but then identified the defendants in her affidavit. *Id.* at *12. Each affidavit was disregarded as a sham. Plaintiff's new assertion that payment was due in July 2020 should be too.

### B.    The Unjust-Enrichment Claim Accrued in July 2019

The limitations period for an unjust-enrichment claim "begins to run at the time the services cease." *Est. of Hann v. Hann*, 614 N.E.2d 973, 976 (Ind. Ct. App. 1993); *see Matter of Carroll's Est.*, 436 N.E.2d 864, 865 (Ind. Ct. App. 1982) (same). Plaintiff has admitted that his supposed "services" ended no later than "July 23, 2019." Ex. 35 at 6; Am. Compl. ¶15. Thus, the two-year limitations period expired in July 2021, over nine months before Plaintiff sued. Regardless, even if the unjust-enrichment and contract claims accrued together, both are untimely as explained above. *See* pp. 14-22, *supra*.

### C.    Any Tolling or Waiver Arguments Would Fail

This Court has already rejected Plaintiff's fraudulent-concealment argument. R&R 37-39; Dkt. 74 at 16-17.[14] Nor can Plaintiff invent a new basis for tolling. Doctrines like fraudulent concealment and equitable estoppel demand proof Defendant prevented Plaintiff "from discovering an otherwise valid claim." Dkt. 74 at 17; *see Kenworth of Indianapolis, Inc. v. Seventy-Seven*

---

[14] Time has proved that rejection correct. The foundation for that argument was a lie – that Defendant fraudulently concealed his Alzheimer's diagnosis. Dkt. 36 at 5-8; Dkt. 201 at 11-12.

*Ltd.*, 134 N.E.3d 370, 383 (Ind. 2019) (same for estoppel).  Defendant could not have stopped Plaintiff from learning he had not been paid the money he claims he was owed.  *See* Dkt. 69 at 4-5 & n.7 (explaining this).  That is particularly true since Defendant and Plaintiff never spoke again after July 2019.  SMF ¶ 75.

Plaintiff may rely on his latest claim that, in the purported March 2018 oral agreement, Defendant told him he did not "have to worry about any statute of limitations."  Pl.'s Dep. 64:18-65:19.  The Court should disregard that new claim, because it is inconsistent with every prior account Plaintiff has given under oath of his purported contract.  Dkt. 1; Dkt. 30; Dkt. 36; Dkt. 37; Dkt. 61-2; *see* pp. 21-22, *supra*; *Clacks*, 108 F.4th at 956; *James*, 959 F.3d at 316.  As recently as March of this year, Plaintiff served interrogatory responses under oath describing his alleged contract that omitted this purported waiver.  Ex. 38 at 7-8.  And Plaintiff left this purported waiver out of at least five other sworn pleadings and filings he made in the last two years describing his alleged agreement.  The Court should not allow Plaintiff to keep revising his version of the contract in ways that keep conveniently addressing Defendant's defenses.

Moreover, any purported oral contract to indefinitely waive the statute of limitations would be void as against public policy.  *Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 599 (Ind. 1994) (contracts against public policy are void).  Indiana has long recognized that statutes of limitations "rest upon sound public policy," "tend to the peace of welfare of society," and are "essential to the general welfare and wholesome administration of justice."  *Craven v. Craven*, 181 Ind. 553, 553 (1913) (quotation omitted).  Such statutes "spare courts from stale claims" and ensure defendants get "formal and seasonable notice" of potential suits.  *Boostrom v. Bach*, 622 N.E.2d 175, 176 (Ind. 1993) (quotations omitted).  On those same policy grounds, the "vast majority of jurisdictions" refuse to enforce perpetual waivers of the statute of limitations made at the outset of

a contract.  4 *Williston on Contracts* § 8:49 (4th ed.); 1 A.L.R.2d 1445 (similar); *see, e.g.*, *Haggerty v. Williams*, 84 Conn. App. 675, 680-81 (2004) (collecting numerous cases and joining the majority view).[15]  While Indiana courts have not (to Defendant's knowledge) expressly spoken to this issue, given Indiana's strong public policy, this Court can and should predict that the Indiana Supreme Court would follow the majority view.  *See Powers v. Coil Tran, LLC*, No. 2:23-cv-86, 2024 WL 578613, at *2 (N.D. Ind. Feb. 13, 2024) (predicting Indiana public policy doctrine).

The public policy grounds against enforcing a purported waiver of the statute of limitations are especially compelling for ***oral*** contracts.  Indiana's two-year statute for oral employment claims reflects a judgment that "it is too easy for an employee to make claims against his employer based on alleged oral understandings and too hard for the employer to disprove these claims." *Miller v. Int'l Harvester Co.*, 811 F.2d 1150, 1152 (7th Cir. 1987).  That judgment would be undercut if, as here, a plaintiff invoking a purported oral contract could tack on an oral promise to waive the statute of limitations.  Such a rule would be an invitation to perjury and fraud.  Thus, if the Court credits Plaintiff's latest story about a purported waiver of the statute of limitations defense – and it should not – it should find that waiver void as against Indiana's public policy.

## CONCLUSION

The Court should enter judgment for Defendant and direct the Clerk to close this case.

---

[15] By contrast, "an agreement waiving the statute may be valid if made ***after*** accrual of a cause of action and preclude assertion of the statute as a defense in the suit thereon."  1 A.L.R.2d 1445 (emphasis added).  For example, in Indiana, a party may be estopped from asserting the statute of limitations if, "by express agreement or through his conduct," he "lead[s] the other party to inaction" through a "reasonable belief that his claim will be settled without suit."  *Martin v. Levinson*, 409 N.E.2d 1239, 1242-43 (Ind. Ct. App. 1980).  Plaintiff's recent claims that Defendant told him "don't worry" and "you will be paid for your services" in a June 2019 phone call, Pl.'s Dep. 57:22-58:10, are inconsistent with his prior sworn statements and should be disregarded. *See,* pp. 21-22, *supra*.  However, even if credited, nothing about that phone call would lead a reasonable person into inaction rather than assert his rights during the statute-of-limitations period.

New York, New York
October 4, 2024

 /s/ Justin M. Ellis
Steven F. Molo (admitted *pro hac vice*)
Kenneth E. Notter III (admitted *pro hac vice*)
MoloLamken LLP
300 N. LaSalle Street
Chicago, IL  60654
(312) 450-6700
smolo@mololamken.com
knotter@mololamken.com

Justin M. Ellis
MoloLamken LLP
430 Park Avenue
New York, NY  10022
(212) 607-8160
jellis@mololamken.com

David Beach
Eichhorn & Eichhorn LLP
2929 Carlson Drive, Suite 100
Hammond, IN  46323
dbeach@eichhorn-law.com

*Attorneys for Defendant*