IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

BRIAN VUKADINOVICH, )
)
Plaintiff, )
)
v. ) CASE NO. 2:22-CV-0118-TLS-JEM
)
)
RICHARD A. POSNER, )
)
Defendant. )

**MEMORANDUM IN SUPPORT OF MOTION FOR OBSTRUCTION OF JUSTICE DETERMINATION AGAINST MURDERER WILLIAM BOND PURSUANT TO 18 U.S. CODE § 1503 AND ORDER FOR PRESERVATION OF EVIDENCE**

Plaintiff, Brian Vukadinovich, pro se, submits his memorandum in support of his motion for an order for obstruction of justice determination against murderer William Bond, and for the arrest and prosecution of the murderer William Bond under 18 U.S. Code § 1503, and order for preservation of evidence preserving communications between murderer William Bond and Defendant's attorneys and other persons connected to Defendant Richard A. Posner.

### I. BACKGROUND

William Bond, a murderer and purported close friend of Defendant Richard A. Posner, Defendant's wife, Charlene, and Defendant's son, Eric, has written several emails, including *ex parte* emails, to this Court demanding that this Court issue rulings in Defendant Posner's favor.

- The first email, *ex parte*, was sent to Judge Springmann's chambers on April 20, 2023 and Bond identified himself as a "friend" of the Defendant Posner stating "We became close talking almost every day for a year." after the Defendant represented him in the Fourth Circuit. Bond stated that he considers Defendant's wife, Charlene, "a friend" and "His sons too." The murderer William Bond stated in the email this is "the last straw for me" and he went on a tirade and made comment about a "sympathetic/cut throat reporter." (Docket #51-1, page 1).

1

- Bond's next (second) *ex parte* email was sent to the chambers of Judge Springmann and Magistrate Judge Kolar on October 20, 2023 and among numerous ridiculous statements he stated that Plaintiff "claimed" that "Dick Posner allegedly called to recruit him—which is pure delusion." (Attachment to Docket #81).[1]

- Bond's next (third) *ex parte* email was sent to the chambers of Judge Springmann and Magistrate Judge Kolar on November 24, 2023 and in this *ex parte* email the societal misfit murderer William Bond demanded that "this Court must quickly and decisively end this case…" (Docket #88, page 3)[2].

- Bond's next (fourth) *ex parte* email was sent to the chambers of Judge Springmann and Magistrate Judge Kolar on December 30, 2023 and in this *ex parte* email the societal misfit murderer William Bond insisted that the exhibits submitted by Plaintiff at the December 14, 2023 hearing either be "immediately put on the public docket" or "explain to the public why the exhibits require sealing?" (Docket #99, page 3).

- Bond's next (fifth) email, sent to the chambers of Judge Springmann and Magistrate Judge Kolar on January 20, 2024, purporting "**my friend**—Richard Posner", and expressed displeasure that "Today, I paid for transcripts the Court should have put on the docket re the December 14 hearing" and then going on to complain about "seeking medical records re **my friend**—Richard Posner?" and complaining that "The softness this case is being handled is odd." And then the societal misfit murderer rambles on "Twice now the plaintiff refuses to put his 'new information' (referenced below) on the on the docket. But the court has it—Docket it. Or explain why not.", and then rambles on "The public has a right to see these (invented papers) (Docket #119)."[3]

- Bond's next (sixth) email, sent to the chambers of Judge Springmann on October 9, 2024, in the first sentence of the email reminded the Court "I first wrote to you on April 20, 2023. See docket number 51-1." and then went on with the usual ramblings in writing about Plaintiff's motions for recusals and Plaintiff's "continually highlights (questions) Judge Posner's medical information. Defense counsel has asked you to stop this blasphemy. You have not." and stated "what is there to take under advisement? "Denied"

---

[1] The societal misfit William Bond obviously is clueless as the record in this litigation demonstrates that the Defendant contacted the Plaintiff in an email in February 2018 recruiting Plaintiff to work for him.

[2] The language by this societal misfit stating that "this Court must quickly and decisively end this case…" (Docket #88, page 3) harkens to similar language from the March 8, 2024 letter from Defendant's attorney Justin M. Ellis to Magistrate Judge John E. Martin when Ellis asked Magistrate Judge Martin "for this Court's assistance in discovery to help bring this case to a swift end." (Docket #147, page 2).

[3] What "invented papers"? It is very apparent that this societal misfit murderer belongs in a straightjacket in a padded cell. The record demonstrates that this societal murderer stated to this Court that this is "the last straw for me". That statement is cause for alarm. What is this societal misfit murderer's next step? Is he going to go after Plaintiff? Is he going to shoot up the federal courthouse in Hammond? Can this Court afford to sit back and gamble that this societal misfit murder will not show up and shoot up the federal courthouse in Hammond?

2

is one word under the federal rules of procedure re motions. The federal courts I have experience with — Maryland, District of Columbia, and the Eastern District of Virginia — do not tolerate any of this nonsense." And the societal misfit murderer took it upon himself to try to school the Court in admonishing the Court 'Some judges write "Denied" & "Dated" in cursive on top of the first motion page as their filed Order.' (Docket #260).

- Bond's next (seventh) email, sent to the chambers of Judge Springmann on October 22, 2024 contained rambling about "murder" and the U.S. Attorney for the Northern District of Indiana.

- Bond's next (eighth) email, sent to the chambers of Judge Springmann on October 29, 2024 purporting "Dick Posner is and was my friend."

- Bond's next (ninth) email, sent to the chambers of Judge Springmann on May 1, 2025 contained the usual ramblings with rambling that the Department of Justice should review the sealed filings in this case and demanded action on the motion for summary judgment filed by his purported friend, the Defendant Richard Posner, and rambled on "This court cannot wait any longer…"

### A. **WILLIAM BOND ~ THE MURDERER**

The sender of the nine emails to the Court, William Bond, formerly known as William Rovtar, is a deranged societal misfit who murdered his father by beating his father to death by bludgeoning his father's head with a hammer and then changed his name to William Bond. According to an Opinion by the U.S. Court of Appeals for the Fourth Circuit, 317 F.3d 385 (4th Circuit 2003), in June 1981, William Bond, who was formerly known as William Rovtar, pled guilty to beating his father to death with a hammer in his grandparents' garage in Bainbridge Township, Ohio. Bond v. Blum, 317 F.3d 385 | Casetext Search + Citator. The Opinion pointed out that he was arrested and detained in a juvenile detention facility in Ohio, and he entered into a guilty-plea agreement in juvenile court with the result that in September 1981 he was transferred to the Sheppard & Enoch Pratt Hospital in Baltimore, Maryland, for psychological treatment. According to the Opinion, he was released in 1982, and after his release, he legally changed his name to William Bond, and in 1987 he began to write "Self-Portrait of a Patricide: How I Got Away with Murder", which he hoped to market to publishers for profit. The

3

manuscript describes in horrific detail how Bond planned and committed the murder of his father with a hammer, and how his dying father attempted to raise himself off the floor of the garage before Bond delivered the final blows to his neck and head. It describes Bond wiping away his fingerprints, scrubbing the garage floor, cleaning blood, flesh, and bone from his clothes, and stuffing his father's dead body in his car's trunk. The Opinion pointed out that "Most sinister of all, it depicts a remorseless individual who brags about fooling the police and the juvenile system to "get away scot-free" and even collecting, as planned, the money from his father's estate. According to the Opinion, "Bond circulated his manuscript directly and through agents in order to find a publisher, asking for a seven-figure advance. His efforts, however, were unsuccessful."

The Opinion stated 'The undisputed facts show that the defendants introduced a copy of Bond's copyrighted manuscript into evidence in a state child-custody proceeding to prove that Bond's household would not be a suitable place for the children of Bond's wife. The work, written by Bond and circulated by him in an effort to publish it, describes how Bond, when 17, planned and committed the murder of his father with a hammer, fooled the police about his mental state, used the juvenile system to obtain merely a "slap on the wrist," and recovered the proceeds of his father's estate, all without remorse. In the manuscript, he stated, "I wanted my father's money."'

### B. **WILLIAM BOND ~ THE EXTORTIONIST**

Court records demonstrate that the societal misfit William Bond is not only a murderer, but an extortionist as well. According to an Opinion by the U.S. Court of Appeals for the Fourth Circuit, *Bond v. Blum*, 317 F.3d 385 (4th Circuit 2003), the court of appeals went into great detail in explaining how William Bond tried to extort money from his future father-in-law, Kenneth Blum, demanding from his future father-in- law a dowry, a salary, establishment of an

4

investment account, purchase of a studio apartment in addition to a house, and a severance package should Bond's marriage with Alyson Slavin not work out. Bond stated to Blum, "You can pay me now or pay me later." Bond also made reference to his personal history, stating that he "had a past," and that, although it was "none of [Blum's] business," it makes "interesting reading." Blum found this letter to be an attempt to extort money from him, but he also became concerned for the safety of Alyson and her children. In June 2000, just before the state custody action was commenced, Blum hired a private investigator, Dudley F.B. Hodgson, to look into Bond's background. At their first meeting, Blum gave Hodgson an overview of his dealings with Bond and expressed his concern over both the safety of his grandchildren and Bond's effort to "shake him down" for money. Blum gave Hodgson a copy of the letter that Bond had sent him and told Hodgson that he had heard that Bond may have had some problems with his family involving violence in Ohio. In the course of his investigation, Hodgson learned about the murder of Bond's father and contacted the Bainbridge, Ohio police department, obtaining copies of the police report and other documents relating to the homicide investigation. Hodgson reported these findings to Blum, and at Blum's request, Hodgson went to the home of Miriam Pessin, the widow of Norman Pessin, believing that Bond had also tried to "shake Pessin down" for money before he died.

### C. THE SOCIETAL MISFIT MURDERER/EXTORTIONISH WILLIAM BOND HAS BEEN PREVIOUSLY ADJUDGED AS A "NOTORIOUS ABUSER" OF THE LEGAL SYSTEM

A United States District Court in Maryland has previously determined that William Bond is a "notorious abuser" of the legal system. In a Memorandum Opinion and Order issued by Senior United States District Judge David A. Faber of the United States District Court for the District of Maryland at Baltimore on April 12, 2017 in the case titled *William C. Bond v. Johnny*

5

*L. Hughes*, Civil Action No. 1:16-02723-DAF, the court wrote "This Complaint reads rather like a political thriller. And like other novels, **in this Complaint there seem to be far too much fiction, precious little fact, and copious innuendo…**" and further wrote "**Plaintiff, it seems, is intent on draining the Federal Judiciary of our "limited resources."** *Zatko v. California*, 502 U.S. 16, 18 (1991) (per curiam). The court, therefore, repeats its admonition that Plaintiff should take care not to lose credibility by filing vexatious and frivolous complaints. The reason is simple: "Every paper filed with the Clerk of this court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. 180, 184 (1989) (per curiam); see also *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1, 1 (1992) (per curiam) (applying this principle to "notorious abuser[s]" of the judicial system). **Plaintiff's becoming such a notorious abuser helps no one, least of all Plaintiff himself.**" [emphasis added]. https://www.govinfo.gov/content/pkg/USCOURTS-mdd-1_16-cv-02723/pdf/USCOURTS-mdd-1_16-cv-02723-0.pdf.

In a Petition for Writ of Mandamus Bond filed that was dismissed by unpublished per curiam opinion on December 6, 2013 In Re: William Bond, No. 13-2462 (4th Cir. 2013), Bond filed a motion for relief under the Crime Victim's Rights Act in the district court on November 20, 2013, alleging that the Maryland U.S. Attorney's Office was violating his rights under the Crime Victim's Rights Act, and the rights of all the citizens of Maryland, by failing to protect them from judicial misconduct of federal judges and misconduct by "incompetent and unethical attorneys." Bond had been attempting to intervene in the underlying criminal case since 2009, to unseal documents which he claimed would show misconduct on the part of judges

6

and attorneys in the case. The district judge denied the motion on November 21, 2013, by handwriting the word "denied" on the first page of the motion without further discussion.

## II. THE MURDERER WILLIAM BOND IS CAUSE FOR ALARM

### A. The Societal Misfit Murderer William Bond Has Declared to this Court that this is "The Last Straw" ~ This Court Should Take Action Before the Murderer William Bond Does Something Crazy Such as Shooting Up the Federal Courthouse in Hammond

The record very clearly demonstrates that the societal misfit murderer, William Bond, has a demonstrated history of violence and protective steps by this Court are necessary to ensure that this deranged person doesn't do any harm to Plaintiff, and to any other persons of this Court, and also to members of the public. Bond has forewarned in his email of April 20, 2023 that this is "the last straw for me". (Docket #51-1, page 1). A direct comment from a murderer who has explicitly forewarned a court that this is "the last straw for me" in demanding that the court cave in to his demands for a favorable ruling for the murderer's purported "close friend" is a substantial cause for alarm. According to Reid Meloy, a board certified forensic psychologist who consults for the FBI, has identified eight key warning signs of potential mass shooters, one of which warning signs are "fixation" and described as "when a person may become fixated on someone or a cause so much that it leads to deterioration in their social and work lives." https://www.usatoday.com/story/news/2022/05/28/8-warning-signs-mass-shooter-according-experts/9966901002/ . The several emails, nine in total to date, sent to this Court demanding that this Court give favorable rulings to the murderer William Bond's purported "close friend", the Defendant Richard A. Posner, and the explicit warning to this Court that this is "the last straw for me" clearly demonstrates William Bond's fixation on Plaintiff, this Court, and this case, are clear

7

warning signs of a potential mass shooter as described by board certified forensic psychologist Reid Meloy, who consults for the FBI.[4]

The signals are clearly indicating that this murderer is very unbalanced and that he is clearly losing it. In light of Bond's history of murder and shakedowns, and Bond's statement to this Court that this is "the last straw for me" and comment about a "sympathetic/cut throat reporter." (Docket #51-1, page 1), this Court should consider the dangerous situation here and take necessary steps to protect the Plaintiff and court personnel and public before this deranged person who has already committed murder, does something crazy with Plaintiff's life and/or perhaps even shooting up the federal courthouse in Hammond. With all of the mass shootings that are going on around the county we cannot afford to take a chance with this demented person. Not only did he (William Bond) murder his own father by bludgeoning him to death with a hammer, but troopers discovered that Bond owned five handguns and arrested him on charges that he failed to disclose on his gun permit application that he had been in a mental institution. In light of the demonstrated history of William Bond's murderous activity of bludgeoning his own father to death, and the fact that troopers ultimately arrested him on charges that he failed to disclose on his gun permit application that he had been in a mental institution when they discovered Bond owned five handguns, and in light of the tone of Bond's writings to this Court including informing this Court that this is "the last straw for me" (Docket #51-1, page 1), the fact of Plaintiff's answering machine receiving "tick tock" sounds from the day before and continuing on after Bond's most recent email to the Court, necessary precautions are in order by

---

[4] On the day before Bond sent the May 9, 2024 email to Judge Springmann, Plaintiff's phone rang and there was a sound of a clock "ticking", and the phone has been continually ringing with the "tick tock" clock sounds almost on a daily basis since then. The sending of a "tick tock" clock sound is a clear warning sign that something is about to happen. This Court should order federal law enforcement authorities to confiscate Bond's electronic devices and his phone system in order to determine information about his harassment conducts and potential plans to commit human destruction against Plaintiff and to people at the federal courthouse in Hammond.

8

this Court. This Court should exercise its inherent authority and refer this matter to the appropriate state and federal law enforcement authorities including the FBI.

In an article published by the *Washington Post* on May 31, 2009, titled "A Killer's Charmed Life", the *Washington Post* reported that Bond stated in promotional materials about his failed book "I see the garage bathed in shadowy light, my father lying in a pool of his own blood, and, for the first time, I can see myself quite clearly. **I am filled with vanity.**" [emphasis added].

https://www.washingtonpost.com/wpdyn/content/article/2009/05/22/AR2009052201289.html

Perhaps a quote from the article "A Killer's Charmed Life" is telling as to Bond's motivation in his *ex parte* emails. The article points out that Bond is in love with his prose in hundreds of pages of legal briefs quoting Bond as saying **"I love the smell of litigation in the morning" along with a line attributed to his legal briefs where Bond compared a federal judge to a "blindfolded child…swinging his stick at the colorful pinata."** The article quoted Bond as saying "This is fantastic" while flipping through stacks of his legal writings saying "Look at this introduction…I love what I wrote at the beginning. Is it aggressive? You better believe it's aggressive!"[5] While this unabashed murderer may "love the smell of litigation in the morning", along with his self-professed penchant for "aggressive" writing, it is entirely inappropriate for this documented murderer to be sending aggressive *ex parte* emails to judges in this litigation, and such unbalanced actions are signaling that he is losing it, which is very

---

[5] William Bond, has additionally shown his obvious inappropriate aggressiveness when this societal misfit also communicated ignorant statements about Plaintiff to the ABA Journal in an article titled "Richard Posner's lawyer says the retired judge has Alzheimer's, didn't have capacity to contract" (March 30, 2022) of which ignorant and inappropriate statements were deleted by the ABA Journal upon learning that William Bond was a societal misfit who murdered his father by bludgeoning him to death with a hammer and after learning of the many other deranged things this societal misfit did as were enunciated in the aforementioned Opinion by the U.S. Court of Appeals for the Fourth Circuit, 317 F.3d 385 (4th Circuit 2003) of which Opinion detailed his many derangements.

9

concerning. This Court should exercise its authority in placing this dangerous lunatic's inappropriate conduct in check and order him to forthwith stop sending *ex parte* emails to any judges involved in this litigation. In light of William Bond's demonstrated history of violence, including murder, and shakedowns, and in light of the animosity demonstrated by the deranged William Bond and his fixation on Plaintiff, and his penchant to help his purported close friend, Richard A. Posner, who is the Defendant in this cause of action, the appropriate thing to do is for this Court to report this matter to the FBI. This Court should be concerned with this sickeningly obsessed individual's obsession and fixation with this case and his potential for committing another murder in light of his demonstrated history of violence in murdering his father by bludgeoning his head with a hammer and then writing a book about it that no publishers would touch in light of the title "Self-Portrait of a Patricide: How I Got Away with Murder". In today's climate with so many unbridled and disgruntled people killing people that they are upset with, which is now a national problem, this Court should take steps to rein in this murderous lunatic, who has purported to this Court to be a "close friend" of the Defendant, and who has demonstrated a fixation on this case and is exhibiting signs of disgruntlement against Plaintiff and his cause of action against his purported "close friend", should be cause for alarm. The dangerous history of this demented person cannot be disregarded here. A person who has bludgeoned his own father to death and then writing a book titled "Self-Portrait of a Patricide: How I Got Away with Murder", and who was arrested on charges that he failed to disclose on his gun permit application that he had been in a mental institution when troopers discovered Bond owned five handguns, and who has demonstrated a fixation on this case, is the very type of profile of a disgruntled person who could appear in a courthouse and proceed with a mass

shooting.[6] This Court should report this matter to the FBI before this deranged and disgruntled individual does something dangerous, not only to Plaintiff, but within this courthouse as well.

### III. THE MURDERER WILLIAM BOND'S EMAILS ARE ATTEMPTS TO INFLUENCE AND INTIMIDATE THIS COURT INTO ISSUING A FAVORABLE OUTCOME FOR HIS PURPORTED FRIEND, AND THIS COURT SHOULD REQUIRE WILLIAM BOND TO FACE CRIMINAL CHARGES FOR VIOLATING 18 U.S. CODE § 1503

Because Bond's emails clearly endeavor to influence and intimidate this Court into providing a favorable outcome for his purported friend, Defendant Richard A. Posner, of which unlawful conduct constitutes federal criminal violation of law under 18 U.S. Code § 1503, this Court should exercise its inherent authority and issue an arrest warrant against William Bond and direct the United States Marshal Service to serve the warrant and take William Bond into custody for prosecution for his criminal conduct in violation of 18 U.S. Code § 1503.

18 U.S. Code §1503 expressly states:

(a) **Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty,** or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, **or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b)**. If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force or physical force, the maximum term of imprisonment which

---

[6] According to Reid Meloy, a board certified forensic psychologist who consults for the FBI, has identified eight key warning signs of potential mass shooters, one of which warning signs are "fixation" and described as "when a person may become fixated on someone or a cause so much that it leads to deterioration in their social and work lives." https://www.usatoday.com/story/news/2022/05/28/8-warning-signs-mass-shooter-according-experts/9966901002/ . The numerous emails, including *ex parte* emails, sent to this Court clearly demonstrate William Bond's fixation on Plaintiff, this Court, and this case.

11

may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.
(b) The punishment for an offense under this section is—
(1) in the case of a killing, the punishment provided in sections 1111 and 1112;

(2) in the case of an attempted killing, or a case in which the offense was committed against a petit juror and in which a class A or B felony was charged, imprisonment for not more than 20 years, a fine under this title, or both; and

(3) in any other case, imprisonment for not more than 10 years, a fine under this title, or both.

Clearly the sending of nine emails, including *ex parte* emails, containing comments such as that the filing in this is "the last straw for me" and comment about a "sympathetic/cut throat reporter." (Docket #51-1, page 1), and demanding that "this Court must quickly and decisively end this case..." (Docket #88, page 3), and "This court cannot wait any longer..." are emails sent by a dangerous murderer designed to endeavor to influence and intimidate this Court into providing a favorable outcome for his purported friend, Defendant Richard A. Posner, of which unlawful conduct constitutes federal criminal violation of law under 18 U.S. Code § 1503. And clearly this Court should exercise its inherent authority and issue an arrest warrant against William Bond and direct the United States Marshal Service to serve the warrant and take William Bond into custody for prosecution for his criminal conduct in violation of 18 U.S. Code § 1503.

### IV. THE COURT SHOULD ORDER THAT THE DEFENDANT'S ATTORNEYS, WILLIAM BOND, DEFENDANT, DEFENDANT'S WIFE AND SONS PRESERVE ALL EVIDENCE OF ANY AND ALL FORMS OF COMMUNICATIONS WITH WILLIAM BOND

#### A. Defendant's Attorneys Have Not Denied that the Attorneys and/or Others Have Been Involved with Communications with the Murderer William Bond

The record demonstrates that William Bond has informed this Court in an *ex parte* email sent to Judge Springmann's chambers on April 20, 2023 that William Bond identified himself as

a "friend" of the Defendant Richard Posner stating "We became close talking almost every day for a year." after the Defendant Posner represented him in the Fourth Circuit. Bond further stated in the *ex parte* email that he considers Defendant's wife, Charlene, "a friend" and "His sons too." William Bond stated in the email that this is "the last straw for me." (Docket #51-1, page 1). William Bond yet again referred to the Defendant as "my friend" in the email of January 20, 2024 (Docket #119) and in yet another email of October 29, 2024, Bond stated "Dick Posner is and was my friend."[7] The record demonstrates that William Bond has in addition to the initially sent email of April 20, 2023, sent eight other emails to the Court on the dates of October 20, 2023 (Attachment to Docket #81); November 24, 2023 (Docket #88); December 30, 2023 (Docket #99); January 20, 2024 (Docket #119); October 9, 2024 (Docket #260); October 22, 2024); October 29, 2024; May 1, 2025.

On October 19, 2024 Plaintiff sent an email to Defendant's attorney Justin M. Ellis, copying all attorneys of record, and asked Justin M. Ellis if he and/or any attorneys from his firm have had communications with the murderer William Bond, and if so, that such communications should be provided to Plaintiff, and also that such evidence of any communications should be preserved, and the same for Defendant, his wife and sons, a copy of which email is attached hereto and made a part hereof as **Plaintiff's Exhibit 1**. Because Justin M. Ellis did not respond to Plaintiff's email and did not otherwise answer Plaintiff's question as to whether he and/or any attorneys from his firm have had communications with the murderer William Bond, there is a strong assumption that there have been communications between the murderer William Bond and Defendant Posner's attorneys. There is no attorney-client privilege applicable and if Justin

---

[7] The Defendant Richard Posner has never denied in this litigation that he is a "close friend" of the murderer William Bond.

13

M. Ellis and any other lawyers or interested persons have been in communications with the murderer William Bond who has a penchant for violence who has been sending email after email to this Court even stating that that this "is the last straw for me." (Docket #51-1, page 1), such communications would be prima facie evidence of collusion within this litigation between the murderer William Bond and Defendant and his attorneys and even Defendant's wife and sons who Bond has characterized are friends of his, based on the information from Bond's April 20, 2023 *ex parte* email to this Court. (Docket #51-1), and as such, this Court should order Defendant's attorneys and all other relevant persons to come forward with the communications and to preserve and maintain all evidence of any forms of communications that have taken place with the murderer William Bond.[8]  The Judiciary Act of 1789 expressly states "**And be it further enacted, That all the said courts of the United States, shall have power in the trial of actions at law, on motion and due notice thereof being given, to require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery**; and if a plaintiff shall fail to comply with such order, to produce books or writings, it shall be lawful for the courts respectively, on motion, to give the like judgment for the defendant as in cases of nonsuit; and **if a defendant shall fail to comply with such order, to produce books or writings, it shall be lawful for the**

---

[8] There is a semblance of similarity between what Defendant's attorney Justin M. Ellis stated to Magistrate Judge John E. Martin in the March 28, 2024 letter when Ellis requested "this Court's assistance in discovery to help bring this case to a swift end." (Docket #147, page 2) and the comment from Bond to this Court stating that "this Court must quickly and decisively end this case…" …" (Docket #88, page 3). It is certainly enough to make one wonder if Ellis and Bond were comparing notes in light of the similarity of the statements, and in light of Ellis' decision to not answer Plaintiff's question as to whether he and/or his associates have had communications with the murderer William Bond.

14

**courts respectively on motion as aforesaid, to give judgment against him or her by default."** [emphasis added].

Under the circumstances of the murderer William Bond's conduct of sending no less than nine emails to this Court, including several *ex parte* emails, clearly endeavoring to influence and intimidate this Court into issuing a favorable outcome for his purported friend, Defendant Richard A. Posner, this Court should invoke its inherent authority under the Judiciary Act of 1789 and order Defendant's attorneys and all other relevant persons to come forward with and to preserve and maintain all evidence of any forms of communications that have taken place with the murderer William Bond as the evidence strongly suggests that the murderer William Bond is an imminent threat to Plaintiff's safety and perhaps a threat to people at the federal courthouse in Hammond. In light of the murderer Williams Bond's violent history and statement to this Court that this is "the last straw for me" (Docket #51-1, page 1) and "This Cout cannot wait any longer." (May 1, 2025 email), the murderer William Bond must be considered an imminent threat to the safety of Plaintiff and to employees and patrons of the federal court in Hammond and appropriate steps are necessary to protect the public from this dangerous murderer who has professed to this Court on behalf of the Defendant Richard Posner who this murderer considers a "close friend" that this is "the last straw for me" (Docket #51-1, page 1) and "This court cannot wait any longer…" (May 1, 2025 email). 18 U.S. Code § 1503.

This Court has inherent authority under the Judiciary Act of 1789 to order the preservation of evidence between the murderer William Bond and Defendant's attorneys, Defendant's wife and sons, and it has inherent authority under the Judiciary Act of 1789 to take proactive steps to safeguard the public from this lunatic murderer, and it should do so. There have been many mass shootings at public places around the country and this Court cannot

gamble and take a chance that the murderer William Bond will not do so here in light of his statement that this is "the last straw for me" (Docket #51-1, page 1). The murderer William Bond's fixation to this litigation with his many emails and threat that this is "the last straw for me" squarely fit the profile of a potential mass shooter as identified by Reid Meloy, a board certified forensic psychologist who consults for the FBI, who has identified that a key warning sign of potential mass shooters is "fixation" described as "when a person may become fixated on someone or a cause so much that it leads to deterioration in their social and work lives." https://www.usatoday.com/story/news/2022/05/28/8-warning-signs-mass-shooter-according-experts/9966901002/ . The several emails sent to this Court demanding that this Court give favorable rulings to the murderer William Bond's purported "close friend, the Defendant Richard A. Posner, and the explicit warning to this Court that this is "the last straw for me" clearly demonstrates William Bond's fixation on Plaintiff, this Court, and this case, are clear warning signs of a potential mass shooter as described by board certified forensic psychologist Reid Meloy, who consults for the FBI. This Court needs to act accordingly and order the dangerous murderer William Bond to be taken into custody and prosecuted for his criminal violations under 18 U.S. Code § 1503 before it is too late.

## V. CONCLUSION

This Court should exercise its inherent authority under the Judiciary Act of 1789 and issue a protective order against the murderer William Bond to be served by the U.S. Marshal to the murderer William Bond ordering the murderer William Bond to refrain from further harassing Plaintiff with inappropriate emails to the Court and to cease and desist with the harassments of sending "tick tock" clock sounds to Plaintiff's telephone, and for issuance of an order to the murderer William Bond for the preservation of evidence of telephonic harassments

by murderer William Bond against Plaintiff, and for an order preserving communications between the murderer William Bond and Defendant's attorneys and other persons as heretofore stated, and for an order pursuant to 18 U.S. Code § 1503 directing federal law enforcement authorities to arrest the murderer William Bond for his unlawful conduct of sending no less than nine emails to this Court, including several *ex parte* emails, clearly endeavoring to influence and intimidate this Court into issuing a favorable outcome for his purported friend, Defendant Richard A. Posner, and for an order to confiscate the murderer William Bond's cell phone and electronic devices to secure the evidence of William Bond's harassments of Plaintiff, and to confiscate any firearms of any kind in the possession of the murderer William Bond, for an order for the immediate psychiatric examination of the murderer William Bond, and for all other steps necessary to safeguard the Plaintiff and the public from the lunatic murderer William Bond before he shoots up the federal courthouse in Hammond.

Respectfully submitted,

*Brian Vukadinovich*
Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, Indiana 46392
Tel. 219-956-2462

# Exhibit 1



*Email from Brian Vukadinovich
to Justin M. Ellis With Copy to All Attorneys
of Record
Dated October 19, 2024*

 Outlook

## William Bond

**From** Brian Vukadinovich <bvukadinovich@hotmail.com>
**Date** Sat 10/19/2024 11:31 PM
**To** Ellis, Justin <JEllis@mololamken.com>
**Cc** Notter, Kenneth <Knotter@mololamken.com>; Molo, Steven <smolo@mololamken.com>; dbeach@eichhorn-law.com <dbeach@eichhorn-law.com>

Hello Justin,
As you know, a William Bond, a non party, who has purported to the Court that he is a close friend of Richard Posner, and friend of Mr. Posner's wife and his sons as well, has been sending emails to the court, most recently on October 9, 2024 insisting that the court rule in Richard Posner's favor. Considering that William Bond is a murderer, I am very concerned with his obsession in the case with his conduct of sending several emails, some ex parte, to the court. Since William Bond is a murderer pushing the court for a favorable ruling on behalf of the Defendant Richard Posner, who he says is a close friend, by way of his emails, I must ask if there has been any correspondence of any kind between you, your firm, or any other lawyers representing the Defendant about the case? If so, I would be entitled to such information. Same applies to any information about any communications with the Defendant, Charlene Posner and/or his sons as well. I think you need to disclose any such communications, if in fact there have been any communications with William Bond, in any way. If so, I must insist that you provide me with that information. If there have been any communications involving William Bond, it is imperative that such communications be preserved and not discarded in any way.
Brian



## CERTIFICATE OF SERVICE

The undersigned certifies that on May 2, 2025, the foregoing was filed with the Clerk of the United States District Court for the Northern District of Indiana, Hammond Division, and was also served via email pursuant to Fed. R. Civ. P. 5(b)(2)(E) on the Defendant's below listed counsel of record per agreement to receive such papers via email.

>Justin M. Ellis
>jellis@mololamken.com
>
>Kenneth Notter
>knotter@mololamken.com
>
>Steven F. Molo
>smolo@mololamken.com
>
>David Beach
>dbeach@eichhorn-law.com

*/s/ Brian Vukadinovich*
Brian Vukadinovich, Pro Se
1129 E. 1300 N.
Wheatfield, Indiana 46392
Tel. 219-956-2462